DEPARTMENT OF JUSTICE

U. S. SPANISH TREATY CLAIMS COMMISSION

# FINAL REPORT OF

# WILLIAM WALLACE BROWN

ASSISTANT ATTORNEY-GENERAL

BEING A CONDENSED STATEMENT OF THE WORK DONE, THE QUESTIONS CONSIDERED, AND THE MOST IMPORTANT DECISIONS RENDERED, WITH A SCHEDULE OF THE CLAIMS FILED, THE DISPOSITION OF THE SAME, AND THE AWARDS MADE, BY THE SPANISH TREATY CLAIMS COMMISSION FROM APRIL 10, 1907, THE DATE OF THE SPECIAL REPORT OF HON. WM. E. FULLER, ASSISTANT ATTORNEY-GENERAL, TO MAY 2, 1910, WHEN THE COMMISSION EXPIRES BY OPERATION OF LAW



WASHINGTON
GOVERNMENT PRINTING OFFICE
1910

Generated on 2025-02-02 23:18 GMT / https://hdl.handle.net/2027/mdp.35112104450621
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google    Original from UNIVERSITY OF MICHIGAN

and who returns with his father to his native land, does not lose his American nationality, but that on attaining his majority he has a right of election.

And with reference to that part of Mr. Frazer's opinion, as to the claimant being a subject of both Governments and the consequences, it is said (13 Ops. Att'y Gen., 89):

> On general principles such conflicting citizenship is decided according to the laws of the one of the two countries claiming allegiance, within whose jurisdiction the individual happens to be.

It will be observed, therefore, that our statutes which declare (1) that all persons born in the United States and subject to the jurisdiction thereof, and (2) all persons born out of the United States of parents who are citizens, are citizens of the United States, reach out into the domain of other countries, for if they should also declare to the same effect, we would have many conflicts and many cases of double allegiance. While, therefore, our statutes may be given full force and effect in our internal affairs and administration, yet, when it comes to dealing with other nations, these broad claims must yield to the principles of international law. The last two cases referred to above are illustrations of this conflict and of the method of disposing of the same.

The Spanish Treaty Claims Commission seems to have taken the position that under the fourteenth amendment to the Constitution, as expounded in the Wong Kim Ark case, supra, there is no longer any room to question that every person born in the United States is an American citizen, as its rulings have been along that line; but that doctrine in its absolutism is one which the government of the United States does not and can not take and maintain.

The United States has upon its statute books a counter proposition which reads as follows:

> SEC. 1993. All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States.

Here we assert a right which by the fourteenth amendment, as construed, we deny to other Governments, and it needs no argument to show that we can not maintain both propositions. If we claim that children born abroad to American citizen parents are American citizens (we do so claim and maintain, and this is the more important of the two), then we must concede the same right to other nations, and we must abandon so much of the fourteenth amendment as by construction may be held to undertake to make an American citizen out of children born to foreign parents on American soil, and in actual practice the government of the United States so admits.

The truth is that it has never been held, and it is very doubtful whether it will ever be held, that the mere act of birth of a child on American soil, to parents who are accidentally or temporarily in the United States, operates to invest such child with all the rights of American citizenship. It was not so held in the Wong Kim Ark case. No such question was involved or decided, and whatever is said on that subject in that case (and there is a good deal), is mere dictum. The summary of the case on its facts, set forth in the last two pages of the opinion of the court, shows exactly what was the issue, and that such a broad question was not in any sense involved in the case. The Chinese child in that case, born in the United States, showed

Generated on 2025-02-02 23:23:20 GMT  /  https://hdl.handle.net/2027/mdp.35112104550621
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

Digitized by Google                    Original from
                                        UNIVERSITY OF MICHIGAN

that both he and his parents had resided in the United States continuously from his birth until after his majority, except that he had made two temporary visits to China, which it was conceded were temporary and with the intention of returning to the United States as his permanent residence. At the time of his birth his parents were not temporary sojourners in the United States, but were domiciled and engaged permanently in business there.

It follows therefore that the question of what is meant by the clause in the fourteenth amendment reading "and subject to the jurisdiction thereof" is yet open, and as already said, it is exceedingly doubtful, to say the least, whether the courts will ever hold that the accidental birth within the territory of the United States instantly invests the child with all the rights of an American citizen, regardless of its future movements and those of its parents. If such a child should be possessed of a very considerable estate, and should be at once taken by its parents to their own country, we think the United States would have a very difficult time collecting an income tax or enforcing any other rights as against this child or its estate.

We avoid this, to our minds, untenable position by taking the ground that such a child has a right of election, and on attaining its majority it may elect the nationality of either government, which election the child may make by remaining permanently in the one country, or removing to the other on attaining majority and there abiding and performing the duties of citizenship.

This seems a very simple solution, but it leads to many complications not regulated by law, and for the determination of which there is no satisfactory guide. Among these are: (1) What acts are sufficient to amount to an election; (2) when and how must that election be made; (3) within what period, after attaining majority, must it be done; (4) in case a child desires to elect the nationality of the government other than the one within whose jurisdiction he is residing, is it possible for him to make such an election without bodily removal to such elected country; and (5) should any such election be permitted unless made under oath, and by having the same entered upon the records of some proper court, competent to naturalize aliens? The situation is such as to call for prompt and careful legislative action.

Finally, on this point, it would seem that when the courts are compelled to construe this clause, " and subject to the jurisdiction thereof," it is to be hoped that they will take the very simple and reasonable position that it does not mean that jurisdiction to which the bodily form of the child is subject from the moment of its birth, such as the right to live, to be protected from harm, and the like, but that larger jurisdiction, which, though difficult to define, is well known and understood, the difference between the jurisdiction which is exercised over a visitor and that over one domiciled, which difference may be seen at a glance. The former was certainly not in the legislative mind when dealing with such grave and important rights.

2. *By naturalization.*—(b) Naturalization is the act by which the Government formally admits into its community persons formerly owing allegiance to another country, investing them with all the rights and privileges and imposing upon them all the duties and obligations of full membership therein.

Generated on 2025-02-02 23:21 GMT  /  https://hdl.handle.net/2027/mdp.35112104550621
Public Domain, Google-digitized  /  http://www.hathitrust.org/access_use#pd-google

Digitized by Google   Original from UNIVERSITY OF MICHIGAN