**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CASA, INC., *et al.*,<br><br>      *Plaintiffs*,<br><br>  v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>      *Defendants*. | Case No. 8:25-cv-00201-DLB |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY**
**PRELIMINARY INJUNCTION PENDING APPEAL**

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 62, Defendants respectfully move for a partial stay pending appeal of the Court's February 5, 2025 Order, ECF No. 66, which preliminarily enjoins Defendants on a nationwide basis from implementing and enforcing Executive Order No. 14160, Protecting the Meaning and Value of American Citizenship (Jan. 20, 2025) ("EO"). In particular, the Court should stay the injunction's nationwide application so the injunction provides relief only to the individual plaintiffs and the members of the organizational plaintiffs who have been identified in Plaintiffs' complaint or preliminary injunction papers.[1]

Defendants' arguments that the Court's injunction is overbroad are likely to succeed on appeal because the extension of relief to individuals across the nation who are not properly before the Court violates the well-established principle that judicial remedies "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). The equities similarly weigh in favor of staying application of an injunction that intrudes into internal executive branch affairs, preventing Defendants from even taking preparatory steps to implement the EO in the event that it is eventually permitted to take effect, and extends to non-parties who have not demonstrated a likelihood of irreparable harm or entitlement to injunctive relief.

Defendants respectfully request a ruling by the close of business on February 18, 2025. After that time, if relief has not been granted, Defendants intend to seek relief from the U.S. Court of Appeals for the Fourth Circuit.

---

[1] This includes individuals who have been identified by pseudonym. Consistent with the Court's Order granting leave for the individual plaintiffs to proceed under pseudonym, ECF No. 68, Defendants are not requesting that the individual plaintiffs or members of the organizational plaintiffs described in Plaintiffs' papers be publicly identified, only that they be identified to the Court and Defendants for purposes of issuing and following a tailored injunction, subject to the terms of an appropriate protective order.

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

### I. Defendants Are Likely To Prevail On The Merits Of Their Argument That The Preliminary Injunction Should Be Limited In Scope.

1.  As Defendants have explained, nationwide injunctive relief is inappropriate in this case. *See* Defs.' Opp'n to Pls.' Mot. for TRO and Prelim. Inj. at 29-30, ECF No. 40 ("Defs.' PI Opp'n"). A federal court may entertain a suit only by a plaintiff who has suffered a concrete "injury in fact," and the court may grant relief only to remedy "the inadequacy that produced [the plaintiff's] injury." *Gill*, 585 U.S. at 66 (citation omitted). Principles of equity reinforce those limitations, and "[u]niversal injunctions have little basis in traditional equitable practice." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring). Indeed, nationwide injunctions "take a toll on the federal court system," and "prevent[] legal questions from percolating through the federal courts." *Trump v. Hawaii*, 585 U.S. 667, 713 (2018) (Thomas, J., concurring).

These general principles apply in challenges to "categorical [government] polic[ies]," Mem. Op. at 32, ECF No. 65 ("PI Opinion"), the same as all other cases. *See, e.g.*, *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring) (rejecting argument that nationwide injunction was necessary to prevent a "patchwork" national policy because that "would make nationwide injunctions the rule rather than the exception with respect to all actions of federal agencies"). And they foreclose any relief in this case to anyone not properly before the Court, *i.e.*,

2

anyone but the individual plaintiffs and the members of the organizational plaintiffs who have been pseudonymously identified. As one Fourth Circuit panel explained, nationwide injunctions "are plainly inconsistent with th[e] conception of the judicial role and the proper scope of the federal courts' remedial power." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 257 (4th Cir. 2020) (Wilkinson, J.), *vacated for reh'g en banc*, 981 F.3d 311; *see also Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 270 (4th Cir. 2003) (vacating nationwide injunction).

The Court nonetheless fashioned nationwide relief because it determined that doing so was necessary to provide "complete relief" because one of the organizational plaintiffs—Asylum Seeker Advocacy Project ("ASAP")—has "over 680,000 members" who "reside in every state." PI Opinion at 32. But that is no basis for nationwide relief: the fact that ASAP has a relatively large and geographically diverse membership does not justify awarding relief to large swaths of individuals across the country who are *not* ASAP members, not parties to this case, and "not the proper object of th[e court's] remediation." *Lewis v. Casey*, 518 U.S. 343, 358 (1996).

Indeed, while the Court should at minimum narrow its injunction to cover only members of ASAP and CASA at the time of its preliminary injunction order, even an injunction that extended to unidentified members would be overbroad. For similar reasons as discussed above, equitable principles preclude granting relief to any member who has not been identified in Plaintiffs' filings and agreed to be bound by the judgment. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 401–02 (2024) (Thomas, J., concurring) (noting that "[u]niversal injunctions" as a means of granting relief to an entire association's members are "legally and historically dubious" (citation omitted)). Restricting this type of broad relief would also promote longstanding equitable principles that a party has one opportunity for relief and that the effect of any judgment should be

3

bidirectional. *Cf. Arizona*, 40 F.4th at 397 (Sutton, C.J., concurring) (explaining the equitable and historical problems with "asymmetric" suits).

"[H]e who seeks equity must do equity," and courts should "be alert" that equity's "peculiar remedial process is in no way abused." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947). Allowing organizations to seek injunctive relief for hundreds of thousands of unidentified members who would not be bound by the judgment exposes the Defendants to a multiplicity of suits and is fundamentally inequitable. Because the organizational plaintiffs' unidentified members are unknown, it is entirely possible that some of them also belong to other organizations that are challenging the EO, *see, e.g.*, Compl. ¶ 18, *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038 (D.N.H. Jan. 20, 2025), ECF No. 1 (plaintiff organization claiming to have over 325,000 members nationwide), and providing relief to all such unidentified members in these circumstances undermines basic principles of preclusion and claim splitting. *See also Alliance*, 602 U.S. at 402 (Thomas, J., concurring) (noting that broad associational standing "subverts the class-action mechanism" by allowing an organization to "effectively bring a class action without satisfying any of the ordinary requirements").

Finally, the Court justified its nationwide injunction on the ground that the EO concerns citizenship, a "national concern that demands a uniform policy." PI Opinion at 32. But again, the mere fact that Plaintiffs challenge a national policy does not nullify traditional equitable principles that militate against providing relief to non-parties. And while the Court refers to the constitutional provision giving the federal government power to establish a "uniform Rule of Naturalization," *id.*, the EO addresses the government's interpretation of the Fourteenth Amendment's provision of citizenship by birth; it does not provide a rule of naturalization. *See, e.g., Miller v. Albright*, 523 U.S. 420, 423 (1998) (plurality opinion) (distinguishing between citizenship by birth and

citizenship by naturalization).

2. The Court's injunction is also overbroad to the extent it enjoins not only enforcement of the EO, but all implementation. As noted below, that causes harm to the government, and it is inconsistent with the well-established principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). At minimum, the Court should limit its injunction to permit the government to implement the EO in ways that cause no harm to Plaintiffs, including by taking internal, preparatory steps regarding the EO's application and formulating relevant policies and guidance.

## II.    The Balance Of Equities, Including The Irreparable Harm Defendants Will Suffer, Favors a Stay.

The balance of the equities likewise favors limiting injunctive relief to the individual plaintiffs and identified members of the organizational plaintiffs. Providing relief beyond that, particularly to individuals in all 50 states who have not demonstrated their entitlement to such relief, conflicts with the principles articulated above and allows "one district court [to] make a binding judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). That is especially inappropriate in the context of this litigation, where multiple states have argued that the EO should not be universally enjoined. *See* ECF No. 50 (Tennessee amicus brief); *see also* ECF No. 89-1, *Washington v. Trump*, No. 2:25-cv-0127-JCC (W.D. Wash. Feb. 3, 2025) (amicus brief filed by 18 states supporting Defendants' position).

In addition, an injunction that interferes with the President's ability to carry out his broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. County Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Indeed, any injunction

5

that prevents the President from exercising his core authorities is "itself an irreparable injury." *Doe #1 v. Trump*, 957 F.3d 1050, 1084 (9th Cir. 2020) (Bress, J., dissenting) (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

As noted above, the injunction causes further harm to the Defendants because its breadth—applying to all implementation and enforcement—prevents the executive branch as a whole from even beginning the process of formulating relevant policies and guidance for implementing the EO. If Defendants are successful on their appeal and the EO is eventually allowed to take effect, but the injunction is not stayed in its overbroad applications while that appeal is pending, the Defendants will be unable to make preparations necessary to implement the EO, thus further delaying its implementation.[2] Such a delay in effectuating a policy enacted by a politically accountable branch of the government imposes its own "form of irreparable injury." *King*, 567 U.S. at 1303 (Roberts, C.J., in chambers) (citation omitted). This is especially harmful in this context where, as Defendants have explained, the challenged EO is part of a larger immigration policy designed to combat the "significant threats to national security and public safety" posed by unlawful immigration. *See* Defs.' PI Opp'n at 3.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' opposition to Plaintiffs' motion for preliminary injunction, Defendants respectfully request that this Court stay its preliminary injunction to the extent it extends beyond the individual plaintiffs and the members

---

[2] The EO is also subject to a nationwide injunction issued by a district court in the Western District of Washington. *See Washington v. Trump*, No. 2:25-cv-0127-JCC, 2025 WL 415165 (W.D. Wash. Feb. 6, 2025). Defendants have appealed that preliminary injunction and filed a motion to stay its overbroad applications—in particular, as it applies to anyone other than the named individual plaintiffs in that case. *See Washington* ECF Nos. 116 & 122. The EO was also enjoined by a district court in the District of New Hampshire on February 10, 2025, but that injunction applies only to the plaintiffs in that case and within that court's jurisdiction. *See* ECF No. 77, *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038 (D.N.H. Feb. 10, 2025). The Acting Solicitor General of the United States is currently considering whether to appeal that preliminary injunction order and whether to seek any stay pending appeal.

of the organizational plaintiffs identified in this action. Defendants respectfully request a ruling on this motion no later than the close of business on February 18, 2025, after which time, if relief has not been granted, Defendants intend to seek relief from the Fourth Circuit.

Dated: February 11, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

EREK L. BARRON
United States Attorney

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
YURI S. FUCHS
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-616-8098
Fax: 202-616-8460
Email: robert.c.merritt@usdoj.gov

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant U.S. Attorney, District of Maryland
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
(410) 209-4855

*Attorneys for Defendants*