# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CASA, INC. *et al.*,

      *Plaintiffs*,

    v.

DONALD J. TRUMP *et al.*,

      *Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

**INTRODUCTION**

As the Court noted in its decision granting Plaintiffs' motion for a preliminary injunction against Executive Order No. 14,160, "[t]he plaintiffs easily have met the standard for a preliminary injunction." Mem. Op. 2. First, there is "a very strong likelihood of success on the merits." *Id.* The Executive Order's attempt to reinterpret the Citizenship Clause "contradicts the plain language of the Fourteenth Amendment and conflicts with 125-year-old binding Supreme Court precedent." *Id.* at 11. Plaintiffs also demonstrated significant irreparable harm. Absent an injunction, they "will face instability and uncertainty about the citizenship status of their newborn babies, and their children born on U.S. soil will be denied the rights and benefits of U.S. citizenship." Mem. Op. 29-30. The balance of equities and the public interest likewise "weigh very strongly" in Plaintiffs' favor.

Defendants now seek a partial stay of the Court's injunction. *See* U.S. Stay Mot., ECF 70. They do not contest the Court's ruling on the merits of the four preliminary injunction factors. Instead, they argue that the injunction should be narrowed. Specifically, they argue that the injunction should be limited to Plaintiffs—and then go a step further and argue that the injunction should not even cover all members of Plaintiffs ASAP and CASA. According to Defendants, the injunction should apply to the Individual Plaintiffs and the pseudonymously identified members of ASAP and CASA, but not to the hundreds of thousands of other members of those organizations.

Defendants' various arguments for narrowing the injunction conflict with binding precedent and this Court's well-reasoned opinion. Both the Supreme Court and the Fourth Circuit have affirmed that injunctions can extend to nonparties in appropriate circumstances. If any case calls for a nationwide injunction, it is this one. And Defendants cite no authority endorsing their

1

idea that relief granted to an association must be limited to only its named members. The stay motion should be denied.

## STANDARD OF REVIEW

A court considers four factors when deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted).

## ARGUMENT

### I.    The Court Did Not Abuse Its Discretion by Issuing a Nationwide Injunction

Defendants are unlikely to succeed on the merits of their argument that the Court abused its discretion by issuing a nationwide injunction.[1] Courts have broad discretion to tailor injunctions to the circumstances of a given case. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) ("*IRAP*") (declining to stay an injunction that applied to nonparties "similarly situated" to the plaintiffs). The Fourth Circuit has emphasized "that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020) (quoting *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992)).

---

[1] Injunctions that apply throughout the country and that extend relief not only to the plaintiffs in a case but also to similarly situated nonparties are sometimes called "nationwide" and sometimes called "universal." Because the Court used the term "nationwide" in its opinion, Plaintiffs have adopted it for purposes of this brief. Plaintiffs understand the Court's use of that term to denote both geographic scope and that the injunction would benefit nonparties. Regardless of the label, the Court's order makes clear that Defendants are enjoined from implementing or enforcing the Executive Order with respect to anyone, not just Plaintiffs, anywhere in the United States. *See* Prelim. Inj. Order 2-3, ECF 66. And that is how Defendants have interpreted the order as well. *See* U.S. Stay Br. 2-3.

The Court's nationwide injunction fits comfortably within the guidelines set by that precedent. Defendants are therefore unlikely to establish that this Court's nationwide injunction constitutes an abuse of discretion.

### A.     Nationwide Relief Is Appropriate in the Circumstances of this Case

Defendants first argue that "nationwide injunctive relief is inappropriate in this case" or, they suggest, in any case. U.S. Stay Br. 2. But "binding precedent requires this Court to reject the Government's argument" that "an injunction extending relief to those who are similarly situated to the litigants is categorically beyond the equitable power of district courts." *Roe*, 947 F.3d at 232. Both the Supreme Court and the Fourth Circuit have "affirmed the equitable power of district courts, in appropriate cases, to issue nationwide injunctions extending relief to those who are similarly situated to the litigants." *Id.* (citing *IRAP*, 582 U.S. at 580); *see also IRAP*, 582 U.S. at 582-83 (declining to stay injunction that applied "with respect to parties similarly situated" to plaintiffs); *Roe*, 947 F.3d at 232 (affirming nationwide injunction that applied to plaintiffs and others similarly situated); *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27 (4th Cir. 2021) (affirming injunction that applied to "six non-party resettlement agencies as well as the plaintiffs").  As this Court correctly explained in its opinion, "[a] district court may issue a nationwide injunction so long as the court 'mold[s] its decree to meet the exigencies of the particular case.'" Mem. Op. 31 (quoting *HIAS*, 985 F.3d at 326).

A broad injunction is appropriate—and, indeed, necessary—given the exigencies of this particular case. Most importantly, "[o]nly a nationwide injunction will provide complete relief to the plaintiffs." Mem. Op. 32. An injunction limited to the parties, including all members of ASAP and CASA, would be difficult if not impossible for this Court or the government to administer. Under current law, a birth certificate alone is sufficient proof of United States citizenship, and birth

3

certificates do not list whether a child's parents are members of ASAP or CASA. *See* Local Gov. Amicus Br. 10, ECF 37. Requiring children covered by the Executive Order to show that their parents are members of ASAP or CASA in order to obtain the benefits of the injunction—and the right to citizenship—would be burdensome, inefficient, and potentially unworkable. Such a system would be especially difficult to manage in the context of birthright citizenship given that ASAP and CASA collectively represent hundreds of thousands of members, with new members joining every week. The stress and confusion that would be caused by requiring parents to prove that their babies are covered by the injunction would cause the very harms that the injunction was designed to prevent. Mem. Op. 28-29.

Other factors also support a nationwide injunction in these circumstances. The Fourth Circuit has recognized that "a nationwide injunction may be appropriate when the government relies on a 'categorical policy,' and when the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS*, 985 F.3d at 326; *cf. Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (noting that "the breadth of the remedy employed by the Court" varies between a facial and an as-applied challenge). The Executive Order unlawfully denies constitutionally guaranteed birthright citizenship to everyone whose parents fall into two broad categories, so there is no need for further factual development as to particular children. In addition, citizenship is an area where consistency is particularly important, and the injunction preserves nationwide uniformity on this most fundamental right. *See HIAS*, 985 F.3d at 327 (4th Cir. 2021) (upholding a nationwide injunction because a narrower injunction "would cause inequitable treatment of refugees and undermine the very national consistency that the Refugee Act is designed to protect").

Against this weight of authority, Defendants cite a handful of concurring opinions, a vacated Fourth Circuit panel opinion, and an inapposite trademark case. U.S. Stay Br. 2-3. None of those authorities is persuasive. The concurring opinions "do not constitute binding authority." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 394 n.6 (6th Cir. 2016). The vacated panel opinion in *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 262 (4th Cir. 2020), which expressed doubt about nationwide injunctions while leaving open the possibility that they could be necessary in extraordinary circumstances, likewise has "no precedential value." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 n. 10 (4th Cir. 1993) (en banc); *accord, e.g.*, *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 328 (4th Cir. 2021) (Wynn, J., concurring) ("[V]acated opinions do not even bear the label of dicta"). Finally, Defendants cite a Fourth Circuit opinion narrowing the geographic scope of an injunction in a trademark case. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264 (4th Cir. 2003). The question in that case was not about *who* was covered by the injunction, but simply whether the plaintiff had established use of the trademark at issue in a national market—a geographic concern unique to trademark law that has no relevance here. *See id.* at 269 ("[T]he owner of common-law trademark rights in an unregistered mark is not entitled to injunctive relief in those localities where it has failed to establish actual use of the mark").

In short, the overwhelming weight of authority supports a nationwide injunction in this case, and Defendants offer next to nothing in response.

**B.      At a Minimum, the Injunction Necessarily and Appropriately Applies to All Members of Associational Plaintiffs**

In addition to arguing that the injunction should be limited to the parties, Defendants go a step further and suggest that the injunction should not even cover all members of ASAP and CASA. But the argument that the injunction should apply only to Individual Plaintiffs and

pseudonymously identified members of Plaintiffs ASAP and CASA—and not their hundreds of thousands of other members—has no basis in law and should be summarily rejected.

An association can "assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (SFFA) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). The association must demonstrate that "just one of the association's members would have standing." *Retail Indus. Leaders Ass' v. Fielder*, 475 F.3d 180, 186 (4th Cir. 2007); *accord, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (noting the requirement that "*at least one* identified member had suffered or would suffer harm" (emphasis added)). The remedy granted to an associational plaintiff is not limited to identified members: it "will inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515; *accord, e.g., Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of Homeland Sec.*, 983 F.3d 671, 683 (4th Cir. 2020) (noting that "an injunction would benefit many of [the plaintiff's] members"). No precedent suggests that each injured member must be specifically identified before an injunction would reach them. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007) (noting plaintiffs sought an injunction "on behalf of Parents Involved members whose elementary and middle school children may be 'denied admission to the high schools of their choice when they apply for those schools in the future'"). Defendants' position is inconsistent with the requirement for associational standing that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *SFFA*, 600 U.S. at 199 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Indeed, associational standing would be pointless if remedies were limited to only named members who proved their own individual standing.

The Supreme Court's decision in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), is instructive. That case was brought by a statewide commission on behalf of apple growers and producers throughout Washington to challenge the constitutionality of a North Carolina statute. *Id*. at 335. The district court issued a permanent injunction broadly barring enforcement of the statute, and the Supreme Court affirmed in all respects. The Court noted that the plaintiff organization could assert "the claims of the Washington apple growers and dealers who form its constituency." *Hunt*, 432 U.S. at 344-45. At no point did the Supreme Court suggest that the injunction would apply only to specific apple growers who had been identified. Instead, the Court noted that "the request for declaratory and injunctive relief" did not require "individualized proof" and was "properly resolved in a group context." *Id.* at 344. The same is true here.

At a minimum, any party-specific injunction in this case must apply to all members of ASAP and CASA, including both existing and new members. That is beside the point, however, because the Court properly granted nationwide relief, as explained above.

### C.    The Court Properly Enjoined Both Enforcement and Implementation of the Unlawful Executive Order

Defendants briefly argue that "[t]he Court's injunction is also overbroad to the extent it enjoins not only enforcement of the EO, but all implementation." U.S. Stay Br. 5. Defendants do not explain what they see as the difference between "enforcement" and "implementation," and those concepts overlap under the terms of the Executive Order. For instance, Section 3 of the order is titled "Enforcement" and directs agencies to issue guidance "regarding this order's implementation." Order § 3. That implementation itself will harm Plaintiffs, adding to the chaos and confusion caused by the Executive Order. *See* Dan Morse, *Pregnant Asylum Seekers Fear Birthright Citizenship Will End Before Their Deliveries*, Wash. Post (Feb. 9, 2025),

https://www.washingtonpost.com/dc-md-va/2025/02/09/birthright-citizenship-plaintiffs.    Moreover,

because the Executive Order "contradicts the plain language of the Fourteenth Amendment and

conflicts with 125-year-old binding Supreme Court precedent," Mem. Op. 11, any implementation

of its directives would be unlawful. The Court therefore properly "enjoin[ed] the implementation

and enforcement" of the Executive Order. *Id*. at 32.

## II.    As This Court Recognized, the Equities "Strongly" Favor the Injunction as Issued

A nationwide injunction preserving the status quo as it has existed for more than a century

will further the public interest without harming the government. As the Court explained, in the

absence of an injunction, Plaintiffs "will face instability and uncertainty about the citizenship

status of their newborn babies, and their children born on U.S. soil will be denied the rights and

benefits of U.S. citizenship." Mem. Op. 29-30. Meanwhile, Defendants are not harmed by an

injunction preventing them from "enforcing restrictions likely to be found unconstitutional." *Id.* at

30 (quoting *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013)).

Defendants cannot show that they will suffer any harm, much less irreparable harm, from

an injunction that merely requires the Executive Branch to continue complying with the settled

interpretation of the Fourteenth Amendment's Citizenship Clause during the pendency of this

litigation. Defendants suggest that the injunction "interferes with the President's ability to carry

out his broad authority over immigration matters." Stay Br. 5. But reinterpreting the Fourteenth

Amendment in derogation of binding Supreme Court precedent is not among the President's

powers over immigration. "It is emphatically the province and duty of the judicial department to

say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). If anything, the injunction will

benefit Defendants and serve the public interest by preventing them from wasting time and

taxpayer dollars on implementing, even in part, an Executive Order that plainly violates the Constitution.

## CONCLUSION

The Court should deny Defendants' motion.


Respectfully submitted this February 14, 2025,


Nicholas Katz, Esq. (D. Md. 21920)
CASA, INC.
8151 15th Avenue
Hyattsville, MD 20783
240-491-5743
nkatz@wearecasa.org

Conchita Cruz*
Zachary Manfredi*
Dorothy Tegeler*
Leidy Perez*
Asylum Seeker Advocacy Project
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org
dorothy.tegeler@asylumadvocacy.org
leidy.perez@asylumadvocacy.org

*/s/ William Powell*
William Powell*
Joseph W. Mead (D. Md. 22335)
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
Gregory Briker*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
    AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
jm3468@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu
gb954@georgetown.edu


*Attorneys for Plaintiffs*


*Admitted pro hac vice.*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ William Powell
William Powell