IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

CASA, INC.,
8151 15th Avenue
Hyattsville, MD 20528;

ASYLUM SEEKER ADVOCACY
PROJECT, INC.,
228 Park Ave. S #84810
New York, NY 10003-1502;

MARIBEL,[1] *individually and as next friend to her future child,*
c/o Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
c/o CASA, Inc.,
8151 15th Avenue
Hyattsville, MD 20528;

600 New Jersey Ave., N.W.
Washington, DC 20001;

JUANA, *individually and as next friend to her future child, on behalf of themselves and all others similarly situated,*
c/o CASA, Inc.,
8151 15th Avenue
Hyattsville, MD 20528;

c/o Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC 20001;

Case No.: 8:25-cv-00201-DLB

FIRST AMENDED COMPLAINT

CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF

---

[1] This Court granted leave to the plaintiffs identified in the original complaint to proceed using pseudonyms. ECF No. 65. Plaintiffs are using pseudonyms for all adults in this complaint in order to protect the identities of their minor children and to prevent retaliation against their families.

TRINIDAD GARCIA, *individually and as next friend to her future child, on behalf of themselves and all others similarly situated,*
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

MONICA, *individually and as next friend to her future child, on behalf of themselves and all others similarly situated,*
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502; *and*

LIZA, *individually and as next friend to her future child*L.B., *on behalf of themselves and all others similarly situated,*
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

ASHLEY, *individually and as next friend to K.K., on behalf of themselves and all others similarly situated,*
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

ANDREA, *individually and as next friend to E.T.P., on behalf of themselves and all others similarly situated,*
c/o Institute for Constitutional Advocacy and Protection
~~Georgetown University Law Center~~
Georgetown University Law Center
600 New Jersey Ave ~~NW.~~, N.W.,
Washington, DC 20001; *and*

**Formatted:** Font: TimesNewRomanPSMT

**Formatted:** Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

**Formatted:** Font: TimesNewRomanPSMT

**Formatted:** Font: TimesNewRomanPSMT

**Formatted:** Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

**Formatted:** Font: TimesNewRomanPSMT

2

NIURKA, *individually and as next friend to L.G., on behalf of themselves and those similarly situated,*
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

Plaintiffs,

v.

DONALD J. TRUMP, in his official
capacity as President of the United States,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

SECRETARY OF THE UNITED STATES
DEPARTMENT OF STATE, in their
official capacity,
The Executive Office of the Legal Adviser
and Bureau of Legislative Affairs
600 19th Street NW
Suite 5.600
Washington, DC 20522;

ATTORNEY GENERAL OF THE
UNITED STATES, in their official
capacity,
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY, in their official capacity,
c/o Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485;

DIRECTOR OF UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES, in their official capacity,

3

c/o Office of the Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009;

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION, in their
official capacity,
c/o Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235; *and*

UNITED STATES OF AMERICA,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

Defendants.

## INTRODUCTION

1.      This complaint challenges ~~the~~ Executive Order 14,160, entitled "Protecting the Meaning and Value of American Citizenship," which purports to end birthright citizenship in the United States for the children of many immigrants living and working in the United States.

2.      The Executive Order is a flagrant violation of the Fourteenth Amendment, a federal statute, and the history underlying ~~the text of~~ those enactments, all of which guarantee the fundamental right to citizenship for all children born in the United States. The President has no unilateral authority to ~~override~~deny rights ~~recognized in~~protected by the Constitution or in federal statutes.

3.      Founded as a nation of immigrants, the United States of America has always recognized the common-law principle of *jus soli* (or "right of the soil"), under which children born in the United States, whether to citizen or noncitizen parents, are United States citizens

4

from birth. The principle of birthright citizenship is a foundation of our national democracy, is woven throughout the laws of our ~~nation~~Nation, and has shaped a shared sense of national belonging for generation after generation of citizens.

4.      Although the ~~nation~~Nation departed from the principle of *jus soli* in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857), denying citizenship to African-Americans born in the United States, the people of this country ratified the Fourteenth Amendment to right that wrong and express the nation's commitment to the principle of birthright citizenship for all. Section 1 of the Fourteenth Amendment therefore begins, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." By enshrining the guarantee of birthright citizenship in the Constitution, the people of this country ensured that citizenship could not be withheld from disfavored classes of native-born persons by mere legislation or executive action. The President has no power to eliminate a right guaranteed by the Constitution.

5.      The ~~14th~~Fourteenth Amendment's language is clear. Over a century ago, the U.S. Supreme Court confirmed that the Fourteenth Amendment's Citizenship Clause means that people born in the United States are U.S. citizens at birth without regard to their immigration status, except for children born to foreign diplomats, on foreign ships, to occupying armies, or to Indian tribes.[2] *See United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898). The Court has adhered to that understanding time and again in the ensuing decades.

6.      Congress has reaffirmed and implemented the Fourteenth Amendment's guarantee by codifying birthright citizenship into a federal statute, which, in its current form,

---

[2] Congress has overridden the last of these exceptions by statute, extending territorial birthright citizenship to all Native Americans. *See* Act of June 2, 1924, ch. 233, 43 Stat. 253 (current version at 8 U.S.C. § 1401(b)).

5

reiterates that everyone "born in the United States and subject to the jurisdiction thereof" "shall be nationals and citizens of the United States at birth." 8 U.S.C. § 1401(a). The President has no power to unilaterally abrogate an Act of Congress.

7.    The Executive Order violates this long-settled law. It denies citizenship to childrenany child born to mothersa mother whose presence in the country is either "unlawful[]" or "lawful but temporary" and whosea father who is neither a citizen nor a lawful permanent resident, even though those children are plainly "subject to the jurisdiction" of the United States and entitled to citizenship by birth.

8.    Organizational Plaintiffs are two membership-based immigrants-rights organizations, CASA, Inc. ("CASA") and Asylum Seeker Advocacy Project ("ASAP"), whose members include noncitizens who reside in the United States, who have immigration statuses covered by the Executive Order, and who are either pregnanthave had or plan towill have children while they are living withinborn in the United States after February 19, 2025 (collectively, "Members").

9.    Individual Plaintiffs are two membersand Putative Class Representatives Liza, on behalf of CASA, Maribel herself and as next friend to her newborn L.B.; Andrea, on behalf of herself and as next friend to her newborn E.T.P.; Ashley, on behalf of herself and as next friend to her newborn K.K.; Niurka, on behalf of herself and as next friend to her newborn L.G.; and Juana, two members of ASAP,, Monica, and Trinidad Garcia and Monica; and one additional individual, Liza. All five Individual Plaintiffs are pregnant, reside, on behalf of themselves and their future children, assert the interests of their babies and all others similarly situated. Each child was or will be born in the United States, and fear after February 19, 2025, and subject to the United States' jurisdiction. The Executive Order purports to deny these babies their

constitutionally and statutorily guaranteed United States citizenship. These Plaintiffs sue on behalf of themselves and a class of all other similarly situated individuals.

9. 10.    Individual Plaintiff Maribel plans to give birth in the United States after February 19, 2025, and fears that their children her child will be denied United States citizenship and its benefits under the Executive Order based on their the immigration status and that of their children's father of Maribel and her husband. She sues on behalf of herself and her unborn child.

10. 11.  The Executive Order is causing and will continue to cause immediate and irreparable harm to Individual parents and newborns alike, including the named Plaintiffs and, Members of CASA and ASAP, and all members of the putative class. Every day, babies like L.B., E.T.P., K.K., and L.G. are being born in the United States whose with their constitutionally guaranteed citizenship will be called into doubt under the Executive Order. These include many babies whose parents are Members of ASAP or CASA. Indeed, Thousands of newborn class members have been born since February 19, and thousands of Members more will give birth to children in the United States be born in the coming weeks and months. Those children will be are born in the United States and will be are subject to its jurisdiction. They will are therefore be entitled to citizenship under the Fourteenth Amendment and 8 U.S.C. § 1401(a) regardless of their parents' immigration status.

11. 12.  "Citizenship is a most precious right." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963). "It would be difficult to exaggerate [the] value and importance" of United States citizenship. *Schneiderman v. United States*, 320 U.S. 118, 122 (1943). Citizenship signifies that a person is a full member of the United States community and is entitled to all of the privileges, benefits, and freedoms that citizenship guarantees. As citizens, individuals born in the United States enjoy an unqualified right to enter and remain in their homeland. Moreover,

citizens are ensured the opportunity to pursue the American dream and participate fully in the civic and political life of the United States. They ~~are allowed to~~can vote, travel under a United States passport, hold certain public offices, and qualify for many public benefits that noncitizens do not.

~~12.~~13.  If allowed to go into effect, the Executive Order would throw into doubt the citizenship status of thousands of children across the country~~, including the children of Individual Plaintiffs and Members.~~. The Executive Order threatens these newborns' identity as United States citizens and interferes with their enjoyment of the full privileges, rights, and benefits that come with U.S. citizenship, including calling into question their ability to remain in their country of birth.

~~13.~~14.  That deprivation of the benefits of citizenship is a grave injury not only to those children but to their entire families, who will be directly harmed by the denial of the benefits of citizenship to their children. The children deprived of citizenship may have no status or right to remain in the United States with their family, even as their older siblings will often be United States citizens and as their parents will often be authorized to live in the United States. Indeed, these children may not have access to citizenship in *any* country, leaving them stateless, living forever at the temporary sufferance of wherever they find themselves.

~~14.~~15.  Parents will face significant harm, including increased stress and anxiety that comes from the U.S. government treating their children differently from other U.S.-born children, and from the prospect of their children facing statelessness and an uncertain fate in the land of their birth. Immigrant parents, including those who cannot be deported because of a pending asylum claim or other immigration application, will also face the reality that their U.S.-born child could be subject to deportation.

8

15.16.  This country would, in literal terms, be poorer for the elimination of birthright citizenship to the covered children. Research shows that birthright citizenship has contributed to economic growth and prosperity in the United States.

16.17.  Plaintiffs therefore seek a declaration that the Fourteenth Amendment and 8 U.S.C. § 1401(a) protect the right to birthright citizenship and that the constitutional guarantee of birthright citizenship cannot be eradicated by Executive Order, as well as a preliminary and permanent injunction prohibiting Defendants from implementing the Executive Order to deny any child born in the United States the benefits of their constitutionally guaranteed birthright citizenship.

## JURISDICTION AND VENUE

17.18.  The Court has jurisdiction under the United States Constitution and 28 U.S.C. §§ 1331 and 1346.

18.19.  Venue is proper in this District under 28 U.S.C. § 1391(e) and in this division because Defendants are officers and employees of the United States or an agency thereof acting in their official capacities, Plaintiff CASA has its principal place of business in this division and District, Plaintiff Juana resides in this division and District, a Defendant resides in this division and District, and a substantial part of the events or omissions giving rise to this action are occurring in this division and District.

## PARTIES

19.20.  **Plaintiff CASA, Inc. ("CASA") is** a nonprofit membership organization headquartered in Prince George's CountyLangley Park, Maryland, with offices in Maryland, Virginia, Pennsylvania, and Georgia. Founded in 1985, CASA is the largest membership-based immigrant rights organization in the mid-Atlantic region, withhas more than 175173,000 lifetime

9

members. ~~Many of CASA's members have children who were born in~~ from across the United States, ~~and many plan to grow their families in the future while living in the United States.~~ CASA's members are predominantly noncitizens in a variety of immigration statuses.

~~20.~~21.  CASA's mission is to create a more just society by building power and improving the quality of life in working-class Black, Latino/a/e, Afro-descendent, Indigenous, and immigrant communities. In furtherance of this mission, CASA offers a wide variety of social, health, job training, employment, and legal services to immigrant communities ~~in Maryland, Washington, D.C., Virginia, Pennsylvania, and Georgia, as well as a more limited suite of remote services to Members across the United States~~.

~~21.~~22.  In order to become a CASA member, an individual must apply for membership, pay dues (or have the dues requirement waived), and subscribe to the principles of CASA. A CASA member shares CASA's values, envisions a future where we can achieve full human rights for all, and is convinced that, when united and organized, we can create a more just society by building power in working- class and immigrant communities. CASA members play an important role in deciding what campaigns CASA works on and how CASA serves the community.

~~22.~~23.  CASA provides comprehensive services to its members, including a public benefits outreach and enrollment program that assists community members with understanding and enrolling in various government aid and health insurance programs. CASA also counsels members who are seeking to become U.S. citizens, including through citizenship education, mentoring and interview preparation, application assistance, and post-naturalization support. And CASA provides free legal consultation to its members regarding, among other topics, immigration matters.

10

23.24.  CASA members have the opportunity to obtain a CASA ID. This is a physical, picture identification card that contains basic information about the member. For many members, this card may be the only type of picture identification they have, other than documents from their home country. In certain jurisdictions, CASA IDs are recognized for the purposes of engaging with certain government agencies, including the police.

24.25.  Although CASA does not issue formal membership directly to individuals under 15 years of age, CASA routinely provides services to youth and their families.

25.26.  CASA's membership includes many individuals who are pregnant, who gave birth after February 19, 2025, or who are planning to give birthhave children, and whose U.S.-born children would be denied U.S. Citizenshipcitizenship under the Executive Order. The following are illustrative examples of such CASA members, who are identified in CASA's declaration and in this complaint using pseudonyms.

26.27.  **Marta** is a CASA member who lives in Maryland and is currently threeseveral months pregnant. Both Marta and the father of her unborn child are undocumented. Marta came to the United States from Guatemala seeking a better future and opportunity. When she found out that she was pregnant, she envisioned the life that her unborn child would have, free from the hardships she experienced in Guatemala. Marta deeply understands how important being a citizen of the United StateStates is, and although she is not currently able to adjust her status in this country, she took solace fromin the fact that her child would be born a U.S. citizen. She wants her child to be born happy and healthy, and with the opportunity to access a quality education, and she believes that the best chance for her child's future is if her child is considered a U.S. citizen upon birth.

27.28.  **Adelina** is a CASA member living in Maryland who has been in the United States for seven years ~~and is currently six months pregnant.~~, and who gave birth to a child after February 19, 2025.[3] Both Adelina and her partner are currently undocumented. Adelina has one other child, who was born in the United States and is a U.S. citizen. She wants her ~~unborn~~newborn child to have the same rights and opportunities that she has seen her ~~five-year-old~~older child enjoy in this country. It pains her to think that one of her children will have more benefits than the other, even though they were both born here. She is concerned that if her ~~unborn~~newborn child is not considered a ~~United States~~U.S. citizen, they will experience significant hardship and not have the same ~~opportunity~~opportunities as their sibling.

28.29.  **Rita** is a CASA member who lives in Maryland and has been in the United States for five years. ~~~~Both Rita and her partner are currently undocumented. Rita ~~is seven months pregnant with~~ gave birth to her first child ~~and she thanks God that her child will be born here.~~in the United States after February 19, 2025. If her child ~~were~~had been born in Rita's home country of Guatemala, ~~they~~the child would not have access to a good education, adequate healthcare, or other basic services. It would be a struggle just to survive, without any realistic prospect of a brighter future. In light of the Executive Order, Rita fears that her ~~first~~ child will face more hardship, unable to access their full rights as a U.S. citizen. ~~~~Rita herself was deeply impacted by living through the Coronavirus pandemic without immigration status, and she doesn't want her child to go through the pain and struggles that she has endured. ~~~~It is important to her that her child is fully recognized as a citizen of the ~~U.S.~~United States so they can receive the benefits they deserve.

---

[3] Pursuant to Fed. R. Civ. P. 5.2(a)(2), court filings should list only the "year of the [minor]'s birth."

29.30.  **Georgina** is a CASA member currently living in Maryland and originally from El Salvador. She is twoseveral months pregnant. Georgina has lived in the United States for six years, but neither she nor the father of her unborn child have lawful immigration status. She is a single mother, with very limited financial resources, and she is fearful that if her unborn child isn'tis not granted the benefits of U.S. citizenship, she won'twill not be able to support the baby. Georgina fears that her child will not have access to good food and quality education in the same way her two other children born in the United States will. Georgina is also afraid that her child will be subject to discrimination, because she has seen how noncitizens are treated poorly in this country.

30.    Andrea is a CASA member originally from Mexico, who lives in Georgia and is currently pregnant, expecting to give birth in late mid March. Andrea wants her future child to enjoy the full dignity of citizenship in the United States and fears that they will be denied educational opportunities and suffer from a lack of opportunity if they are denied citizenship. Andrea dreams that her children will lead a better life in the United States, a country she has long viewed as a land of opportunity. Andrea is currently in removal proceedings and neither she nor the father of her child have lawful immigration status. As an immigrant, Andrea is looking for a better life for her children, and came here because the United States is a country of opportunity. She is thankful for this country for giving her opportunities that she never would have had in Mexico, and only asks that her children are given the opportunities that they are entitled to by the constitution.

31.    **Plaintiff Asylum Seeker Advocacy Project ("ASAP")** is a 501(c)(3) nonprofit organization headquartered and incorporated in New York, New York. ASAP is the largest national voluntary membership organization of asylum seekers in the United States, with over

13

680700,000 members from more than 175 countries who reside in all 50 U.S. states and several U.S. territories.

32.    ~~ASAP is a national voluntary membership-based 501(c)(3) nonprofit organization incorporated in New York.~~ ASAP's mission is to help its members—individuals seeking asylum—~~to~~ build a more welcoming United States. ASAP provides members with community and legal support and advocates for nationwide systemic reform based on the priorities identified by its membership.

33.    Asylum seekers apply to join ASAP by filling out a voluntary online membership form. ASAP welcomes new members who are asylum seekers age 14 or over who believe in ASAP's mission.

34.    ASAP issues each member a digital membership card and member ID that they can use to identify themselves to ASAP and access the full range of member benefits.

35.    Although ASAP does not issue separate membership cards to anyone under the age of 14, the benefits of ASAP membership also extend to the children of ASAP members as derivative of their parents' membership.

36.    ASAP's members have fled persecution to seek safe haven in the United States. Most members have applied for asylum in accordance with federal law. Federal law provides that immigrants with a pending asylum application are not subject to removal while their claims are pending. Many ASAP members have access to a Social Security ~~number~~Number and are authorized to work~~, for example,~~ because they are waiting for their asylum application to be processed, have already won asylum, have Temporary Protected Status~~.~~ (TPS), have a pending green card application, or have other pending immigration applications.

37.     Many of ASAP's members have children who were born in the United States, and many plan to have children while they are living in the United States. Hundreds or even thousands of ASAP members will give birth to children in the United States over the coming weeks and months, and the Executive Order threatens the citizenship status of these U.S.-born children. The following are a few illustrative examples of members who will be harmed by the Executive Order. ASAP's members are identified using pseudonyms (or using only part of their full names).

38.     **Dina** is an ASAP member living in Washington State. She ~~is pregnant and due in July of 2025.~~gave birth to her baby after February 19, 2025. She and her partner are both from Kenya, and they are seeking asylum in the United States. ~~Diana~~Dina and her partner have been living in the United States since 2018. ~~Diana~~Dina came to the United States on a student visa, then applied for asylum affirmatively with USCIS. She and her partner have been working legally in the United States for more than ~~5~~five years. ~~Diana~~Dina has a degree in cybersecurity and works as an IT manager. Her partner works for the county government as an IT Specialist. She and her partner are worried that their child will not ~~be able to receive~~have U.S. citizenship~~.~~ because they were born after February 19, 2025. Being an immigrant in the United States has been very stressful for ~~Diana~~Dina and her partner, and they do not want their ~~son~~child to go through the same struggles they have had to go through.

~~39.     **Niurka** is an ASAP member living in Florida. She is pregnant and due in March of 2025. Niurka and her partner are both from Cuba, and they are currently seeking asylum in the United States. They crossed the Mexico-U.S. border, and were placed in deportation proceedings before the U.S. immigration courts. Niurka and her partner have a pending asylum application and a pending lawful permanent residency application under the Cuban Adjustment Act. Niurka~~

15

was a medical doctor in Cuba, but she is not working at this time. Her partner studied food science and was a biopharmacist in Cuba. He is now a food safety and quality assurance manager in the food production industry. She and her partner are very worried their child will not receive U.S. citizenship when he is born. They want their son to achieve success in the United States and worry about how not receiving citizenship at birth will impact his future. Niurka and her partner have no intention of ever going back to Cuba because of the dictatorship, would never want their child to be a Cuban citizen, and do not want their child to ever have to set foot in Cuba. If he is denied U.S. citizenship, they are worried that their son would be in a state of limbo and would not have citizenship from any country.

40.39.  **Nivida** is an ASAP member living in Louisiana. She is pregnant and due in April of 2025., who gave birth to a child after February 19, 2025. Nivida is from Honduras and sought asylum in the United States in 2020. She had filed her asylum application with the U.S. immigration courts. However,, but her case was recently dismissed. Nivida's partner is from Mexico, and he has an application pending for a U-visa. Nivida and her partner believe it is very important that their child becomesis a U.S. citizen atfrom birth. If their child does not have is denied U.S. citizenship at birth, Nivida and her partner are afraid of himthat their child will end up having to live in either Honduras or Mexico. That is a terrifying possibility, because they fear that their child will be subjected to violence and persecution in both countries. Nivida and her partner worry about their son'schild's future if he isthey are not a birthright citizen of the United States, and how it could change histheir life trajectory, histheir development, and the educational opportunities afforded to himthem. Nivida and her partner's daughterpartner have an older child who was born in the United States and has U.S. citizenship from birth already, which also means,

16

and they are concerned that their ~~son would~~newborn could have a different status than ~~his sister~~their other child, despite both of them being born in the United States.

~~41.~~40.  **Lesly** is an ASAP member living in New Jersey. She is pregnant and due in July of 2025. She crossed at the Mexico-U.S. border using the CBP One app~~.~~ and subsequently applied for asylum in the U.S. immigration courts. Her next hearing is not until 2028. Lesly has worked as a cleaner in the U.S. and has a work permit. Neither Lesly nor her partner are U.S. citizens or lawful permanent residents. Lesly and her partner want to apply for their child's U.S. passport as soon as possible, but they are worried their child will not receive U.S. citizenship. They are concerned that without birthright citizenship, their child will not have as many opportunities—either educational or professional. Lesly is very stressed because she is not sure if she is going to have to start a U.S. immigration process for her child who will be born in the United States. Lesly is worried because an immigration attorney could cost a lot of money~~,~~ and she does not know if she would have to hire an immigration attorney or pay application fees.

~~42.     **Nohelimar** is an ASAP member living in California. She is pregnant and due in March of 2025. She and her partner came to the United States seeking safe haven. Nohelimar's partner has applied for asylum, but she has not been able to yet. Nohelimar studied criminalistics abroad, but she is not working because she has not yet received her work permit. Nohelimar and her partner are worried that their child will not be able to receive U.S. citizenship. Nohelimar believes that if her son becomes a U.S. citizen, he will have a better future. If he is denied U.S. citizenship, she is confused and scared about what the process would be for her to get her son citizenship from any other country, and she would be worried about her son's future in the United States.~~

17

43.    **Adriana** is an ASAP member living in New York. She is pregnant and due in March of 2025. Adriana and her partner are both currently seeking asylum in the United States. They came to the United States as tourists, and subsequently applied for asylum with USCIS. Adriana has previously worked as an administrative and finance assistant abroad, but she is not currently working because she had a difficult pregnancy. Adriana's partner works as a driver for a company that handles transportation for senior citizens and children. Adriana and her partner are worried that their daughter will face discrimination in the United States if she is not made a U.S. citizen at birth. Adriana is using a pseudonym. She brings this lawsuit on behalf of herself and her future child.

44.41.  CASA and ASAP bring this suit to vindicate the interests of their members and the U.S.-born children their members have had or will have over the upcoming weeks, months, and years.

45.    Plaintiff **Maribel** is a CASA member who has lived in the U.S. for 18 years and resides in Prince George's County, Maryland. She is currently pregnant, expecting to give birth in July of 2025.**Plaintiff and Putative Class Representative Juana** brings this suit on behalf of herself, her future child, and all others similarly situated. Juana is a CASA member who resides in Montgomery County, Maryland. She moved to She lives with her husband and two young U.S. citizen daughters, who are 14 and 10 years old. She is an immigrant from El Salvador who was born in Guatemala. She is undocumented despite having lived in the U.S. for nearly half her life. Her husband is also undocumented. She fears her unborn child will not have the same rights to citizenship as the future child's older sisters, and could even be subject to deportation, separating the family. She is afraid that her child won't have access to healthcare because they won't be eligible for federal benefits. She feels it is deeply wrong to subject an innocent newborn

18

to such cruelty. Maribel is using a pseudonym. She brings this lawsuit on behalf of herself and her future child.

46.42.  Plaintiff **Juana** is a CASA member who resides in Montgomery County, Maryland. She is a native of Colombia. She moved the United States after fleeing from Colombia and has a pending asylum claim. Her 12-year-old daughter is also in the United States and is a derivative on her petition for asylum. SheJuana is currently two months pregnant. She is worried that her child will be born without a country as a result of the Executive Order, since she is afraid to return to Colombia. She wants her unborn child to be able to grow up without fear and with a sense of belonging in the United States. The thought that her unborn child could be denied U.S. citizenship and deported to Colombia without her is terrifying. It is important to her that her unborn child be a U.S. citizen so they can have a better quality of life and fully engage with all that the United States has to offer. She wants her child to have educational opportunities and to be a good person who serves their country and community. She does not think it makes sense for her childchildren to be denied the benefits of citizenship they deserve once they are born in the U.S. Juana is using a pseudonym. She brings this lawsuit on behalf of herself and her future childUnited States.

47.43.  PlaintiffPlaintiff and Putative Class Representative Trinidad Garcia brings this suit on behalf of herself, her future child, and all others similarly situated. Trinidad Garcia is an ASAP member living in North Carolina. She is pregnant and due in August of 2025. She and her partner are both from Venezuela, and they have been living in the United States since 2017. She and her partner came to the United States on a tourist visavisas. They have a pending affirmative asylum application with USCIS, and have not been given an appointment for an interview in their case yet. SheTrinidad Garcia and her partner both have work permits, and they

19

have been working in their local community. She graduated with a degree in business administration in Venezuela, and she worked in human resources before coming to the United States. Upon arriving in the United States, Trinidad Garcia began to clean homes. She has since started her own home cleaning business. Her partner was an environmental engineer in Venezuela, but he now works in the U.S. United States as a technician to restore stone, tile, and grout in home remodels. Trinidad Garcia and her partner are worried that there is no way for them to approach the Venezuelan government regarding their child's citizenship because there are no Venezuelan consular services in the United States. They believe it would be impossible to get their child Venezuelan citizenship. Because of that, both Trinidad Garcia and her partner want to get their child a U.S. passport and proof of U.S. citizenship as soon as possible, but they are worried their child will not be able to receive U.S. citizenship. If their U.S.-born child is not able to get U.S. citizenship at birth, Trinidad Garcia is very stressed that their child will not be a citizen of any country or be able to get important identity documents. She is worried that they will have to apply for asylum for their child, is confused about what the process would like, and is worried that they will have to hire someone to help them pay the government for application fees, which could cost them a significant amount of money. Trinidad Garcia is using a pseudonym. She brings this lawsuit on behalf of herself and her future child.

48.44.  **Plaintiff and Putative Class Representative Monica** is an ASAP member living in brings this suit on behalf of herself, her future child, and all others similarly situated. Monica lives in South Carolina. She, and is pregnant and due in August of 2025. She and her partnerhusband are both originally from Venezuela, and they both currently have Temporary Protected Status (TPS) as well as a pending affirmative asylum applicationapplications with USCIS. They have been in the United States since 2019. MariaMonica is a trained medical

doctor who is seeking to validate her medical degree in the United States. ~~She~~Because there is no Venezuelan Consulate in the United States, and she cannot travel outside the United States with a pending asylum claim, she is worried that it would be next to impossible to get her child Venezuelan citizenship ~~even if she tried. Because of that, both Maria and her partner want to get their child a U.S. passport and proof of~~. If her child is not given U.S. citizenship ~~as soon as possible, but they are worried their child will not be able to receive U.S. citizenship. If that happens,~~ Monica fears her child will be stateless, without rights in this country or any other. Although Monica and her husband are excited to welcome their baby into the world, they are ~~very concerned that~~ also filled with uncertainty and fear over what status their child will ~~not be a citizen of any country. Monica is using a pseudonym. She brings this lawsuit on behalf of herself and her future child.~~have. The anxiety the Executive Order has caused Monica has made her pregnancy more difficult than it otherwise would be. Monica and her husband want more children, but the Executive Order makes them afraid of bringing more life into this world.

45.    **Plaintiff and Putative Class Representative Liza** ~~is married to an ASAP member, Igor, and lives in Texas. Liza is expecting a~~ brings this suit on behalf of herself, her child ~~in May of~~ L.B., and all others similarly situated. Liza gave birth to L.B. in Texas after February 19, 2025. Liza and ~~Igor~~her husband are from Russia ~~. Igor applied for asylum with the U.S. immigration courts.~~ but are unable to return because they are afraid that they will be persecuted. Liza came to the United States on a student visa and is pursuing her master's degree. Her husband has a pending asylum application. Liza and her husband are very anxious about L.B.'s future if L.B. is denied U.S. citizenship. They are unable to safely apply for Russian citizenship for L.B., and they are worried that L.B. could be stateless if denied U.S. citizenship. They are concerned that L.B. is considered a "nobody" under the Executive Order, and given

Formatted: Font: Bold

21

even fewer rights in the United States than Liza and her husband enjoy. Liza and her husband also worry that L.B. could be denied access to health care and educational opportunities available to U.S. citizens.

46.    **Plaintiff and Putative Class Representative Ashley** brings this suit on behalf of herself, her child K.K., and all others similarly situated. Ashley has lived in the United States for more than 10 years, and both she and her husband have valid H1-B visas. Their child, K.K., was born in Texas after February 19, 2025. Ashley has applied for lawful permanent residence, and was approved for the first step. She is therefore able to renew her H-1B visa indefinitely while her application for a green card is pending. Ashley wants K.K. to be a U.S. citizen so that K.K. will be protected by the full rights and freedoms granted under the U.S. Constitution and can fully participate in American life. If K.K. is denied U.S. citizenship, Ashley worries that K.K. will be without any legal status and could be subject to removal from the United States, even though both Ashley and her partner have lawful status in this country.

47.    **Plaintiff and Putative Class Representative Andrea** brings this suit on behalf of herself, her child E.T.P., and all others similarly situated. Andrea gave birth to E.T.P. in Georgia after February 19, 2025. At the time of E.T.P.'s birth, both of E.T.P.'s parents were undocumented and Andrea had a case in immigration court where she was seeking asylum. Andrea wants her child to enjoy the full dignity of citizenship in the United States and fears that they will be denied educational opportunities and suffer from a lack of opportunity if they are denied citizenship. Andrea dreams that her child will lead a better life in the United States, a country she has long viewed as a land of opportunity. She is thankful to this country for giving her opportunities that she never would have had in her home country, and only asks that her children be given the opportunities to which they are entitled by the Constitution. Andrea shared

22

her story in the original complaint as a member of CASA, and now joins this lawsuit as a Plaintiff on behalf of herself and as a next friend to her baby E.T.P., and all others similarly situated.

49.48.  **Plaintiff and Putative Class Representative Niurka** brings this suit on behalf of herself, her child L.G., and all others similarly situated. Niurka and her husband are both from Cuba, and they are currently seeking asylum in the United States. They crossed the Mexico-U.S. border, and were placed in deportation proceedings before the U.S. immigration courts. receiving her master's degree. Liza and IgorNiurka and her husband each have a pending asylum application and a pending lawful permanent residency application under the Cuban Adjustment Act. Their child, L.G., was born in Florida after February 19, 2025. Niurka and her husband have no intention of ever going back to Cuba because of the dictatorship, would never want to apply forther child to be a Cuban citizen, and do not want their child's U.S. passport as soon as possible, but they are child to ever have to set foot in Cuba. Niurka and her husband are very worried their childL.G. will not receive U.S. citizenship. Neither Liza nor Igor feel they can return to Russia without being persecuted, and they therefore do not feel they can apply for Russian citizenship for their child. Because of that, Liza and Igor are worried their child will be stateless. She brings this lawsuit on behalf of herself and her future child.the full benefits of U.S. citizenship. If L.G. is denied U.S. citizenship, Niurka and her husband are worried that their child would be in a state of limbo, as they would not have citizenship from any country. Niurka and her husband fear that if L.G. were threatened with deportation, the entire family would be uprooted. Niurka and her husband may wish to have additional children and do not want their future children to be excluded from citizenship in the country where they are born and raised.

23

49.     **Plaintiff Maribel** is a CASA member who has lived in the United States for 18 years and resides in Prince George's County, Maryland. She is currently pregnant and expects to give birth in July of 2025. She lives with her husband and two young U.S. citizen daughters, who are 14 and 10 years old. She is an immigrant from El Salvador and was born in Guatemala. She is undocumented despite having lived in the United States for nearly half her life. Her husband has an application for a temporary, nonimmigrant status pending with the U.S. government, but he will not be a U.S. citizen or lawful permanent resident at the time their baby is born. She fears her unborn child will not have the same rights to citizenship as the child's older sisters and could even be subject to deportation, separating the family. She is also afraid that her child will not have access to healthcare because they will not be eligible for federal benefits. She feels it is deeply wrong to subject an innocent newborn to such cruelty.

50.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

51.     Defendant Secretary of the U.S. Department of State ("Secretary of State") is the official exercising the power of the head of the federal agency responsible for, among other things, issuing passports to U.S. citizens. Defendant Secretary of State is sued in their official capacity. The Department of State is an executive department of the United States Government, headquartered in Washington, D.C.

52.     Defendant Attorney General of the United States ("Attorney General") is the head of the United StatesU.S. Department of Justice and is the chief law enforcement officer of the federal government. Among other things, Defendant Attorney General is responsible for adjudicating immigration cases. Defendant Attorney General is sued in their official capacity.

The Department of Justice is an executive department of the United States Government, headquartered in Washington, D.C.

53.     Defendant Secretary of the U.S. Department of Homeland Security ("Secretary of DHS") is the official exercising the power of the head of the federal agency responsible for, among other things, naturalization of potential U.S. citizens and enforcement of immigration laws against those in the country without authorization. Defendant Secretary of DHS is sued in their official capacity. DHS is an executive department of the United States Government, headquartered in Washington, D.C.

54.     Defendant Director of the U.S. Citizenship and Immigration Services ("Director of USCIS") is the official exercising the power of the head of the federal sub-agency within DHS responsible for, among other things, granting applications for naturalization. Defendant Director of USCIS is sued in their official capacity. USCIS is a sub-agency of DHS, headquartered in Camp Springs, MD.

55.     Defendant Commissioner of the Social Security Administration ("SSA") is the official exercising the power of the head of the federal agency responsible for, among other things, issuing ~~social security numbers.~~Social Security Numbers. Defendant Commissioner of SSA is sued in their official capacity. SSA is an agency of the United States Government, headquartered in Baltimore, MD.

56.     Defendant United States of America is the sovereign whose power is delineated by the United States Constitution. Although in violation of federal law, Defendants' actions as described in this complaint were taken under color of the United States' authority.

**FACTS**

**Legal Background**

57.     "Citizenship is a most precious right." *Kennedy v. Mendoza-Martinez*, 372 U.S.

at144, 159. (1963). It is a "cherished status" that "carries with it the privilege of full participation

in the affairs of our society." *Knauer v. United States*, 328 U.S. 654, 658 (1946).

58.     Under the ancient common-law principle of *jus soli* (or "right of the soil"), "every

child born in England of alien parents was a natural-born subject, unless the child of an

ambassador or other diplomatic agent of a foreign State, or of an alien enemy in hostile

occupation of the place where the child was born." *United States v. Wong Kim Ark*, 169 U.S.

at649, 658. (1898).

59.     After the Constitution's adoption, the United States continued to follow "the

established rule of citizenship by birth within the United States." *Id.* at 660. This was so

regardless of whether a child was born of United States citizens or "of foreign parents." *Id.* at

674. The Supreme Court's decision in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393 (1857),

holding that African-Americans were ineligible to become citizens of the United States,

represented a notable and ultimately much-reviled departure from the principle of *jus soli*.

60.     Following the Civil War, Congress sought to repudiate forever the logic of *Dred

Scott* and guarantee that the citizenship of people born in the United States would never be

dependent on political whims. Recognizing that "an ordinary act of legislation" would not be

sufficient to ensure that "so important a declaration of rights" be preserved indefinitely, Congress

wrote birthright citizenship into the Fourteenth Amendment. *Wong Kim Ark*, 169 U.S. at 675; *see

also* James C. Ho, *Defining "American,"* 9 Green Bag 2d 359, 360, 368 (2006)

26

(~~noting~~describing attempts to undermine birthright citizenship ~~and observing~~as "*Dred Scott II*

could be coming soon to a federal court near you~~"~~").").

61.     Section 1 of the Fourteenth Amendment opens with the guarantee that "[a]ll

persons born . . . in the United States, and subject to the jurisdiction thereof," are U.S. citizens at

birth. U.S. Const. amend. XIV, § 1 ("Citizenship Clause"). This Amendment reaffirmed "the

fundamental rule of citizenship by birth within the dominion of the United States,

notwithstanding alienage of parents," *Wong Kim Ark*, 169 U.S. at 688, doing so in "the most

explicit and comprehensive terms," *id.* at 675.

62.     By enshrining this protection in the Constitution with such clear language, the

framers "put citizenship beyond the power of any governmental unit to destroy." *Afroyim v.

Rusk*, 387 U.S. 253, 263 (1967). The Fourteenth Amendment recognizes the sanctity of

citizenship and acknowledges that "[t]he very nature of our free government makes it completely

incongruous to have a rule of law under which a group of citizens temporarily in office can

deprive another group of citizens of their citizenship." *Id.* at 268. In light of the Fourteenth

Amendment, the government has "no authority . . . to restrict the effect of birth, declared by the

constitution to constitute a sufficient and complete right to citizenship." *Wong Kim Ark*, 169 U.S.

at 703. Never again would the government be permitted to discriminate against disfavored

classes in deciding which children born in the United States are entitled to citizenship. Absent a

constitutional amendment, *Dred Scott* would never again be the law.

63.     The only condition placed on this right of citizenship is that the person be "subject

to the jurisdiction" of the United States. At the time the Fourteenth Amendment was adopted,

"subject to the jurisdiction" was a commonly used phrase with "a clear meaning and scope."

Michael D. Ramsey, *Originalism and Birthright Citizenship*, 109 Geo. L.J. 405, 437-40 (2020)

27

(collecting sources). And nearly everyone present in a sovereign's territory, including noncitizens, is subject to that sovereign's power of "governing or legislating," entitled to that sovereign's protection, and thus "subject to the jurisdiction" of that sovereign. *Id.*; *accord, e.g.*, 1 Blackstone's Commentaries on the Laws of England 357 (1st ed. 1765) ("Natural allegiance is such as is due from all men born within the king's dominions immediately upon their birth. For, immediately upon their birth, they are under the king's protection; at a time too, when (during their infancy) they are incapable of protecting themselves.").

64.    For centuries before the ~~14th~~Fourteenth Amendment was enacted, "beginning before the settlement of this country, and continuing to the present day, aliens, while residing in the dominions possessed by the crown of England, were within the allegiance, the obedience, the faith or loyalty, the protection, the power, and the jurisdiction of the English sovereign; and therefore every child born in England of alien parents was a natural-born subject." *Wong Kim Ark*, 169 U.S. at 658 (collecting sources). The Citizenship Clause preserved this ancient understanding as a constitutional promise.

65.    Consistent with this history and language, the U.S. Supreme Court held in *Wong Kim Ark* that all persons born within the territorial United States are citizens of this Nation from the moment of birth—regardless of their parents' citizenship status—unless they fit into a historically recognized exception: (1) "foreign sovereigns or their ministers," (2) noncitizens serving on a "foreign public ship[]," (3) "enemies within and during a hostile occupation of part of our territory," or (4) "children of members of the Indian tribes owing direct allegiance to their several tribes." ~~*Wong Kim Ark*, 169 U.S.~~*Id.* at 693. These children, and these children alone, were not "subject to the jurisdiction" of the United States despite being born within its territory.

28

66.     The Court specifically rejected the view that children must be subject to the jurisdiction *only* of the United States in order to enjoy territorial birthright citizenship. *See id.* at 693 ("Every citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States."); *id.* at 694 (denying that the Fourteenth Amendment "excludes from citizenship the children, born in the United States, of citizens or subjects of other countries").

67.     In addition to enshrining the principle of birthright citizenship, Section 1 of the Fourteenth Amendment also prohibits each state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has clarified that any person deemed to be "within [the] jurisdiction" of a state for purposes of the Equal Protection Clause is necessarily "subject to the jurisdiction" of the United States for purposes of the Citizenship Clause. *See Wong Kim Ark*, 169 U.S. at 687 ("It is impossible . . . to hold that persons 'within the jurisdiction' of one of the States of the Union are not 'subject to the jurisdiction of the United States.'").

68.     In *Plyler v. Doe*, 457 U.S. 202 (1982), the Court held that undocumented ~~aliens~~persons are "within [the] jurisdiction" of any state in which they are physically present. "That a person's initial entry into a State, or into the United States, was unlawful . . . cannot negate the simple fact of his presence within the State's territorial perimeter." *Id.* at 215. "Given such presence," the Court explained, "he is subject to the full range of obligations imposed by the State's civil and criminal laws." *Id.* In short, "no plausible distinction with respect to Fourteenth Amendment 'jurisdiction' can be drawn between resident aliens whose entry into the United States was lawful, and resident aliens whose entry was unlawful." *Id.* at 211 n.10; *see also The Japanese Immigrant Case*, 189 U.S. 86, 101 (1903) (explaining that an alien who

allegedly entered the United States unlawfully "bec[a]me subject in all respects to its jurisdiction"); *Yick Wo v. Hopkins*, 118 U.S. 356, 369 (1886) (concluding that the Equal Protection Clause protects "all persons within the territorial jurisdiction" of a state).

69.    Regardless of the immigration status of their parents, children born in the United States are undoubtedly "subject to the jurisdiction of the United States" at the moment of their birth. Both federal and state governments today extend to children born in the United States—as well as their parents while physically present in the United States—the equal protection of the laws and assert regulatory authority over them. *E.g.*, 1 U.S.C. § 8 (clarifying that the use of the term "person" in "any Act of Congress, or of any ruling, regulatory, or interpretation of the various administrative bureaus and agencies of the United States" "shall include every infant member of the species homo sapiens who is born alive"); *see also* Executive Order 1395213,952, *Protecting Vulnerable Newborn and Infant Children*, 85 Fed. Reg. 62187 (Sept. 25, 2020) ("Every infant born alive, no matter the circumstances of his or her birth, has the same dignity and the same rights as every other individual and is entitled to the same protections under Federal law."); Md. Code Ann., Health-Gen. § 13-111 (providing for screening of newborns); Md. Code Ann., Fam. Law § 9.5-201 (providing that courts have authority to determine custody of children living in the state); Md. Code Ann., Fam. Law § 5-525 (providing for care of children when parents are unable to do so).

70.    Many other Supreme Court decisions have reiterated the understanding of the Fourteenth Amendment that persons born in the United States of noncitizen parents nonetheless attain citizenship at birth. *See, e.g.*, *Weedin v. Chin Bow*, 274 U.S. 657, 670 (1927) (explaining that "one born in the United States" becomes "a citizen of the United States by virtue of the *jus soli* embodied in the [Fourteenth] Amendment"); *Hirabayashi v. United States*, 320 U.S. 81, 96

30

(1943) (noting tens of thousands of Americans of Japanese descent were "citizens because [they were] born in the United States"); *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 73 (1957) (noting that a child born in the United States was "of course, an American citizen by birth," despite his parents' "illegal presence"); *INS v. Rios-Pineda*, 471 U.S. 444, 446 (1985) (noting that a "child, who, born in the United States, was a citizen of this country," even though the parents had "enter[ed] . . . without inspection").

71.     The same is true of Fourth Circuit decisions. *See United States v. Carvalho*, 742 F.2d 146, 148 (4th Cir. 1984) (describing a child as "a United States citizen by virtue of her birth in the United States"); *Herrera v. Finan*, 709 F. App'x 741, 743 (4th Cir. 2017) (explaining that the plaintiff "was born in the United States and, thus, is a United States citizen").

72.     A federal statute, 8 U.S.C. § 1401(a), safeguards birthright citizenship in language closely resembling that of Section 1 of the Fourteenth Amendment. Section 1401(a) provides that "a person born in the United States, and subject to the jurisdiction thereof," is a "citizen[] of the United States at birth." ~~This longstanding statutory provision traces its origins to~~ Congress enacted that language as Section 201 of the ~~Civil Rights~~Nationality Act of ~~1866~~1940, Pub. L. No. 76-853, 54 Stat. 1137, 1138, and ~~was~~then re-enacted it as Section 301~~(a)~~ of the Immigration and Nationality Act of 1952 ~~(the (~~"INA~~), against the backdrop of"~~), Pub. L. 82-414, 66 Stat. 163, 235. Congress chose this language to codify *Wong Kim Ark* and the consensus interpretation it engendered. *See, e.g.,* ~~S. Rep. 1137, 82d Cong., 2d Sess. 39 (1952) ("All persons born~~A statute must be "interpret[ed] . . . in ~~the United States, including Alaska, Hawaii, Puerto Rico, the Virgin Islands of the United States, and Guam, and subject to the jurisdiction of the United States, are citizens at birth. The only exceptions are those persons born in the United States to alien diplomats."). Section 1401(a) therefore incorporates the~~accord with the ordinary public meaning

of ~~Section 1's Citizenship Clause expressed in~~ *Wong Kim Ark* ~~and subsequent decisions.~~its terms at the time of its enactment." *Bostock v. Clayton County*, 590 U.S. 644, 654 (2020). When "Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George v. McDonough*, 596 U.S. 740, 746 (2022) (internal quotation marks and citation omitted).

73.     In Section 1401(a), Congress intended to codify the "old soil" principle of *jus soli*. A report that President Franklin D. Roosevelt sent to Congress urging passage of Section 1401 noted that this provision "is in effect a statement of the common-law rule, which has been in effect in the United States from the beginning of its existence as a sovereign state." Staff of H. Comm. on Immigr. and Naturalization, Nationality Laws of the United States: Message from the President of the United States, 76th Cong. 418 (Comm. Print 1939). Citing both the Supreme Court's decision in *Wong Kim Ark* and the New York Chancery Court's decision in *Lynch v. Clarke*, 1 Sand. Ch. 583 (N.Y. Ch. 1844), the report explained that birthright citizenship under Section 1401(a) extends to "a child born in the United States of parents residing therein temporarily" because "it is the fact of birth within the territory and jurisdiction, not the domicile of the parents, which determines the nationality of the child." *Id.*

74.     Moreover, other statutory provisions provide that a child born in Alaska or Hawaii "is a citizen of the United States at birth," without qualification. 8 U.S.C. § 1404 (Alaska); 8 U.S.C. § 1405 (Hawaii).

~~73.~~75.  The assumption of birthright citizenship permeates federal regulatory law as well, ~~treating~~with proof of birth in the United States treated as sufficient to establish United States citizenship. For example, the Social Security Administration assigns ~~social security numbers~~Social Security Numbers upon proof of U.S. citizenship, which can be established "by

submitting a birth certificate or other evidence . . . that shows a U.S. place of birth." 20 C.F.R.

§ 422.107(d). The Department of State issues passports to U.S. ~~Citizens~~citizens, a status that can

be ~~proved~~proven with evidence that the applicant was born in the United States. 22 C.F.R. §

51.42. An employee can establish their authorization to work in the United States by providing

"An"[a]n original or certified copy of a birth certificate issued by a State, county, municipal

authority or outlying possession of the United States bearing an official seal." 8 C.F.R.

§ 274a.2(c)(3). Numerous other provisions throughout the Code of Federal Regulations similarly

provide that proof of birth in the United States is sufficient evidence to establish United States

citizenship. *E.g.*, 8 C.F.R. § 322.3(b)~~(f)(1)~~(iv) (providing that ~~an United States~~a U.S. citizen

parent seeking to establish citizenship for ~~a~~their child not born in the United States can establish

the parent's citizenship by providing the parent's birth certificate~~.);~~); 20 C.F.R. § 416.1610(a)

("You can prove that you are a citizen or a national of the United States by giving us (1) A

certified copy of your birth certificate which shows that you were born in the United States

. . ."); 28 C.F.R. § 105.11(a)(2) (providing that a "birth certificate" that "establish[es] that the

person was born in the United States" is "proof of ~~Untied~~United States citizenship or nationality"

for purposes of aviation security screening); 33 C.F.R. § 125.23(a) (providing that a birth

certificate is most desirable proof of U.S. citizenship for purposes of obtaining a Coast Guard

Port Security Card).

### The Executive Order

~~74.~~76.  On January 20, 2025, President Trump signed ~~an~~ Executive Order 14,160, entitled

"Protecting the Meaning and Value of American Citizenship."

~~75.~~77.  The Executive Order declares that "the privilege of United States citizenship does

not automatically extend to persons born in the United States" when the person's mother "was

unlawfully present in the United States" or when the mother's presence "was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa)," unless the child's father was a United States citizen or lawful permanent resident at the time of the person's birth. Order § 1.

76.78.  The Executive Order provides that, starting with children born 30 days afterfrom the date on which the Order was signed (i.e., starting with children born February 19, 2025), "no department or agency of the United States government shall issue documents recognizing United States citizenship, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship" to persons denied citizenship under the Executive Order. *Id.* § 2.

77.79.  The Executive Order further directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* § 3. And the Order directs the heads of all executive departments and agencies to "issue public guidance . . . regarding this order's implementation with respect to their operations and activities." *Id.* § 3.

**Effects of the Order**

78.80.  The Executive Order is having and will continue to have a devastating and chaotic impact on the named Plaintiffs, members of the putative class, and the country as a whole.

34

79.81.  To begin, the Executive Order calls into question the citizenship of countless babies born every day in the United States, including members of the putative class, thrusting their entire families into turmoil.

80.82.  As the Executive Order itself notes, "United States citizenship is a priceless and profound gift." Order*Id.* § 1. Loss of citizenship may represent "the total destruction of the individual's status in organized society," *Trop v. Dulles*, 356 U.S. 86, 102 (1958) (plurality opinion); *see also id.* at 124 (Frankfurter, J., dissenting) ("Loss of citizenship entails undoubtedly severe—and in particular situations even tragic—consequences.").

81.83.  The Supreme Court has observed that "nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men." *Schneiderman v. United States*, 320 U.S. 118, 122 (1943).

82.84.  The tangible benefits of United States citizenship are "priceless." *Id*. Denying birthright citizenship to the children of noncitizens and depriving them of their constitutionally guaranteed benefits of citizenship will have immediate and dire consequences for newborn children and their families.

83.85.  For example, natural-born citizens are "entitled as of birth to the full protection of the United States, to the absolute right to enter its borders, and to full participation in the political process." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 67 (2001). Citizens enjoy an unqualified constitutional right to enter, reside, and stay in the United States. *See, e.g., id.*; *Worthy v. United States*, 328 F.2d 386, 394 (5th Cir. 1964) ("[I]t is inherent in the concept of citizenship that the citizen, when absent from the country to which he owes allegiance, has a right to return, again to set foot on its soil."). Noncitizens do not share that right. *See Harisiades v. Shaughnessy*, 342

U.S. 580, 587 (1952) ("The Government's power to terminate its hospitality [to noncitizens] has been asserted and sustained by this Court since the question first arose.").

84.86. "[I]n clear words and in manifest intent," *Wong Kim Ark*, 169 U.S. at 693, the Fourteenth Amendment protects those born in the United States from discriminatory and differential treatment, providing everyone the same citizenship regardless of their race, color, or the immigration status or national origin of their parents. Yet the Executive Order defies this constitutional mandate, discriminating against countless children born in the United States based solely on their parents' immigration status. The Executive Order thus purports to impose second-class status on a class of children born in the United States, harming not only them but their entire families.

85.87. A newborn denied the guarantees of United StatesU.S. citizenship may have no right to stay in or re-enter their native land. Absent citizenship, children born to noncitizens, including the children of Individual Plaintiffs and of, Members, and members of the putative class, may be subject to deportation. These children may therefore be forced to leave the country of their birth to travel to a place where they have never been, where they may have no family or legal ties, and, in the worst cases, where they may face torture, persecution, and death.

86.88. By denying citizenship—and the accompanying right to remain in the United States—to newborn babies, the Executive Order threatens to tear families apart. Parents (such as those with a pending asylum application) may have a legal basis to reside in the United States, and a newborn's older siblings will often be United StatesU.S. citizens by birth. But under the Executive Order, the newbornmany newborns would not havebe denied that same status. This could lead to an unconscionable situation in which some members of a family will have a right to remain in the United States while a U.S.-born child will not. Parents could be separated from

36

their children, denied the ability to travel with their newborns, and forced to make life-changing

financial and logistical adjustments to protect their children from danger. Ultimately, parents

may be forced to make an impossible choice between returning to a country where they face

persecution and death, or remaining in the United States while their U.S.-born child is deported.

87.89.  If denied ~~United States~~U.S. citizenship, U.S.-born babies may lack citizenship in

*any* country, leaving them stateless, "a condition deplored in the international community of

democracies." *Trop*, 356 U.S. at 101 (plurality opinion). Without a homeland, a stateless

person's "very existence is at the sufferance of the country in which he happens to find himself."

*Id.* ~~at 101.~~

88.90.  The risk of statelessness is particularly high for children born to parents who are

seeking asylum. Many asylum seekers have been persecuted and tortured by the governments of

their home countries, and as such do not have access to or feel safe seeking services from a

consular office of their country of origin in the United States. Furthermore, it is common practice

for immigration attorneys to advise their clients that availing themselves of consular services

from their country of origin could harm their asylum case. As a result, many asylum seekers feel

they cannot request citizenship for their children from their country of origin. ~~This will have the~~

~~effect of,~~ rendering ~~the~~their children ~~of many asylum seekers~~ stateless, ~~meaning they would not~~

~~have citizenship from any country~~. Parents will then have to seek additional immigration

representation and support for their children to explore alternative protections. This will increase

financial costs, create major logistical burdens, and disrupt their plans to assimilate their families

into the United States.

89.91.  ~~Pregnant Individual Plaintiffs and other Members~~ Parents of recent or future U.S.-

born children are experiencing stress and anxiety knowing their children may not become U.S.

citizens by birth or be denied the rights, privileges, and benefits of U.S. Citizenship as a result of the Executive Order. Immigration insecurity leads mothers and pregnant women to experience significant stress and experience worse physical and mental health outcomes. Such mothers give birth to babies with lower birthweight and poorer health. Elizabeth U. Cascio, Paul Cornell, & Ethan G. Lewis, *The Intergenerational Effects of Permanent Legal Status*, NBER Working Paper No. 32635 (2024), https://www.nber.org/system/files/working_papers/w32635/w32635.pdf. The threat of deportation of loved ones also leads to worse mental health outcomes, for all members of the family. Amy L. Johnson et al., *Deportation threat predictsThreat Predicts* Latino US *citizensCitizens and noncitizens' psychological distressNoncitizens' Psychological Distress*, *2011 to 2018*, 121 PNAS e2306554121 (2024), https://www.pnas.org/doi/10.1073/pnas.2306554121.

90.92.   Beyond potential immigration consequences, the Executive Order will deny children born in the United States to noncitizen parents, including children born to Individual Plaintiffs and Members, other privileges and responsibilities of U.S. citizens. That denial will harm not only the children, but their entire families.

91.93.   Individual PlaintiffsParents and Membersfuture parents have spent time and energy planning for the birth of their children,, but those plans have been thrown into disarray by the Executive Order, which creates legal uncertainty about their children's immigration status.

Individual PlaintiffsParents and Membersfuture parents want their children to be able to pursue the American dream and participate in the full civic and political life of this Nation, but those hopes have been replaced with fear and doubt.

92.94.   Ending birthright citizenship would also disqualify children born in the United States to noncitizen parents, including children born to Individual Plaintiffs and Members, from

a host of federal, state, and local benefits provided to ensure that all citizens of this country can succeed. While noncitizens are often ineligible to obtain such benefits in their own right, *see* 8 U.S.C. § 1611(a), U.S. citizen children are generally eligible for such benefits and noncitizen parents can apply for them on behalf of a citizen child.

93.95.  For instance, the Supplemental Nutrition Assistance Program ("SNAP") provides critical nutrition support for low-income children who are citizens, even if their parents are noncitizens. *See* U.S. Dep't of Agric., *Supplemental Nutrition Assistance Program: Guidance on Non-Citizen Eligibility* 22 (2011), https://perma.cc/LY4H-KUWJ. The same is true of welfare programs like Temporary Assistance for Needy Families ("TANF"). *See* Dep't of Health & Hum. Servs., *Policy Guidance Regarding Inquiries Into Citizenship, Immigration Status, and Social Security Numbers in State Applications for Medicaid, State Children's Health Insurance Program (SCHIP), Temporary Assistance for Needy Families (TANF), and Food Stamp Benefits* 5 (2006), https://www.hhs.gov/sites/default/files/ocr/civilrights/resources/specialtopics/origin/triagencyq&as_pdf.pdf. Crucial healthcare programs like the Children's Health Insurance Program ("CHIP"), the Affordable Care Act ("ACA"), and Medicaid also provide coverage to citizen children of noncitizen parents. *See, e.g., id.* at 2-3 (parent citizenship "irrelevant" to child's eligibility for CHIP or Medicaid); 26 U.S.C. § 5000A(d)(3); 45 C.F.R. § 155.20 () (ACA limited to those "lawfully present")."); 45 C.F.R. § 155.20 (same). The Executive Order undermines the ability of Individual Plaintiffs and, Members, and putative class members to rely on these programs and others to support their families.

Formatted: Font: Not Italic

94.96.  As they grow up, children deprived of birthright citizenship will be unable to exercise their right to vote and otherwise participate fully in U.S. democracy by, for example,

donating to a political campaign or political party whose policies they support. *See* 8 U.S.C.

§ 611; 52 U.S.C. § 30121. And they will not have the opportunity to serve on a jury, removing

their voices from the representative community that makes important decisions in the courts.

95.97.  Children denied birthright citizenship may be denied the legal authority to work in

the United States or go to certain universities, hampering their productivity and ability to

contribute to this country's advances in science, technology, and industry. *See* Sam Fulwood III

& Marshall Fitz, Ctr. For Am. Progress, *Less than Citizens: Abolishing Birthright Citizenship*

*Would Create Aa Permanent Underclass in ourOur Nation* 7 (May 2011),

https://www.americanprogress.org/wp-content/uploads/sites/2/2012/12/55174537-Less-than-

Citizens.pdf. "Repealing birthright citizenship would severely reduce the ability of the children

of immigrants to thrive educationally, and would make the idea of college graduation, let alone

job retention in critical fields such as science or engineering, virtually impossible." *Id.; accord,*

*e.g.,* Zachary Liscow and& William G. Woolston, *Does Legal Status Matter for Educational*

*Choices? Evidence from Immigrant Teenagers*, 20 Am. L. & Econ. Rev. 318, 318 (2018),

(finding non-citizennoncitizen children are more than twice as likely to drop out of high school

as their U.S. citizen siblings); Kalena E. Cortes, *Achieving the DREAM: The Effect of IRCA on*

*Immigrant Youth Postsecondary Educational Access*, 103 Am. Econ. Rev. 428, 432 (2013)

(finding children with stable, long-term immigration status are also more likely to attend

college). Parents of these children had every expectation and hope that their child willwould

have full access to the American dream, and these parents face psychological harm knowing that

their childchildren may be deprived of the opportunities that other U.S.-born children have.

96.98.  Indeed, "Americans whose parents were undocumented immigrants or in

temporary immigration status have joined the U.S. military, founded prosperous businesses,

served the United States as diplomats, and served in high political office. . . . [O]ne can fairly say that the birthright citizenship rule has been one of the factors in the rise of the United States to superpower status, as birthright citizens have been a social and economic asset." Margaret D. Stock, *Is Birthright Citizenship Good for America?*, 32 Cato J. 139, 149 (2012), https://www.cato.org/sites/cato.org/files/serials/files/cato-journal/2012/1/cj32n1-10.pdf.

97.99.  In light of the importance of citizenship to a person's status in both the national and international community, and the many benefits that flow from that status, it is vital that a person's citizenship be clear and unmistakable. Yet the Executive Order purports to cloud the certainty that the Constitution provides, inflicting serious costs of uncertainty on Members of CASA and ASAP, the newborns, their familiesPlaintiffs, other members of the putative class, and society as a whole. Families will beare left fearful that the citizenship guaranteed by federal law will not be honored by federal officers.

98.100.      With its unprecedented departure from the well-settled understanding of birthright citizenship, the Executive Order throws long-established systems into chaos, leaving families to navigate a regime that is not equipped for determining citizenship of children born in the United States. For example, United States citizens have long been able to use their birth certificate as proof of U.S. citizenship, but the Executive Order now raises the specter that something more will be needed—although it is not clear what. And all 50 states participate in the Social Security Administration's Enumeration at Birth program, which allows parents to complete applications for their newborns' Social Security numbersNumbers as part of the hospital birth registration process. *See* Social Security Admin., Bur. of Vital Statistics, State Processing Guidelines for Enumeration at Birth (Nov. 2024), https://www.ssa.gov/dataexchange/documents/Updated%20State%20Processing%20Guidelines

%20for%20EAB.pdf. These processes are not designed to capture or determine the immigration status of parents.

99.101.  The Executive Order departs from these settled regulatory practices, directing Defendants to adopt "regulations and policies" consistent with the order within 30 days. This requires agencies to disregard their existing regulations without complying with the process required by the Administrative Procedure Act, 5 U.S.C § 553. The Executive Order places these processes in doubt, leaving all new parents and expecting parents—regardless of their immigration status—with an uncertain path for obtaining social security numbers Social Security Numbers or passports for their newborns and otherwise proving or establishing their child's citizenship status. It directs Defendants to adopt "regulations and policies" consistent with the order within 30 days. This requires agencies to disregard their existing regulations without complying with the process required by the Administrative Procedure Act, 5 U.S.C § 553. Further, eliminating the fact of U.S. birth as proof of citizenship will add billions of dollars a year in extra bureaucratic costs as more complicated citizenship-verification methods will need to be designed and followed. Stock, *supra*, at 153 (calculating it will cost an additional $2.4 billion per year).

102.  Visiting all of these harms on children and their families simply as a consequence of theira child's birth to noncitizen parents "does not comport with fundamental conceptions of justice." -*Plyler*, 457 U.S. at 220.

**Class Allegations**

103.  Plaintiffs seek to litigate this case for themselves, for their children and future children, and on behalf of a class of all others similarly situated.

42

104.    Plaintiffs propose a class definition of: "All children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents."

105.    Plaintiffs readily meet the requirements of both Rule 23(a) and Rule 23(b)(2).

106.    The class is sufficiently numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Although the numerosity requirement can be satisfied by only a few dozen members, thousands of new class members are born every week.

107.    There are numerous questions of law and fact common to the class, *see* Fed. R. Civ. P. 23(a)(2), including:

- Is Executive Order 14,160 unconstitutional under the Citizenship Clause of the Fourteenth Amendment?
- Does Executive Order 14,160 violate 8 U.S.C § 1401 et seq.?
- May the Executive Branch refuse to recognize the citizenship of children born in the United States to parents who are not lawful permanent residents or United States citizens?
- Does the Citizenship Clause exempt children from its protection based on their parents' immigration status?
- Does 8 U.S.C. § 1401 et seq. confer citizenship on children born in the United States regardless of their parents' immigration status?
- Should the Citizenship Clause's phrase "subject to the jurisdiction" of the United States be interpreted contrary to the commonly understood meaning of "jurisdiction" in 1868?
- Should the Immigration and Nationality Act of 1940 be given an interpretation contrary to the settled understanding of its language at the time of its enactment?

108.    The putative class representatives have claims that are typical of other members of the class. Fed. R. Civ. P. 23(a)(3). As it does for other members of the class, the Executive Order purports to deny United States citizenship to the U.S.-born children of the putative class representatives based solely on the immigration status of the children's parents, in violation of the Constitution and federal statutes.

43

109.    The putative class representatives will serve as adequate class representatives. Fed. R. Civ. P. 23(a)(4). There is no conflict of interest between the representatives and members of the class, and they are prepared to vigorously assert the interests of all members of the class.

110.    Defendants have acted and failed to act in a manner that applies generally to the class as a whole, rendering class-wide injunctive and declaratory relief appropriate. *See* Fed. R. Civ. P. 23(b)(2).

111.    Class counsel are experienced litigators well-versed in this case and the legal issues implicated by it. *See* Fed. R. Civ. P. 23(g).

~~100.~~112.    Class representatives seek to litigate their claims on behalf of the class as a whole.

## CAUSES OF ACTION

### Count I
### *Ultra Vires* Action Under Fourteenth Amendment

~~101.~~113.    Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

~~102.~~114.    Executive actions, including Executive Orders issued by a President, can be challenged as *ultra vires* when they violate the Constitution and the laws of the United States. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667 (2018); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996).

~~103.~~115.    The Constitution guarantees that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States."

~~104.~~116.    By virtue of this constitutional provision, all ~~children who will be born to Individual Plaintiffs and Members in the United States will be~~of the Individual Plaintiffs' U.S.-

44

born children, all of the U.S.-born children whose parents are Members of CASA and ASAP, and all U.S.-born children who are part of the putative class are United States citizens.

~~105.~~117.    The Executive Branch has no power to unilaterally amend or repeal the Fourteenth Amendment and no power to disobey a clear constitutional command.

~~106.~~118.    Specifically, Defendants lack the authority to interfere with, deny, or fail to recognize citizenship that is granted by the United States Constitution, and they lack the authority to deny any of the rights, benefits, and privileges that accompany that citizenship. By refusing to recognize constitutionally granted citizenship, and by taking actions that are inconsistent with that citizenship, Defendants' actions described above violate the Constitution and are *ultra vires*.

~~107.~~119.    Defendants' violation is causing ongoing, irreparable harm to ~~Individual~~ Plaintiffs and ~~Members,~~ their family members.; CASA, ASAP, and ~~ASAP~~ their Members; and members of the putative class, for which no other adequate remedy exists.

~~108.    Plaintiffs have no adequate remedy at law.~~

**Count II**
***Ultra Vires* Action Under 8 U.S.C. § 1401~~(a)~~ et seq.**

~~109.~~120.    Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

~~110.~~121.    Section 1401 of Title 8 of the United States Code provides that every "person born in the United States, and subject to the jurisdiction thereof," "shall be nationals and citizens of the United States at birth." Other statutory provisions provide that a child born in Alaska or Hawaii "is a citizen of the United States at birth," without qualification. *See* 8 U.S.C. § 1404 (Alaska); 8 U.S.C. § 1405 (Hawaii).

45

111.122.    The Executive Branch has no power to unilaterally amend or repeal an Act of Congress and no power to disobey a clear statutory command.

112.123.    ~~This statute reinforces~~These statutory provisions reinforce the Fourteenth Amendment and ~~guarantees~~guarantee that all children who have been or will be born ~~to Individual Plaintiffs and Members~~ in the United States ~~will be are~~ United States citizens, subject to narrow exceptions irrelevant to this litigation. These statutory provisions benefit the Plaintiffs and their children, Members of CASA and ASAP and their children, and members of the putative class.

113.124.    Defendants lack the authority to disregard an Act of Congress that recognizes citizenship. By refusing to acknowledge citizenship that has been recognized by an Act of Congress, and by taking actions that are inconsistent with that citizenship, ~~Defendants~~Defendants' actions described above violate 8 U.S.C. § 1401 and other federal statutes, and are *ultra vires*.

114.125.    Defendants' violation is causing ongoing, irreparable harm to Plaintiffs and their family members; CASA and ASAP and their Members; and members of the putative class, for which no other adequate remedy exists.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court certify a class, enter judgment in their favor, and grant the following relief:

a.    A declaration that the Executive Order entitled "Protecting the Meaning and Value of American Citizenship." " is unconstitutional and invalid on its face;

b.    A declaration that the Executive Order is unconstitutional and invalid as applied to Plaintiffs and all class members;

c.      A declaration that the Executive Order violates 8 U.S.C. § 1401(a) and other

         federal statutes on its face;

d.      A declaration that the Executive Order violates 8 U.S.C. § 1401(a) and other

         federal statutes as applied to Plaintiffs and all class members;

e.      A declaration that all children born in the United States to noncitizen parents

         covered by the Executive Order are citizens of the United States and are entitled

         to all of the rights and privileges that such status provides, regardless of the

         immigration status of their parents;

f.      A preliminary and permanent injunction enjoining Defendants from enforcing the

         Executive Order, or taking any other action that fails to recognize citizenship to

         individuals born within the United States to noncitizens covered by the Executive

         Order;

g.      An award to Plaintiffs of reasonable costs and attorneys' fees; and

h.      Such other and further relief that this Court may deem fit and proper.

47