IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASA, INC. *et al.*,

    *Plaintiffs*,

v.

DONALD J. TRUMP *et al.*,

    *Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................. 1
PROCEDURAL HISTORY AND PROPOSED CLASS REPRESENTATIVES ...................................... 3
    I.    Procedural History ................................................................................................................. 3
    II.    Proposed Class Representatives............................................................................................ 5
ARGUMENT....................................................................................................................................... 9
    I.    Rule 23(a)'s Requirements Are Met ..................................................................................... 9
        a.    The class easily meets the numerosity requirement ................................................ 9
        b.    There are numerous questions common to the class ............................................ 10
        c.    The class representatives' claims are typical of the class...................................... 11
        d.    The class representatives will fairly and adequately represent the class .............. 12
    II.    The Court Should Certify a Rule 23(b)(2) Class ...................................................................... 14
    III.    Plaintiffs' Counsel Should be Appointed Class Counsel ............................................................ 15
CONCLUSION.................................................................................................................................. 17

**INTRODUCTION**

Plaintiffs challenge Executive Order 14,160, which purports to deny birthright citizenship to hundreds of newborn babies born every day in the United States based solely on their parents' immigration status. Pursuant to Rule 23, Plaintiffs move to certify a class of the individuals who have been or will imminently be harmed by the Executive Order. This proposed class meets all requirements for class certification.

As this Court has already recognized, the Executive Order is unlawful on its face and defies centuries of precedent and practice. Mem. Op. Granting Preliminary Injunction (PI Opinion), ECF No. 65. And as this Court has also recognized, injunctive relief protecting everyone harmed by this Executive Order is appropriate—and, indeed, necessary—to avoid irreparable harm. *Id.* at 28-29 ("If the Court does not enjoin enforcement of the Executive Order, children born in the United States who are subject to the Order immediately will be denied the benefits and rights of U.S. citizenship."). The Supreme Court has now instructed that, in such circumstances, class-wide relief may be appropriate. *Trump v. CASA*, slip op. 13-14 (June 27, 2025); *id.*, slip op. at 6 (Kavanaugh, J., concurring) (noting that district courts may "grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)"); *id.*, slip op. at 44 (Sotomayor, J., dissenting) ("[T]he parents of children covered by the Citizenship Order would be well advised to file promptly class-action suits and to request temporary injunctive relief for the putative class pending class certification.").

Plaintiffs, including Andrea, next friend to E.T.P.; Ashley, next friend to K.K; Liza, next friend to L.B.; Niurka, next friend to L.G.; and Juana, Monica, and Trinidad Garcia on behalf of

1

themselves and their future children, assert the constitutional and statutory citizenship rights of all children who have been or will be born in the United States after February 19, 2025, whose parents are neither United States citizens nor lawful permanent residents. Under the Fourteenth Amendment and 8 U.S.C. § 1401(a), these babies are United States citizens. The Executive Order, however, purports to deny them, and other babies like them, the United States citizenship to which they are entitled as of right. Plaintiffs seek a single, class-wide order enjoining Defendants from enforcing the Executive Order and from denying children born in the United States their birthright citizenship. To that end, Plaintiffs request certification of the following class:

> All children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents.

All of Rule 23's requirements are easily satisfied here: the Executive Order affects a large and ever-growing number of babies and their parents, and it affects them all by depriving U.S.-born children of birthright citizenship and the status, family unity, and benefits that citizenship carries. And Rule 23 expressly authorizes a class action where, as here, Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants are following a universal, facially unlawful policy that harms each class representative and every member of the class, and class-wide injunctive and declaratory relief will prevent and remedy that harm. Class certification is warranted.

**PROCEDURAL HISTORY AND PROPOSED CLASS REPRESENTATIVES**

**I.   Procedural History**

The United States has long followed a rule of *jus soli* citizenship, guaranteeing that nearly every person born within the United States is a United States citizen, subject only to a few narrow exceptions that are not implicated in this case. This longstanding rule has been enshrined in the Fourteenth Amendment's Citizenship Clause and 8 U.S.C. § 1401. On January 20, 2025, President Trump signed Executive Order 14,160, which purports to reinterpret the Fourteenth Amendment's Citizenship Clause and deny large numbers of U.S.-born children citizenship based on the immigration statuses of their parents. The following day, CASA, Inc., the Asylum Seeker Advocacy Project ("ASAP"), and five pregnant mothers filed this lawsuit and moved for a preliminary injunction to prevent implementation and enforcement of the Executive Order. Compl., ECF No. 1.

On February 5, 2025, this Court granted Plaintiffs' motion and issued a nationwide preliminary injunction. PI Order, ECF No. 66. The Court concluded that nationwide injunctive relief was "appropriate and necessary" to protect everyone who was subject to a facially unconstitutional and unlawful Executive Order. PI Opinion at 32. The Court reasoned that "[o]nly a nationwide injunction will provide complete relief" to Plaintiffs, given that "ASAP's members reside in every state and hundreds of them expect to give birth soon." *Id.* The Court further concluded that a nationwide injunction was appropriate against "the categorical policy in the Executive Order" and to maintain the uniformity of U.S. citizenship. *Id.*

Defendants appealed and sought a partial stay of the preliminary injunction pending appeal. ECF Nos. 69, 70. In their stay request, Defendants did not contest the Court's decision to issue a

3

preliminary injunction, but asked the Court to narrow the scope of the injunction so that it would only apply to the named parties. This Court denied the stay and reaffirmed the scope of the injunction, noting that if the injunction were limited to "to the plaintiffs and the members of the plaintiff organizations, a person's citizenship status during the pendency of this case would depend on their parents' decision to bring this lawsuit or their parents' membership in one of two voluntary, private organizations. That would make no sense." Stay Opinion at 3, ECF No. 76. The Court further emphasized that "Citizenship rules should be uniform and consistent across the country. Uniformity and consistency can be ensured only through a nationwide injunction." *Id.* The Court also noted that precedent authorized the Court to issue universal injunctive relief. *Id.* (citing *HIAS, Inc. v. Trump*, 985 F.3d 309, 326–27 (4th Cir. 2021)). The Fourth Circuit also denied Defendants' stay request.

Defendants then filed a stay application in the Supreme Court. U.S. App. For a Partial Stay, *Trump v. CASA*, Case No. 24A884 (S. Ct. Mar. 13, 2025) ("U.S. Stay App."). Defendants argued that this Court should not have issued an injunction that prevents irreparable harm to non-parties, but acknowledged that "[a]ffected individuals could instead seek class certification and, if appropriate, seek class-wide preliminary relief." U.S. Stay App. 38 (citing Fed. R. Civ. P. 23); *see also* Reply Br. in Supp. of U.S. Stay App. at 9–10 ("Congress has already created an avenue by which a group of litigants that share a common interest can obtain an injunction protecting the entire group—a class-action pursuant to Federal Rule of Civil Procedure 23(b)(2)." (quoting *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 259, *vacated and reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020))). On June 27, 2025, the Supreme Court issued a partial stay of the Court's preliminary injunction, but expressly allowed challenges to government actions to proceed as a

4

class action. *Trump v. CASA*, slip op. 13-14. Plaintiffs have now filed an Amended Complaint that includes class action allegations, and are seeking preliminary injunctive relief on behalf of the putative class. Plaintiffs also move this Court to certify a nationwide class and allow the class to seek declaratory and injunctive relief against Executive Order 14,160.

## II.   Proposed Class Representatives

Plaintiffs' Amended Complaint includes several parents whose current or future U.S.-born babies are entitled to United States citizenship under the Constitution and 8 U.S.C. § 1401, but who would be denied citizenship under the terms of the Executive Order. Plaintiffs Andrea, Ashley, Juana, Liza, Niurka, Monica, and Trinidad Garcia are willing to represent the interests of their children and serve as class representatives on behalf of all others similarly situated.

**Plaintiff and Putative Class Representative Liza[1] and her Baby L.B.** Liza gave birth to L.B. in Texas after February 19, 2025.[2] Liza 2nd Decl. ¶ 5. Liza was pregnant with L.B. at the time the initial complaint was filed and was a named plaintiff on the original complaint. Because Liza is lawfully in the United States on a student visa from Russia, and L.B.'s father is not a lawful permanent resident nor citizen of the United States, the Executive Order attempts to deny L.B. U.S. citizenship. *Id.* ¶¶ 3, 7. Liza is anxious about L.B.'s future if L.B. is considered not to be a U.S. citizen. *Id.* ¶¶ 6, 8–9. Liza wants to serve as a class representative because "[b]abies are the most defenseless amongst us," and she "feel[s] that it is [her] role to stand up not just for [her] baby, but

---

[1] This Court previously granted Juana, Liza, Monica, and Trinidad Garcia permission to proceed using a pseudonym. PI Opinion at 5 n.1. Andrea, Ashley, and Niurka are also using pseudonyms, and minors are designated using initials. Fed. R. Civ. P. 5.2.

[2] Pursuant to Fed. R. Civ. P. 5.2(a)(2), Plaintiffs are not providing the specific date of birth for newborn children.

for all babies that can't fight for themselves." *Id.* ¶ 13.

**Plaintiff and Class Representative Andrea and her Baby E.T.P.** Andrea gave birth to E.T.P. in Georgia after February 19, 2025. Andrea Decl. ¶ 3. At the time of E.T.P.'s birth, and as of the date of this filing, both of E.T.P.'s parents were undocumented, and Andrea had a case in immigration court where she was seeking asylum. *Id.* ¶ 4. Andrea wants E.T.P. "to have the full dignity and rights of citizenship, including access to educational opportunities and the benefits to which they are entitled," just like millions of other U.S.-born children have had throughout history. *Id.* ¶ 5. She is willing to serve as class representative on behalf of others like herself and E.T.P. because she considers it "important to fight against injustice for everyone." *Id.* ¶ 6.

**Plaintiff and Putative Class Representative Ashley and her Baby K.K.** Ashley gave birth to K.K. in Texas after February 19, 2025. Ashley Decl. ¶ 8. K.K.'s parents both hold valid H-1B visas, and Ashley has applied for lawful permanent residence. *Id.* ¶¶ 5–7. Ashley wants K.K. to be a citizen to have access to essential services and legal protections exclusive to U.S. citizens, and to fully participate in American life, engage in civic responsibilities, and develop a strong sense of belonging. *Id.* ¶ 9. Ashley is willing to serve as a class representative on behalf of others similarly situated because she thinks "it is important to fight not only on behalf of [her] child, but also on behalf of other children and families in a similar situation to [them]." *Id.* ¶ 11.

**Plaintiff and Class Representative Niurka and her Baby L.G.** Niurka gave birth to L.G. in Florida after February 19, 2025. Niurka Decl. ¶ 4. Niurka and her husband have asylum applications pending, as well as applications to become lawful permanent residents through the Cuban Adjustment Act. *Id.* ¶ 3. Niurka wants L.G. to have U.S. citizenship "to grow up with the certainty of belonging to this nation," to have "a future full of opportunities, where L.G. can study,

6

develop, and build their dreams without the limitations imposed by immigration uncertainty." *Id.* ¶ 5. Niurka shared her story as an ASAP member in the original complaint, and is willing to serve as a plaintiff and class representative on behalf of others similarly situated because she understands the importance of U.S. citizenship. *Id.* ¶ 9–12. She wants to ensure that children born here are not denied "the right to dream freely, to build without fear, and to feel a true part of the nation where their first steps, their first words, and their first dreams were born." *Id.* ¶ 12. She is "proud to be a voice not just for [her] newborn baby L.G., but for many others." *Id.* ¶ 10.

**Plaintiff and Class Representative Monica** is an ASAP member who lives in South Carolina. Monica 2d Decl. ¶ 3. Monica is pregnant and due in August 2025. *Id.* ¶ 8. Monica has been in the United States since 2019. *Id.* ¶ 3. She and her partner both have pending asylum applications. *Id.* ¶ 4. Monica wants their child to have the U.S. citizenship that the child is entitled to, which will provide the protection of this country's Constitution and laws and give their child access to opportunities that others around the world do not have. *Id.* ¶ 13. Monica is willing to serve as a class representative on behalf of others similarly situated because "the rights and safety of my child and many others are at stake, and she believes other "mothers and their babies also deserve a voice," even though they may be too afraid to speak out themselves. *Id.* ¶¶ 17–18.

**Plaintiff and Class Representative Trinidad Garcia** is a member of ASAP who lives in North Carolina. Trinidad Garcia 2nd Decl. ¶ 3. She is pregnant and due after mid-July 2025. *Id.* ¶ 8. Trinidad Garcia and her partner both have pending affirmative asylum applications with USCIS, and have been living in the United States since 2017. *Id.* ¶ 5. She is worried about the possibility that their U.S.-born child will not have U.S. citizenship. *Id.* ¶¶ 9–15. Trinidad Garcia joined as a Plaintiff in the original complaint because she "believed that it was the best way for [her] to

7

support [her] family and other people in similar situations." *Id.* ¶ 17. She is "willing to serve as a class representative because [she] continue[s] to feel that it is important to protect [her] family's rights and those of other people in similar situations." *Id.*

**Plaintiff and Class Representative Juana** is a resident of Maryland who is pregnant and expects to give birth in the United States in the next few months. ECF No. 2-4, Juana Decl. ¶ 2. Juana and her partner have asylum claims pending. *Id.* ¶¶ 3–4. Juana is worried that her U.S.-born child will be denied U.S. citizenship under the Executive Order, placing her child at risk of removal without her. *Id.* ¶ 7. Juana objects to children being denied the benefits of citizenship that they are entitled to. *Id.* ¶ 8. Juana volunteered to serve as a class representative to fight for everyone else in a similar situation, and because she wants to "make sure children do not face discrimination or have their rights denied." Juana 2nd Decl. ¶ 2–3.

## STANDARD OF REVIEW

A Court may certify a class action if the moving party establishes that it meets all of the prerequisites of Rule 23(a) and qualifies as one of the types of class actions identified in Rule 23(b). Rule 23(a) requires the moving party to establish that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").[3] If these prerequisites are met,

---

[3] Although this Circuit has "recognized an implicit requirement in 23(b)(1) and 23(b)(3) cases that members of a proposed class be 'readily identifiable,'" that requirement is not applicable to the 23(b)(2) class sought here. *Kadel v. Folwell*, 100 F.4th 122, 160 (4th Cir. 2024) (en banc) (citation omitted).

8

the court may certify a class action under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The court "must rigorously examine" whether the plaintiff has satisfied the requirements for class certification. *Brown v. Nucor Corp.*, 785 F.3d 895, 903 (4th Cir. 2015). But "a court should engage the merits of a claim only to the extent necessary to verify that Rule 23 has been satisfied." *Id.*

**ARGUMENT**

    **I.    Rule 23(a)'s Requirements Are Met**

        **a.  The class easily meets the numerosity requirement**

The numerosity requirement of Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." In determining whether the numerosity requirement is met, "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (internal citation and quotation omitted); *see also Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) ("[T]here is no mechanical test for numerosity.").

The numerosity requirement is easily met here. Defendants themselves have acknowledged that the Executive Order applies to "millions of [people] across the country." U.S. Stay App. at 3. The number of newborn class members alone is projected to be approximately 255,000 per year.[4]

---

[4] As of May 2025, Penn State's Population Research Institute and the Migration Policy Institute project that "an average of about 255,000 babies born on U.S. soil" would no longer receive U.S. citizenship at birth if the Executive Order went into effect. Penn State Social Science Research Institute, *Ending Automatic Birthright Citizenship Would Significantly Increase the Size of the U.S. Unauthorized Population, New Projections Show* (May 13 2025), https://perma.cc/5D6Z-57YU. It is well established that the court may rely on such data to make "commonsense assumptions

This far exceeds any numerical test under Rule 23(a)(1) and would make joinder impracticable. *See, e.g.*, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967) (en banc) (recognizing that a class can be certified with as few as 18 members); *see also Donaldson v. Primary Residential Mortg.*, No. ELH-19-1175, 2021 WL 2187013, at *6; 2021 U.S. Dist. LEXIS 101625, at *14 (D. Md. May 28, 2021) ("[A] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." (internal citation and quotation marks omitted)). And the fact that hundreds of new class members are born every day further counsels in favor of Rule 23(a)(1)'s requirements being met. *See J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." (internal citation and quotation marks omitted)). The numerosity requirement is readily satisfied.

### b. There are numerous questions common to the class

Rule 23(a)(2)'s commonality requirement is met if the class asserts a "common contention" that "is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do," if "determination of its truth or falsity will resolve an issue that is central" to the case. *Id*. at 350, 359 (internal citations, quotation marks, and alterations omitted). This "commonality test is easily met in most cases." 1 Newberg and Rubenstein on Class Actions § 3:24 (6th ed.). In particular, "class suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2)." Wright, Miller, and Kane, 7A Fed. Prac. & Proc. Civ. § 1763 (4th ed.).

---

regarding the number of putative class members." 1 Newberg and Rubenstein on Class Actions § 3:13 (6th ed.).

The commonality requirement is readily met here, where the central questions—whether the Executive Order violates the Fourteenth Amendment's Citizenship Clause and 8 U.S.C. § 1401—are common to all class members and capable of resolution in "one stroke." *Wal-Mart*, 564 U.S. at 350.

Indeed, there are numerous common questions of law and fact common to the class and central to the resolution of this case, including:

- Is Executive Order 14,160 unconstitutional under the Citizenship Clause of the Fourteenth Amendment?
- Does Executive Order 14,160 violate 8 U.S.C § 1401 et seq.?
- May the Executive Branch refuse to recognize the citizenship of children born in the United States to parents who are not lawful permanent residents or United States citizens?
- Does the Citizenship Clause exempt children from its protection based on their parents' immigration status?
- Does 8 U.S.C. § 1401 et seq. confer citizenship on children born in the United States regardless of their parents' immigration status?
- Should the Citizenship Clause's phrase "subject to the jurisdiction" of the United States be interpreted contrary to the commonly understood meaning of "jurisdiction" in 1868?
- Should the Immigration and Nationality Act of 1940 be given an interpretation contrary to the settled understanding of its language at the time of its enactment?

These questions flow from a single policy announced by the Executive Order and apply across the class, and each question is capable of resolution by a single answer applicable to the entire class. This lawsuit, therefore, is well-suited to class-wide resolution. *See, e.g.*, *Johnson v. Jessup*, 381 F. Supp. 3d 619, 634 (M.D.N.C. 2019) (commonality requirement met in constitutional challenge to state law); *Harris v. Rainey*, 299 F.R.D. 486, 490 (W.D. Va. 2014) (same).

### c. The class representatives' claims are typical of the class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The hurdle posed by this "threshold requirement[]" is "not high," *Brown*, 576 F.3d at 153, and it often "merge[s] with the commonality and adequacy-of-

11

representation requirements," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citation omitted). "A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if his or her claims are based on the same legal theory." 1 Newberg and Rubenstein on Class Actions § 3:29 (6th ed.). The class representative's claims need not be "perfectly identical or perfectly aligned" with other class members' claims. *Deiter*, 436 F.3d at 467. All that typicality requires is that "the representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Id.* at 466.

Again, this factor is easily met. Each of the class representatives is part of the class and is similarly situated to the rest of the class. Class representatives are parents whose children have been or will be born in the United States, and who under the terms of the Executive Order would be denied U.S. Citizenship based on the immigration status of their parents. The class representatives' interests in defending the birthright citizenship of their U.S.-born children will advance the common interests of all other class members. Moreover, the remedy being sought here, injunctive and declaratory relief against Executive Order 14,160, will benefit everyone, class representatives and class members alike.

### d. The class representatives will fairly and adequately represent the class

Rule 23(a)(4) requires a determination that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation seeks to ensure that there are no "conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted), and that the class representatives can be expected "to vigorously pursue the case," *Monroe v. City of Charlottesville*,

579 F.3d 380, 385 (4th Cir. 2009) (citation omitted). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods.*, 521 U.S. at 626 n. 20 (citation omitted).[5]

The class representatives will undoubtedly be adequate representatives of the class. There is no conflict of interest between the class representatives and the members of the class they seek to represent. Indeed, the class representatives share the same motivation to end the Executive Order's unconstitutional and illegal attack on birthright citizenship. Each class representative has volunteered to support this litigation and vigorously fight the legality of the Executive Order. Andrea Decl. ¶ 6 (Andrea considers it "important to fight against injustice for everyone."); Ashley Decl. ¶ 11 (Ashley considers it "important to fight not only on behalf of [her] child, but also on behalf of other children and families in a similar situation"); Liza 2nd Decl. ¶ 13 ("Babies are the most defenseless amongst us," and Liza "feel[s] that it is [her] role to stand up not just for [her] baby, but for all babies that can't fight for themselves."); Monica 2nd Decl. ¶¶ 17-18 (Monica is willing to serve as a class representative because "the rights and safety" of many babies are at stake and she believes other "mothers and their babies also deserve a voice," even if they cannot speak out themselves); Niurka Decl. ¶ 10 (Niurka is "proud to be a voice not just for [her] newborn baby L.G., but for many others"); Trinidad Garcia 2nd Decl. ¶ 17 (Trinidad Garcia is "willing to serve as a class representative because [she] continue[s] to feel that it is important to protect [her] family's

---

[5] "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015) (internal citations and quotation marks omitted). As discussed below, class counsel are well-suited to litigate on behalf of the proposed class.

rights and those of other people in similar situations"). The Court should find that all of Rule 23(a)'s prerequisites are satisfied.

## II. The Court Should Certify a Rule 23(b)(2) Class

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See also Wal-Mart*, 564 U.S. at 360. The requirements of Rule 23(b)(2) are "almost automatically satisfied" in actions seeking injunctive relief for common legal claims. *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Class actions challenging civil rights violations are particularly appropriate for certification under Rule 23(b)(2), given that the rule arose out of experiences "in the civil rights field" in which the government violated the rights of an entire class of citizens through a single law or policy.[6] *Amchem Prods.*, 521 U.S. at 614 (citation and quotation marks omitted).

Once more, Plaintiffs readily meet the standard for a Rule 23(b)(2) class. The lawsuit challenges a policy, announced through Executive Order 14,160, that "appl[ies] generally to the class." *See* Fed. R. Civ. P. 23(b)(2). A determination that the Executive Order is unconstitutional and unlawful would therefore resolve all class members' claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. Indeed, the relief is functionally indivisible—as the Court previously found, it is "appropriate and necessary" that the scope of the relief in this case protect everyone subject to the Executive Order from its illegal effect. PI Opinion at 32. Thus, "injunctive relief or corresponding

---

[6] "Rule 23(b)(2) was promulgated in 1966 essentially as a tool for facilitating civil rights actions." Moore's Federal Practice § 23.43; *see also* 2 Newberg and Rubenstein on Class Actions § 4:40 ("Historically, Rule 23(b)(2) class actions have been used as a vehicle to vindicate civil rights violations. . . . many (b)(2) class actions challenge government actions on *constitutional* grounds").

14

declaratory relief [] respecting the class as a whole" is plainly appropriate. *See* Fed. R. Civ. P. 23(b)(2). Rule 23 is satisfied, and this Court should certify the class.

### III. Plaintiffs' Counsel Should be Appointed Class Counsel

Under Rule 23(g)(1), the Court should appoint class counsel who can "fairly and adequately represent the interests of the class," considering (1) the work counsel has done in identifying or investigating the potential claims, (2) counsel's experience in handling similar cases, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class.

Plaintiffs' counsel satisfy these requirements. Attorneys from the Georgetown Law Institute for Constitutional Advocacy and Protection ("ICAP") and the Asylum Seeker Advocacy Project ("ASAP") have litigated this case since the onset, including in this Court, the Fourth Circuit, and the Supreme Court. These attorneys have experience litigating complex class action lawsuits in federal court. Mead Decl. ¶¶ 4-11; Manfredi Decl. ¶¶ 3-9. Counsel have spent the last several months identifying and analyzing the constitutional and statutory defects of the Executive Order, and they have worked to build the legal arguments and factual record that supported the preliminary injunction this Court previously entered. Counsel are therefore deeply familiar with the case and the applicable law; indeed, counsel have already litigated issues arising in this case up to the Supreme Court. And counsel have devoted extensive resources to engaging with plaintiffs and others whose children may be harmed by the Executive Order.

Beyond their fluency with the issues and arguments in this case, counsel are recognized experts in constitutional law, administrative law, civil rights litigation, and litigation involving the government. ICAP has previously litigated cases challenging the legality of federal policy relating

15

to immigration, including challenges to the Department of Homeland Security's Public Charge Rule and Diversity Visa Rule. *See CASA de Maryland, Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020), *vacated on rehearing en banc*, 981 F.3d 311 (2020); *E.B. v. U.S. Dep't of State*, 583 F. Supp. 3d 58 (D.D.C. 2022). ASAP attorneys have previously litigated numerous challenges to federal policy, including the government's termination of Deferred Action for Childhood Arrivals, poor treatment of people in civil detention, separation of families at the U.S.-Mexico border, and delays in work authorization to asylum seekers. *E.g.*, *CASA de Maryland, Inc., v. Mayorkas* (formerly *CASA v. Wolf*), No. 20-cv-02118 (D. Md.) (asserting APA and federal statutory claims); *Romero Najera v. Barr, et al.*, No. 20-cv-00866 (C.D. Cal.) (individual habeas). And counsel have brought numerous challenges to the constitutionality and legality of other federal, state, and local policies, including through class actions and cases seeking facial invalidation of laws. *E.g.*, *Frazier v. Prince George's Cnty., Maryland*, 86 F.4th 537 (4th Cir. 2023) (putative class challenge to unlawful pretrial detention practices); *Soderberg v. Carrion*, 999 F.3d 962 (4th Cir. 2021) (facial challenge to state law restricting dissemination of court recordings); *Darweesh et al. v. Trump et al.*, Case 1:17-cv-00480 (E.D.N.Y. filed Jan. 28, 2017) (class habeas); *Reid v. Donelan*, Case 3:13-cv-30125 (D. Mass. filed Aug. 16, 2013) (class action asserting federal statutory claim); *Osoria et al. v. Ducey*, No. 16-cv-03072 (D. Ariz.) (class action asserting U.S. constitutional claims). ICAP and ASAP are prepared to litigate this case in the best interests of all class members and will commit the resources necessary to effectively represent the class. Therefore, Plaintiffs' counsel will fairly and adequately represent the proposed class and should be appointed as class counsel.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion; certify a class of all children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents; allow their claims seeking declaratory and injunctive relief against Executive Order 14,160 to proceed as a class action; and appoint the Institute for Constitutional Advocacy and Protection and the Asylum Seeker Advocacy Project as class counsel.

Respectfully submitted this June 27, 2025,

|  |  |
|---|---|
| | /s/Joseph W. Mead |
| | Joseph W. Mead (D. Md. 22335) |
| Conchita Cruz* | Mary B. McCord (D. Md. 21998) |
| Jessica Hanson* | Rupa Bhattacharyya* |
| Zachary Manfredi* | William Powell* |
| Dorothy Tegeler* | Alexandra Lichtenstein* |
| Leidy Perez* | Gregory Briker* |
| Asylum Seeker Advocacy Project | INSTITUTE FOR CONSTITUTIONAL ADVOCACY |
| 228 Park Ave. S., #84810 | AND PROTECTION |
| New York, NY 10003-1502 | Georgetown University Law Center |
| (646) 600-9910 | 600 New Jersey Ave., N.W. |
| conchita.cruz@asylumadvocacy.org | Washington, D.C. 20001 |
| jessica.hanson@asylumadvocacy.org | Phone: (202) 662-9765 |
| zachary.manfredi@asylumadvocacy.org | Fax: (202) 661-6730 |
| dorothy.tegeler@asylumadvocacy.org | jm3468@georgetown.edu |
| leidy.perez@asylumadvocacy.org | mbm7@georgetown.edu |
| | rb1796@georgetown.edu |
| | whp25@georgetown.edu |
| | arl48@georgetown.edu |
| | gb954@georgetown.edu |
| | *Attorneys for Plaintiffs* |

*Admitted pro hac vice.