**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CASA, INC., *et al.*, <br><br>       *Plaintiffs*, <br><br>     v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br>       *Defendants*. | Case No. 8:25-cv-00201-DLB |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR A CLASS-WIDE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

I.    The Executive Order ....................................................................................................... 3

II.   This Litigation................................................................................................................. 5

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT ............................................................................................................................. 7

I.    This Court Cannot Issue a Preliminary Injunction Given the Procedural Posture of This Case........................................................................................................................... 7

II.   Plaintiffs Are Not Entitled to a Nationwide Preliminary Injunction. ................................. 9

III.  This Court Should Deny Relief Because Plaintiffs Cannot Satisfy Rule 23's Requirements. ................................................................................................................ 12

IV.  This Court Should Stay Any Preliminary Injunction Pending Appeal and A Bond Should Be Required. ..................................................................................................... 20

CONCLUSION......................................................................................................................... 21

## INTRODUCTION

On the first day of his Administration, President Donald Trump signed an executive order ending the executive practice of extending American citizenship to persons who have not received that privilege from the Constitution or Congress. Exec. Order No. 14,160, Protecting the Meaning and Value of American Citizenship, 90 Fed. Reg. 8449 (Jan. 20, 2025) ("Citizenship EO" or "EO"). The Constitution's Citizenship Clause provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. The EO recognizes that the Constitution does not grant birthright citizenship to the children of aliens who are unlawfully present in the United States or the children of aliens whose presence is lawful but temporary. Prior misimpressions of the Citizenship Clause have created a perverse incentive for illegal immigration that has negatively impacted this country's sovereignty, national security, and economic stability. But the generation that enacted the Fourteenth Amendment did not fate the United States to such a reality. Instead, text, history, and precedent support what common sense compels: the Constitution does not harbor a windfall clause granting American citizenship to, inter alia, the children of those who have circumvented (or outright defied) federal immigration laws.

Plaintiffs filed suit against the EO immediately after its issuance on behalf of two organizations and a few individuals, ultimately obtaining a universal injunction. Now, six months following the initial filing of their lawsuit and in the wake of the Supreme Court's decision in *Trump v. CASA, Inc.*, --- S. Ct. ---, 2025 WL 1773631, at *4 (U.S. June 27, 2025), Plaintiffs have just repleaded their Complaint to add new Plaintiffs and class action allegations while moving for class certification. *See* First Am. Compl. Class Action for Inj. and Declaratory Relief, ECF No. 96 (hereinafter "FAC"); Pls.' Mot. for Class Action, ECF No. 97 (hereinafter "Class Motion" or

"Class Mot."). And despite the Supreme Court rejecting the universal injunction previously sought and obtained in this lawsuit, Plaintiffs come to Court asking for a classwide, nationwide preliminary injunction to enjoin the President's EO. The relief Plaintiffs seek is functionally no different from their prior (and now forbidden) universal injunction, and Plaintiffs' Emergency Motion for a Class-wide Temporary Restraining Order and Preliminary Injunction, Pls.' Emergency Mot. for a Class-Wide TRO and Prelim. Inj., ECF No. 98 (hereinafter "Motion" or "Mot."), should be denied.

Plaintiffs' request for immediate preliminary injunctive relief is improper to begin with because this Court's prior injunction is still on appeal with the United States Court of Appeals for the Fourth Circuit. Thus, this Court cannot functionally modify its prior preliminary injunction by entering a new one while the prior injunction remains on appeal. Even if this Court could somehow issue new preliminary injunctive relief, Defendants submit for all the previous reasons briefed before this Court in this case, *see* Defs.' Opp'n to Pls.' Mot. for a TRO and Prelim. Inj., ECF No. 40 (hereinafter "Defs.' Opp'n"), this Court should not issue a preliminary injunction. Moreover, the Supreme Court's opinion in *CASA* cautions against providing the nationwide relief that Plaintiffs seek.

Finally, in accordance with this Court's order that "defendants should include their position on class certification," Order, ECF No. 103, Defendants submit that this Court should not certify Plaintiffs' proposed class but should instead deny Plaintiffs' Motion for Class Certification. *See* Class Mot. A court should not issue classwide relief until it has satisfied itself that the requirements of Rule 23 are met. And here, Plaintiffs cannot meet the requirements of Rule 23. Specifically, Plaintiffs' differing immigration statuses create issues of whether "there are questions of law or fact common to the class," and whether "the claims or defenses of the representative parties are

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). In addition, Plaintiffs cannot show that the "representative parties will fairly and adequately protect the interests of the class," given that all three class representatives are proceeding pseudonymously. Fed. R. Civ. P. 23(a)(4). These factors all also counsel in favor of denying Plaintiffs' motion for a classwide preliminary injunction.

The Court should deny Plaintiffs' Motion.

## BACKGROUND

### I.    The Executive Order

The Citizenship EO is an integral part of President Trump's broader effort to repair the United States' immigration system and to address the ongoing crisis at the southern border. *See, e.g.*, Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025); Proclamation No. 10886, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025); Exec. Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443 (Jan. 20, 2025) (Invasion EO). As the President has recognized, individuals unlawfully in this country "present significant threats to national security and public safety," Invasion EO, § 1, and the severity of these problems warrants a panoply of immigration measures. Some of these threats are related to the United States' prior, erroneous policy of recognizing near-universal birthright citizenship. For instance, "the nation's current policy of universally granting birthright citizenship to individuals who lack any meaningful ties to the United States provides substantial opportunities for abuse by motivated enemies." Amy Swearer, Legal Mem. No. 250, *The Political Case for Confining Birthright Citizenship to Its Original Meaning* at 8-11, Heritage Found. (2019).

The EO seeks to correct the Executive Branch's prior misreading of the Citizenship Clause.

It recognizes (in § 1) that the Constitution and the INA provide for citizenship for all persons who are born in the United States and subject to the jurisdiction thereof, and identifies two circumstances in which a person born in the United States is not automatically extended the privilege of citizenship:

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Section 2(a) of the EO directs the Executive Branch (1) not to issue documents recognizing U.S. citizenship to persons born in the United States under the conditions described in section 1, and (2) not to accept documents issued by state, local, or other governments purporting to recognize the U.S. citizenship of such persons. The EO specifies, however, that those directives "apply only to persons who are born within the United States after 30 days from the date of this order," which under the terms of the EO prior to the issuance of preliminary injunctions would have been February 19. Citizenship EO § 2(b). The Citizenship EO makes clear that its provisions do not "affect the entitlement of other individuals, including children of lawful permanent residents, to obtain documentation of their United States citizenship." *Id*. § 2(c).

The EO directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to take "all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order" and not to "act, or forbear from acting, in any manner inconsistent with this order." Citizenship EO § 3(a). It further directs the heads of agencies to issue public guidance within 30 days (which again, absent preliminary injunctions issued against the EO, would have been February 19) "regarding this order's implementation with respect to their operations and

4

activities." *Id*. § 3(b).

## II.     This Litigation

The EO at issue in Plaintiffs' lawsuit was challenged in various courts immediately following its promulgation, including in this Court on January 21, 2025. *See* Compl., ECF No. 1. Plaintiffs brought suit on behalf of two organizations and five individuals, seeking "[a] preliminary and permanent injunction enjoining Defendants from enforcing the Executive Order, or taking any other action that fails to recognize citizenship to individuals born within the United States to noncitizens covered by the Executive Order." *Id.* at 38. Notably, Plaintiffs did not seek class certification of individuals covered by the EO. Following briefing and hearing on Plaintiffs' prior motion for a preliminary injunction, this Court issued a universal injunction on February 5, 2025, that enjoined Defendants from implementing and enforcing the EO throughout the United States. Mem. Op., ECF No. 65; Order, ECF No. 66. The Court's preliminary injunction was then appealed to the Fourth Circuit, *see* ECF No. 69, where it remains pending. *See CASA, Inc. v. Trump*, No. 25-1153 (4th Cir.).

In the Fourth Circuit, Defendants sought a motion for a partial stay of the preliminary injunction issued by this Court, which was denied on February 28, 2025. *See generally CASA, Inc. v. Trump*, 2025 WL 654902 (4th Cir. Feb. 28, 2025)*. The government then filed an emergency application in the Supreme Court of the United States seeking to partially stay the nationwide scope of this Court's injunctions as well as to stay the nationwide scope of two injunctions issued in two other challenges against the EO. *CASA*, 2025 WL 1773631, at *4.

On June 27, 2025, the Supreme Court held that the "universal injunctions" against the EO were not proper because "federal courts lack authority to issue them." *Id.* at *13. The Supreme Court, however, declined to decide what "narrower relief [was] appropriate," holding that "[t]he

lower courts should determine whether a narrower injunction is appropriate" and "leav[ing] it to them to consider these and any related arguments." *Id.* at *12. The Court accordingly directed that "[t]he lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity." *Id.* at *15. The Supreme Court further recognized that "[section] 2 of the Executive Order shall not take effect until 30 days after the date of this opinion." *Id.*

In discussing why universal injunctions are inappropriate, the Supreme Court noted that they "circumvent[ed] Rule 23's procedural protections and allow[ed] 'courts to create *de facto* class actions at will.'" *Id.* at *10 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011)). However, the Supreme Court stressed "Rule 23's limits on class actions." *Id.* Notably, Justice Alito's concurrence emphasized that "district courts should not view [the Supreme Court]'s decision as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23 . . . [o]therwise, the universal injunction w[ould] return from the grave under the guise of 'nationwide class relief,'" *id.* at *18 (Alito, J., concurring).

No later than two hours following the Supreme Court's ruling, Plaintiffs filed a First Amended Complaint, adding three additional plaintiffs and bringing class action allegations. *See generally* FAC. As relevant herein, the named Plaintiffs seek to represent a proposed class of: "All children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents." *Id.* ¶ 104.

Concurrently with their First Amended Complaint, Plaintiffs filed a Motion for Class Certification along with a Memorandum in support. *See id.*; Class Mot. And they separately filed a renewed Motion for relief in this case "request[ing] that this Court immediately enter an

injunction that prohibits Defendants from implementing or enforcing Executive Order 14,160 against anyone who is part of [Plaintiffs'] putative class." Mot. at 1. During its June 30 status conference, this Court indicated it will treat Plaintiffs' motion as one for a preliminary injunction and set a briefing schedule. *See* Tr. of June 30, 2025 Hrg. 25:19-24.

## STANDARD OF REVIEW

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation omitted). To obtain a preliminary injunction, Plaintiffs must make a "clear showing" of each of the four factors: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) that the balance of equities tips in their favor; and (4) that the public interest favors the requested equitable relief. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## ARGUMENT

### I.    This Court Cannot Issue a Preliminary Injunction Given the Procedural Posture of This Case.

To begin, Plaintiffs' request for a preliminary injunction is improper given the current posture of this case. The preliminary injunction this Court previously issued is on appeal before the Fourth Circuit, so Plaintiffs cannot seek a new or modified injunction. "The filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Richardson v. Va. Dep't of Corr.*, 437 F. App'x 235 (4th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). As relevant here, "[w]hile a preliminary injunction is on appeal, a district court ordinarily may not dissolve or modify it." *Am. Coll. of Obstetricians & Gynecologists v. U.S. Food & Drug Admin.*, 506 F. Supp. 3d 328, 338 (D. Md. 2020). There are exceptions that allow district courts to

preserve the status quo, Fed. R. Civ. P. 62(d), and a district court may "take action that aids the appellate process." *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). In aiding the appellate process, "a district court may modify an injunction to clarify it in order to 'reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction.'" *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 769 F. Supp. 3d 465, 467 (D. Md. 2025) (quoting *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001)).

Plaintiffs' newly filed motion seeks to challenge the same Executive Order and seeks an equivalent scope of relief as their prior preliminary injunction, but Plaintiffs now do so through the vehicle of a class action. Plaintiffs do not get a second bite at the apple by bringing a nationwide class action while also continuing to maintain the nationwide preliminary injunction this Court has already granted in this case. This is the functional equivalent of an improper modification of that preliminary injunction, which of course is now before the Fourth Circuit. And Plaintiffs do not identify an exception permitting this Court to modify its prior injunction while an appeal is pending, nor could they; there is nothing imprecise about the district court's original injunction on appeal and their injunction would alter the status quo as it exists in the wake of *CASA*. Furthermore, the Fourth Circuit is best positioned to address the scope of further relief as the Supreme Court "le[ft] it to" "[t]he lower courts" to consider arguments from the parties about the proper scope of the Supreme Court's stay. *CASA*, 2025 WL 1773631, at *12. This Court should stay its hand in issuing any preliminary injunction, and any further proceedings in that matter, until such time as the prior preliminary injunction is no longer on appeal.

This approach finds support in the approach taken by other courts handling parallel challenges to the EO. The Supreme Court directed that "[t]he lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with [*CASA*'s]

rule and otherwise comply with principle of equity." *Id.* at *15. In the parallel *State of New Jersey* case, the First Circuit partially remanded the nationwide injunction for "the District Court to consider the bearing, if any, of [the] guidance in *CASA* on the scope of the preliminary injunction." Order, *New Jersey v. Trump*, No. 25-1170 (1st Cir. July 3, 2025). And in the parallel *State of Washington* case, Judge Coughenour declined to lift his prior stay of proceedings in light of the need for *CASA* remand litigation to proceed in the Ninth Circuit. Order, *Washington v. Trump*, No. 2:25-cv-127, ECF No. 141 (W.D. Wash. July 3, 2025). Citing the Ninth Circuit's ongoing consideration of the scope of *CASA*'s stay, he held "it would be premature for this Court to lift its stay" and consider the motion for class certification. *Id.* at 3. "[M]aintaining the stay would also promote judicial efficiency, judicial comity, and the overall effort to simplify the issues." *Id.* Here too, this Court should allow the "expeditious[]" injunction-scope review that the Supreme Court has ordered, *CASA*, 2025 WL 1773631, at *15, by allowing the Fourth Circuit in the first instance to resolve the scope of this Court's prior preliminary injunction, rather than issuing the new injunction that Plaintiffs seek.

## II. Plaintiffs Are Not Entitled to a Nationwide Preliminary Injunction.

For the reasons Defendants previously discussed in depth, preliminary injunctive relief should not issue on the merits. This Court is undoubtedly familiar with those prior arguments, which Defendants incorporate by reference here, *see* Defs.' Opp'n, but to repeat: Plaintiffs have not shown a likelihood of success on the merits because the EO comports with the meaning of the Citizenship Clause as illustrated by the Supreme Court's decision in *Elk v. Wilkins*, 112 U.S. 94 (1884) and its emphasis on domicile in *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898). Further, 8 U.S.C. § 1401(a) merely codified the exact scope of the Citizenship Clause. Moreover, the balance of equities favors Defendants because Plaintiffs' harms are hypothetical, and an

injunction would intrude into the Executive Branch's authority over immigration and the status of aliens. As a result, Plaintiffs have not shown an entitlement to a preliminary injunction under the factors set out in *Winter*.

There also are multiple party-specific defects in Plaintiffs' Motion. None of the Plaintiffs establish their standing to sue the various defendants named in the FAC. Plaintiffs' allegations and their declarations in support of their Class Motion give no reason why relief, much less emergency injunctive relief, is needed against them. They do not, for example, allege that any of the Plaintiffs or their children will seek passports, SNAP benefits, or social security benefits while this litigation is pending. A plaintiff's remedy "must of course be limited to the inadequacy that produced the injury in fact," and "[t]his is no less true with respect to class actions than with respect to other suits." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Moreover, any allegations of harm through immigration benefits or immigration enforcement are premature. As *CASA* recognized, federal government agencies like DHS will spend the first 30 days after *CASA* "develop[ing] and issu[ing] public guidance regarding the order's implementation." 2025 WL 1773631, at *4. Nor can Plaintiffs obtain a preliminary injunction against the President. A federal court "has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866)).

Even if the Court were to grant Plaintiffs the preliminary injunctive relief they seek, the Court should not grant nationwide relief. In *CASA*, members of the Supreme Court cautioned against reflexively certifying nationwide class injunctions so to provide "nationwide class relief" that would be an end-run around the now for-bidden universal injunction. *CASA*, 2025 WL 1773631, at *18 (Alito, J., concurring). That is, "district courts should not view [*CASA*] as an

10

invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23." *Id.*

This Court should heed that caution here. Despite seeking nationwide class relief in the wake of *CASA*, Plaintiffs offer no argument as to why nationwide relief is necessary. At most, the Court may certify a class limited to this judicial district and award relief within that jurisdiction. *See, e.g.*, *Bova v. Cox Commc'ns, Inc.*, No. 7:01CV00090, 2001 WL 1654708, at *4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the Western District of Virginia). Congress exercised its power to create lower courts by devising a system under which most issues are resolved within 12 geography-based circuit courts of appeals. It is a feature of this system that district judges within each circuit can reach different opinions on the same question of law before the circuit rules. And even once a circuit rules, the issue can continue to percolate within other circuits until the matter is taken up by the Supreme Court. Congress recognized the need for nationwide uniformity on some questions of law; the U.S. Court of Appeals for the Federal Circuit, for example, serves that purpose for some questions. But Congress decided against giving those courts jurisdiction over the subject of this suit, instead preferring a system under which different circuits may opine on particular legal questions and leave uniform resolution of abstract legal questions to the Supreme Court.

Providing universal relief here would disrupt litigation pending across the United States presenting the precise legal question presented here[1] and potentially create conflicts with the decisions of putative class members to bring their suits elsewhere and the ability of those courts to address them. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[A] federal court when asked to certify a nationwide class should take care to ensure . . . that certification of such a class would

---

[1] There are nine other separate lawsuits against the EO pending in judicial districts in California, the District of Columbia, Massachusetts, New Hampshire, New York, and Washington.

not improperly interfere with the litigation of similar issues in other judicial districts."); *see id.* at 689 (describing a certified class excluding other suits). This Court should not grant Plaintiffs' request to upend the last five months of litigation and should not provide nationwide relief, absent a showing from Plaintiffs of why this is necessary. Instead, any class should be narrowly tailored and limited to this judicial district—the State of Maryland.

## III.    This Court Should Deny Relief Because Plaintiffs Cannot Satisfy Rule 23's Requirements.

Plaintiffs' request for a classwide preliminary injunction—before a class has even been certified—is inappropriate. Plaintiffs cannot satisfy, at this point, the rigorous requirements of Rule 23, thus precluding this Court from providing classwide relief, provisionally or otherwise.[2]

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Id.* at 700-01; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (same). To fall within this exception, a plaintiff "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As the Supreme Court has explained, "Rule 23 does not set forth a mere pleading standard." *Id.* Indeed, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]'" *Id.* at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

To meet this "affirmative" burden of compliance with Rule 23, Plaintiffs must demonstrate the existence of each and every element required by Rule 23(a) that: (1) there are sufficiently

---

[2] Defendants are unsure if this Court's June 30 Order requires a fulsome class certification opposition to be submitted along this filing. Nonetheless, Defendants write to comply with this Court's order to "include their position on class certification in their opposition." Order, ECF No. 103. Defendants' formal opposition to Plaintiffs' Class Motion would be due, under this Court's Local Rules, on July 11, 2025, and reserve the right to file an opposition brief on that date that may make arguments in addition to those presented here.

numerous parties ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named plaintiff are typical of those of the class ("typicality"); and (4) the named plaintiff will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable." *Falcon*, 457 U.S. at 160. The proposed class must also "satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Plaintiffs here assert that their class should proceed under Rule 23(b)(2), which permits class action litigation where "the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also* Class Mot. at 1. Plaintiffs do not make the requisite showing for class certification under Rule 23 because they have failed to demonstrate the appropriateness of relief respecting the class as a whole, commonality, typicality, and adequacy of representation.

As a threshold matter, Plaintiffs' request that this Court now enter a preliminary injunction regarding a Rule 23(b)(2) class is inappropriate. That Rule contemplates that injunctive relief is generally appropriate only *after* a court has assured itself that the class action can be certified and that the relief granted to 23(b)(2) class is "final injunctive relief." That course of events is sensible given that courts have concluded that "discovery is necessary to resolve issues such as class certification." *Cleveland v. Nextmarvel, Inc.*, No. CV TDC-23-1918, 2024 WL 198212, at *4 (D. Md. Jan. 18, 2024); *see also Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976) ("The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they

are both meaningful and manageable."); *Yates v. Newrez, LLC*, No. 8:21-CV-3044-TDC, 2022 WL 2105933, at *4 (D. Md. June 10, 2022) ("[D]iscovery regarding injuries to class members is relevant even if a class has yet to be certified; in fact, it is often necessary to determine whether a class should be certified."). In other words, in the normal course of events: plaintiffs bring a putative Rule 23(b)(2) class action; plaintiffs must make a showing that the class action meets the requirements of Rule 23(a) and 23(b)(2).[3]

In any event, the varying factual circumstances of members of Plaintiffs' desired class defeat their attempt to satisfy Rule 23(b)(2) and to demonstrate commonality and typicality. Under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that . . . relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or

---

[3] In their Motion, but not in their Class Motion, Plaintiffs make a passing reference—in a footnote—to the concept of "provisional certification" in that this Court "may also grant provisional class certification in order to provide emergency relief" and "tentatively approve[]" a class "prior to final judgment." Mot. at 5 n.4. Plaintiffs make no further argument for why provisional certification is appropriate, however. Defendants submit that the plain text of Rule 23(b)(2) and the rigorous requirements to show class certification—requirements that often require lengthy discovery and extensive factfinding—evince that provisional class actions should not be commonplace. While the Supreme Court recently suggested the availability of provisional certification in *A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025), where it "grant[ed] temporary injunctive relief to preserve [its] jurisdiction," that certification is not available here. *Id.* at 1368; *accord id.* at 1369 ("[T]his Court may properly issue temporary injunctive relief to the putative class in order to preserve our jurisdiction pending appeal."). The injunction sought here, by contrast to the one in *A.A.R.P.*, is not necessary to preserve this Court's jurisdiction. Prior to class certification, putative class members are not parties, and the Supreme Court just explained that injunctions for the purpose of preventing harm to nonparties exceed a court's equitable powers, *CASA,* 2025 WL 1773631, at *15. In the absence of any separate justification for relief—such as the need to secure the Court's jurisdiction—there is no basis for injunctive relief to a putative class. In any event, this Court should also not grant provisional certification because Plaintiffs have failed to meet the requirements of Rule 23. *See, e.g., Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 20-CV-453-LM, 2020 WL 2113642, at *1 (D.N.H. May 4, 2020) ("Provisional certification does not lower the bar with respect to the Rule 23(a) and (b) standards; the court must conduct a rigorous inquiry and satisfy itself that the putative class meets those requirements.").

declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). Under Rule 23(a), meanwhile, Plaintiffs must affirmatively demonstrate that "there are questions or law or fact common to the class," and that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(2)-(3). These requirements operate in part to ensure that Defendants may offer all defenses available as to each and every class member.

But here, members of Plaintiffs' proposed class are differently situated in ways that may be relevant if Defendants do not prevail on their first-line argument. Specifically, Defendants argue that no person covered by the Executive Order is "subject to the jurisdiction" of the United States for purposes of the Fourteenth Amendment and 8 U.S.C. § 1401. *See* Defs.' Opp'n at 13-19. That is because the words "subject to the jurisdiction thereof" refer to an individual's domicile, and, Defendants contend, individuals covered by the Executive Order are not domiciled in the United States. *Id.* at 9-13. But if a court were to accept Defendants' first premise (that birthright citizenship depends on domicile) and not their second (that individuals covered by the Executive Order are *categorically* not domiciled in the United States), then whether different class members are entitled to relief depends upon individualized factual determinations—and attendant legal analysis—regarding their domiciles. On appeal in the First Circuit, the plaintiffs in *New Hampshire Indonesian Community Support* have advanced this as an alternative argument. Appellees' Br. 33, *N.H. Indonesian Cmty. Support v. Trump*, 25-1348 (1st Cir. filed June 9, 2025) ("[E]ven if there were some additional, atextual requirement of domicile, most undocumented families are long-term residents.").

Those divergent factual and legal issues make clear that this is not a case in which the challenged policy "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted). Put another way, the relief that Plaintiffs seek is not "indivisible," *id.*—it can be parceled out to different class members based on their particular circumstances in the form of party-specific injunctions.[4] Those variations within the proposed class also undermine Plaintiffs' assertion of commonality. *See DaSilva v. Border Transfer of MA, Inc*., 296 F. Supp. 3d 389, 398 (D. Mass. 2017) (noting different legal inquiries as to members of a putative class will defeat commonality).

Similarly, those divergent issues of fact and law illustrate why the named class representatives are not "typical" of the class as a whole. Plaintiffs seek to certify a class of: "All children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents." FAC ¶ 104. But the named representatives are not "typical" of a class that varies substantially both as to legal presence and factors regarding domicile. As pled: three plaintiffs have a pending asylum application; another is present in the United States on a tourist visa; another has TPS status; another is on a student visa; another is on an H-1B visa; and another fails to articulate her immigration status. *See id.* ¶¶ 42-49. All of these individuals further suggest a desire to

---

[4] To understand the distinction, take an example (setting aside numerosity or other 23(a) concerns that might arise). Say one resident of a residential neighborhood had begun playing music at an extremely loud volume in the middle of the night. If a neighbor sued, seeking an injunction barring the resident from playing music over a certain decibel after 10 p.m., he might be able to proceed under Rule 23(b)(2) on behalf of a class of neighbors. That is because the injunction he seeks is indivisible—the music-playing resident cannot reduce the volume only as to the plaintiff neighbor, and the "conduct is such that it can be enjoined . . . only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. By contrast, if the offending neighbor had instead been shooting laser beams into several neighbors' front windows, a court could award relief only to the plaintiff neighbor. In that instance, if the plaintiff neighbor wished to proceed in a class action, he would have to meet the requirements of Rule 23(b)(1) or 23(b)(3).

maintain residency in the United States. *See id.* While the Plaintiffs represent a cross-section of non-citizens without LPR status, they still are not "typical" of a class that includes parents who are present in the United States on a tourist visa for a planned one-week stay for the purpose of giving birth (e.g., birth tourists), parents who are present in the United States on a tourist visa for a planned one-week stay and gave birth prematurely and have no intent to ever return to the United States, parents who have been present in the United States on a student visa for a decade, children of all of those groups, and many others. Plaintiffs even seek to represent the interests of parents and children who have left the United States and have no desire to ever seek any of the privileges of American citizenship from Defendants.

For the same reasons, discovery is warranted before this Court certifies a class. Plaintiffs' qualifications to represent a class of enormous size and on a matter of significant consequence consists of just pseudonymous declarations that largely go to the subjective harm the Plaintiffs believe they are experiencing. Decl. of Andrea, ECF No. 97-2; Decl. of Ashley, ECF No. 97-3; Decl. of Juana, ECF No. 97-4; Decl. of Liza, ECF No. 97-5; Decl. of Monica, ECF No. 97-6; Decl. of Niurka, ECF No. 97-7; Decl. of Trinidad Garcia, ECF No. 97-8. Defendants should be permitted to test the veracity of these template declarations and probe the class representatives' immigration statuses, how long they have been present in the United States, and facts related to their demonstrated intention to stay and make the United States their lawful home—all factors that could be relevant to a domicile inquiry—in order to assess whether they satisfy the typicality requirement. Defendants also should be permitted discovery as to the ways in which the class representatives intend to utilize the benefits of American citizenship. *See, e.g., Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) ("[A] district court should defer

decision on class certification issues and allow discovery if the existing record is inadequate for resolving the relevant issues." (cleaned up)).

In addition, Plaintiffs have not met the adequacy prong of Rule 23(a)(4) for the reasons set forth above and because the class representatives seek to proceed pseudonymously. *See, e.g.*, Pls.' Mot. to Allow Additional Pls. to Proceed Under Pseudonyms and Inc. Mem. of P. & A., ECF No. 100.[5] The adequacy requirement of Rule 23 is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining adequacy of representation . . . requires the Court to determine: (1) whether the named plaintiffs . . . have any conflicts of interest with other class members; and (2) whether the named plaintiffs . . . will prosecute the action vigorously on behalf of the entire class." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 150 (D. Md. 2022) (quotation omitted).

The same concerns regarding commonality and typicality likewise defeat the named representatives' adequacy at this second step of the analysis. That is because the named representatives will necessarily have an interest in making only arguments that cover them—and, as explained above, the varying factual and legal arguments regarding domicile could present divergent legal theories across the class. Moreover, the striking thinness of the record on which Plaintiffs seek to proceed highlights their inadequacy as representatives.

---

[5] At the Court's June 30, 2025 status conference, Defendants' counsel noted that Defendants did not object at the time to Plaintiffs proceeding pseudonymously, but that Defendants did have concerns about pseudonymity in the class action context and reserved their right to obtain the identities of the Plaintiffs or to raise objections at a later time. *See* Tr. of June 30, 2025 Hrg. 28:6-12 ("[B]ecause this is . . . a putative class action with class representatives, there may be a need, depending on how this litigation unfolds, for us to be able to identify the named plaintiffs to determine, for example, whether there are adequate representatives or whether their claims are typical of the class that they would like to represent."). Defendants do so now, consistent with Defendants' prior representations that Plaintiffs' decision to proceed pseudonymously may impact this Court's assessment of class certification.

Also as to the first prong, courts have expressed "concerns about the prospect of a pseudonymous plaintiff acting as a class representative." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 649 (D.N.H. 2020). This is because of "the important role class representatives play as the public face of the class action" and because "[p]utative class members have an interest in knowing the identities of all class representatives so that they may assess whether the representatives adequately represent them." *Id.*; *see also J.R. v. Atrium Health, Inc.*, No. 3:24-CV-00382-KDB-SCR, 2024 WL 3032890, at *1 n.4 (W.D.N.C. June 17, 2024) ("[S]ome out-of-circuit courts have not permitted class representatives to proceed pseudonymously in litigation because it hampers the evaluation of the class representatives' ability to represent the entire class."). Pseudonymity thus makes it "unclear how [p]laintiffs [can] satisfy their burden to show adequacy when they are unknown or how they would evaluate potential conflicts with other class members." *Doe (1) v. Univ. of Kan. Hosp. Auth.*, No. 2:25-CV-02200-HLT-TJJ, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025); *see also Sherman v. Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 205-06 (D. Wyo. 2021) (denying motion to proceed under pseudonym and finding that the plaintiff's role as the class representative weighs in favor of an open proceeding); *In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4-5 (E.D. Mo. Apr. 6, 2016) (ruling that plaintiffs could not proceed pseudonymously as class representatives because the class members and public had interest in knowing who was guiding and directing the litigation).

Here, all the class representatives seek to proceed pseudonymously, presenting exactly those concerns—and underscoring that Plaintiffs have failed to meet their burden to affirmatively demonstrate adequacy. Because the named Plaintiffs are proceeding without revealing their identities, members of the class will not be able to evaluate whether the named class representatives actually represent the class's interests. While Plaintiffs assert in their Memorandum in Support of

their Motion for Class Certification that "[e]ach of the class representatives is part of the class and is similarly situated to the rest of the class," Mem. in Supp. of Pls.' Mot. for Class Certification at 12, ECF No. 97-1, it is not possible for the class members to assess that in a void and Plaintiffs have offered no mechanism for class members to ensure that their representatives adequately represent them. Absent any such mechanism, the choice of named Plaintiffs to proceed pseudonymously defeats their assertion of adequate representation and should preclude class certification.

Plaintiffs also err in asking this Court to certify a class that includes "All children who have been born or *will be born* in the United States on or after February 19, 2025 . . . and their parents" who are covered by the Executive Order. FAC ¶ 104 (emphasis added). A person may maintain a suit in federal court, whether as an individual or as a class member, only if he has standing and has the legal capacity to sue. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021). But persons who "will be born"—*i.e.*, persons who have not yet been conceived—lack either standing or capacity to sue. *See id.* at 424 ("[U]nder Article III, a federal court may resolve only 'a real controversy with real impact *on real persons*.'") (emphasis added; citation omitted)). A judicial order resolving the rights of "parties that did not exist" yet at the time of the decision would raise "significant questions under the Due Process Clause." *McLaughlin Chiropractic Assoc's v. McKesson Corp.*, --- S. Ct. ---, 2025 WL 1716136, at *8 n.5 (U.S. June 20, 2025). The interests of a person who does not yet exist also cannot be "fairly and adequately protect[ed]," Fed. R. Civ. P. 23(a)(4), given the person's inability to monitor or participate in the litigation.

## IV.   This Court Should Stay Any Preliminary Injunction Pending Appeal and A Bond Should Be Required.

If this Court does enter a preliminary injunction, it should nonetheless stay that order pending any appeal authorized by the Solicitor General. The stay factors are: "(1) whether the stay

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). For the reasons explained above, the Government is likely to prevail on the merits, Plaintiffs cannot demonstrate irreparable injury, and the remaining equitable factors favor the Government.

The Supreme Court has already partially stayed this Court's previous nationwide preliminary injunctions, recognizing the problem of court orders remedying alleged injuries of non-plaintiffs. *CASA*, 2025 WL 1773631, at *15. Any class-wide relief granting a preliminary injunction to non-plaintiffs would likewise warrant a stay pending appeal. At a minimum, Defendants request an administrative stay of at least seven days to permit emergency appellate litigation from this Court's denial of Defendants' motion of a stay pending appeal.

Finally, if the Court enters a preliminary injunction, Defendants are entitled to a bond pursuant to Fed. R. Civ. P 65(c). Under that rule, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The proposed preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to them. The cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: July 7, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

EREK L. BARRON
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

*s/ Yuri S. Fuchs*
R. CHARLIE MERRITT
YURI S. FUCHS (CA Bar No. 300379)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-598-3869
Fax: 202-616-8460
Email: yuri.s.fuchs@usdoj.gov

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant U.S. Attorney, District of Maryland
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
(410) 209-4855

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 7, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Yuri S. Fuchs
Yuri S. Fuchs