## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CASA, INC. *et al.*,

        *Plaintiffs*,

   v.

DONALD J. TRUMP *et al.*,

        *Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

## **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR EMERGENCY MOTION FOR A CLASS-WIDE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.    The Court Has Jurisdiction to Enter the Requested Relief ................................ 1

II.   An Injunction Is Necessary to Prevent Irreparable Harm to Members of the Class ........ 5

III.  The Court May Grant Class-Wide Preliminary Injunctive Relief Before Certifying a Class ................................................................................................ 6

IV.   The Court Can—and Should—Certify a Class ............................................... 7

V.    Neither a Stay Nor a Bond Is Warranted ...................................................... 15

CONCLUSION ................................................................................................................. 15

## INTRODUCTION

This Court has already held that Plaintiffs "easily have met the standard for a preliminary injunction." Mem. Op. Granting Prelim. Inj. 2, ECF 65 ("PI Op."). Executive Order No. 14,160, which purports to deny birthright citizenship to many children born in the United States to immigrant parents, violates the Citizenship Clause of the Fourteenth Amendment. *Id.* at 11. If allowed to go into effect, the Executive Order will cause immediate irreparable harm. *Id.* at 28. In seeking a partial stay from the Supreme Court, Defendants did not challenge any of those conclusions on the merits, and Defendants provide no reason for the Court to revisit them now.

The Supreme Court has clarified that the proper vehicle for seeking broad preliminary injunctive relief against a facially unconstitutional government policy is through a class action. *See Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *9-*10 (U.S. June 27, 2025). Plaintiffs have therefore filed an amended complaint containing class-action allegations, and now seek interim relief on behalf of the putative class. This Court has jurisdiction over these class claims and should "issue temporary injunctive relief to the putative class" in order to "preserve the relative positions of the parties" and to "prevent irreparable harm." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368-69 (2025) (internal quotation marks omitted). The Court may do so without provisionally certifying the class. But in any event, Plaintiffs have met all requirements of Rule 23, and certification is warranted. The motion for class-wide relief should be granted.

## ARGUMENT

### I.    The Court Has Jurisdiction to Enter the Requested Relief

This Court has power to issue the requested injunctive relief, notwithstanding Defendants' pending interlocutory appeal. An appeal "divests the district court of its control" over only the "aspects of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023)

1

(quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025). Because the appeal does not involve Plaintiffs' motions for class certification and for class-wide relief, the appeal does not divest this Court of jurisdiction to grant those motions. And even if Defendants were correct that Plaintiffs' motion is the "functional equivalent" of seeking to modify the injunction involved in the appeal, Defs.' Opp'n to Pls.' Emergency Mot. for Class-Wide TRO and Prelim. Inj. 8, ECF 106 ("Opp."), this Court would still have jurisdiction to preserve the status quo between the parties, as Defendants concede, *id.* at 7-8.

First, Plaintiffs' amended complaint, motion for class certification, and motion for class-wide injunctive relief implicate different "aspects of the case" than those involved in the pending appeal from the preliminary injunction issued to the individual and associational plaintiffs. Unlike an appeal from a final judgment, which can divest the district court of jurisdiction over the entire case, district court proceedings may generally proceed during an appeal from a preliminary injunction. It is well-established that "an interlocutory injunction appeal under § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." 16 Wright and Miller's Federal Practice and Procedure § 3921.2 (3d ed. 2025); *see Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 301 (4th Cir. 2000). Indeed, while an appeal from an interlocutory injunction order is pending, "[t]he case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken, unless otherwise specially ordered." *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906).

This Court has jurisdiction to decide Plaintiffs' pending motion for class-wide relief because it involves a different aspect of the case than the prior injunction did. Whereas the prior injunction concerned preliminary relief for the individual and associational Plaintiffs based on the

2

claims set forth in the original complaint, the pending motion seeks class-wide relief on behalf of a putative class identified in the amended complaint. The question of whether to grant interim injunctive relief to the putative class is thus separate from the initial preliminary injunction issued to the individual and associational plaintiffs.

Defendants point out that "Plaintiffs' newly filed motion seeks to challenge the same Executive Order and seeks an equivalent scope of relief as their prior preliminary injunction." Opp. 8. But the fact that Plaintiffs' request for class-wide relief involves the same underlying constitutional and statutory claims as the pending preliminary injunction appeal does not alter the jurisdictional analysis. During an interlocutory appeal, district courts may proceed with a case even as to matters that are "practically identical" to those on appeal. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 233 (5th Cir. 2009) (holding that appeal from class-certification denial did not divest district court of jurisdiction to resolve merits, even where the underlying issues were the same); *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, No. PWG-14-3551, 2016 WL 6167914, at *4 (D. Md. Oct. 24, 2016) (holding that an "appeal of [the Court's] preliminary injunction order does not divest this Court of jurisdiction" to decide a motion for summary judgment), *aff'd*, 884 F.3d 463 (4th Cir. 2018). The Court thus has jurisdiction to resolve Plaintiffs' motion for class-wide relief, notwithstanding the pending appeal.

Even if Defendants were correct that Plaintiffs' motion for class-wide relief is "equivalent" to a modification of the prior injunction, Opp. 8, the Court would still have jurisdiction to grant additional injunctive relief to preserve the status quo pending resolution of the appeal. "Undoubtedly, after appeal the trial court may, if the purposes of justice require, preserve the status quo until decision by the appellate court." *Newton v. Consol. Gas Co. of N.Y.*, 258 U.S. 165, 177

3

(1922); *see also Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo."). The "power undoubtedly exists" for the district court "to order a continuance of the status quo until a decision should be made by the appellate court." *Hovey v. McDonald*, 109 U.S. 150, 161 (1883); *see Universitas Educ., LLC v. Avon Cap.*, LLC, 124 F.4th 1231, 1242 (10th Cir. 2024) ("Limited residual authority to maintain the status quo during an appeal is deeply rooted in our jurisprudence."). The Federal Rules of Civil Procedure carry forward this equitable tradition by permitting a court to "suspend, modify, restore, or grant an injunction" while an appeal from an interlocutory order granting an injunction is pending. Fed. R. Civ. P. 62(d).

Granting additional injunctive relief to the putative class would preserve the status quo in multiple respects. First, as this Court previously recognized, a preliminary injunction covering everyone who is subject to the Executive Order is necessary to preserve the "law and tradition of our country" that "virtually every baby born on U.S. soil is a U.S. citizen upon birth." PI Op. 30. Class-wide relief would ensure that tradition, which has lasted for more than a century, "will remain the status quo pending the resolution of this case." *Id.* Second, a class-wide injunction would "preserve the status quo as of the time of appeal." *Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623, 625 (2d Cir. 1962). At the time the appeal was filed, this Court had issued a universal injunction barring enforcement of the Executive Order against anyone. Although the Supreme Court has since limited federal courts' equitable authority to issue such injunctions under the Judiciary Act of 1789, the Supreme Court recognized that class actions are an alternative vehicle for seeking similarly broad relief. *See CASA*, 2025 WL 1773631, at *9-*10; *see also id.* at *21 (Kavanaugh, J., concurring) (noting that a court may "grant or deny the functional equivalent of a universal injunction . . . by granting or denying a preliminary injunction to a putative nationwide

4

class under Rule 23(b)(2)"). Granting interim relief to all members of the putative class would restore the status quo at the time the appeal was filed by again blocking enforcement of the Executive Order as to anyone. Additional relief would also be "in aid of the appeal," *Doe v. Pub. Citizen*, 749 F.3d 246, 259 (4th Cir. 2014), because it would allow the Fourth Circuit to address the merits of the pending appeal without having to sort out issues related to the scope of relief in the wake of the Supreme Court's decision. This Court thus has jurisdiction to enter class-wide relief to preserve the status quo.[1]

## II.    An Injunction Is Necessary to Prevent Irreparable Harm to Members of the Class

This Court has already held that the Executive Order "contradicts the plain language of the Fourteenth Amendment and conflicts with 125-year-old binding Supreme Court precedent." PI Op. 11. The Court also concluded that "[t]he denial of the precious right to citizenship for any period of time will cause [Plaintiffs] irreparable harm." *Id.* at 28. And the Court determined that the balance of equities and public interest likewise "weigh very strongly" in Plaintiffs' favor. *Id.* at 30. The Court therefore concluded that Plaintiffs "easily have met the standard for a preliminary injunction." *Id.* at 2. Defendants did not challenge any of that analysis when seeking a partial stay of the injunction from the Supreme Court, *see* Tr. of June 30, 2025, Hr'g 5:7-13, and they provide no basis for this Court to revisit its reasons for granting the first preliminary injunction now. Defendants' political rhetoric about "incentive[s] for illegal immigration," Opp. 1, cannot override the text of the Constitution and over a century of binding precedent.

Defendants also suggest, for the first time in this litigation, that the individual Plaintiffs

---

[1] Even if the Court were to conclude that Plaintiffs' motion seeks "relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," the Court still has jurisdiction to enter an indicative ruling stating how it would decide the motion "if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1. The Fourth Circuit could then enter a limited remand for this Court to enter class-wide relief, while otherwise maintaining jurisdiction over the appeal. Fed. R. App. P. 12.1(b).

lack standing. Opp. 10. That directly conflicts with the Supreme Court's decision. *See CASA*, 2025 WL 1773631, at *4 n.2 ("The Government does not dispute—nor could it—that the individual plaintiffs have standing to sue."). And it is wrong. The Executive Order injures Plaintiffs by depriving their newborn babies of citizenship, a concrete harm that represents "the total destruction of the individual's status in organized society" and "a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). Without citizenship, babies may face statelessness, removal from the country, and deprivation of benefits. Under longstanding precedent, Plaintiffs may challenge the legality of the Executive Order by suing the officers responsible for enforcing it, who are explicitly identified in the Order itself. *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996); *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring).

In addition to those legal errors, Defendants also misstate the relevant facts. For instance, Defendants claim that Plaintiffs fail to "allege that any of the Plaintiffs or their children will seek passports." Opp. 10. That is simply false: multiple Plaintiffs stated in their declarations that they intend to obtain passports for their children as soon as possible. *See* Monica Decl. ¶ 11, ECF 97-6 (stating that she and her husband "want to get [their] child a U.S. passport and proof of U.S. citizenship as soon as possible"); Trinidad Garcia Decl. ¶ 11, ECF 97-8 (stating that she and her husband "want [their] child to receive a U.S. passport and proof of U.S. citizenship as soon as they are born"). Plaintiffs have standing, and for the reasons the Court previously explained, they are entitled to a preliminary injunction on the merits.

### III. The Court May Grant Class-Wide Preliminary Injunctive Relief Before Certifying a Class

The Court need not certify a class in order to grant class-wide relief. It is well-established

that "a court may issue a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion or in conjunction with it." 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:30 (6th ed. 2025) ("Newberg");[2] *accord, e.g.*, *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019) ("[C]ourts may enter class-wide injunctive relief before certification of a class."); *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 607032, at *5 n.7 (D. Md. Feb. 7, 2020) (granting preliminary injunction to members of a proposed class). The Supreme Court's *A.A.R.P.* decision confirmed that "courts may issue temporary relief to a putative class," and that courts "need not decide whether a class should be certified . . . in order to temporarily enjoin the Government" from irreparably harming "putative class members." *A.A.R.P.*, 145 S. Ct. at 1369; *see also id.* at n.1 (noting that district court had denied class certification but granting class-wide relief anyway). The Supreme Court's *A.A.R.P.* holding applies here.[3]

## IV. The Court Can—and Should—Certify a Class

Although the Court may grant class-wide preliminary injunctive relief before determining whether to certify a class, Plaintiffs readily satisfy all of the requirements of Rule 23(a) and (b)(2), and provisional certification at this juncture would thus be appropriate. Defendants' arguments to the contrary do not withstand scrutiny.

<u>Commonality</u>. "[T]he commonality requirement is not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common

---

[2] Courts routinely rely on the Newberg treatise. *E.g.*, *A.A.R.P.*, 145 S. Ct. at 1369; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n.13, 834, 836 n.16 (1999).

[3] Defendants assert that *A.A.R.P.*'s authorization of putative class-wide injunctive relief is limited to situations where such an injunction is needed to preserve the Court's jurisdiction. Opp. 14 n.3. The *A.A.R.P.* decision noted that its injunction was appropriate "to prevent irreparable harm to the applicants and to preserve [the Court's] jurisdiction over the matter." 145 S. Ct. at 1369. But the Supreme Court did not suggest that preservation of jurisdiction is the only reason an injunction could ever be given to a putative class, and the Supreme Court's statement that courts may "issue temporary relief to a putative class" did not include any such limitation. *Id.*

7

across all class members and is thus easily met in most cases." 1 Newberg § 3:18. Plaintiffs "need only demonstrate one common question of sufficient importance to satisfy Rule 23(a)(2)," *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014), and Plaintiffs have identified several. Class Mot. 11. Defendants do not deny this, and their arguments fail on this basis alone.

Defendants argue that *if* the Court were to *adopt* their domicile-based test for birthright citizenship, but then *reject* their argument that no class members are domiciled in the United States, factual differences between members of the class "may be relevant." Opp. 15. In that scenario, Defendants posit, a more detailed inquiry could be needed to assess class members' citizenship. *Id*. This argument misunderstands how class actions work. Rule 23(a) does not require every conceivable question that might arise in the litigation to be common. All that is required is one "common contention" that is "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) (explaining that Rule 23(a)(2) "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist"), *aff'd*, 6 F.3d 177 (4th Cir. 1993). Here, Plaintiffs' contention that domicile is irrelevant to birthright citizenship is common to the class and amenable to class-wide resolution. And if Plaintiffs are correct—as this Court has already held, PI Op. 18-19—then differences in class members' domicile make no difference. Because Plaintiffs claim that the Executive Order is facially unconstitutional, the commonality requirement is satisfied.

Typicality. As with commonality, the hurdle posed by the "threshold requirement[]" of typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). Typicality is satisfied where, as here, the class representatives' and the class members' "claims arise from the Defendants' same conduct."

8

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co*., 28 F.4th 513, 523 (4th Cir. 2022).

Defendants admit that the proposed class representatives "represent a cross-section" of people subject to the Executive Order, but nevertheless complain that the representatives are not typical because they do not represent every possible immigration status or fact pattern present in the class. Opp. 17. But "factual differences will not render a claim atypical if the claim both arises from the same event, practice, or course of conduct that gives rise to the claims of the class members and is based on the same legal theory." 1 Newberg § 3:34; *accord, e.g.*, *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) (finding typicality even though class representatives had already been punished under the law against which they brought a pre-enforcement challenge, unlike "the vast majority of class members"). The class representatives here are typical of every other class member in that they are subject to the same Executive Order, the legality of which does not turn on how it applies to any individual child.

<u>Adequacy of Representation</u>. Defendants raise two objections to the adequacy of the proposed class representatives. First, after not contesting the class representatives' requests to proceed using pseudonyms, *see* Tr. of June 30, 2025, Hr'g 27:20-28:15, Defendants now argue that the use of pseudonyms renders them inadequate, Opp. 19. To begin, this is improper; the time for challenging the use of a pseudonym was in opposition to the pseudonym motions. Regardless, pseudonymous plaintiffs frequently serve as class representatives, especially in cases like this where Plaintiffs seek to enjoin a uniform policy that they allege is unlawful in all instances. *E.g.*, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (FLSA collective action); *E.B. v. Landry*, No. CV 19-862, 2020 WL 5775148, at *6 (M.D. La. Sept. 28, 2020); *Doe v. City of Apple Valley*, No. 20-CV-499, 2020 WL 1061442, at *3 (D. Minn. Mar. 5, 2020).

Defendants claim that, without knowing the names of the class representatives, "members

of the class will not be able to evaluate whether the named class representatives actually represent the class's interests." Opp. 19. But all of the cases Defendants cite involved Rule 23(b)(3) classes, where identity of the class representatives is more important because it may inform a class member's choice to opt out of the litigation (an option not available to (b)(2) class members).[4] Defendants fail to explain why the names of the parents would make a difference to anyone in this case, especially given all of the relevant information provided in the class representatives' declarations. Defendants also fail to address Plaintiffs' argument that disclosing the parents' names would likely expose the identities of their babies, whose identities Defendants do not dispute may be kept confidential. *See* Fed. R. Civ. P. 5.2(a)(3); *J.W. v. District of Columbia*, 318 F.R.D. 196, 199 (D.D.C. 2016) (noting that when a parent files on behalf of a child who wishes to stay anonymous, their "privacy interests are intractably intertwined"). Plaintiffs have provided plenty of information about the class representatives for Defendants, the Court, class members, and the public to assess whether they are adequate representatives.

Defendants also speculate that "the named representatives will necessarily have an interest in making only arguments that cover them," and will somehow fail to represent other class members' interests. Opp. 18. This, too, is baseless. As noted above, the proposed class representatives "represent a cross-section" of class members, *id.* at 17, and they have claims that are typical of other people harmed by the Executive Order. Defendants do not explain how the proposed class representatives could advance their own personal interests at the expense of other

---

[4] That is not the only problem with Defendants' case citations. Opp. 19. Some do not stand for the proposition for which they were cited. *J.R. v. Atrium Health, Inc.*, No. 3:24-CV00382-KDB-SCR, 2024 WL 3032890, at *1 n.4 (W.D.N.C. June 17, 2024) (summarizing, but not addressing, an argument made by counsel). None involved litigation brought by a minor. *E.g.*, *Doe (1) v. Univ. of Kan. Hosp. Auth.*, No. 2:25-CV-02200-HLT-TJJ, 2025 WL 1634958, at *4 (D. Kan. June 9, 2025) (noting that the weight of the plaintiff's privacy interest is stronger in litigation involving minors). Indeed, in none of the cases cited by Defendants did the court deny class certification to class representatives who had been permitted to proceed using pseudonyms.

class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." (internal quotation marks and alterations omitted)). In any event, a "merely speculative or hypothetical" divergence of interests is not enough to defeat adequacy. *1988 Tr.*, 28 F.4th at 524 (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)).[5] The named representatives volunteered to serve as class representatives to protect everyone else similarly situated, and they are ready and able to vigorously litigate this case on behalf of all. Rule 23(a)'s requirements are met.

Rule 23(b)(2). Defendants also dispute that Plaintiffs' proposed class can proceed under Fed. R. Civ. P. 23(b)(2). *See* Opp. 14-15. This argument is meritless. Rule 23(b)(2) allows for a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." That describes this case perfectly: Defendants have adopted a facially unlawful policy that applies generally to the class, and an injunction against the policy is appropriate for the class as a whole. Indeed, "in no opinion published in the twenty-first century, even after *Wal-Mart*, has a federal court of appeals ruled against plaintiffs on Rule 23(b)(2) grounds in a case challenging a uniform, across-the-board policy." David Marcus, *The Class Action After* Trump v. Casa, 73 UCLA L. Rev. Discourse (forthcoming 2025) (manuscript at 10) (emphasis removed), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5341543. Rule 23(b)(2) was created with such challenges to government policies in mind. *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019) ("A principal purpose of Rule 23(b)(2) class actions is to enable class

---

[5] Should developments in the case render one or more class representatives inadequate, the Court may direct Plaintiffs to identify new representatives. Manual Complex Litigation § 21.26 (4th ed. 2004). Plaintiffs stand ready to do so if needed. Indeed, people interested in joining the class action have been reaching out to Plaintiffs' counsel on a daily basis.

resolution of civil-rights claims alleging classwide deprivations of protected rights.").

Defendants argue that "divergent factual and legal issues make clear that this is not a case in which the challenged policy 'can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" Opp. 16 (quoting *Wal-Mart*, 564 U.S. at 360). But all Rule 23(b)(2) requires is that "the class members' injuries must be sufficiently similar that they can be addressed in a[] single injunction that need not differentiate between class members." *Shook v. Bd. of Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (Gorsuch, J.). If Plaintiffs prevail—as this Court and every other court to consider the question has concluded they likely will—the Court can and should issue permanent injunctive and declaratory relief against the Executive Order as to all of the class members in one fell swoop. In other words, the Court can remedy the harm "by a single classwide order." *Wal-Mart*, 564 U.S. at 361.

Resisting that conclusion, Defendants propose to radically transform class action law to permit a Rule 23(b)(2) class *only* when an injunction sought by a class representative would inherently and necessarily benefit others. Opp. 16. As an example, Defendants describe a nuisance lawsuit against a neighbor who plays loud music. *Id.* at 16 n.4. But the Supreme Court's stay opinion in this case described that exact scenario as the "archetypal case" in which class remedies are *not* needed because, "[t]o afford the plaintiff complete relief, the court has only one feasible option: order the defendant to turn her music down—or better yet, off." *CASA*, 2025 WL 1773631, at *11. Defendants' argument would thus limit Rule 23(b)(2) to situations in which a party-specific remedy would already provide universal relief, such that Rule 23(b)(2) would be a nullity. That is not the law. *E.g.*, *Berry v. Schulman*, 807 F.3d 600, 607, 609 (4th Cir. 2015) (upholding a class-wide settlement allowing each member of the class the right to access and challenge their personal information in defendants' database, describing it as a "paradigmatic Rule 23(b)(2) case").

Timing. Defendants also argue that any decision on class certification should await discovery. Opp. 17. As an initial matter, delaying class-wide injunctive relief until discovery would allow defendants months—perhaps longer—to inflict irreparable harm on the putative class, contrary to the purpose of a preliminary injunction: to protect the parties' interests during litigation until a final judgment can be reached. *See Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025). In any event, pre-certification discovery is unnecessary where, as here, "claims for relief rest on readily available and undisputed facts or raise only issues of law (such as a challenge to the legality of a statute or regulation)." Manual Complex Litigation § 21.14 (4th ed. 2004). Defendants have not contradicted Plaintiffs' evidence with any of their own—or otherwise provided any basis on which to doubt the truthfulness of Plaintiffs' sworn submissions—and their generic desire to "test the veracity" of Plaintiffs' evidence is not a basis for delaying injunctive relief or class certification.[6]

Scope. Defendants finally object to the scope of the class, arguing that any class certified should be "limited to this judicial district—the State of Maryland." Opp. 11-12. This argument conflicts with substantial binding precedent. "Nothing in Rule 23 . . . limits the geographical scope of a class action that is brought in conformity with that Rule." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "Nor is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Id.*; *see also* CASA, 2025 WL 1773631, at *4 n.1 ("Even a traditional, parties-only injunction can apply beyond the jurisdiction of the issuing court."). The Executive Order applies across the country, is illegal in all applications, and harms class members everywhere. Both class members and class representatives are spread throughout the country, and

---

[6] Defendants' baseless suggestion that the declarations are "template," Opp. 17, serves no apparent purpose except to impugn the integrity of the declarants and their counsel. The suggestion is readily refuted by the declarations themselves. The declarants tell their own stories, detail the harm that Defendants have inflicted upon them, and explain their interest in the litigation, in their own words.

13

limiting a class to Maryland would arbitrarily exclude most of the class representatives from the class. *E.g.*, Andrea Decl. ¶ 3, ECF 97-2 (Georgia); Ashley Decl. ¶ 8, ECF 97-3 (Washington); Liza Decl. ¶ 5, ECF 97-5 (Texas); Monica Decl. ¶ 3, ECF 97-6 (South Carolina); Niurka Decl. ¶ 4, ECF 97-7 (Florida); Trinidad Garcia Decl. ¶ 3, ECF 97-8 (North Carolina).

Defendants also argue that a class-wide injunction cannot benefit future babies because they lack standing. Opp. 20. But there is nothing improper about having a class that includes future claimants who have not yet been injured. *E.g.*, 5 Moore's Federal Practice – Civil § 23.22 (3d ed. 1997) ("Class-action plaintiffs seeking injunctive or declaratory relief frequently seek to define a class to include people who might be injured in the future."); *see also, e.g.*, *Doe 4 ex rel. Lopez v. Shenandoah Valley Juv. Ctr. Comm'n*, 985 F.3d 327, 335 (4th Cir. 2021) (class definition that included children who "will be detained in the future"). An injunction covering future babies is needed to ensure that newborns are protected immediately upon their birth in the United States.

Defendants suggest that providing class-wide relief in this case would disrupt other pending litigation. Opp. 11. Although there are other lawsuits challenging the Executive Order, including a recently filed lawsuit that also has a pending class-certification motion, *see Barbara v. Trump*, No. 1:25-cv-00244 (D.N.H. filed June 27, 2025),[7] at the time of this filing, no other class has been certified and no class-wide relief has been issued. The possibility that another court *might* act does not negate the imminent harm faced by members of the putative class in *this* case, which warrants the Court's immediate issuance of class-wide relief. Indeed, at the same time Defendants are opposing class certification here because a class might be certified in New Hampshire, they

---

[7] Counsel are aware of two additional putative class actions that are also pending against the Executive Order. First, in *OCA – Asian Pacific American Advocates v. Rubio*, Case No. 1:25-cv-00287 (D.D.C.), the plaintiffs recently filed an amended complaint that adds class allegations, but have not sought class certification. Second, in *Aleman v. Trump*, Case No. 2:25-cv-00127 (W.D. Wash.) (consolidated with *Washington v. Trump*), the individual plaintiffs sought to certify a class of individuals in the State of Washington, but the district court stayed all proceedings and deferred ruling on the motion.

are opposing class certification in New Hampshire because a class might be certified here. *See* Defs.' Br. 17, *Barbara v. Trump*, No. 1:25-cv-00244 (D.N.H. July 3, 2025), ECF 56-1.

In any event, "neither the filing of a class action nor even the grant of a class certification motion has any formal effect on litigation elsewhere," and "multiple courts could, in theory, certify class actions concerning the same events." 3 Newberg § 10:33; *accord, e.g.*, *Planned Parenthood of Maryland, Inc. v. Azar*, No. CV CCB-20-00361, 2020 WL 3893241, at *7 (D. Md. July 10, 2020) (refusing to narrow class despite other pending litigation raising the same issue). If necessary, courts have tools at their disposal to coordinate across districts. Manual Complex Litigation § 21.25 (4th ed. 2004). But what matters now is the need for immediate injunctive relief to protect members of the putative class from irreparable harm.

## V. Neither a Stay Nor a Bond Is Warranted

Defendants also ask the Court to stay any injunctive relief pending appeal and to impose a bond. Opp. 20-21. There is no basis for a preemptive stay of an order that has not yet issued and that may never be appealed. *E.g.*, *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. CV DLB-25-1363, 2025 WL 1585051, at *41 n.25 (D. Md. June 5, 2025). And Defendants make no meaningful attempt to show they have met their burden as to any of the requirements for a stay, which have widespread and devastating effects on class members. *Nken v. Holder*, 556 U.S. 418, 434-35 (2009). Finally, the Court should either not require a bond or require no more than a $1 bond because Defendants have not demonstrated they will sustain any costs from an injunction, and because a higher bond would be inconsistent with the public interest and principles of equity. *See, e.g.*, *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion.

Respectfully submitted this July 9, 2025,

/s/Joseph W. Mead

Conchita Cruz*
Jessica Hanson*
Zachary Manfredi*
Dorothy Tegeler*
Leidy Perez*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asylumadvocacy.org
zachary.manfredi@asylumadvocacy.org
jessica.hanson@asylumadvocacy.org
dorothy.tegeler@asylumadvocacy.org
leidy.perez@asylumadvocacy.org

Joseph W. Mead (D. Md. 22335)
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
William Powell*
Alexandra Lichtenstein*
Gregory Briker*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
  AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
jm3468@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
whp25@georgetown.edu
arl48@georgetown.edu
gb954@georgetown.edu

*Attorneys for Plaintiffs*

*Admitted pro hac vice.*

16