**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC., *et al.*,                           *

    Plaintiffs,                              *

v.                                                    *                    Civ. No. DLB-25-201

DONALD J. TRUMP, *et al.*,                *

    Defendants.                            *

**<u>MEMORANDUM OPINION</u>**

The Court has certified a class action on behalf of children born, or who will be born, on U.S. soil who have been targeted by an Executive Order that seeks to deny them birthright citizenship. The plaintiffs allege that the Executive Order violates the Fourteenth Amendment to the U.S. Constitution and the Immigration and Nationality Act, 8 U.S.C. § 1401. They seek preliminary injunctive relief. Until the merits of the class's claims are resolved, the Court enjoins the enforcement of the Executive Order against the class because the plaintiffs are highly likely to succeed on their claims, the class will be irreparably harmed if the Executive Order takes effect, and the balance of the equities and public interest weigh in favor of an injunction. The preliminary injunction applies to all members of the certified class across the country.

> **I.**    **The Citizenship Executive Order**

The Citizenship Clause of the Fourteenth Amendment states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.

U.S. Const. amend. XIV, § 1, cl. 1.

On January 20, 2025, the President signed Executive Order 14,160, "Protecting the Meaning and Value of American Citizenship" (the "Executive Order"), which purports to interpret the clause "subject to the jurisdiction thereof" in the Fourteenth Amendment.

In § 1 of the Executive Order, titled "Purpose," the Order explains that "[t]he Fourteenth Amendment has always excluded from birthright citizenship persons who were born in the United States but not 'subject to the jurisdiction thereof.'" Exec. Order § 1. Section 1 continues:

> Among the categories of individuals born in the United States and not subject to the jurisdiction thereof, the privilege of United States citizenship does not automatically extend to persons born in the United States: (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Id.*

Section 2 of the Executive Order establishes the policy of the United States government. *Id.* § 2. Under § 2, no federal department or agency "shall issue documents recognizing United States citizenship" or "accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship" of such a person. *Id.* § 2(a). The policy applies only to persons who are born in the United States after February 19, 2025. *Id.* § 2(b).

Section 3 of the Executive Order discusses enforcement. *Id.* § 3. It instructs the Secretary of the U.S. Department of State, the U.S. Attorney General, the Secretary of the U.S. Department of Homeland Security, and the Commissioner of the Social Security Administration to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order" and to ensure that their agencies' officers, employees, and agents act in accordance with the Executive Order. *Id.* § 3(a). It also instructs the heads of executive departments and agencies to issue public guidance regarding their implementation of the Executive Order within 30 days of its issuance. *Id.* § 3(b).

## II.       The Lawsuit

On January 21, 2025, CASA, Inc. and Asylum Seeker Advocacy Project, Inc. ("ASAP")—two nonprofit organizations that provide services to immigrants—and five pregnant women without permanent immigration status who expected to give birth in the United States in the coming months sued President Trump, the Secretary of the U.S. Department of State, the U.S. Attorney General, the Secretary of the U.S. Department of Homeland Security ("DHS"), the Director of U.S. Citizenship and Immigration Services ("USCIS"), the Commissioner of the Social Security Administration, and the United States of America. ECF 1, ¶¶ 50–56. CASA and ASAP are voluntary membership-based immigrants' rights organizations with members in every state. *Id.* ¶¶ 19, 31. CASA helps its members access public benefits and provides legal consultations for its members, including on immigration matters. *Id.* ¶¶ 19–25. ASAP provides its members with community and legal support and advocates for systemic reforms based on member-identified priorities. *Id.* ¶ 32. The plaintiffs claimed that the Executive Order violates the Fourteenth Amendment, *id.* ¶¶ 101–08, and the Immigration and Nationality Act ("INA"), *id.* ¶¶ 109–14. They sought declaratory and injunctive relief. *Id.* at 37–38. The same day they filed their complaint, the plaintiffs moved for a temporary restraining order and a preliminary injunction. ECF 2.

On February 5, 2025, the Court entered a nationwide preliminary injunction enjoining the enforcement of the Executive Order throughout the United States. *CASA, Inc. v. Trump*, 763 F. Supp. 3d 723 (D. Md. 2025)*.* The defendants appealed to the United States Court of Appeals for the Fourth Circuit and sought to stay the injunction's nationwide application. This Court and the Fourth Circuit denied the stay requests. *See CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 545840, at *2 (D. Md. Feb. 18, 2025); *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025). Meanwhile, two other district courts also granted universal injunctions

against the Executive Order. *See Washington v. Trump*, 765 F. Supp. 3d 1142, 1154 (W.D. Wash. 2025), *aff'd*, No. 25-807, 2025 WL 2061447 (9th Cir. July 23, 2025); *Doe v. Trump*, 766 F. Supp. 3d 266, 288–90 (D. Mass. 2025), *appeal pending*, No. 25-1170 (1st Cir.). Like the Fourth Circuit, the Court of Appeals for the Ninth Circuit refused to stay the injunction's nationwide application. *Washington v. Trump*, No. 25-807, 2025 WL 553485, at *1 (9th Cir. Feb. 19, 2025). The Court of Appeals for the First Circuit denied the government's request to stay the injunction pending appeal. *New Jersey v. Trump*, 131 F.4th 27, 33, 44 (1st Cir. 2025). The government petitioned the Supreme Court to stay the nationwide application of each injunction. The Supreme Court consolidated the government's stay applications. *Trump v. CASA, Inc.*, 145 S. Ct. 1917 (2025) (mem.).

On June 27, 2025, the Supreme Court granted the partial stays:

> The Government's applications to partially stay the preliminary injunctions are granted, but only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue. The lower courts shall move expeditiously to ensure that, with respect to each plaintiff, the injunctions comport with this rule and otherwise comply with principles of equity. The injunctions are also stayed to the extent that they prohibit executive agencies from developing and issuing public guidance about the Executive's plans to implement the Executive Order. Consistent with the Solicitor General's representation, § 2 of the Executive Order shall not take effect until 30 days after the date of this opinion.

*Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562–63 (2025).

The Supreme Court held that, "[b]ecause the universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at 2554 (footnote and citation omitted). Having eliminated universal injunctions, the Supreme Court noted another possible avenue for plaintiffs to obtain broad preliminary injunctive relief: class actions under Federal Rule of Civil Procedure 23. *Id.* at 2555 ("The [English] bill of peace lives in modern form, but not as the universal injunction. It evolved into the modern class action, which is governed in federal court by Rule 23 of the Federal Rules of Civil Procedure." (citations omitted)).

4

Immediately after the Supreme Court's decision came down, the plaintiffs filed an amended class action complaint, ECF 96, a motion to certify a nationwide class of children and parents harmed by the Executive Order, ECF 97, and an emergency motion for a classwide temporary restraining order and preliminary injunction, ECF 98. The government opposed the motion for a temporary restraining order and preliminary injunction, ECF 106, and the plaintiffs filed a reply, ECF 107.

In the amended class action complaint, the plaintiffs are CASA, ASAP, and eight individual plaintiffs: Maribel, Juana, Trinidad Garcia, Monica, individually and as next friends to their respective future children; Liza, individually and as next friend to L.B.; Ashley, individually and as next friend to K.K.; Andrea, individually and as next friend to E.T.P.; and Niurka, individually and as next friend to L.G.[1] ECF 96, ¶¶ 20–49. The individual plaintiffs are members of CASA or ASAP with either no lawful immigration status or temporary immigration status. *Id.* ¶¶ 42–49. They are either pregnant or gave birth to a baby in the United States after February 19, 2025. *Id.*

Seven of the eight individual plaintiffs bring their claims as class representatives, on behalf of themselves, their children and future children, and all parents and children similarly situated. *Id.* ¶ 9. The plaintiffs allege that the "[t]he Executive Order purports to deny these babies their constitutionally and statutorily guaranteed United States citizenship." *Id.* They claim the Executive Order violates the Fourteenth Amendment and the INA. *Id.* ¶¶ 113–25. They seek a declaration that the Executive Order violates the Fourteenth Amendment and the INA, both facially and as applied to the plaintiffs and all class members. *Id.* at 41. They also seek a permanent injunction enjoining the defendants "from enforcing the Executive Order, or taking any other action that fails

---

[1] The Court has allowed the plaintiffs to proceed pseudonymously.

to recognize citizenship to individuals born within the United States to noncitizens covered by the Executive Order." *Id.*

On July 16, 2025, the Court found that the then-pending appeal of its February 5, 2025 preliminary injunction divested the Court of jurisdiction over the plaintiffs' motion for a classwide preliminary injunction. *See CASA, Inc. v. Trump*, No. DLB-25-201, 2025 WL 1952521 (D. Md. July 16, 2025). The Court issued an indicative ruling that it would grant the motion for classwide preliminary injunctive relief if the Fourth Circuit were to remand for the limited purpose of allowing the Court to rule on the motion. *Id.* at *6. On July 29, the Fourth Circuit dismissed the appeal and remanded the case to "allow the district court to comport expeditiously with the Supreme Court's directions in *CASA*, ensuring that any injunction complies with that decision" and to "allow for an immediate ruling on the plaintiffs' motion for class-wide relief, so that appellate review of the merits of that relief can come sooner rather than later." *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 2141296, at *1 (4th Cir. July 29, 2025). In light of the Fourth Circuit's dismissal of the appeal, the parties jointly requested that the Court vacate the February 5, 2025 preliminary injunction if the Court grants a classwide preliminary injunction. ECF 127.

Earlier today, the Court granted the plaintiffs' motion for class certification and certified the following class:

> Any child who has been born or will be born in the United States after February 19, 2025, (1) whose mother was unlawfully present in the United States and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) whose mother's presence in the United States at the time of said person's birth was lawful but temporary and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth.

The class representatives are Juana, Trinidad Garcia, Monica, as next friends to their future children; Liza, as next friend to L.B.; Ashley, as next friend to K.K.; Andrea, as next friend to E.T.P.; and Niurka, as next friend to L.G. Their claims are the claims of the children.

Now that the Court has jurisdiction over the motion for a classwide preliminary injunction, the Court grants it. The enforcement of the Executive Order is enjoined as to the class.

## III.    Standing

Before addressing the merits, the Court disposes of the defendants' argument that the plaintiffs do not have standing.

Article III of the Constitution extends the "judicial Power" of the federal courts only to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). There is a case or controversy only if the plaintiff has standing to assert their claim. *TransUnion*, 594 U.S. at 423. To establish standing, a plaintiff must show "(1) that [they] suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiffs must "'demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion*, 594 U.S. at 431); *see also Disability Rights S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) ("[T]he standing inquiry must be evaluated separately as to each defendant."). The plaintiffs "must demonstrate standing 'with the manner and degree of evidence' required at the relevant 'stage[ ] of the litigation.'" *Fernandez*, 116 F.4th at 295 (alteration in original) (quoting *Lujan*, 504 U.S. at 561). At this stage, that means they "must make a 'clear showing' that [they are] 'likely' to establish each element of standing." *See Murthy*, 603 U.S. at 58 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

The class representatives—the same women who first brought individual claims against the defendants—have standing to sue on behalf of their children. The defendants wisely did not dispute the individual plaintiffs' standing during the first round of briefing on the preliminary injunction or on appeal. And even though standing was not an issue before the Supreme Court, it, too, agreed that the individual plaintiffs have standing to sue. *See CASA*, 145 S. Ct. at 2549 n.2 ("The Government does not dispute—nor could it—that the individual plaintiffs have standing to sue.").

The class representatives' injury—the denial of birthright citizenship—is concrete, particularized, and imminent, and the class members—children whom the Executive Order strips of citizenship—suffer the same injury.[2]

The denial of this constitutional right is directly traceable to the Executive Order, which proclaims that "the privilege of United States citizenship does not automatically extend to" the children subject to the Executive Order. *See* Exec. Order § 1. The Executive Order is not self-executing. It instructs the Secretary of State, the Attorney General of the United States, the Secretary of DHS, and the Commissioner of Social Security to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order" and that their agencies' officers, employees, and agents act in accordance with the Executive Order. *Id.* § 3(a). The role these agencies will play in executing the Executive Order is described in the amended complaint. The Secretary of State "exercis[es] the power of the head of

---

[2] The defendants argue that the plaintiffs do not have standing because they do not allege that they "will seek passports, SNAP benefits, or social security benefits while this litigation is pending." ECF 106, at 12. The plaintiffs do not need to allege that they will seek passports or other benefits for their U.S.-born children to establish standing, but some of them have. *See* ECF 97-6 (Monica Decl.) ¶ 11 (stating that she and her husband "want our child to receive a U.S. passport and proof of U.S. citizenship as soon as they are born"); ECF 97-8 (Trinidad Garcia Decl.) ¶ 11 (same).

the federal agency responsible for, among other things, issuing passports to U.S. citizens." ECF 96, ¶ 51. The Attorney General "is the chief law enforcement officer of the federal government" and "is responsible for adjudicating immigration cases." *Id.* ¶ 52. The Secretary of the DHS "is the official exercising the power of the head of the federal agency responsible for, among other things, naturalization of potential U.S. citizens and enforcement of immigration laws against those in the country without authorization." *Id.* ¶ 53. The Director of USCIS "is the official exercising the power of the head of the federal sub-agency within DHS responsible for, among other things, granting applications for naturalization." *Id.* ¶ 54. And the Commissioner of the Social Security Administration "is the official exercising the power of the head of the federal agency responsible for, among other things, issuing Social Security Numbers." *Id.* ¶ 55. An injunction enjoining these agency defendants from enforcing the Executive Order as to the class members will redress their injury.

The class representatives and class members have standing for each claim against each defendant.[3]

---

[3] The plaintiffs also name the President as a defendant. Even if they have standing to sue the President, that does not mean they are entitled to a preliminary injunction enjoining the President. "[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (quoting *Mississippi v. Johnson*, 4 Wall. 475, 501 (1867)); *see also Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir.), *as amended* (June 15, 2017) (lifting injunction as to the President because of the "Supreme Court's clear warning" that relief against the President "should be ordered only in the rarest of circumstances" (citing *Franklin*, 505 U.S. at 802–03)), *vacated and remanded on other grounds sub nom. Trump v. Int'l Refugee Assistance*, 583 U.S. 912 (2017). And typically, an injunction enjoining the officers who enforce a presidential directive will redress a plaintiff's injury. *See Franklin*, 505 U.S. at 803 (declining to "decide whether injunctive relief against the President was appropriate," because "the injury alleged is likely to be redressed by declaratory relief against the Secretary [of Commerce] alone"); *id.* at 828 (Scalia, J., concurring in part and concurring in the judgment) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive."); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. 1996) ("In most cases, . . . the injury at issue can be rectified by injunctive relief against subordinate officials."). The plaintiffs do not address the

## IV.    Classwide Preliminary Injunction

The plaintiffs move for a preliminary injunction that bans the enforcement of the Executive Order as to all members of the certified class during this litigation. The plaintiffs are entitled to the relief they seek.

To obtain a preliminary injunction, a plaintiff must establish four factors: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors them; and (4) that an injunction is in the public interest. *See Frazier v. Prince George's County*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter*, 555 U.S. at 20). All four factors must be satisfied to obtain a preliminary injunction. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Both parties' briefing on the *Winter* factors is sparse and largely incorporates their arguments from the first round of briefing on the initial preliminary injunction. Following the parties' lead, this Court, too, relies largely on the reasons it granted the first preliminary injunction.

### A. Likelihood of Success on the Merits

The plaintiffs are likely to succeed on the merits of their constitutional claim. The plaintiffs include the same individuals who first filed suit, and they reassert the same claims in their amended class action complaint. As the Court previously held, the plaintiffs were extremely likely to succeed on their claim that the Executive Order violates the Fourteenth Amendment. *See CASA*, 763 F. Supp. 3d at 732–43 (discussing likelihood of success and concluding that "[t]he plaintiffs

---

defendants' argument that the Court lacks the authority to enjoin the President. The Court does not enjoin the President. Enjoining the defendant agencies from enforcing the Executive Order redresses the class members' injury.

have shown an extremely strong likelihood that they will succeed on the merits of their constitutional claim"). Every court to have considered the same question has agreed that the Executive Order likely violates the Fourteenth Amendment. *See, e.g.*, *N.H. Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 109 (D.N.H. 2025) ("As to plaintiffs' constitutional claim, the Executive Order contradicts the text of the Fourteenth Amendment and the century-old untouched precedent that interprets it."); *Washington*, 765 F. Supp. 3d at 1152 ("Ultimately, the Government's position is unavailing and untenable. It does not have the text or precedent to support its interpretation of the Citizenship Clause. And it rehashes losing arguments from over a century ago." (citing *United States v. Wong Kim Ark*, 169 U.S. 649, 705–32 (1898) (Fuller, C.J., dissenting))); *Doe*, 766 F. Supp. 3d at 285 ("[T]he Court finds the plaintiffs are exceedingly likely to prevail on the merits of their constitutional and statutory claims."); *Barbara v. Trump*, No. 25-244, 2025 WL 1904338, at *14 (D.N.H. July 10, 2025) ("The Executive Order likely violates the Fourteenth Amendment of the Constitution and 8 U.S.C. § 1401."); *Washington v. Trump*, No. 25-807, 2025 WL 2061447, at *14 (9th Cir. July 23, 2025) ("The plain text and ordinary meaning of the Fourteenth Amendment, controlling precedent interpreting the Citizenship Clause, drafting history, and most post-ratification public understanding weigh in favor of Plaintiffs' interpretation of the Citizenship Clause. For that reason, we conclude that Plaintiffs are likely to succeed on the merits of their claim that the Executive Order violates the Citizenship Clause by denying citizenship to children who are born in the United States and 'subject to the jurisdiction thereof.'").

The Court reaffirms here its prior finding that that "[t]he Executive Order flouts the plain language of the Fourteenth Amendment to the United States Constitution, conflicts with binding Supreme Court precedent, and runs counter to our nation's 250-year history of citizenship by

birth." *CASA*, 763 F. Supp. 3d at 743. The plaintiffs are extremely likely to succeed on the merits of their claim that the Executive Order is unconstitutional.

### B.  Irreparable Harm

The plaintiffs have shown that they and the class members will suffer irreparable harm absent an injunction. As the Court previously explained, "[t]he 'deprivation of a constitutional right, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* at 744 (quoting *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022)). Here, the Executive Order seeks to deprive the class members of their constitutional right to citizenship. That alone is sufficient to establish irreparable harm. The courts that have considered similar challenges to the Executive Order have agreed that the deprivation of the constitutional right to citizenship would cause irreparable harm. *See, e.g.*, *N.H. Indonesian Cmty. Support*, 765 F. Supp. 3d at 111 ("[T]he denial of citizenship status to newborns, even temporarily, constitutes irreparable harm."); *Doe*, 766 F. Supp. 3d at 285 ("The loss of birthright citizenship—even if temporary, and later restored at the conclusion of litigation—has cascading effects that would cut across a young child's life (and the life of that child's family), very likely leaving permanent scars."); *Barbara*, 2025 WL 1904338, at *14 ("Respondents' arguments about irreparable harm remain unconvincing to the court, which has no difficulty concluding that the rapid adoption by executive order, without legislation and the attending national debate, of a new government policy of highly questionable constitutionality . . . constitutes irreparable harm, and that all class representatives could suffer irreparable harm absent an injunction.").

The defendants argue the plaintiffs are not likely to suffer irreparable harm because another district court has already enjoined the enforcement of the Executive Order against a provisionally certified class whose scope includes the plaintiffs in this case. ECF 111, at 2 (citing *Barbara*, 2025

WL 1904338, at *16). In that case, the District of New Hampshire provisionally certified a class of:

> All current and future persons who are born on or after February 20, 2025, where (1) that person's mother was unlawfully present in the United States and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) that person's mother's presence in the United States was lawful but temporary, and the person's father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Barbara*, 2025 WL 1904338, at *4 (footnote omitted). The *Barbara* Court issued a preliminary injunction prohibiting the enforcement of the Executive Order against the provisional class during the litigation. *Id.* at *12.[4]

The existence of a preliminary injunction issued by another court that provides relief to the plaintiffs does not negate their irreparable harm. *See California v. U.S. Dep't of Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065–66 (N.D. Cal. 2019). The preliminary injunction issued by the District of New Hampshire could be modified, limited, or overturned at any time. Courts "routinely grant follow-on injunctions against the Government," even when a court in an earlier-filed action "has already provided plaintiffs in the later action with their desired relief." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020); *see, e.g.*, *Mayor of Balt. v. Azar*, 392 F. Supp. 3d 602, 618–19 (D. Md. 2019); *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018), *vacated in part and rev'd in part on other grounds by Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020). Such a follow-on injunction is appropriate here.

If not enjoined, the Executive Order will cause the class irreparable harm.

---

[4] The court stayed the preliminary injunction for seven days to allow the government to appeal. *Barbara*, 2025 WL 1904338, at *16. The stay expired, and as of this decision, the government has not filed an appeal.

## C. Balance of Equities and Public Interest

The balance of the equities and the public interest "merge when the Government is the opposing party." *Miranda*, 34 F.4th at 745. These final factors weigh strongly in favor of a preliminary injunction. The balance of the equities clearly favors preserving birthright citizenship for children born on U.S. soil, who unquestionably would be citizens but for the Executive Order. Whereas the children in the class would be irreparably harmed without an injunction, the government will not be harmed at all because the Executive Order is almost certainly unconstitutional, and the government is not harmed by preventing unconstitutional conduct. *See Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) ("[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002))). As the Fourth Circuit previously stated:

> For well over a century, the federal government has recognized the birthright citizenship of children born in this country to undocumented or non-permanent immigrants . . . . The government has not shown that it will be harmed in any meaningful way if it continues to comply, for the pendency of its appeal, with that settled interpretation of the law and consistent executive branch practice.

*CASA*, 2025 WL 654902, at *2. Moreover, the public has a strong interest in the preservation of birthright citizenship—a right enshrined in the Fourteenth Amendment—until the constitutionality of the Executive Order is decided.

Other courts also have found that the balance of the equities and the public interest weigh in favor of enjoining the Executive Order. *See Doe*, 766 F. Supp. 3d at 286–87 ("It is difficult to imagine a government or public interest that could outweigh the harms established by the plaintiffs here. . . . The defendants have not even attempted to demonstrate how they or the public will be

harmed by continuing, for the duration of this action, to adhere to the interpretation of birthright citizenship that has been consistently applied by the Executive Branch [for well over a century]— including under this President during his first term in office."); *N.H. Indonesian Cmty. Support*, 765 F. Supp. 3d at 111–12 ("A continuation of the status quo during the pendency of this litigation will only shortly prolong the longstanding practice and policy of the United States government, while imposition of the Executive Order would impact the plaintiffs and similarly situated individuals and families in numerous ways, some of which—in the context of balancing equities and the public interest—are unnecessarily destabilizing and disruptive."); *Washington*, 765 F. Supp. 3d at 1153 ("[T]he rule of law is secured by a strong public interest that the laws 'enacted by their representatives are not imperiled by executive fiat.'" (quoting *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018))); *Washington*, 2025 WL 2061447, at *16 ("Because, as the district court correctly concluded, the Executive Branch does not have a legitimate interest in violating the Constitution, the Executive Branch has not shown that either the public interest or the balance of equities tips in its favor.").

The balance of the equities and the public interest weigh strongly in favor of a preliminary injunction.

### D.  Scope of Relief

Satisfied that the class is entitled to a preliminary injunction, the Court next considers the scope of relief. The defendants insist that "the Court should not grant nationwide relief." ECF 106, at 12. They argue that Rule 23 should not "be an end-run around the now for-bidden [sic] universal injunction." *Id.* (citing *CASA*, 145 S. Ct. at 2566 (Alito, J., concurring)). The defendants would have the Court enter a preliminary injunction limited to class members in the District of Maryland. *Id.* at 13.

"District courts have broad discretion to craft remedies based on the circumstances of a case, but likewise must ensure that 'a preliminary injunction is no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (quoting *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020)); *accord Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."); *CASA*, 145 S. Ct. at 2557 (instructing lower courts to decide whether "an injunction will offer complete relief to the plaintiffs before the court").

Here, the Court finds that the only way to afford complete relief to the certified class is to enjoin enforcement of the Executive Order as to each member of the class. That relief must include every child in the United States who is subject to the Executive Order. After all, the Executive Order does not target only children born in Maryland; it seeks to deny citizenship to "persons born in the United States." Exec. Order § 1. Anything less than classwide relief would not provide complete relief to the class.

A classwide preliminary injunction that applies to class members throughout the country comports with old and recent Supreme Court precedent. In *Califano v. Yamasaki*, the Supreme Court observed that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." 442 U.S. at 702. The *Califano* Court recognized that "a nationwide class [is not] inconsistent with principles of equity jurisprudence." *Id.* And in his *CASA* concurrence, Justice Kavanaugh acknowledged that when plaintiffs "challenge the legality of a new federal statute or executive action and request preliminary injunctive relief," they "may sometimes . . . ask a court to award preliminary classwide relief that may, for example, be statewide, regionwide, or even nationwide." *CASA*, 145 S. Ct. at

2567 (Kavanaugh, J., concurring) (discussing *CASA*, 145 S. Ct. at 2555 (majority opinion)) (first

citing *A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1370 (2025) (per curiam); and then citing *Califano*,

442 U.S. at 701–03). Though the defendants seize upon Justice Alito's admonition in *CASA* that

district courts should not view the Supreme Court's decision "as an invitation to certify nationwide

classes without scrupulous adherence to the rigors of Rule 23," ECF 106, at 12–13 (citing *CASA*,

145 S. Ct. at 2566 (Alito, J., concurring)), Justice Alito, too, recognized that "Rule 23 may permit

the certification of nationwide classes in some discrete scenarios," *CASA*, 145 S. Ct. at 2566 (Alito,

J., concurring).

Examples of district courts granting injunctive relief to a class that includes members

outside of the court's jurisdiction abound. *See, e.g.*, *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338

F.R.D. 33, 65 (D. Md. 2020) (granting preliminary injunction to certified Rule 23(b)(2) class of

"[a]ll individuals nationwide" who were subject to an immigration policy affecting asylum

applications for minors); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1202, 1205–06 (N.D. Cal.

2017) (granting preliminary injunction to provisionally certified class of noncitizen minors across

the country who met certain criteria), *aff'd sub nom. Saravia ex rel. A.H. v. Sessions*, 905 F.3d

1137 (9th Cir. 2018); *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1047 (N.D. Cal. 2020) (granting

preliminary injunctive relief to provisionally certified class of all U.S. citizens and legal permanent

residents who "are or were incarcerated . . . in the United States, or have been held to have violated

a condition of parole or probation imposed under federal or state law, at any time from March 27,

2020 to the present"); *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 869–70, 878 (S.D.

Cal. 2019) (granting preliminary relief to provisionally certified class of "all non-Mexican asylum-

seekers who were unable to make a direct asylum claim at a U.S. [port of entry] before July 16,

2019 because of" government policy); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 180, 183, 191

(D.D.C. 2015) (granting preliminary injunctive relief to provisionally certified class of Central American mothers detained at ICE family detention facilities nationwide).

By granting preliminary injunctive relief to the entire class of children subject to the Executive Order, this Court is not resurrecting "the universal injunction . . . from the grave under the guise of 'nationwide class relief.'" *CASA*, 145 S. Ct. at 2566 (Alito, J., concurring). After scrupulously adhering to Rule 23's requirements, the Court certified the class. Now, in adherence to the Supreme Court's admonition not to issue an injunction "broader than necessary to provide complete relief to each plaintiff with standing to sue," *see id.* at 2562–63, this Court enters a preliminary injunction as to the entire class—which includes all children in the United States subject to the Executive Order—because such an injunction is the only way to "provide complete relief to" the class, *see id.*

The classwide preliminary injunction also provides complete relief to the individual and organizational plaintiffs who obtained a preliminary injunction in February because the certified class includes the children of the individual plaintiffs and the children of the members of CASA and ASAP. The individual and organizational plaintiffs no longer need a preliminary injunction that specifically protects them because the classwide preliminary injunction provides them with injunctive relief.

For equitable and good reasons, the Court has the plenary power to dissolve a preliminary injunction. *See Gooch v. Life Invs. Ins. Co.*, 672 F.3d 402, 414 (6th Cir. 2012) (noting that a court may dissolve a preliminary injunction based on "significant 'changes in fact, law, or circumstance since the previous ruling.'" (quoting *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648–49 (2d Cir. 1989))); *Canal Auth. v. Callaway*, 489 F.2d 567, 578 (5th Cir. 1974) ("In the exercise of [a court's continuing jurisdiction over a preliminary injunction], the court is authorized to make

any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason."); *see also Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006). Exercising its plenary power, and at the joint request of the parties, the Court dissolves the February 5, 2025 preliminary injunction. Dissolution of the preliminary injunction does not harm the individual or organizational plaintiffs; they enjoy the same injunctive relief through the classwide preliminary injunction.

### E.  Bond

Under Federal Rule of Civil Procedure 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c) "is mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). The Court has discretion to require the moving party "to post security in an amount it deems appropriate." *Dist. 17, United Mine Workers of Am. v. A & M Trucking, Inc.*, 991 F.2d 108, 110 (4th Cir. 1993); *accord Hoechst Diafoil*, 174 F.3d at 421 .

The defendants ask for a bond because "[t]he proposed preliminary injunction seeks to require [them] to extend federal benefits to persons deemed by [them] to lack an entitlement to them," which would pose a "substantial" cost to the government. ECF 106, at 23. Yet the defendants offer no specifics about the financial harm they claim a preliminary injunction will impose on the government. When the assertion of substantial cost to the government is "unsupported and speculative," courts have declined to impose a bond. *See Washington v. Trump*, 768 F. Supp. 3d 1239, 1282 n.29 (W.D. Wash. 2025).

In public interest cases like this one, when the risk of harm to the government is non-existent or remote, a nominal bond may be appropriate. *See Maryland v. U.S. Dep't of Agric.*, 777

F. Supp. 3d 432, 493 (D. Md. 2025) (noting that "a nominal bond is common in public-interest litigation cases, as requiring plaintiffs to 'bear up front the total cost of the alleged governmental wrongdoing' will often be effectively to foreclose judicial review altogether" (quoting *Maryland v. U.S. Dep't of Agric.*, 770 F. Supp. 3d 779, 820 (D. Md. 2025))); *Am. Ass'n of Colls. for Teacher Educ. v. McMahon*, 770 F. Supp. 3d 822, 861 (D. Md. 2025) (imposing a nominal bond of $100 because the government "present[ed] no non-speculative assertion of potential costs and damages"); *Barbara*, 2025 WL 1904338, at *15 (imposing nominal bond of $1 because "respondents have not demonstrated any potential loss but instead demand security for an amount that they would save if no relief were granted" and because the government's "sudden action . . . require[d] petitioners to seek injunctive relief to preserve the long-established citizenship rights of children born in this country").

Waiver of a bond entirely also may be appropriate. *See Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) (recognizing that district courts have discretion to waive the bond requirement after "expressly address[ing] the issue of security"); *Washington v. Trump*, 764 F. Supp. 3d 1050, 1053 (W.D. Wash. 2025) (declining to impose security in birthright citizenship case); *Coreas v. Bounds*, 457 F. Supp. 3d 460, 464 (D. Md. 2020) (waiving security requirement when the "financial impact to [the government] of an improperly imposed injunction [was] limited and would not create any significant hardship").

Here, an improperly imposed injunction would not impose a substantial hardship on the government. By contrast, the plaintiffs stand to lose their fundamental right to citizenship if they do not obtain preliminary relief, and a substantial bond could forestall judicial review of the Executive Order. In such circumstances, a waiver of the bond requirement is appropriate. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 291 (D. Md. 2025)

(waiving a bond because "the Plaintiffs seek to protect their First and Fifth Amendment rights, and because a bond of the size Defendants appear to seek would essentially forestall Plaintiffs' access to judicial review"); *see also Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1186 (N.D. Fla. 2022) ("[W]aiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." (quoting *Curling v. Raffensperger*, 491 F. Supp. 3d. 1289, 1326 n.25 (N.D. Ga. 2020), *vacated in part on other grounds*, 50 F.4th 1114 (11th Cir. 2022))). Just as the Court did not impose a bond when it issued the first preliminary injunction, it will not impose one now.

## V.    Conclusion

For the foregoing reasons, the plaintiffs' motion for a classwide preliminary injunction is granted. The Court enjoins the enforcement of the January 20, 2025 Executive Order 14,160, "Protecting the Meaning and Value of American Citizenship," as to all members of the certified class. The Court dissolves its February 5, 2025 injunction. A separate Order follows.


Date: August 7, 2025

Deborah L. Boardman
United States District Judge