**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No. 8:25-cv-00201-DLB

**OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 4
ARGUMENT .......... 9
I. Plaintiffs' Request For A Springing TRO Is Improper. .......... 10
II. Plaintiffs Cannot Satisfy The *Winter* Factors To Justify A TRO. .......... 12
A. Plaintiffs lack standing to seek an injunction of Executive Order 14,418. .......... 13
B. Plaintiffs cannot satisfy Rule 23's requirements as to the new Executive Order. .......... 19
C. Plaintiffs cannot show any likelihood of success on the merits. .......... 21
D. The remaining injunction factors weigh against Plaintiffs. .......... 24
III. This Court Should Narrow Any Injunctive Relief. .......... 25
CONCLUSION .......... 26

## INTRODUCTION

This case began over a year ago as a challenge to Executive Order 14,160, titled "Protecting the Meaning and Value of American Citizenship," 90 Fed. Reg. 8449 (Jan. 20, 2025) ("2025 Executive Order"). That Executive Order directed agencies not to treat future children of temporarily present aliens and illegal aliens as U.S. citizens. And everything about this lawsuit—brought by, among others, seven named Plaintiffs representing a putative class of parents and children—has been targeted at that Executive Order. Each named Plaintiff fell within the Executive Order's terms as either an alien whose presence was lawful but temporary or who was unlawfully present. Each claim for relief in the Complaint is keyed to the only "violation" Plaintiffs purported to identify—the 2025 Executive Order. Am. Compl. ¶¶ 76–102, 119, 125, ECF No. 96. And when this Court ultimately granted a classwide preliminary injunction, it enjoined Defendants "from enforcing the Executive Order against the class representatives and the members of the certified class until further order of this Court." Order at 3, ECF No. 132 (TRO Order). Ultimately, in a similar case, Defendants appealed a like injunction up to the Supreme Court, which held—reviewing the 2025 Executive Order—that "children born of parents unlawfully or temporarily present in the United States," without more, are "citizens at birth." *Trump v. Barbara*, 609 U.S. ---, 146 S. Ct. 2438, 2450 (2026).

Despite Plaintiffs' protestations to the contrary, this case is not a redux. Earlier this month, the President signed a new executive order, titled "Continuing to Protect the Meaning and Value of American Citizenship," in order to comply with *Barbara*. Exec. Order No. 14,418, 91 Fed. Reg. 51991 (Aug. 6, 2026) ("2026 Executive Order"). Unlike the earlier executive order, the 2026 Executive Order is not based on whether the mothers were unlawfully or temporarily present at the time of birth. Rather, it is based on much narrower categories based on the exceptions to the

Citizenship Clause outlined by the Supreme Court. The 2026 Executive Order directs agencies not to treat as citizens *future* (1) children of "alien enem[ies]," (2) children of "foreign government employee[s]," (3) children of parents who had engaged in "commercial" or "fraudulent" transactions to obtain birthright citizenship for the given child, and (4) children born in territories or territorial waters of the United States where citizenship is not conferred by Federal statute. *Id.* at 51991–92. And for "[e]nforcement," agencies are directed to "take all appropriate measures" to ensure "consisten[cy] with th[e] order" and to "issue public guidance within 30 days of the date of th[e] order" regarding its "implementation with respect to their operations and activities." *Id.* at 51992.

In short, the 2026 Executive Order is a different order based on a different legal theory that identifies different populations. It does not affect the operation of the 2025 Executive Order, which remains the only order that appears in any complaint filed by Plaintiffs. Nonetheless, in an attempt to make the new executive order a part of this case, Plaintiffs launches a remarkable request for a new, classwide, spring-loaded temporary restraining order—all before Defendants have even had a chance to issue the clarifying guidance necessary to implement the new Executive Order.

This Court should reject that invitation. The preliminary injunction in this case already provides the full measure of relief these named Plaintiffs on these claims representing this class are entitled to. The named Plaintiffs were handpicked, and the class definition hand-crafted, to challenge the *2025* Executive Order, not the new one. That is why Plaintiffs' proposed class definition was all children "who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents." Am. Compl. ¶ 104. That is why the Court certified a class of children whose parents completely track the definitions laid out in the 2025 Executive Order. TRO Order at 2. And that is why, when the Court granted a preliminary injunction against

the enforcement of the 2025 Executive Order against this class, that injunction provided meaningful relief.

Not so this latest request—especially given that Plaintiffs ask for the extraordinary relief of a TRO. Indeed, Plaintiffs' odd application for a TRO "barring enforcement of the 2026 Executive Order until 14 days after issuance of the [forthcoming] implementation guidance" is self-defeating. Pls.' Mot. for Additional Classwide Prelim. Inj. Relief or a Classwide TRO at 2, ECF No. 168-1 (Mot.). TROs are for emergencies, but by its own terms Plaintiffs' request acknowledges that a TRO is unnecessary until guidance issues. Nor does Plaintiffs' proposed TRO comply with Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs seek a TRO that will last 14 days after the issuance of guidance, while Rule 65 allows the Court only to issue a TRO lasting 14 days after *entry*.

Plaintiffs also fail to show that they are entitled to injunctive relief in any event. To enter a *new* classwide injunction—whether in the form of a TRO or otherwise—this Court must consider the factors set out in *Winter v. NRDC, Inc.*, 557 U.S. 7 (2008), anew. And those factors overwhelmingly disfavor Plaintiffs. Plaintiffs cannot survive likelihood of success when their request cannot even satisfy Article III. They can only speculate that the named Plaintiffs would be affected at all by the new Executive Order. Unsurprisingly so—the 2026 Executive Order plainly depends on agencies taking (forthcoming) "appropriate measures" and issuing (forthcoming) "public guidance" for "[e]nforcement." 91 Fed. Reg. at 51992. Whether termed a standing problem, a ripeness flaw, or both, these shortcomings confirm that Plaintiffs raise a dispute that does not yet belong in court. Regardless, even *if* Plaintiffs could prove that some named Plaintiffs (and even some unnamed class members) could fall within the 2026 Executive Order's terms, they have not even attempted to show that the putative class could satisfy Rule 23's

requirements as to the *new* Executive Order. Those threshold issues confirm that this new request is a poor fit for this case, these Plaintiffs, and this class. Especially so here, where Plaintiffs have *still* not challenged the new Executive Order in their operative complaint.

And even if this Court were to reach the merits of the new Executive Order, Plaintiffs fail to show that it runs afoul of *Barbara* or any other precedent. The new Executive Order is based on different legal arguments that were not presented in *Barbara*. *Barbara* said that "any child for whom no extraterritorial fiction applied" was "made a citizen" on account of his "natural 'allegiance'" to the Nation. 146 S. Ct. at 2449. That holding, the exceptions *Barbara* recognized, and the common law *Barbara* incorporated, defies bright line rules, and forecloses Plaintiffs' premature attempt to render judgment on any possible implementation of the new Executive Order touching on the subject.

Plaintiffs also cannot demonstrate irreparable harm. They cannot demonstrate harm at all, because they have not alleged that the new Executive Order affects them. And even if they could hypothesize some downstream effect on some of their class members, there is no imminent harm justifying injunctive relief. The 2026 Executive Order will have no practical effect on anyone until agencies issue guidance for implementing it. They have not yet done so.

This Court should deny Plaintiffs' motion in full.

## BACKGROUND

On January 20, 2025, President Trump signed Executive Order 14,160. That Executive Order set out an interpretation of the Fourteenth Amendment's mandate that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV. It explained that the Fourteenth Amendment "has never been interpreted to extend citizenship universally to everyone

born within the United States." *Id.* The 2025 Executive Order went on to provide that persons born in the United States are not "subject to the jurisdiction thereof":

> (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Id.* The Government justified that interpretation by interpreting the phrase "subject to the jurisdiction thereof" to incorporate the concept of common-law allegiance, Brief for Petitioners 40, *Barbara*, 146 S. Ct. 2438 (Apr. 1, 2026), and reasoning that "domicile"—making the United States one's permanent home—"is the key concept that creates allegiance," Tr. of Oral Arg. 26, *Barbara*, 146 S. Ct. 2438.

On January 21, 2025—the day after the 2025 Executive Order was issued—a group of Plaintiffs sued Defendants the President of the United States, the Secretary of State, the Attorney General of the United States, the Secretary of Homeland Security, the Director of the United States Citizenship and Immigration Services, the Commissioner of the Social Security Administration, and the United States of America, seeking to enjoin enforcement of the Executive Order. Compl., ECF No. 1. Their operative Complaint, then and now, accused the 2025 Executive Order of "def[ying] th[e] constitutional mandate" of *United States v. Wong Kim Ark*, 169 U.S. 649 (1898). Compl. ¶ 84; Am. Compl. ¶ 86. And the Complaint brought two counts, charging that the Executive Order violated the Fourteenth Amendment (Count I) and 8 U.S.C. § 1401 (Count II). Compl. ¶¶ 101–14; Am. Compl. ¶¶ 113–25.

Following the Supreme Court's decision in *CASA*, Plaintiffs amended their Complaint, restyling some Plaintiffs and adding others, and adding class allegations. Am. Compl. ¶¶ 103–12. In total, the Complaint provided seven named Plaintiffs, each of whom was either pregnant or had

recently given birth at the time of the Complaint, and none of whom was a lawful permanent resident. *Id.* ¶¶ 42–48. Accordingly, Plaintiffs proposed a class definition of: "All children who have been born or will be born in the United States on or after February 19, 2025, who are designated by Executive Order 14,160 to be ineligible for birthright citizenship, and their parents." *Id.* ¶ 104.

This Court granted classwide preliminary injunctive relief in August 2025. First, the Court certified a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure that completely tracked the language of Executive Order 14,160:

> Any child who has been born or will be born in the United States after February 19, 2025, (1) whose mother was unlawfully present in the United States and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) whose mother's presence in the United States at the time of said person's birth was lawful but temporary and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Order at 1, ECF No. 130. Second, this Court entered a preliminary injunction in favor of the certified class, ordering that Defendants "are ENJOINED from enforcing the Executive Order against the class representatives and the members of the certified class until further order of this Court." TRO Order at 2. In doing so, the Court adhered to the views laid out in its memorandum opinion explaining its original preliminary injunction. In that earlier opinion, the Court had rejected the Government's argument that the Citizenship Clause of the Fourteenth Amendment "exclude[s] persons born in the United States whose parents are not domiciled in the United States or persons who hold allegiance to another country." Mem. Op. at 22–23, ECF No. 65.

Defendants appealed and moved to stay proceedings in this Court during the pendency of the appeal. Notice of Appeal, ECF No. 141; Assented-To Mot. to Stay Dist. Ct. Proceedings, ECF No. 145. This Court granted that motion. Order Granting Mot. to Stay, ECF No. 146. The Fourth Circuit subsequently held its appeal in abeyance pending the disposition of *Barbara* and *Trump v.*

*Washington*. Order of USCA Granting Mot. for Abeyance, ECF No. 149.

On June 30, 2026, the Supreme Court decided *Trump v. Barbara*, holding that "children born of parents unlawfully or temporarily present in the United States" are "subject to the jurisdiction of the United States" and are thus "citizens at birth." 146 S. Ct. at 2450. All in that case agreed that "[t]he Citizenship Clause mirrored the common law's criteria for citizenship." *Id.* at 2453. And under the common law, birthright citizenship depended on "natural 'allegiance' (and thus 'obedience') to the Nation." *Id.* at 2449 (quoting *Lynch v. Clarke*, 1 Sand. Ch. 583, 688 (N.Y. Ch. 1844)). Where the Supreme Court (like this Court) parted ways from Defendants was in its "definition of 'allegiance.'" *Id.* at 2453. Whereas Defendants argued that allegiance "turn[s] on domicile," *id.*, the Supreme Court viewed allegiance as depending on whether the child was "born under the protection of the United States," provided that "no extraterritorial fiction applied," *id.* at 2449. In reaching that holding, the Supreme Court approved of its earlier decision in *Wong Kim Ark*, which articulated a general rule of birthright citizenship, but excluded "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory." 169 U.S. at 693. The Supreme Court accordingly upheld the *Barbara* district court's preliminary injunction against enforcing the 2025 Executive Order, which was untethered to any of those categories. *Barbara*, 146 S. Ct. at 2456, 2458.

In light of the Supreme Court's decision, on August 6, 2026, the President signed a new Executive Order, "Continuing to Protect the Meaning and Value of American Citizenship." 91 Fed. Reg. at 51991. The 2026 Executive Order did not depend on a domicile theory of citizenship, or on a definition of allegiance tied to domicile. Rather, it applied the recent opinion in *Barbara*, explaining that under *Barbara* birthright citizenship extends to "children born to parents in the United States 'for whom no extraterritorial fiction applie[s].'" *Id.* In keeping with *Barbara*, the

Executive Order "identifies . . . certain categories of children of aliens who do not fall within the rule of birthright citizenship as announced by the Supreme Court." *Id.*

Section 2 of the 2026 Executive Order—the "Policy"—sets out that "[i]t is the policy of the United States" to not issue documents recognizing citizenship of certain children whose parents are not U.S. citizens. *Id.* *First*, it excludes such children whose parent "is an alien enemy," which is "defined to include any member of a designated Foreign Terrorist Organization" or "Specially Designated Global Terrorist," among other things. *Id.* Second, it excludes such children whose parent "is a foreign government employee," which includes ambassadors, embassy or consulate employees who are nationals of the foreign country, persons employed by a foreign government in an official capacity, and persons employed by an international organization that possess international-organization immunity. *Id.* Third, the Executive Order excludes such children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* And fourth, the Executive Order excludes such children "born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* at 51992.

Section 3 of the 2026 Executive Order—the "Enforcement" section—sets out how the "policy" will actually be implemented. *Id.* at 51991–92. The Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security "shall take all appropriate measures to ensure" their "regulations and policies" are "consistent with" the 2026 Executive Order. *Id.* at 51992. And the Executive Order directs agencies to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.*

That guidance has not issued yet, because only twenty days have passed since the 2026

Executive Order was signed. Nonetheless, on August 24—two days ago—Plaintiffs moved for a new preliminary injunction against this new Executive Order, and then refiled their motion the next day. Mot. 1–2; *see* ECF Nos. 167, 168. And, as relevant for the current briefing, Plaintiffs asked this Court to enter a temporary restraining order based on the guidance which has not issued yet. *Id.* at 2. The Court directed Defendants to respond to the TRO motion by 6 p.m. on August 26. Letter Order, ECF No. 169.[1]

## ARGUMENT

The peculiarity of Plaintiffs' TRO motion confirms that this Court should deny it. TROs are for urgent affairs, yet Plaintiffs' own request—for novel relief that only kicks in upon agencies releasing guidance—acknowledges that no TRO is necessary until guidance issues. And the Federal Rules of Civil Procedure do not contemplate a TRO that will necessarily have effect more than 14 days past its entry.

Regardless, Plaintiffs are not entitled to any injunctive relief, whether labeled a TRO or otherwise. It is plainly beyond the scope of this Court's authority and this case to grant a new injunction against a new Executive Order when that order has never been challenged by Plaintiffs, has only speculative effect on the named Plaintiffs, has not been shown to apply to any of the unnamed class members (let alone a numerous or typical portion of class members), and is consistent with the Constitution, the INA, and Supreme Court precedent in any event.

[1] Defendants construe the Court's order to only require a response to the Motion for a Temporary Restraining Order. Letter Order, ECF No. 169. Defendants will respond to the Motion for a Preliminary Injunction or Motion to Modify the existing injunction in due course and do not waive any arguments based on this quick schedule. Those motions do, however, also fail for many of the reasons detailed below.

## I. Plaintiffs' Request For A Springing TRO Is Improper.

Plaintiffs ask this Court to enter a "temporary restraining order … barring enforcement of the 2026 Executive Order for 14 days after issuance of the guidance contemplated in Section 3(b) of the Order." Mot. 28. But there is no such thing as a TRO-in-advance. Plaintiffs' unusual request confirms that no TRO is necessary in this case, and runs afoul of Rule 65 of the Federal Rules of Civil Procedure in any event.

To begin, a request for a TRO to only take effect later is at odds with the entire purpose of temporary restraining orders. TROs are designed to "preserv[e] the status quo and [to] prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). That purpose necessarily limits TROs to emergency situations. That is why TROs can "only" issue if the applicant "clearly show[s] that *immediate* and irreparable injury" will result absent that relief. Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). The inherent urgency of a TRO request is why TROs (unlike preliminary injunctions) "may be issued without full notice," in order to provide timely relief to the applicant. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). And that TROs are for emergencies is borne out even in this case, where Plaintiffs' TRO request will be heard while Defendants' response to the preliminary injunction motion is still pending.

That purpose cannot be reconciled with the relief Plaintiffs request. Plaintiffs do not ask for relief *today*, *tomorrow*, or any specified time. Rather, they ask for a 14-day TRO (the maximum) beginning at *some* future date when guidance issues. That is nothing less than an implicit acknowledgment that *nothing* will befall Plaintiffs at least until guidance is released. A TRO's purpose of "preserving the status quo" (*Granny Goose*, 415 U.S. at 439) presupposes that the status quo would change otherwise—yet here, Plaintiffs effectively admit that it will not until

guidance issues. And given that guidance has not issued yet, this Court need not act immediately. And there is even less reason for the Court to grant Plaintiffs' request for *non-immediate* relief—especially when this Court is not even able to evaluate the contents of the guidance at this time.

Indeed, Plaintiffs own request underscores that this motion is unripe, because it acknowledges the importance of guidance documents that have yet to issue. Until those guidance documents issue delineating the scope of the various exceptions to birthright citizenship, the parties and this Court cannot readily adjudicate whether any class members will be injured and if those exceptions are lawful. On the other hand, Plaintiffs waited nearly three weeks to seek a TRO they claim is straightforward. If the Executive Order itself was truly an emergency causing them irreparable harm, it is hard to understand why they waited until now to seek relief. All of this underscores that the guidance documents are necessary to adjudicate this case and there is no imminent injury until they are promulgated. This case simply lacks the "immediate" injury required to justify a TRO and is unripe in any event. Fed. R. Civ. P. 65(b)(1)(A).

Plaintiffs' preemptive TRO is improper for another reason. Rule 65 of the Federal Rules of Civil Procedure provide that a TRO "expires at the time after entry … that the court sets," and that this time is "not to exceed 14 days." *Id.* at 65(b)(2). That is not an authority to temporarily restrain a party for a 14-day period of the court's or applicant's choice; rather, Rule 65 permits only a 14-day period *beginning at entry* of the TRO, at least as an initial matter. Here, however, Plaintiffs request a TRO that will extend for fourteen days not after entry but after guidance issues. That sort of delayed-action TRO is not contemplated by Rule 65. If agencies do not issue guidance the day this Court enters Plaintiffs' requested TRO, the TRO will effectively stretch past Rule 65's default limit.

At bottom, Plaintiffs ask for a TRO that they concede they do not need right now. This Court should reject that paradoxical request.

## II. Plaintiffs Cannot Satisfy The *Winter* Factors To Justify A TRO.

Plaintiffs' request for a definitionally nonurgent TRO defeats itself. Regardless, this Court can also deny the requested TRO based on a straightforward application of the *Winter* factors. "A party seeking a temporary restraining order or a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 493 (D. Md. 2020). A preliminary injunction "can be granted only if every factor is met," while "*denying* a preliminary injunction only takes the rejection of a single factor." *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 545 (4th Cir. 2023). The latter two factors "merge when the Government is the opposing party." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 225 (4th Cir. 2024).

Those factors militate against granting a TRO. Plaintiffs cannot show likelihood of success when they can only speculate whether the new Executive Order even applies to any named Plaintiff. That Plaintiffs' request cannot satisfy Article III is sufficient grounds to reject it. Even if Plaintiffs could demonstrate standing and ripeness (they cannot), they would still fail to show that *class*-wide relief is appropriate. As to the merits themselves, Plaintiffs have no likelihood of succeeding in a challenge to the 2026 Executive Order when the operative Complaint on the docket still fails to even name it. And if the Court were able to look past all of that, Plaintiffs would still face the insurmountable hurdle of demonstrating—at this early, premature stage—that no *possible* implementation of the new Executive Order is consistent with the Constitution, the INA, and the Supreme Court's precedents interpreting it, including *Barbara*. Given that *Barbara* and *Wong*

*Kim Ark* never purported to (and never had to) define the various exceptions to birthright citizenship with precision, that is too high a hill for Plaintiffs to climb.

Furthermore, because Plaintiffs cannot show *any* injury from the new Executive Order, they necessarily cannot show *irreparable* injury. Nor can they demonstrate the *imminent* harm that movants must show to merit injunctive relief—especially where, again, their own TRO request acknowledges that no harm will befall them before guidance is issued. The ink has not even dried on the 2026 Executive Order, which can only have practical effect when the "heads of all executive departments and agencies" issue "public guidance" regarding the "order's implementation with respect to their operations and activities." 91 Fed. Reg. at 51992. In other words, the Executive Order does not have an imminent effect on *anyone*.

The remaining factors also favor the Government, not Plaintiffs. As explained, relief at this time and in this case would transgress the limits of Article III, and thus visit irreparable harm on the *Government*. And there are no countervailing equities on the opposite side of the ledger where—again—any effect of the new Executive Order is currently speculative.

This Court should accordingly deny Plaintiffs' motion.

**A. Plaintiffs lack standing to seek an injunction of Executive Order 14,418.**

Article III applies to requests for injunctive relief as well. *Delmarva Fisheries Ass'n, Inc. v. Atl. States Marine Fisheries Comm'n*, 127 F.4th 509, 514 (4th Cir. 2025). Granting a TRO is inappropriate where a matter is not justiciable, both because a federal court that "lacks jurisdiction over a matter" must "dismiss" the case "even when reviewing" a request for injunctive relief, *id.*, and because "difficult question[s] as to jurisdiction" make "success more unlikely due to potential impediments to even reaching the merits," *Munaf v. Geren*, 553 U.S. 674, 690 (2008).

"Two related doctrines of justiciability" originate from the "case-or-controversy requirement of Article III." *Trump v. New York*, 592 U.S. 125, 131 (2020). First, "a plaintiff must demonstrate standing, including an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Id.* (internal quotation marks omitted). And second, "the case must be ripe—not dependent on contingent future events that may not occur as anticipated." *Id.* (internal quotation marks omitted). Cases that are "riddled with contingencies and speculation" are not fit subjects for "judicial review." *Id.*

Recent Supreme Court precedent has reinforced the vitality of these doctrines. In *Trump v. New York*, the Supreme Court rejected a challenge to a Presidential memorandum declaring a policy of excluding illegal aliens from the census for purposes of apportionment. 592 U.S. at 129. The memorandum directed the Secretary of Commerce to "provide information" to the President "to the extent practicable," all to implement the memorandum's policy "to the maximum extent feasible." Id. at 130. The Supreme Court held that a suit challenging this memorandum was nonjusticiable because—with such qualifiers as "to the extent practicable" and "to the extent feasible"—"[a]ny prediction how the Executive Branch might eventually implement this general statement of policy is no more than conjecture at this time." *Id.* at 131 (internal quotation marks omitted). The "Government's eventual action" would "reflect both legal and practical constraints," and it was only then that a challenge would be ripe. *Id.* at 133.

Even more recently, in *Trump v. California*, 609 U.S. ---, slip op. at 2 (2026), the Supreme Court stayed an injunction of a Presidential directive ordering various agencies to take "appropriate" action—including sending citizenship lists to states "to the extent feasible" and "initiat[ing] a proposed rulemaking"—to maintain election integrity. As the Supreme Court explained, the challenge to that directive was unripe because "[a]ny prediction how the Executive

Branch might eventually implement" it "is no more than conjecture." *Id.* at 4 (internal quotation marks omitted). In particular, the challenge to the directive to "initiate a proposed rulemaking" necessarily required "speculat[ion] about what the final rule would say" and "whether the text of a hypothetical final rule would harm" the plaintiffs. *Id.* at 7–8. "Article III demands more certainty" than that. *Id.* at 5.

Under those principles, Plaintiffs' challenge to the new Executive Order does not belong before this Court. They lack standing to challenge the Executive Order, because the "true source of any injury" (*id.* at 4 (internal quotation marks omitted)) is not from the "Policy" of Section 2 but the "Enforcement" of Section 3, 91 Fed. Reg. at 51992. And the fact that no guidance has issued—and that Section 3 has not yet been executed—demonstrates that this dispute is quintessentially unripe. Like the directive in *California*, the 2026 Executive Order directs agency heads to take "appropriate" measures, and gives agencies an open-ended command to "issue public guidance." *Id.*; *compare with* 91 Fed. Reg. 17125, 17126 (directing Postmaster General to "initiate a proposed rulemaking"). Accordingly, like in *California*, Plaintiffs' requested relief would require the Court to "predict" what measures the various agency heads "would deem 'appropriate'" for implementing the new Executive Order as well as to "speculate about what" any forthcoming guidance "would say." *California*, slip op. at 4, 8. As in *California* and *New York*, any "eventual action" by Defendants "will reflect both legal and practical constraints, making any prediction about future injury just that—a prediction." *California*, slip op. at 4 (quoting *New York*, 592 U.S. at 133).

Here, the contours of exceptions such as birth tourism and foreign government employees necessarily have to be fleshed out by guidance to know whether any class members are injured and if those exceptions align with the common law. Indeed, Plaintiffs effectively concede this

point by requesting a TRO *after* the guidance has issued. Until that guidance has issued, the parties and this Court cannot adjudicate abstractions with no immediate effect.

"Article III demands more certainty." *Id.* at 5. Plaintiffs cannot provide it.[2] They begin by claiming that three of the named Plaintiffs have standing because their *existing* children "*could* be denied citizenship" based on the "alien enemy" and birth tourism categories of the new Executive Order. Mot. 11, 13 (emphasis added). All of them already have children, so they are not subject to the Executive Order which is prospective. They all also claim that they do not know what either an "alien enemy" or a "commercial transaction" is so they are afraid those categories may apply to them with no basis. All of this underscores the need to wait for the guidance documents.

But in any event, the speculative nature of the representatives' claims fail. To begin, Plaintiffs seek an injunction against the entire Executive Order despite the fact it has a severability clause. 91 Fed. Reg. at 51992. Article III itself requires that "plaintiffs must demonstrate standing for each form of re-lief that they seek," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), and "plaintiff's remedy must be 'limited to the inadequacy that produced his injury in fact,'" *Gill v. Whitfor*d, 585 U.S. 48, 66 (2018) (brackets and citation omitted). Plaintiffs thus must have at least one class representative for each exception in the Executive Order—yet have not even attempted to produce a class representative for the foreign government employee exception.

And even for the exceptions they do attempt to provide a class representative for, Plaintiffs cannot succeed. To start, Monica already has a child who would not be subject to the Order but says she might have children in the future. It is unclear when that would happen or why those

[2] Plaintiffs' amended complaint raises other grounds for standing but Plaintiffs do not assert any of those alternative grounds here and thus they are waived. Unsurprisingly so, considering that Plaintiffs request *classwide* injunctive relief.

children would be subject to the Order. Plaintiffs claim it is because she might be considered an "alien enemy" because—even though she has "no connection to Tren de Aragua"—she may be considered a "alien enemy" for "simply being Venezuelan." *Id.* at 11. They also raise fears that—whatever any guidance ultimately says—the Government might commit "administrative error[s]" and incorrectly classify Monica as an alien enemy regardless. *Id.* at 12. That is completely speculative and baseless. Monica's declaration apparently refers to the designation of Tren de Aragua under the Alien Enemies Act (AEA). But even taking Plaintiffs' arguments on their terms shows how speculative it is. Based on how Plaintiffs' characterize Monica's fears, looking at the TPS group she was a part of, over 600,000 Venezuelans could be subject to that Act. *See Nat'l TPS All. v. Noem*, 163 F.4th 1152, 1156 (9th Cir. 2025). Yet only a few hundred Venezuelans have been designated under the AEA, mostly men. *See, e.g., J.G.G. v. Trump*, 813 F. Supp. 3d 126, 150 (D.D.C. 2025) (only 137 ever removed under the AEA, all men); *G.F.F. v. Trump*, 2025 WL 1316563, at *1 (S.D.N.Y. May 6, 2025) (class of 8 men in all of S.D.N.Y.). So the chance that any single Venezuelan, much less Monica, would be designated is a fraction of a percentage. It is telling that the only class representative or member Plaintiffs could even purport to produce for this exception is Monica. Plaintiffs thus lack standing to challenge the "alien enemy" exception.

The remaining class representatives all already had children and do not claim they will have children in the future, so the 2026 Executive Order does not apply because it is only prospective. Their fears are even more speculative. Andrea's child was already born so the Executive Order does not apply since it is prospective. Moreover, despite being Mexican, she claims to not know what an "alien enemy" is and is thus afraid it may apply to her. Indeed, her fear is somehow even more speculative than Monica's, given that the only AEA Proclamation is

for Venezuelan TdA members. The same is true for Juana, whose child was born before the order and whose only basis for fearing the alien enemy exception is that she is "afraid it could be anybody." Decl. of Juana ¶ 10., ECF No. 168-4. Liza is even more confusing because she entered on a student visa and only became pregnant after being in the United States, giving birth prior to the new Executive Order. None of the class representatives even claim that the foreign government employee or territory exceptions apply, thus they lack standing as to those sections as well. Again, it is telling that this is all Plaintiffs can muster. Thus, none of the class representatives have an imminent concrete injury traceable to the Executive Order.

Next, Plaintiffs ask this Court to find significance in the fact that Defendants did not "disavow enforcement" against class members, as if that provides that they "have standing to challenge" the new Executive Order. Mot. 14. That grossly misunderstands how standing works. It is *Plaintiffs'* burden to show that their injury is "not too speculative for Article III purposes." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564-65, n.2 (1992)). That the Government has not ruled *out* every single member in Plaintiffs' vast class from being possibly impacted by the eventual implementation of the Executive Order does not absolve Plaintiffs of that burden.

Finally, Plaintiffs suggest that they satisfy standing because "the certified class necessarily includes many of the people covered by the 2026 Executive Order." Mot. 14. That is wrong, many times over. For one, the Supreme Court has already rejected this probabilistic approach to standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497–98 (2009). For another, courts "analyze standing based on the allegations of personal injury made by the *named* plaintiffs," and "class plaintiffs cannot meet their burden to establish standing without a sufficient allegation of harm to the named plaintiff in particular." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892

F.3d 613, 620 (4th Cir. 2018) (citation modified); *Frank v. Gaos*, 586 U.S. 485, 492 (2019) ("[I]n a class action, . . . federal courts lack jurisdiction if no named plaintiff has standing."). As just explained, none of the named Plaintiffs have standing. That some unidentified number of unnamed class members might be able to eventually claim injury from the implemented Executive Order does not move the needle unless a *named* Plaintiff can say the same.

And regardless, standing for *each* unnamed class member must ultimately be established before he can receive relief, injunctive or otherwise; "Article III does not give federal courts to order relief to *any* uninjured plaintiff, class action or not." *TransUnion LLC*, 594 U.S. at 431 (citation omitted); *accord* Fed. R. Civ. P. 23(b)(2) (requiring "final injunctive relief" to be "appropriate respecting the class *as a whole*" (emphasis added)). That this Court can "be confident that the class includes a broad swath of individuals" affected by the Executive Order, even if true, is thus insufficient. Mot. 14. As the Supreme Court has made clear, a court can only provide classwide relief if *every* member of the class has standing to receive it—whether that relief is "injunctive relief" or "damages." *TransUnion*, 594 U.S. at 431. And—as with the named Plaintiffs themselves—that class members' parents were illegal or temporarily present aliens tells this Court nothing about whether those parents were alien enemies, birth tourists, or foreign government employees.

In short, Plaintiffs' challenge to the new Executive Order is nonjusticiable, and provides no basis for this Court to enter a TRO at all—let alone on a classwide basis.

**B. Plaintiffs cannot satisfy Rule 23's requirements as to the new Executive Order.**

There is yet another problem with Plaintiffs' request for a classwide preliminary injunction. To bring a class action, Plaintiffs must satisfy the numerosity, commonality, typicality, and adequate representation requirements of Federal Rule of Civil Procedure 23(a). In this case,

Plaintiffs have always sought class certification under Rule 23(b)(2), which permits class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class" such that "final injunctive relief" is "appropriate respecting the class as a whole." Here, the relevant "act" is (forthcoming) agency enforcement of the 2026 Executive Order.

Now that they attempt to insert a new government action into this case, Plaintiffs cannot rest on their laurels. "Even after a certification order is entered," this Court "remains free to modify it in light of subsequent developments in the litigation." *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). And, for much the same reasons that Plaintiffs fail to demonstrate standing to challenge the new Executive Order, they cannot satisfy Rule 23 either. Class actions are appropriate only when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). But here, as explained, Plaintiffs have not identified *anyone* who would be affected by the 2026 Executive Order—understandably so, given that guidance has not issued yet. Nor can Plaintiffs satisfy the commonality requirement of Rule 23(a)(2). The "determination of" any dispute over the new Executive Order would *not* "resolve an issue that is central to the validity of each one of the claims in one stroke," because Plaintiffs have not identified *anyone* who has *any claim* against the new Executive Order. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Even if Plaintiffs could identify a sliver of class members who are arguably affected by the new Executive Order, that would not produce the numerous or common claims that Rule 23 requires.

And the named Plaintiffs may not be the right representatives in any event. To repeat, they lack standing. And even if they had standing under the alien enemy or birth tourism exceptions, they do not even claim to be impacted by the foreign government employee or territory exceptions. Thus, they are not typical of any class members who might fall into those exceptions.

Plaintiffs must wait for guidance to issue to prove that the named Plaintiffs have anything to do with the 2026 Executive Order. And if they ultimately cannot do so, the named Plaintiffs would have no personal interest in challenging the 2026 Executive Order and would therefore not provide adequate representation for class members who do. Fed. R. Civ. P. 23(a)(4). Finally, without any demonstration from Plaintiffs that a significant number of class members would fall within the new Executive Order's terms, "final injunctive relief" would not be "appropriate" for "the class as a whole." Fed. R. Civ. P. 23(b)(2). Class members cannot receive injunctive relief against an executive order that does not even apply to them. *See TransUnion*, 594 U.S. at 431.

None of this should be surprising. It would have been a remarkable coincidence if Plaintiffs' proposed class—handpicked for a particular, nineteenth-month old Executive Order—managed to have standing and to satisfy Rule 23 as to an entirely new Executive Order that had not even been written yet. These threshold problems with Plaintiffs' newest request for injunctive relief only serve to confirm that this is not the correct time, case, or forum to challenge the 2026 Executive Order.

**C. Plaintiffs cannot show any likelihood of success on the merits.**

Plaintiffs fare no better on the merits. To show the requisite likelihood of success, Plaintiffs "need not establish a 'certainty of success,' but must make a clear showing that [they are] likely to succeed at trial." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013), *abrogated by Phila. Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, --- F.4th ---, 2026 WL 2409055 (4th Cir. Aug. 18, 2026)). They cannot make that showing.

To start, Plaintiffs' Complaint says nothing at all about the 2026 Executive Order, and their request for a preliminary injunction before even formally challenging the Executive Order has the

order of operations exactly backwards. The point of a preliminary injunction is to "preserve[] the status quo pending a final trial on the merits[.]" *Hoechst Diafoil Co.*, 174 F.3d at 422. That necessarily presupposes that there will *be* a "trial on the merits," *id.*, which itself depends on whether the complaint raises the claim at all, *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (noting that the complaint "controls the case"). For that reason, courts routinely reject requests for preliminary relief when it would "prevent an injury or harm" not "caused by the wrong claimed in the underlying action." *Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). While "new assertions" in a motion for injunctive relief "might support additional claims" in a *new* lawsuit, they "cannot provide the basis for" preliminary injunctive relief in an outdated one. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (rejecting preliminary injunction request "based on new assertions" that are "entirely different from the claim raised and the relief requested" in the operative complaint); *see also Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (denying motion for preliminary injunctive relief because it "present[ed] issues which are entirely different from those which were alleged in [the] original complaint"). In other words, without an up-to-date complaint, Plaintiffs' injunctive request cannot even get off the ground.

Plaintiffs appear to recognize a new complaint may be necessary and preemptively ask for leave to amend their complaint to allege that the 2026 Executive Order is an "unconstitutional continuation" of the 2025 Executive Order. Mot. 10 n.2. While Plaintiffs may have identified a (partially) correct diagnosis, they offer up the wrong cure. As explained, the 2026 Executive Order is *not* a continuation of last year's Executive Order. It is based on a different legal theory and applies to much narrower groups. Such an amendment would solve none of the problems with Plaintiffs' requested relief and would therefore be futile.

Regardless, even assuming Plaintiffs have standing, that they have proposed an appropriate class, and that they have brought an amended complaint, they cannot succeed on their central merits claim that the 2026 Executive Order runs afoul of *Barbara* and *Wong Kim Ark*. Because there is no firm guidance yet issued by the agencies, and because the Executive Branch retains significant discretion in how to implement the new Executive Order, the dispute cannot possibly be ripe for adjudication at this TRO stage. Plaintiffs cannot show that *any* future implementation is foreclosed by *Barbara*, which is what Plaintiffs would have to show (at the very least) in order to succeed on a challenge predating any guidance from the agencies.

In all events, the 2026 Executive Order is fully consistent with *Barbara* and *Wong Kim Ark*, as well as the statute codifying their principles, 8 U.S.C. § 1401. Neither *Barbara* nor *Wong Kim Ark* purported to give an exhaustive definition of each exception to the default birthright citizenship rule—nor, given the questions presented to the Supreme Court in each of those cases, did they need to. While the Supreme Court has indicated some of the contours regarding which foreign representatives and family members are subject to the jurisdiction of the United States and which are not*, see, e.g., Wong Kim Ark*, 169 U.S. at 678–79, it has never ruled on the issue comprehensively. Instead, in *Barbara*, it made a passing reference to varying concepts that it did not analyze in depth, including to "officials abroad" and "representatives of foreign sovereigns[.]" *Barbara*, 146 S. Ct. at 2450–52. Similarly, while the Supreme Court has mentioned an exception for children of "enemies within and during a hostile occupation of part of our territory," *Wong Kim Ark*, 169 U.S. at 693, it has never set well-defined limits on those terms either. The new Executive Order's categories easily align with those traditions.[3]

[3] Plaintiffs make no arguments regarding the territory exception and thus any challenge to that part of the Order is waived.

Nor—despite Plaintiffs' repeated invocation of the concurrence in *Barbara*—did the Supreme Court definitively declare a "closed set" understanding of the exceptions to birthright citizenship. *Contra* Mot. 8. Indeed, *Barbara*'s usage of such open-ended concepts as "extraterritorial fiction[s]," "natural 'allegiance,'" and areas "temporarily outside [the sovereign's] control"—to say nothing of *Barbara*'s consistent invocation of the "common law"—suggests just the opposite. 146 S. Ct. at 2445, 2449 (citation omitted).

To be clear, Plaintiffs' arguments to the contrary are necessarily speculative, and rely on assumptions about what the forthcoming guidance will say which Plaintiffs cannot possibly know. It remains Defendants' position that the proper time to raise arguments on the merits of the new Executive Order is *after* guidance is issued, at which point the right plaintiffs could challenge what the Executive Order *actually* does. The right forum setting to have such arguments is not in a response limited to responding to an add-on TRO request. Nonetheless, it bears at least briefly noting that Plaintiffs' accusation of the 2026 Executive Order as being unconstitutional is unfounded.

Plaintiffs had to win on every injunction factor to merit a TRO. *Frazier*, 86 F.4th at 545. They cannot do so. This Court should deny Plaintiffs' request.

**D. The remaining injunction factors weigh against Plaintiffs.**

Plaintiffs cannot make the requisite showing on the remaining preliminary injunction factors, either. A plaintiff "must demonstrate more than just a 'possibility' of irreparable harm." *Di Biase*, 872 F.3d at 230. Irreparable harm "must be neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). As explained, Plaintiffs have not demonstrated even injury-in-fact for purposes of standing; *a fortiori*, they cannot meet the higher bar of showing irreparable harm. Furthermore, Executive

Order 14,418 will not even take practical effect until "[t]he heads of all executive departments and agencies" issue "public guidance" regarding the Executive Order's "implementation with respect to their operations and activities." 91 Fed. Reg. at 51992. In these circumstances—where guidance has not yet issued, and Plaintiffs cannot commit to identifying anyone who will be impacted by the 2026 Executive Order—all that is before the Court are Plaintiffs' "speculative" concerns about who might be impacted. *Direx Israel*, 952 F.2d at 812. That dooms Plaintiffs' request for injunctive relief as well.

Plaintiffs cannot show that they have *any* equities in a challenge to the 2026 Executive Order. By contrast, at stake for Defendants is the ability to effectuate the guarantees and limits of the Citizenship Clause and the INA. *See Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025). And *any* injunction against Executive Order 14,418 in this case would be necessarily overbroad, in the absence of any allegations that any party is actually affected by it. *Id.* The balance of the equities tips in Defendants' favor.

## III. This Court Should Narrow Any Injunctive Relief.

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be narrowed. On the scope, Plaintiffs seek an injunction against the entire Executive Order. The 2026 Executive Order, however, has a severability clause. Each of the four exceptions can thus stand on their own. And "[P]laintiffs must demonstrate standing for each form of re-lief that they seek," *TransUnion*, 594 U.S. at 431, and "plaintiff's remedy must be 'limited to the inadequacy that produced his injury in fact,'" *Gill*, 585 U.S. at 66 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Even crediting the named Plaintiffs' injuries, none of them assert any injuries traceable to the foreign government employee or territory exceptions. In fact, Plaintiffs do not even dispute the legality of the territory exception in their briefing. Thus, there is no basis to enjoin that aspect of the Executive Order.

**CONCLUSION**

This Court should deny Plaintiffs' motion for a TRO.

Dated: August 26, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KELLY O. HAYES
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

TIBERIUS DAVIS
JOSHUA HA
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

*<u>/s/ Brad P. Rosenberg</u>*
BRAD P. ROSENBERG
(DC Bar No. 467513)
Chief Litigation Counsel
KATHLEEN JACOBS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: 202-514-3374
Email: brad.rosenberg@usdoj.gov

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant United States Attorney
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
Phone: 410-209-4800

*Attorneys for Defendants*