**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC. *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP *et al.*,

*Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ADDITIONAL CLASSWIDE PRELIMINARY INJUNCTIVE RELIEF OR A CLASSWIDE TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

INTRODUCTION .......... 1
ARGUMENT .......... 2
I. Defendants' Procedural Objections Fail. .......... 2
A. Plaintiffs Are Not Seeking an Improper "Springing" TRO. .......... 2
B. Plaintiffs Need Not Amend Their Complaint to Obtain a TRO. .......... 4
C. A Classwide TRO Is Consistent with Rule 23. .......... 5
II. Plaintiffs Meet the Standard for a TRO. .......... 8
A. Plaintiffs' Motion Is Ripe. .......... 8
B. Plaintiffs Have Standing to Obtain a Classwide TRO. .......... 11
C. Plaintiffs Are Overwhelmingly Likely to Succeed on the Merits. .......... 14
D. A TRO Is Necessary to Prevent Irreparable Harm. .......... 15
CONCLUSION .......... 15

## INTRODUCTION

Defendants make almost no effort to defend the constitutionality of the President's 2026 Executive Order purporting to again limit birthright citizenship. That is no surprise. As applied to the certified class in this case, the 2026 Executive Order is plainly unconstitutional under the Supreme Court's decision in *Trump v. Barbara*, 146 S. Ct. 2438 (2026). The Supreme Court held that all members of the certified class "are citizens at birth" under the Fourteenth Amendment. *Id.* at 2450. That holding binds this Court and requires protecting Plaintiffs' right to citizenship.

With no viable argument that the Order complies with the Constitution, Defendants instead focus on various procedural objections to Plaintiffs' TRO motion. But all of those arguments boil down to a single assertion: that Plaintiffs cannot challenge the 2026 Executive Order until after it goes into effect, which Defendants now say will not happen until agencies issue implementing guidance—despite contrary language in the Executive Order itself. This Court rejected that exact argument with respect to the 2025 Executive Order, which used the same language in directing agencies to issue guidance. *See CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703, 717 n.4 (D. Md. 2025). Defendants offer no reason that the Court should depart from its prior analysis and leave Plaintiffs vulnerable.

Regardless of whether the Court accepts Defendants' representation, a TRO is appropriate before the 2026 Executive Order takes effect. Absent a TRO, Defendants intend to deny citizenship to members of the certified class within days, assuming the Order is not already in effect, as its text indicates it may be. Plaintiffs need not wait until after they have suffered the grievous harm of losing their citizenship to seek relief. *See First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114, 1122 (2026). A TRO is necessary to prevent imminent and irreparable harm.

## ARGUMENT

### I. Defendants' Procedural Objections Fail.

#### A. Plaintiffs Are Not Seeking an Improper "Springing" TRO.

Defendants first contend that Plaintiffs improperly seek "a TRO-in-advance." ECF 170 at 10. But Plaintiffs are not asking the Court to enter a TRO now that would take effect later, which appears to be what Defendants mean by a "springing" TRO. Rather, Plaintiffs filed their TRO motion as early as practicable—and as an alternative to their preliminary injunction motion—to give the Court time to rule on it. Should the Court grant a TRO, Plaintiffs request that it take effect immediately when the Court issues it to prevent irreparable harm to class members.

Defendants have represented that they will not enforce the 2026 Executive Order until 30 days after it was issued, suggesting that enforcement will commence on September 5, 2026. *See* ECF 170 at 13; *see also* 2026 Executive Order § 3(b) (providing the supposed textual basis for this claim). Even if true—and it might not be—Plaintiffs ask the Court to issue a 14-day TRO before September 5. Plaintiffs' request that a TRO run for 14 days after the effective date was based on the assumption that, given time constraints, the Court would enter the TRO on or near that date. But nothing prevents the Court from entering a TRO sooner. In that circumstance, Plaintiffs could later seek a one-time extension if necessary, as permitted by Rule 65(b)(2).

Defendants find this approach "unusual," but it is exactly how pre-enforcement challenges usually proceed. It is common and prudent for plaintiffs to file motions for preliminary relief before the law or executive policy they are challenging goes into effect, in order to give the district court time to order briefing, hold oral argument, and issue an opinion by the effective date. *See, e.g.*, *Iowa Ass'n of Bus. & Indus. v. Ommen*, 799 F. Supp. 3d 795, 816 (S.D. Iowa 2025) (TRO motion filed June 26, granted June 30, as to law going into effect July 1); *Barred Bus. v. Kemp*, 740 F.

Supp. 3d 1309, 1313 (N.D. Ga. 2024) (TRO motion filed June 21, granted June 28, as to law going into effect July 1); *Computer & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011, 1021 (W.D. Tex. 2024) (granting preliminary injunction motion before law went into effect, while noting that "the Court would have appreciated more time to decide these complex issues"); *Rural & Migrant Ministry v. EPA*, 565 F. Supp. 3d 578, 585 (S.D.N.Y. 2020) (TRO motion filed December 18, granted December 29, as to EPA rule set to be implemented the same day). Indeed, in this very case, the Court twice entered preliminary relief against the 2025 Executive Order without waiting for the effective date. *See CASA, Inc. v. Trump* (*CASA I*), 763 F. Supp. 3d 723 (D. Md. 2025); *CASA, Inc. v. Trump* (*CASA III*), 793 F. Supp. 3d 687 (D. Md. 2025).

This case law refutes Defendants' suggestion that a TRO motion is always unripe if it is filed before the challenged action's effective date. *See* ECF 170 at 11. To the contrary, when plaintiffs wait until close to or after an action's effective date to seek a TRO, courts may deny the request on the ground that the plaintiffs waited too long. *See, e.g.*, *Fla. EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 13 (D.D.C. 2020) (denying preliminary relief, in part, because plaintiff waited until five days after rule took effect to file suit); *Welty v. Dunaway*, No. 3:24-cv-00768, 2024 WL 3245612, at *1-2 (M.D. Tenn. June 28, 2024) (denying TRO based on "lack of diligence" and "delay" where plaintiff filed TRO motion on June 26 challenging law taking effect July 1).

It would therefore be entirely proper procedurally for the Court to issue a TRO at its earliest convenience before September 5, even assuming that the Court credits Defendants' representation that the 2026 Executive Order will not be enforced before that date. But as Plaintiffs explained in their opening brief, there is good cause to doubt this representation. Section 3(a) of the 2026 Executive Order directs agencies to "take all appropriate measures to ensure … that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in

any manner inconsistent with this order." That section includes no reference to any delay in the agencies' obligation to comply. Section 3(b) then directs agencies to issue guidance "within 30 days." The inclusion of that 30-day timeframe in Section 3(b) but not in Section 3(a) suggests that Section 3(a) is not subject to a 30-day delay. Courts generally presume that "differences in language like this convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (internal quotation marks omitted). And regardless of whether the 2026 Executive Order is in effect already or will become effective September 5, the imminent enforcement of the Order to strip class members of citizenship is already causing irreparable harm, as explained in Plaintiffs' opening brief and their declarations. *See* ECF 168-1 at 23-24 (quoting declarations).

**B. Plaintiffs Need Not Amend Their Complaint to Obtain a TRO.**

Defendants are wrong that Plaintiffs' "injunctive request cannot even get off the ground" "without an up-to-date complaint." ECF 170 at 22. Although Plaintiffs filed their amended complaint in response to the 2025 Executive Order, neither of Plaintiffs' two counts mentions that Order. Instead, Plaintiffs allege that "Defendants lack the authority to interfere with, deny, or fail to recognize citizenship that is granted by the United States Constitution." ECF 96 at 39. Plaintiffs' challenge to the 2026 Executive Order fits within that claim, and their TRO motion properly seeks to prevent class members "from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). That is sufficient for a TRO. The Supreme Court's decision in *Withrow v. Larkin*, 421 U.S. 35, 37 (1975), confirms the point. There, the plaintiff filed an amended complaint challenging an action by a state medical board, then later filed a motion for a TRO based on a subsequent, related action by the board. The Supreme Court held that the TRO motion was proper without filing an additional complaint

because "the motion was within the subject matter of the case as defined by the amended complaint." *Id.* at 46 n.8. The same is true of Plaintiffs' TRO motion challenging subsequent developments here. The subject matter of the case is Plaintiffs' right not to have their citizenship denied by Executive fiat, and the overlapping Executive Orders both implicate that right. Defendants' contrary claim that "the 2026 Executive Order is *not* a continuation of last year's Executive Order," ECF 170 at 22, is in stark tension with the 2026 Executive Order's title and text.

If, however, the Court concludes that Plaintiffs need to update their complaint, Plaintiffs seek leave to do so, and Defendants are wrong that it would be "futile." *Id.* Plaintiffs have easily met the permissive standard for filing a supplemental complaint. The Court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Various courts have concluded that requiring a plaintiff to go through the needless formality and expense of instituting a new action when events occurring after the original filing indicated he had a right to relief [is] inconsistent with the philosophy of the federal rules." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (alteration and internal quotation marks omitted). "So useful [Rule 15(d) motions] are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963). Defendants identify no such reason here; leave to supplement "should be freely granted." *Franks*, 313 F.3d at 198 n.15.

**C. A Classwide TRO Is Consistent with Rule 23.**

Defendants object that "Plaintiffs cannot rest on their laurels" in seeking classwide relief against the 2026 Executive Order and must instead demonstrate again that the Rule 23 requirements are met. ECF 170 at 19-20. This argument fails for several reasons.

First, Plaintiffs do not seek to certify a new class or to modify the class this Court already certified. Instead, they merely seek additional relief on behalf of the existing certified class. And as this Court previously recognized, all members of the certified class have a shared and common interest in relief recognizing that they are citizens by birth and preventing Defendants from seeking to unilaterally override the Fourteenth Amendment. *See CASA II*, 793 F. Supp. 3d at 719 (describing the "central issue" as "whether the children are entitled to birthright citizenship.").

Even if a TRO would be "aimed only at some Class Members" who are covered by the 2026 Executive Order, that is not a reason for this Court to revisit its order granting class certification. *Daniels v. Jeffreys*, No. 07-1298, 2023 WL 5501217, at *5 (C.D. Ill. Aug. 25, 2023). "[A]fter certification, the true plaintiff is the entire class," which acquires a separate legal status. *Id*. at *4; *see also Sosna v. Iowa*, 419 U.S. 393, 399 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by" an individual plaintiff). As "true plaintiff," the class may then seek any relief—even as to only a subset of members—as long as the relief "fits within the broader risk of future injury that resulted from" the unlawful action "for which [the] Class was certified, and … the requested relief addresses that harm." *Daniels*, 2023 WL 5501217, at *5; *see also Orr v. Trump*, 786 F. Supp. 3d 397, 415 (D. Mass. 2025) (granting preliminary relief to a subgroup of two certified classes), *opinion vacated as moot*, 178 F.4th 34 (1st Cir. 2026). The harm here arises from the same effort by Defendants to deny birthright citizenship to class members and implicates Plaintiffs' same claims and legal theories. Classwide relief is thus appropriate, even if not every class member is affected by the 2026 Executive Order.

Defendants' assertion that "[c]lass members cannot receive injunctive relief against an executive order that does not even apply to them," ECF 170 at 21, finds no support in *TransUnion*,

which discussed claims for damages, not injunctive relief. In an injunctive class action, "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (internal quotation marks omitted); *cf. Warth v. Seldin*, 422 U.S. 490, 515 (1975) (explaining in the associational standing context that for prospective relief, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those … actually injured").

If, however, the Court has concerns about granting relief applicable only to a subset of the class, the appropriate course of action would be to create a subclass, not to deny relief. *See Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 682 (4th Cir. 2024) ("An overbreadth problem … can and often should be solved by refining the class definition[s] ...."). As Defendants readily concede, "[e]ven after a certification order is entered," this Court "remains free to modify it." ECF 170 at 20 (quoting *Gen Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). That includes certifying a subclass. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 407 (1980). Creation of a subclass can help "expedite resolution of the case by segregating" a distinct legal issue "common to some members." *Am. Timber & Trading Co. v. First Nat. Bank of Ore.*, 690 F.2d 781, 787 (9th Cir. 1982). Because such subclasses merely aid the court in management of the action under Rule 23(d), "it is unnecessary to evaluate" them "for commonality, numerosity, typicality, and adequacy of representation." *Id.* at 787 n.5. This Court may simply designate as a subclass those who would be affected by the 2026 Executive Order and limit the scope of the TRO to those individuals.

Even if Plaintiffs were required to satisfy the Rule 23 requirements over again, they do so easily here for the same reasons this Court explained in granting class certification. *See CASA II*, 793 F. Supp. 3d at 715-26. The certified class necessarily includes many of the people covered by

the 2026 Executive Order, *see* ECF 168-1 at 14, easily clearing the bar for numerosity. *See, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967) (en banc) (recognizing that a class can be certified with as few as 18 members); *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them."). The class shares a common interest in their right to birthright citizenship, and a determination that the 2026 Executive Order is unconstitutional would resolve all class members' claims in one stroke. *See CASA II*, 793 F. Supp. 3d at 718-19. As discussed below with respect to standing, the class representatives have both the same interest and the same injury as other class members. *Id*. at 722. They will adequately represent the class, and Defendants offer no reason to believe there are any conflicts of interest. *Id*. at 723. As this Court determined in originally certifying the class, Defendants' efforts to suggest that factual differences in class members' circumstances render classwide relief inappropriate fail because those facts are "irrelevant to whether [a] child is entitled to U.S. citizenship." *Id*. at 720. Classwide relief is appropriate.

## II. Plaintiffs Meet the Standard for a TRO.

### A. Plaintiffs' Motion Is Ripe.

Defendants are wrong that Plaintiffs' motion is "quintessentially unripe" because agencies have not yet issued the guidance contemplated in Section 3(b). ECF 170 at 15. This Court already rejected that exact same ripeness argument when Defendants made it with respect to the 2025 Executive Order. The 2025 and 2026 Executive Orders contain identical language directing agencies to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *See* 2025 Executive Order § 3(b); 2026 Executive Order § 3(b). Based on that language in the 2025 Executive Order, Defendants

argued that "preliminary relief against the agency defendants … would not be ripe because those agencies are in the process of developing guidance." ECF 111 at 2; *see also id.* at 3. But the Court summarily rejected that argument when granting class certification: "This case is not premature. The Executive Order directed the defendant agencies to implement the Executive Order's terms. Those agencies would have acted if this Court and others did not enjoin them." *CASA II*, 793 F. Supp. 3d at 717 n.4. The Court should reach the same conclusion with respect to the same language in the 2026 Executive Order. *Cf. LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (under "the law-of-the-case doctrine[,] the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*" (emphasis in original)).

In any event, members of the class face imminent, irreparable harm from the 2026 Executive Order. The fact that, according to Defendants, the Order will not be enforced until September 5 does not render Plaintiffs' challenge unripe. September 5 is now less than 10 days away. Members of the class face the prospect of being denied citizenship next weekend, including hundreds of newborns who join the class each day. *See* ECF 97-1 at 9. The injury Plaintiffs face is thus "imminent." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (internal quotation marks omitted). Ripeness doctrine does not require Plaintiffs to wait to file suit until after their citizenship has been taken away, a harm that represents "the total destruction of the individual's status in organized society," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality op.). "[A] party need not always wait for the government to take coercive action against it before filing suit to challenge the government's conduct[,] … so long as it faces 'a credible threat of enforcement.'" *First Choice*, 146 S. Ct. at 1122 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014)). Because there is a credible threat that the 2026 Executive Order will be enforced against members of the class within a matter of days, Plaintiffs' motion is ripe.

Contrary to Defendants' suggestion, ECF 170 at 14-15, neither the Supreme Court's recent decision in *Trump v. California*, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) (per curiam), nor its prior decision in *Trump v. New York*, 592 U.S. 125 (2020) (per curiam), supports Defendants' ripeness argument. In *California*, the Supreme Court held that a challenge by states to an Executive Order concerning federal election administration was unripe because the theory of injury involved an "unduly long chain of inferences" and required "stacking hypothetical on hypothetical to speculate that harm will eventually materialize." 2026 WL 2473573, at *2 (internal quotation marks omitted). Similarly, the Supreme Court's decision in *New York* held that a challenge to an Executive Order was unripe where the theory of harm rested on speculation about future actions agencies might take and where the Order directed agencies to take actions only "to the extent practicable" and "to the extent feasible." *New York*, 592 U.S. at 131.

But the Executive Orders at issue in those cases were nothing like the one here. The Executive Order in *California*, for example, is riddled with contingencies and multistep processes. It directs the Secretary of Homeland Security to create state citizenship lists, but only "[t]o the extent feasible and consistent with applicable law." *California*, 2026 WL 2473573, at *1. As the Supreme Court observed, this section "may not prove feasible to implement in any manner whatsoever." *California*, 2026 WL 2473573, at *2 (quoting *New York*, 592 U.S. at 132). The Executive Order also directs "the Postal Service to initiate the process of proposing a rule that might bind the States in the future." *Id.* at *4. But at the time the states challenged the Order, there was not even "a proposed rule, let alone a final rule." *Id.* Concluding that the Order's directive to initiate a rulemaking injured the states thus required "a string of speculations" about whether there would be a final rule, what that rule would say, and how it would apply to the states. *Id.*

No such speculation is required here. The 2026 Executive Order states in clear, unqualified

language that "no executive department or agency shall issue documents recognizing United States citizenship to, or accept documents issued by State, local, or other governments or authorities purporting to recognize United States citizenship regarding" covered individuals. 2026 Executive Order § 2. Heads of departments "*shall* take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, *in any manner* inconsistent with this order." *Id.* § 3(a) (emphasis added). And although the Order directs agencies to issue guidance, there is no indication whatsoever that the agencies can disregard the Order if they find that implementing it would not be feasible. The 2026 Executive Order thus commands agencies to impose direct and immediate harm on covered individuals, including members of the certified class, with no need for chains of inferences or strings of speculation. Defendants try to make the 2026 Executive Order seem more like the orders at issue in *New York* and *California* by quoting stray words, *see* ECF 170 at 16 ("Policy," "Enforcement," "appropriate"), but reading those words in context shows that the 2026 Executive Order allows for no contingencies.

**B. Plaintiffs Have Standing to Obtain a Classwide TRO.**

Defendants next insist that no plaintiff can establish standing because the scope of the 2026 Executive Order cannot be defined until agencies issue guidance. But because Plaintiffs bring a pre-enforcement challenge to the 2026 Executive Order, they need not establish with "certainty" that they will fall within the scope of its categories. ECF 170 at 15-16. Instead, they need only prove that they face "a *credible* threat" of enforcement. *Susan B. Anthony List*, 573 U.S. at 159 (internal quotation marks omitted; emphasis added). Monica, Liza, Juana, and Andrea have all done so. They offered declarations detailing their well-founded fears that their children fall within

the scope of the 2026 Executive Order and therefore risk being stripped of their citizenship. ECF 168-1 at 11-13. The President's decision to issue a new executive order once again targeting birthright citizens, taken together with Defendants' unwillingness to provide clarity on the scope of the Order's categories or to clearly disavow enforcement against Plaintiffs, demonstrates that Plaintiffs face a credible risk of enforcement. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("[T]he state's refusal to disavow enforcement ... is strong evidence that the state intends to enforce the law and that [the plaintiffs] face a credible threat.").

Defendants' efforts to cast doubt on Plaintiffs' declarations ignore the severity of the harm their families face. Defendants portray Monica's fears that she or her partner may be labeled an alien enemy because they are Venezuelan as "speculative and baseless," even as Defendants acknowledge that the Administration has done the same to hundreds of others. ECF 170 at 17; *see, e.g.*, *Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682, 699 (W.D. Tex. 2025) (granting habeas to Venezuelan parents who formerly had TPS, after they were arrested and detained based on allegations of being Tren de Aragua members, supported by nothing but "shoddy affidavits and contradictory testimony"). And at other points, Defendants acknowledge how broad and uncertain the potential sweep of the "alien enemies" category is. ECF 170 at 8 (noting that the "alien enemy" category is "'defined to include any member of a designated Foreign Terrorist Organization' or 'Specially Designated Global Terrorist,' *among other things*" (emphasis added)). Moreover, Defendants do not even engage with Liza's and Juana's explanations of the commercial transactions they engaged in to come to the United States and the credible threat that their children could be covered by the 2026 Executive Order on that basis. *See* ECF 168-1 at 13.

Instead, Defendants offer a narrowing construction of the 2026 Executive Order, insisting that none of the named Plaintiffs have standing because the Order applies only to children born after its issuance. ECF 170 at 2, 16. But nothing in the text of the Order supports that assertion. Defendants put the word *future* in italics, but tellingly not in quotes. *Id.* at 2. And it is difficult to rely on this representation given the numerous recent instances in which the Department of Justice has made false or misleading statements to courts. *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025) ("The contradiction between Defendants' factual representations and the facts on the ground is particularly striking. … [T]he Court must remark that this exchange does not reflect the level of diligence the Court expects from any litigant—let alone the United States Department of Justice."); *Temahagari v. Bondi*, No. 25-CV-02484-LK, 2026 WL 353264, at *7 (W.D. Wash. Feb. 9, 2026) ("The 'presumption of regularity' is dislodged here by the numerous factual errors in Respondents' filings and by their conflicting representations to the Court."); *D.V.D. v. DHS*, No. 25-10676, ECF 132 at 3 (May 23, 2025 D. Mass.) ("Finally, it must be said that, while mistakes obviously happen, the events leading up to this decision are troubling. The Court was given false information, upon which it relied, twice, to the detriment of a party at risk of serious and irreparable harm."). The class representatives have established a sufficiently credible threat that their already-born children will be stripped of citizenship to bring this pre-enforcement challenge. In any event, class representatives have indicated they intend to have more children in the future, *e.g.*, Liza 3d Decl. ¶ 6, and new babies roll into the class each day.

Defendants are also incorrect to assert that Plaintiffs must have "at least one class representative for each exception in the Executive Order." ECF 170 at 16. Plaintiffs' claim is that Defendants lack the authority to deny class members the citizenship they are guaranteed by the

Constitution, as the Supreme Court already held. ECF 96 at 39. Plaintiffs seek a single form of relief: assurance that "all children born in the United States" within the certified class "are citizens of the United States and are entitled to all of the rights and privileges that such status provides, regardless of the immigration status of their parents." *Id.* at 41. As was true with regard to the 2025 Executive Order, the fact that Defendants identify different categories of individuals from whom they plan to strip citizenship does not change that Plaintiffs' challenge applies equally across the board. "[A]t least one class representative … has Article III standing to seek" the sole form of equitable relief requested, and "[n]othing more is required on that score." *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 779 (4th Cir. 2023).

**C. Plaintiffs Are Overwhelmingly Likely to Succeed on the Merits.**

Defendants have little to say about the merits. *See* ECF 170 at 23-24. That is no surprise because the 2026 Executive Order violates the Citizenship Clause, as interpreted by the Supreme Court just two months ago. It is true that *Barbara* considered the constitutionality of the 2025 Executive Order. But *Barbara*'s "reasoning must be followed" with respect to the 2026 Executive Order as well. *See Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA* (*AFSCME*), 172 F.4th 361, 377 (4th Cir. 2026) (en banc) (Richardson, J., concurring) ("[W]hen the Supreme Court speaks, inferior courts must listen."). And *Barbara*'s reasoning renders the 2026 Executive Order unconstitutional.

The Supreme Court in *Barbara* held that the 2025 Executive Order, which purports to deny citizenship to all members of the certified class here, is facially unconstitutional. *See Barbara*, 146 S. Ct. at 2477 (Thomas, J., dissenting) ("The Court today takes the extraordinary step of holding facially unconstitutional the President's Order excluding from citizenship the children of foreign temporary visitors and illegal aliens."). That means the 2025 Executive Order is unconstitutional

in all of its applications and all members of the certified class "are citizens at birth." *Id.* at 2450 (majority op.). The President cannot take away their citizenship under the rationale of the 2025 Executive Order, the rationale of the 2026 Executive Order, or any other rationale. "It is emphatically the province and duty of the judicial department to say what the law is," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (internal quotation marks omitted), and here the Supreme Court has spoken.

**D. A TRO Is Necessary to Prevent Irreparable Harm.**

The point of preliminary relief is to "prevent plaintiffs from suffering new or additional irreparable harm." *AFSCME*, 172 F.4th at 372. That is exactly why Plaintiffs seek a TRO. Defendants say Plaintiffs need to first expose themselves to the loss of citizenship for a little while before their injury will be sufficiently concrete. ECF 170 at 24-25. That argument is "callous and wrong." *CASA I*, 763 F. Supp. 3d at 744. As this Court has held, "[t]he denial of the precious right to citizenship for any period of time will cause [Plaintiffs] irreparable harm." *Id.* Stripping citizenship is "a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development." *Trop*, 356 U.S. at 101 (plurality opinion). The class representatives are right back where they were at the beginning of the case, with parents feeling tremendous "stress and anxiety" about what fate will befall their children. *E.g.*, Monica 3d Decl. ¶ 13. Thousands of pregnant women whose children will soon be born into the class are in the same position. There is nothing speculative about the harm Plaintiffs face.

**CONCLUSION**

The Court should grant Plaintiffs' motion for a temporary restraining order.

Respectfully submitted this August 27, 2026,

*/s/ William Powell*
William Powell*
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu

Conchita Cruz*
Jessica Hanson (D. Md. 31903)
Dorothy Tegeler*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
dorothy.tegeler@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

*Attorneys for Plaintiffs*

**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE AND RULE 65 CERTIFICATION**

I hereby certify that, on August 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent to all counsel who have entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. All defendants are currently represented by counsel who have entered an appearance and who receive notification of filings through the CM/ECF system. The notice provided by the CM/ECF system is sufficient to provide notice to all counsel of this filing. Fed. R. Civ. P. 5(b)(2)(E); Electronic Case Filing Policies & Procedures Manual 2.E; Standing Order 2003-08.

/s/ William Powell
William Powell