**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

CASA, INC.,
8151 15th Avenue
Hyattsville, MD 20528;

ASYLUM SEEKER ADVOCACY PROJECT, INC.,
228 Park Ave. S #84810
New York, NY 10003-1502;

MARIBEL,[1] *individually and as next friend to her child*,
c/o Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC 20001;

JUANA, *individually and as next friend to* Y.P.C.*, on behalf of themselves and all others similarly situated*,
c/o Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC 20001;

TRINIDAD GARCIA, *individually and as next friend to her child, on behalf of themselves and all others similarly situated*,
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

**Case No.: 8:25-cv-00201-DLB**

**FIRST SUPPLEMENT TO FIRST AMENDED COMPLAINT**

**CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF**

[1] The Court granted leave to the plaintiffs identified in the original complaint to proceed using pseudonyms. ECF No. 65. Plaintiffs are using pseudonyms in this supplemental complaint in order to protect the identities of their minor children and to prevent retaliation against their families.

MONICA, *individually and as next friend to* A.M., *on behalf of themselves and all others similarly situated*,
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

LIZA, *individually and as next friend to* L.B., *on behalf of themselves and all others similarly situated*,
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

ASHLEY, *individually and as next friend to* K.K., *on behalf of themselves and all others similarly situated*,
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

ANDREA, *individually and as next friend to* E.T.P., *on behalf of themselves and all others similarly situated*,
c/o Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC 20001; *and*

NIURKA, *individually and as next friend to* L.G., *on behalf of themselves and those similarly situated*,
c/o Asylum Seeker Advocacy Project,
228 Park Ave. S #84810
New York, NY 10003-1502;

Plaintiffs,

v.

DONALD J. TRUMP, in his official capacity as President of the United States,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

SECRETARY OF THE UNITED STATES DEPARTMENT OF STATE, in their official capacity,
The Executive Office of the Legal Adviser and Bureau of Legislative Affairs
600 19th Street NW
Suite 5.600
Washington, DC 20522;

ATTORNEY GENERAL OF THE UNITED STATES, in their official capacity,
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, in their official capacity,
c/o Office of the General Counsel
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485;

DIRECTOR OF UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, in their official capacity,
c/o Office of the Chief Counsel
5900 Capital Gateway Drive
Mail Stop 2120
Camp Springs, MD 20588-0009;

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, in their official capacity,
c/o Office of the General Counsel
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235; *and*

UNITED STATES OF AMERICA,
c/o Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001;

*Defendants*.

**FIRST SUPPLEMENT TO FIRST AMENDED COMPLAINT**

Plaintiffs hereby supplement their First Amended Complaint, ECF 96, under Rule 15(d) of the Federal Rules of Civil Procedure. The Court has granted leave for Plaintiffs to file this supplement. ECF 176 (paperless order). This Supplemental Complaint is filed in addition to, not in replacement of, Plaintiffs' First Amended Complaint.

**SUPPLEMENTAL BACKGROUND**

1. CASA, Inc. ("CASA"), the Asylum Seeker Advocacy Project ("ASAP"), and five pregnant mothers originally filed this lawsuit on January 21, 2025, one day after President Trump issued an Executive Order titled "Protecting the Meaning and Value of American Citizenship," *see* Exec. Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025) ("2025 Executive Order"), which "provides that children born of persons unlawfully or temporarily present in the United States are not 'subject to the jurisdiction' of the United States—and thus do not qualify for citizenship under the Fourteenth Amendment or the Immigration and Nationality Act," *Trump v. Barbara*, 146 S. Ct. 2438, 2444 (2026).

2. Plaintiffs alleged that the 2025 Executive Order violated the Citizenship Clause of the Fourteenth Amendment and 8 U.S.C. § 1401(a), which guarantee citizenship to children born in the United States to parents who are unlawfully or temporarily present. ECF 1. This Court granted a preliminary injunction barring enforcement of the 2025 Executive Order. *CASA, Inc. v. Trump* (*CASA I*), 763 F. Supp. 3d 723 (D. Md. 2025).

3. Plaintiffs later filed an amended complaint to seek relief on behalf of a nationwide class of children born to parents who are unlawfully or temporarily present in the United States. ECF 96. Plaintiffs contended that "[t]he Executive Branch has no power to unilaterally amend or repeal the Fourteenth Amendment and no power to disobey a clear constitutional command." *Id.* at 39.

4. The Court certified a class consisting of: "Any child who has been born or will be born in the United States after February 19, 2025, (1) whose mother was unlawfully present in the United States and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) whose mother's presence in the United States at the time of said person's birth was lawful but temporary and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth." *CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703, 730 (D. Md. 2025).

5. The Court then issued a classwide preliminary injunction. *CASA, Inc. v. Trump* (*CASA III*), 793 F. Supp. 3d 687 (D. Md. 2025). The Court issued this injunction to "preserv[e] birthright citizenship for children born on U.S. soil, who unquestionably would be citizens but for the Executive Order." *Id.* at 698.

6. The Supreme Court granted certiorari before judgment in a similar lawsuit filed on behalf of an identical class and held that all children covered by the 2025 Executive Order are

entitled to citizenship under the Fourteenth Amendment. *Trump v. Barbara*, 146 S. Ct. 2438, 2450 (2026). The Supreme Court explained that the phrase "subject to the jurisdiction thereof" in the Citizenship Clause "refer[s] to the power of the United States to govern those within its territory." *Id.* The Court therefore held that "children born of parents unlawfully or temporarily present in the United States" are "citizens at birth" because they "satisfy both elements of the Citizenship Clause: they are 'born ... in the United States' and 'subject to the jurisdiction thereof.'" *Id.* (alteration in original).

## SUPPLEMENTAL FACTUAL ALLEGATIONS

### A. The 2026 Executive Order

7. Following the Supreme Court's ruling in *Barbara*, the President issued a new Executive Order limiting birthright citizenship, which he framed as a continuation of the 2025 Executive Order. *See* Exec. Order No. 14418, "Continuing To Protect the Meaning and Value of American Citizenship," 91 Fed. Reg. 51991 (Aug. 6, 2026), ECF 161-1 ("2026 Executive Order").

8. The 2026 Executive Order purports to deny citizenship to several categories of children born in the United States to noncitizen parents.

9. First, the Order denies citizenship to a person if one of their parents is an "alien enemy, defined to include any member of a designated Foreign Terrorist Organization under 8 U.S.C. 1189 or Specially Designated Global Terrorist, consistent with the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq.*, and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended." 2026 Executive Order § 2(a).

10. Second, the Order denies citizenship to a person if one of their parents is a "foreign government employee," including not only ambassadors but also "persons employed by a foreign

embassy or consulate who are nationals of that foreign country," "persons employed by a foreign government in an official capacity," and "persons employed by an international organization that possess international-organization immunity." *Id.* § 2(b).

11. Third, the Order denies citizenship to a person if "either parent of that person engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* § 2(c). This third category "include[s]" "when the parent(s) of the person engage in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" or "when the parent(s) engage in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth." *Id.*

12. Fourth, the Order denies citizenship to a person who "is born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* § 2(d).

13. At least the first three of those categories include members of the certified class, because they encompass children born to noncitizen parents who are present in the country unlawfully or temporarily.

14. The 2026 Executive Order instructs that "[t]he Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security shall take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* § 3(a). That provision includes no effective date.

15. Separately, the Order directs that "[t]he heads of all executive departments and agencies shall issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* § 3(b).

16. The 2026 Executive Order does not rescind the 2025 Executive Order, which remains on the books.

17. Nothing in the text of the 2026 Executive Order suggests that it applies only to children born after its issuance. Unlike the 2025 Executive Order, which specified that it applied "only to persons who are born within the United States after 30 days from the date of this order," the 2026 Executive Order does not specify that it is applicable only to children born after any particular date. The omission of such a provision from the 2026 Executive Order indicates that the Order could apply to children within its categories who were born before the President issued the Order.

**B. Harms Inflicted by the Order on the Certified Class**

18. Like the 2025 Executive Order, the 2026 Executive Order is imposing immediate, irreparable harm on members of the class by purporting to unconstitutionally deny them the "most precious right" of citizenship. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 159 (1963). "It would be difficult to exaggerate [the] value and importance" of United States citizenship. *Schneiderman v. United States*, 320 U.S. 118, 122 (1943).

19. Citizenship signifies that a person is a full member of the United States community and is entitled to all of the privileges, benefits, and freedoms that citizenship guarantees. As citizens, individuals born in the United States enjoy an unqualified right to enter and remain in their homeland. Moreover, citizens are ensured the opportunity to pursue the American dream and participate fully in the civic and political life of the United States. They can vote, travel under a

United States passport, hold certain public offices, and qualify for many public benefits that noncitizens do not. Denial of citizenship represents "the total destruction of the individual's status in organized society . . . a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality op.).

20. The 2026 Executive Order threatens the status of members of the certified class as United States citizens and interferes with their enjoyment of the full privileges, rights, and benefits that come with U.S. citizenship. That deprivation of the benefits of citizenship is a grave injury not only to those individuals but to their entire families, who will be directly harmed by the denial of the benefits of citizenship to their relatives.

21. The certified class necessarily includes many of the people covered by the 2026 Executive Order. The certified class includes all children born after February 19, 2025, to parents who were unlawfully or temporarily present in the United States. And the 2026 Executive Order applies to children of such parents so long as one parent is deemed an alien enemy, foreign government employee, or individual who engaged in a commercial transaction to give birth in the U.S. Those children are necessarily within the class.

22. The 2026 Executive Order imposes significant additional harm because it provides so little clarity about how or to whom it applies, causing confusion and fear. Parents whose children are in the certified class, all of whom are under two years old, as well as pregnant mothers whose children will be born into the class, now face a world in which the citizenship status of their children has once again been thrown into uncertainty, undermining the plans they have made for those children and for their families more broadly.

*i. Alien Enemy Category*

23. The 2026 Executive Order first purports to deny citizenship to individuals born in the United States to noncitizen parents, where either parent is labeled an "alien enemy, defined *to include* any member of a designated Foreign Terrorist Organization under 8 U.S.C. 1189 or Specially Designated Global Terrorist, consistent with the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq.*, and Executive Order 13224 of September 23, 2001 (Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), as amended" (emphasis added).

24. Only one parent need be designated an alien enemy for their child to be denied birthright citizenship.

25. The 2026 Executive Order is unconstitutional as applied to people in this category. Although one of the historical exceptions to birthright citizenship is for "children born of alien enemies in hostile occupation," *United States v. Wong Kim Ark*, 169 U.S. 649, 682 (1898), there are currently no areas of the United States subject to hostile occupation. Individuals whose parents are covered by the Order's "alien enemy" category are thus entitled to citizenship under the Fourteenth Amendment because they are born in the United States and are subject to its jurisdiction.

26. "The Citizenship Clause uses jurisdiction in its ordinary sense—referring to the power of the United States to govern those within its territory." *Barbara*, 146 S. Ct. at 2450. Alleged members of designated terrorist organizations who are present in the United States are certainly subject to the Nation's "[p]ower of governing or legislating." *Id.* at 2449 (quoting N. Webster, *An American Dictionary of the English Language* 732 (C. Goodrich & N. Porter eds. 1865)). There is no area within the United States today where the Nation's "sovereignty" has been "suspended" or "the laws of the United States c[an] no longer be rightfully enforced." *United*

*States v. Rice*, 17 U.S. 246, 254 (1819). Accordingly, there is no one in the United States today to whom the exception for children born to hostile occupiers could be applied. The children of those labeled "alien enemies" are thus entitled to birthright citizenship.

27. In various contexts, the Executive Branch has taken a broad view of who qualifies as an alien enemy.

28. Dozens of organizations have been designated as Foreign Terrorist Organizations and Specially Designated Global Terrorists. The Department of State, which is responsible for designating Foreign Terrorist Organizations, has 99 active designations for organizations, almost a third of which have been added during President Trump's second term. *See* U.S. Dep't of State, Designated Foreign Terrorist Organizations, https://perma.cc/QS5Z-Z9X5. And the list continues to grow, with seven added this calendar year. In July 2026, the Department of State designated two new Mexican cartels as Foreign Terrorist Organizations. María Verza, *US designates 2 new Mexican cartels as foreign terrorist organizations*, AP (July 16, 2026), https://perma.cc/TKK7-9VRC. Hundreds more individuals and entities have been labeled Specially Designated Global Terrorists. *See* U.S. Dep't of State, Individuals and Entities Designated by the State Department Under E.O. 13224, https://perma.cc/CYB2-QHPA.

29. The list of Foreign Terrorist Organizations includes groups that operate across the world, covering many of the countries from which the parents of class members came to the United States. The list contains organizations operating in Mexico, Colombia, Venezuela, Brazil, the Congo, Egypt, El Salvador, Haiti, Nigeria, Pakistan, and Sudan, among others.

30. While the Order says that an "alien enemy" is "defined to include" members of groups designated as Foreign Terrorist Organizations and Specially Designated Global Terrorists, it is not limited to members of such groups. The government may therefore choose to label any

individual or group of individuals as "alien enemies" for the purpose of the 2026 Executive Order, leaving all children whose parents are not U.S. citizens at risk.

31. On his first day in office, President Trump issued an Executive Order entitled "Protecting the American People Against Invasion." Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). That Order declared that "[m]any" of the individuals "unlawfully within the United States present significant threats to national security and public safety, committing vile and heinous acts against innocent Americans" and that "[o]thers are engaged in hostile activities, including espionage, economic espionage, and preparations for terror-related activities." *Id*. Based on the language of that Order and on other public statements made by members of the Administration, it is possible that Defendants may try to label all immigrants from certain countries—or all immigrants unlawfully present in the United States—as "alien enemies."

32. The 2026 Executive Order does not describe how the government plans to identify members of designated organizations, which generally have no official membership rolls.

33. There is a significant risk that class members will be deprived of citizenship based on allegations against their parents that rest on nothing more than speculation, tenuous evidence, or even false allegations. This Administration has attempted to label people as alien enemies and deport them based on evidence that courts have identified as "shoddy" and "contradictory." *See Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682, 699 (W.D. Tex. 2025) (granting habeas to Venezuelan couple with three small children, who formerly had TPS status, after they were arrested and detained based on allegations of being Tren de Aragua members supported by nothing but "shoddy affidavits and contradictory testimony").

34. The Administration has used markers like seemingly innocuous tattoos to broadly and wrongly label people as members of foreign terrorist organizations. *See* Eric Levenson,

*Tattoos, Flyers and Deleted Photos: The Limited Evidence the Trump Administration Is Using to Try to Deport Migrants*, CNN (Mar. 25, 2025), https://perma.cc/6F7P-S99K (reporting that the government identified supposed members of Tren de Aragua for purposes of the Alien Enemies Act based on arguably innocuous tattoos).

35. The Administration has also imputed membership in a Foreign Terrorist Organization to individuals who have family members who are part of those organizations. *See, e.g.*, *Sanchez Puentes*, 780 F. Supp. 3d at 700-01 (government arguing that individual was an "admitted affiliate" of Tren de Aragua and therefore a member because her ex-husband, from whom she separated over a decade prior, was a member).

36. An "Alien Enemy Validation Guide" promulgated by the Department of Justice after President Trump invoked the Alien Enemies Act as to Tren de Aragua includes a checklist of 20 observations about an individual used to determine membership in the organization, including "[s]ubject has tattoos denoting membership/loyalty to TDA," "[s]ubject displays insignia, logos, notations, drawings, or dress known to indicate allegiance to TDA," "[s]ubject part of group photos with two or more known members of TDA," and "[s]ubject presently resides with known members of TDA." Memorandum from the Attorney General #26632.1, *Guidance for Implementing the Alien Enemies Act* (Mar. 14, 2025), https://perma.cc/A8DG-2TQ9.

37. The Administration has also identified and deported individuals as alien enemies erroneously. *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (describing "administrative error" that led to removal of Salvadoran man in connection with Alien Enemies Act deportations).

38. Based on the Administration's capacious view of who qualifies as an alien enemy, there is a credible threat that members of the class will be denied citizenship based on Defendants' belief that one of their parents is an alien enemy. Some members of the class have parents with

relatives or other connections who are part of a designated Foreign Terrorist Organization, and the parents may be treated as members themselves because of that association. Still other class members have parents who are of a nationality that the Administration has deemed associated with a Foreign Terrorist Organization. There is also a credible risk that Defendants might deprive class members of citizenship based on false allegations against their parents, leaving even more class members vulnerable.

39. Some members of the class either have been born or will be born in the United States to a mother who fled from a violent partner who is associated with a designated Foreign Terrorist Organization. *See, e.g.*, *Corona Moreno v. Garland*, 860 F. App'x 486, 488 (9th Cir. 2021) (Convention Against Torture claim by woman who fled her abusive husband, who was a Mexican cartel member). Under the terms of the 2026 Executive Order, those children are at risk of being stripped of birthright citizenship because of the status of their father, even if he is not with them in the United States. In that circumstance, the victim of a designated Foreign Terrorist Organization would have their U.S.-born child deprived of citizenship.

40. Plaintiff Andrea, who also serves as a class representative in this case, came to the United States from Mexico in 2024. La Nueva Familia Michoacana, a Mexican cartel designated as a Foreign Terrorist Organization, is active in the region of Mexico in which she lived. Andrea fled to the United States after being assaulted by a member of the cartel, and she is seeking asylum based in part on her fear of the group. The father of her child E.T.P., who is a member of the certified class, has a close relative who is a member of La Nueva Familia Michoacana. Based on the Administration's history of identifying individuals as members of Foreign Terrorist Organizations based on their nationality, where they live, or the fact that they have family members

who are members, E.T.P. faces a credible threat of having either or both of his parents labeled an alien enemy and therefore being stripped of his birthright citizenship.

41. Plaintiff Monica, who serves as a class representative in this case, and her husband—both parents of A.M., a member of the certified class—are from Venezuela. Monica and her husband have no connection to Tren de Aragua, a gang designated as a Foreign Terrorist Organization, but the Administration has treated individuals as connected with Tren de Aragua simply because of their Venezuelan nationality. *See A.A.R.P. v. Trump*, 605 U.S. 91, 92-94 (2025) (describing hasty attempts to remove Venezuelans under Alien Enemies Act); Peter Charalambous et al., *'Incredibly troublesome': Judge grills DOJ over alleged gang member deportations*, ABC News (Mar. 21, 2025), https://perma.cc/K69J-UBP9 (statement from Judge Boasberg about the Administration's effort to "summarily deport" Venezuelans "without any individualized assessment of whether they actually fall into the category of the proclamation"). A.M. therefore faces a credible threat of having either or both of their parents labeled an alien enemy and being stripped of their birthright citizenship. Trinidad Garcia, another class representative, is also from Venezuela, as is her husband. Her child, a member of the certified class, faces the same risk.

42. Class members whose parents may be deemed by the government to be alien enemies—rightly or wrongfully—are therefore at risk of being denied or stripped of their birthright citizenship, even though they do not fall within a recognized exception to birthright citizenship.

*b. Foreign Government Employee Category*

43. The 2026 Executive Order next purports to deny citizenship to individuals born in the United States to noncitizen parents, where either parent is a foreign government employee. That category includes ambassadors; persons employed by a foreign embassy or consulate who are nationals of that foreign country; persons employed by a foreign government in an official

capacity; and persons employed by an international organization that possess international-organization immunity. Only one parent need be designated as a foreign government employee for their child to be denied birthright citizenship.

44. The Order has no effect as to the children of ambassadors, who are already excluded from birthright citizenship under *Wong Kim Ark* and *Barbara*. See *Barbara*, 146 S. Ct. at 2456 (noting the "familiar exception[] . . . for ambassadors"); *see also* 8 C.F.R. § 101.3 (providing that children are not birthright citizens if born in the United States to "a foreign diplomatic officer," defined as "a person listed in the State Department Diplomatic List, also known as the Blue List"). Such individuals enjoy diplomatic immunity and are thus not subject to the jurisdiction of the United States. *Barbara*, 146 S. Ct. at 2450.

45. Children born to other "foreign government officials or employees," by contrast, are "born subject to the jurisdiction of the United States." 8 C.F.R. § 101.3(b). That is because these other foreign government employees "are subject to the local law in the same manner with other foreign residents owing a temporary allegiance to the state." *Moncada v. Rubio*, 153 F.4th 733, 739 (9th Cir. 2025) (internal quotation marks omitted).

46. This category of the 2026 Executive Order sweeps far beyond the children of ambassadors, those on the Blue List, or anyone with even an arguable claim to diplomatic immunity. It could include children born to anyone who works at a foreign embassy or covered international organization regardless of their position or duties—from security guards to janitors. Given that there are nearly 200 official missions of foreign governments in Washington, D.C. alone, with hundreds of other regional consulates nationwide, *see* U.S. Dep't of State, *Diplomatic List* (Fall 2020), https://perma.cc/EC65-DNJM, this exclusion could strip thousands of class members of birthright citizenship.

47. There are also dozens international organizations that possess international-organization immunity under the International Organizations Immunities Act, which together employ thousands of people, including the World Trade Organization, the World Health Organization, the World Bank, and the International Committee of the Red Cross.

48. Class members whose parents hold such positions are therefore at risk of being denied or stripped of their birthright citizenship, even though they do not fall within a recognized exception to birthright citizenship.

*c. Commercial Transaction Category*

49. The 2026 Executive Order further purports to deny citizenship to individuals born in the United States to noncitizen parents, where either parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." That category is defined to include, but is not limited to, a parent who "engage[s] in a commercial transaction to ensure that the person's mother is present in the United States, or a territory of the United States, to give birth" and a parent who "engage[s] in a commercial transaction with a surrogate present in the United States, or a territory of the United States, to give birth." Only one parent need be deemed to have engaged in a commercial transaction to access birthright citizenship or engaged in fraudulent activity to obtain citizenship.

50. This category bears no relationship whatsoever to any of the traditional exceptions identified in *Wong Kim Ark* and *Barbara*. To the contrary, the status of the children of so-called birth tourists was directly at issue in *Barbara*, and the Supreme Court held that they are citizens. "'[T]he common law rule'" of *jus soli* "'was the law'" in the United States "for the children of 'citizens' and "foreigners" alike—including those foreigners here merely on a 'temporary

sojourn.'" *Barbara*, 146 S. Ct. at 2447 (quoting *Lynch v. Clarke*, 1 Sand.Ch. 583, 638, 663-64 (N. Y. Ch. 1844)).

51. This category is not restricted to so-called "birth tourists." It applies to parents who engage in a commercial transaction in order to have a baby in the United States regardless of whether they intend to leave the country immediately afterward, as a tourist typically would, or instead plan to remain in the United States with their child for the rest of their lives.

52. This category could therefore include parents like the class representatives, including Liza and Juana, who engaged in a commercial transaction in order to reach the United States and then later had their children here.

53. For example, Liza, who serves as a class representative, came to the United States from Russia with a valid student visa and bought a plane ticket to the United States. At the time, she was not pregnant, but she was married and thought she and her husband would eventually start a family. Her child, L.B., was born after February 19, 2025, in Texas, and L.B. is a member of the certified class. L.B. could be stripped of their birthright citizenship and denied proof of their U.S. citizenship in the future based on the fact that their mother engaged in a commercial transaction to come to the United States and later gave birth in the United States. Liza hopes to have another child in the United States, and that child may also be denied birthright citizenship on the same basis.

54. Similarly, Juana, who serves as a class representative, came to the United States from Colombia in 2022 and bought a plane ticket and paid for other transportation as part of her journey. She did not come to the United States for the purpose of having children here, but she had one child already and hoped to have another someday, which she eventually did. Juana's son, Y.P.C., was born in Maryland after February 19, 2025, and he is now just over one year old. He is

a member of the certified class. Y.P.C. also faces a credible threat that he could lose birthright citizenship based on the fact that his mother engaged in a commercial transaction to come to the United States and later gave birth in the United States.

55. Class members whose parents engaged in a commercial transaction to purchase or access birthright citizenship for their child, or who engaged in fraudulent activity to obtain citizenship, are therefore at risk of being denied or stripped of their birthright citizenship, even though they do not fall within a recognized exception to birthright citizenship.

## RESTATED CAUSES OF ACTION

Plaintiffs restate, without amendment, the causes of action in their Second Amended Complaint, with respect to the factual allegations appearing in this Supplement. Plaintiffs reproduce those counts here, updated solely to reflect that the Court has certified the class, in the interest of completeness.

### Count I
### *Ultra Vires* Action Under Fourteenth Amendment

56. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

57. Executive actions, including Executive Orders issued by a President, can be challenged as *ultra vires* when they violate the Constitution and the laws of the United States. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667 (2018); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996).

58. The Constitution guarantees that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States."

59. By virtue of this constitutional provision, all of the Individual Plaintiffs' U.S.-born children, all of the U.S.-born children whose parents are Members of CASA and ASAP, and all U.S.-born children who are part of the certified class are United States citizens.

60. The Executive Branch has no power to unilaterally amend or repeal the Fourteenth Amendment and no power to disobey a clear constitutional command.

61. Specifically, Defendants lack the authority to interfere with, deny, or fail to recognize citizenship that is granted by the United States Constitution, and they lack the authority to deny any of the rights, benefits, and privileges that accompany that citizenship. By refusing to recognize constitutionally granted citizenship, and by taking actions that are inconsistent with that citizenship, Defendants' actions described above violate the Constitution and are *ultra vires*.

62. Defendants' violation is causing ongoing, irreparable harm to Plaintiffs and their family members; CASA, ASAP, and their Members; and members of the certified class, for which no other adequate remedy exists.

**Count II**
***Ultra Vires* Action Under 8 U.S.C. § 1401 et seq.**

63. Plaintiffs restate and re-allege all preceding paragraphs as if fully set forth herein.

64. Section 1401 of Title 8 of the United States Code provides that every "person born in the United States, and subject to the jurisdiction thereof," "shall be nationals and citizens of the United States at birth." Other statutory provisions provide that a child born in Alaska or Hawaii "is a citizen of the United States at birth," without qualification. *See* 8 U.S.C. § 1404 (Alaska); 8 U.S.C. § 1405 (Hawaii).

65. The Executive Branch has no power to unilaterally amend or repeal an Act of Congress and no power to disobey a clear statutory command.

66. These statutory provisions reinforce the Fourteenth Amendment and guarantee that all children who have been or will be born in the United States are United States citizens, subject to narrow exceptions irrelevant to this litigation. These statutory provisions benefit the Plaintiffs

and their children, Members of CASA and ASAP and their children, and members of the certified class.

67. Defendants lack the authority to disregard an Act of Congress that recognizes citizenship. By refusing to acknowledge citizenship that has been recognized by an Act of Congress, and by taking actions that are inconsistent with that citizenship, Defendants' actions described above violate 8 U.S.C. § 1401 and other federal statutes, and are *ultra vires*.

68. Defendants' violation is causing ongoing, irreparable harm to Plaintiffs and their family members; CASA and ASAP and their Members; and members of the certified class, for which no other adequate remedy exists.

**SUPPLEMENTAL PRAYER FOR RELIEF**

WHEREFORE, in addition to the other relief requested in the First Amended Complaint, Plaintiffs respectfully request that this Court enter judgment in their favor, and grant the following relief:

i. A declaration that the 2026 Executive Order is unconstitutional and invalid as applied to Plaintiffs and all class members;

j. A declaration that the 2026 Executive Order violates 8 U.S.C. § 1401(a) as applied to Plaintiffs and all class members;

k. A declaration that all children born in the United States to noncitizen parents within the class are citizens of the United States and are entitled to all of the rights and privileges that such status provides, regardless of the immigration status of their parents;

l. A preliminary and permanent injunction enjoining Defendants from enforcing the 2026 Executive Order, or taking any other action that fails to recognize citizenship to individuals born within the United States to members of the class;

m. Such other and further relief that this Court may deem fit and proper.

August 28, 2026


*/s/ William Powell*
William Powell*
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu

Conchita Cruz*
Jessica Hanson (D. Md. 31903)
Dorothy Tegeler*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
dorothy.tegeler@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

Ama Frimpong (D. Md. 30562)
CASA, INC.
8151 15th Avenue
Hyattsville, MD 20783
240-687-9945
afrimpong@wearecasa.org


*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice*