**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CASA, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Case No. 8:25-cv-00201-DLB |

**OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION**

In June 2025, Plaintiffs filed their first class-action complaint in this case challenging Executive Order 14,160 (the "2025 Executive Order"), a Presidential directive issued on day 1 of the current Administration. The named Plaintiffs they chose, the class definition they proposed, and the claims they raised were all tailored to that Executive Order. So was the relief this Court gave, and the arguments the Supreme Court considered in *Trump v. Barbara*, 609 U.S. ---, 146 S. Ct. 2438 (2026). Nonetheless, Plaintiffs attempted to use their same complaint to challenge a *new* Executive Order issued just earlier this month.

This Court correctly noted that their requested relief fell wholly outside the corners of their own complaint and directed Plaintiffs to amend it. ECF 176. Additionally, the Court directed Defendants to respond to any motion for preliminary relief by August 31. That renewed motion fails for the same reasons the original motion failed. Plaintiffs' additional arguments add nothing. This Court should deny Plaintiffs' motion.

## ARGUMENT

### I. This Court Should Deny Plaintiffs' Motion For Preliminary Injunctive Relief.

**A.** Plaintiffs' supplemental pleading (ECF 177) and renewed motion (ECF 178-1) largely repeat the arguments already made (ECF 168-1) and thus fail for the same reasons. Defendants thus fully incorporate by reference the arguments made in response to Plaintiffs' original motion for a temporary restraining order or preliminary injunction and do not waive any argument therein. ECF 170. Defendants also incorporate any additional arguments fleshed out from the hearing.

In particular, notwithstanding the amended complaint, these continue to be the wrong Plaintiffs and wrong class to bring a challenge to Executive Order 14,418 (the "2026 Executive Order"), and they seek extraordinary relief at the wrong time. *Id.* The case remains unripe at least until the contours of the exceptions are elucidated by forthcoming guidance, including their scope,

application, and enforcement. *Id.* at 13-19 (citing *Trump v. California*, 609 U.S. ---, slip op. at 2 (2026)). And all named Plaintiffs lack standing to challenge any part of the Executive Order, much less the whole thing. *Id.* (citing *California*, 609 U.S. ---, slip op. at 2).

Plaintiffs' lack standing for multiple reasons. The Executive Order is prospective and only two named Plaintiffs claim they might have children at some unknown point in the future. There is accordingly no imminent injury for standing or irreparable harm. *Id.* at 16-19. Indeed, the Government *disavows* enforcing the Executive Order against named Plaintiffs' existing children, thus placing yet another barrier to any pre-enforcement standing. Even if that was not the case, Plaintiffs' alleged injuries of being labeled an alien enemy, having engaged in a "commercial transaction" to give birth in the United States, or being targeted mistakenly are speculative hypothetical fears with no limits. *Id.* (citing *California*, 609 U.S. ---, slip op. at 5). And Plaintiffs also need a named Plaintiff with standing to enjoin each part of the Executive Order, which is severable. *Id.* at 16, 25; *see also California*, 609 U.S. ---, slip op. at 2 (addressing "each challenged provision of the Order separately"); *California v. Texas*, 593 U.S. 659, 674–75 (2021). That they admit they lack a Plaintiff as to the foreign government employee exception dooms their challenge as to that category.

Plaintiffs' class also remains inappropriate for their challenge to the 2026 Executive Order. The existing class mirrors the previous executive order, not this one, and is thus over and underinclusive. There are aliens who fall into the 2026 Executive Order but not the first and vice versa. Thus, the previous class is overbroad and does not reflect the common legal issues at the center of the 2026 Executive Order, and cannot ground Plaintiffs' request for classwide relief. ECF 170 at 19-21; S*tafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671, 680–82 (4th Cir. 2024) (rejecting overly broad class as not tailored to common legal issues even though all claims

stemmed from same policy); *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 184–85 (4th Cir. 2026) (issues with broad classes stem not just from predominance, but from commonality and (c)(1)). To hold otherwise would circumvent *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025).

Plaintiffs' purported subclass solution solves none of these problems. Subclasses still require a named Plaintiff with standing, and each must satisfy Rule 23(a). *See* S*tafford*, 123 F.4th at 683 (district court "must find that each subclass meets Rule 23's prerequisites individually"); *Does 4, 7, 22, 27, 28 , & 29 v. Musk*, 350 F.R.D. 246, 255 (D. Md. 2025) (same); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1258 (11th Cir. 2023) ("[I]t remains our law that at least one class representative must establish that he or she has Article III standing to represent each claim brought on behalf of a class (or subclass)"). Defendants believe such subclasses are necessary to address the different legal issues and alleged injuries for each severable exception of the Executive Order, not as a mere tool of management. Finally, the remaining equitable factors favor Defendants. ECF 170 at 24-25.

**B.** Plaintiffs' new arguments fare no better. Defendants reject Plaintiffs' suggestion that this Court has once and for all decided such issues of standing, ripeness, and class definition adversely to Defendants at the oral hearing—especially considering that the Court ultimately *denied* Plaintiffs' motion for a temporary restraining order. "Preliminary or tentative rulings do not establish law of the case," especially when relief was denied on jurisdictional grounds as here. Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4478.5 (3d ed.).

Plaintiffs muster new attempts to bolster their standing and class definition arguments in their latest briefing. They do not persuade. Plaintiffs now claim that Andrea, a named Plaintiff, also fears being included in the "alien enemy" category of the 2026 Executive Order, based on guidance that has not come out yet. ECF 178-1 at 4. According to Plaintiffs, Andrea fears that

either she (who was a *victim* of an FTO) or her child's father (who is allegedly *related* to a member of a terrorist group) will be accidentally categorized as an alien enemy. *Id.* And in turn, she thinks that her child might then (mistakenly) be stripped of citizenship. Those fears are wholly speculative. To repeat, the 2026 Executive Order applies only *prospectively*. It has no effect on the citizenship of Andrea's child, who is already born. These entirely speculative fears fall far short of proving the injury that standing requires. *See California*, 609 U.S. ---, slip op. at 5. If fear of a mistake was sufficient for standing, everyone would have it. That is not the law.

Plaintiffs also attempt to argue that their class definition—clearly designed to challenge an entirely different Executive Order—can somehow fit the bill to challenge the new one based on a theory that their class is tailored to enforce *Barbara*. As explained below, they simply misread that case. *Barbara* did not declare every member of their class to be citizens; it merely declared that they could not be denied citizenship *on account of the 2025 Executive Order*.

Plaintiffs' other authority fails to move the needle. In *Does 4, 7, 22, 27, 28, and 29 v. Musk*, 350 F.R.D. 246, 255 (D. Md. 2025), the district court found that a class of "all personnel who worked for [an agency] at the time of shutdown activities" was not overbroad even though not every such employee was actually terminated or placed on administrative leave. That was so because "*all* personnel … would eventually lose their positions" at an agency that was being shut down. *Id.* at 256. The situation is the exact opposite here. Whereas *everyone* could potentially have been affected by the challenged action in *Does v. Musk*, Plaintiffs here have not proven that *anyone* in the class is "potentially" an alien enemy or foreign government employee, let alone *everyone*. *Id.* at 255. And ironically, the court there created subclasses to fix some of these issues and made clear each had to satisfy Rule 23, which Plaintiffs dispute. *Id.* at 255. Again, this case

is more like *Stafford*, where a finding that 80% of a class engaged in certain work did not obviate the need for a tailored class for other related claims under the same work policy. 123 F.4th at 679.

**C.** Furthermore, as explained in Defendants' prior response, Plaintiffs' challenge is quintessentially unripe. The 2026 Executive Order directs agency heads to "[e]nforce[]" the Order's policy through "all appropriate measures." 2026 Executive Order § 3(a). And it explains that those "appropriate measures" will be set out through "public guidance … regarding this order's implementation," which has not issued yet. *Id.* § 3(b). As in *Trump v. New York*, 592 U.S. 125, 131 (2020), and *California*, 609 U.S. ---, slip op. at 4, any "prediction how the Executive Branch might eventually implement" the 2026 Executive Order "is no more than conjecture at this time." September 5, 2026, will mark thirty days from the signing of the 2026 Executive Order. Defendants expect guidance to have issued soon. At that point, *injured* plaintiffs will be free to attempt to challenge the guidance. Until then, however, Plaintiffs' discussion of how they read *Barbara* or *Wong Kim Ark v. United States*, 169 U.S. 649 (1898), is fatally premature, when there is no concrete action for this Court to consider or for the Government to defend.

That is especially true in the abbreviated posture of this proceeding. When this Court originally ordered the parties to appear for an in-person hearing on August 28 and directed Defendants to respond by August 26, the Court limited its consideration to the Plaintiffs' request for a temporary restraining order. ECF 169. This litigation continues at breakneck speed, far faster than the regular schedule for a preliminary injunction motion. Accordingly, Defendants continue to understand this proceeding to be limited to Plaintiffs' request for a temporary restraining order. On this timeline and without concrete implementation, the merits of the 2026 Executive Order are not properly a subject of this litigation on this posture.

## II. The 2026 Executive Order Is Lawful In Any Event.

Consideration of the merits of the 2026 Executive Order is not appropriate at this juncture as the case is unripe and the parties should wait for guidance documents to debate the scope of the categories identified in the Executive Order and their legality. As a result, this is not an exhaustive defense of the exceptions because the guidance has yet to issue. Defendants thus are not defining the exact scope of the Executive Order at this time. Nonetheless, in light of the August 28 hearing, Defendants offer a brief rebuttal of Plaintiffs' premature merits arguments at a high level.

At this stage, Plaintiffs face a high bar to prove that the yet-to-be-implemented Executive Order is facially unlawful. Plaintiffs do not know—and do not claim to know—how "the Executive Branch might eventually implement [its] general statement of policy." *New York*, 592 U.S. at 131. Thus, for Plaintiffs to argue that the 2026 Executive Order is unlawful at this time, they must demonstrate that there is no *possible* lawful implementation of the Executive Order. Put another way, because Plaintiffs bring this suit before the 2026 Executive Order it has been applied or has become applicable to *anyone*, they necessarily bring a facial challenge. That requires Plaintiffs to show that the 2026 Executive Order—that is, its directive to take "all appropriate measures" and issue "public guidance," 2026 Executive Order § 3—is unlawful "in all of its applications," *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015). Plaintiffs' inability to meet this "exacting standard" confirm that it is a mountain too high to climb. *Id.*

**A.** Plaintiffs begin by claiming that *Barbara* held that "all members of the certified class are citizens under the Constitution." ECF 168-1 at 17; *see also* ECF 178-1 at 4–5. But *Barbara* held no such thing. The Supreme Court concluded that children are not *disqualified* from birthright citizenship by virtue of being born to "parents unlawfully or temporarily present in the United States," 146 S. Ct. at 2450, which is what it had to hold to declare the 2025 Executive Order

unlawful. But it never suggested that every child born to such parents is *per se* a citizen, with no exceptions. *Barbara* did not declare that the exceptions to birthright citizenship do not apply to the class members. To give one example, no one believes that children of ambassadors are always citizens when born in the United States, even though ambassadors are "temporarily present in the United States" and thus within the class. *Id.* Nor is someone illegally or temporarily in American Samoa a citizen despite being in the class. *Barbara* did not exempt a class in a *separate* case from those exceptions. Indeed, the fact Plaintiffs admit the children of ambassadors, occupying forces, and those in certain territories are not entitled to birthright citizenship demonstrates that their overbroad class does not resolve the legal issues here and that any facial challenge fails. *Barbara* thus did not declare the 2026 Executive Order—which does not purport to disqualify *anyone* from citizenship merely because he was born to parents who were unlawfully or temporarily present in the United States—unlawful "in all of its applications," *Patel*, 576 U.S. at 418.

Indeed, *Barbara* or *Wong Kim Ark* leave broad space for the Executive Branch to issue directives like the 2026 Executive Order. Plaintiffs conjure up a straitjacket that bears no resemblance to those opinions. They repeatedly claim the Supreme Court announced a "closed set" of historical exceptions. ECF 168-1 at 10, 17. But Plaintiffs make little effort to show that this "closed set" understanding of the Fourteenth Amendment was adopted by *Barbara*. *Barbara* itself evinces no such limitation, instead referring to open-ended concepts such as "extraterritorial fiction[s]," "natural allegiance," and areas "temporarily outside [the sovereign's] control." 146 S. Ct. at 2445, 2449. Indeed, the undisputed exception for children of "quasi-sovereign Indian tribes" is proof that the Citizenship Clause's exact application is not frozen in English common law. *Id.* at 2446 (noting that such tribes presented "a novel situation[] unknown to England"). Children of alien enemies, foreign government employees, and birth tourists can easily be

conceived as falling within an "extraterritorial fiction" or as lacking the "natural allegiance" on which citizenship has always turned in the common law.

There is no reason to treat those concepts as "trapped in amber." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). And Plaintiffs, for their part, cite only to a separate opinion in claiming that the Fourteenth Amendment must be conceived of as a "closed set," *see* ECF 168-1 at 10, 17—an opinion which, it should be noted, takes the exact *opposite* view of the Fourteenth Amendment and says the "closed set" framing is wrong because the Constitution allows for "new exceptions," *Barbara*, 146 S. Ct. at 2471–74 (Kavanaugh, J., concurring in the judgment and dissenting in part). Even if *Barbara* largely approved of *Wong Kim Ark*'s analysis, whether the latter's four delineated exceptions are the *only* exceptions the Fourteenth Amendment could ever countenance in any circumstance was never a question that confronted the Court.

Nor, if the Fourteenth Amendment refrains from such a restrictive rule, is it warranted to treat 8 U.S.C. § 1401 as imposing a four-exceptions-only theory of birthright citizenship. That Section 1401 uses the same exact phrase—"subject to the jurisdiction thereof"—as the Fourteenth Amendment confirms that the statute incorporates the Constitution's meaning. When courts consider a suit brought under 42 U.S.C. § 1983, they do not ask what case law interpreting the Fourteenth Amendment said at the time of Section 1983's enactment; rather, they interpret that cause of action to enforce rights *actually* secured by the Constitution. Similarly, if the Fourteenth Amendment does not impose a "closed set" theory of birthright citizenship, neither does Section 1401.

**B.** Regardless, even *if* the Fourteenth Amendment means and the Supreme Court held that there are only four exceptions to birthright citizenship and no more, those exceptions' capacious

terms—and the common law in which they are rooted—easily permit implementation of the 2026 Executive Order.

Plaintiffs criticize the 2026 Executive Order's categories for not being mere cookie-cutter copies of *Barbara* and *Wong Kim Ark*. According to Plaintiffs (ECF 168-1 at 18-22), the 2026 Executive Order offends the Constitution because it refers to "foreign government employee[s]" (91 Fed. Reg. at 51991), not "foreign ministers" (*Barbara*, 146 S. Ct. at 2450), and to children of "alien enem[ies]" (91 Fed. Reg. at 51991), not children of "alien enemies in hostile occupation" (*Wong Kim Ark*, 169 U.S. at 658). But "the language of an opinion is not always to be parsed" as though "dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979). *Barbara* and *Wong Kim Ark* themselves prove the point in the different wording they use to describe the same exceptions. *Compare, e.g.*, *Wong Kim Ark*, 169 U.S. at 693 (describing exceptions for "children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory," and "children of members of the Indian tribes owing direct allegiance to their several tribes"), *with Barbara*, 146 S. Ct. at 2452 (failing to mention exceptions for children born on foreign public ships, and replacing foreign ministers with "other representatives of foreign sovereigns"); *compare Wong Kim Ark*, 169 U.S. at 682 ("alien enemies in hostile occupation"), *with id.* at 693 ("enemies within and during a hostile occupation of part of our territory"). That makes sense, because the scopes of those exceptions were not at issue in either case and were thus dicta. That the new Executive Order does not merely copy-and-paste *Wong Kim Ark* has never been the measure of compliance with Supreme Court precedent.

Plaintiffs' myopic reading of *Barbara* and *Wong Kim Ark* is thus fundamentally misguided. And it fares no better on the particulars. The exception for children of "a foreign government

employee" (2026 Executive Order § 2(b)) recognizes the "intersovereign concerns" inherent in claiming allegiance from such employees, *Barbara*, 146 S. Ct. at 2450, and maps onto *Wong Kim Ark*'s exception for "children of foreign sovereigns or their ministers," "ambassador[s] or other diplomatic agent[s] of a foreign state," and persons "employed in any diplomatic or official capacity" by a foreign government. 169 U.S. at 652, 653, 658, 693, 705.

Plaintiffs effectively concede that the Executive Order *does* have lawful applications in noting that children of ambassadors and other foreign officials would fall under its terms. ECF 168-1 at 21. According to Plaintiffs, that concession means nothing because "children of ambassadors" are "already excluded from birthright citizenship." *Id.* But the Executive Branch, like Congress, may proceed in a "belt and suspenders" manner. *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020). That the 2026 Executive Order might introduce *some* redundancy is certainly no license to ignore its lawful applications and find it facially invalid.

*Barbara* does not just exclude children of ambassadors from the Citizenship Clause; it also excludes the children of "representatives of foreign sovereigns." 146 S. Ct. at 2452. A foreign government employee—like any agent—can easily be considered a "representative" of that foreign government. *Wong Kim Ark*, too, scopes broader than merely ambassadors; the Supreme Court found it significant that the parents in that case were "not employed in any diplomatic *or* official capacity" by a foreign government. 169 U.S. at 652, 653, 705 (emphasis added). Foreign government employees can easily fall into that latter category.

And even as Plaintiffs nitpick the (yet-to-be-implemented) Executive Order, they apparently accept regulations that exclude children of "ambassadors, ministers, charges d'affaires, counselors, secretaries, and attaches of embassies and legations" from citizenship. 8 C.F.R. 101.3 (cited favorably by ECF No. 168-1 at 21). Yet only two of those terms—"ambassadors" and

"ministers"—appear in *Wong Kim Ark*. *See* 169 U.S. at 693. And though Plaintiffs would apparently pick and choose between foreign officials in deciding birthright citizenship based on "diplomatic immunity," ECF No. 168-1 at 21, that is not how *Barbara* itself rationalized the ambassador exception, 146 S. Ct. at 2445 (referring to that exception as a "fiction of extraterritoriality"), nor how *Wong Kim Ark* described it, 169 U.S. at 652, 653, 705 (referring to persons "employed in any diplomatic *or* official capacity" by a foreign government (emphasis added)). Either way, that Plaintiffs accept applying *Wong Kim Ark*'s or *Barbara*'s general principle (diplomatic immunity, in their view) to find previously unlisted categories of persons not subject to the United States' jurisdiction (*e.g.*, counselors and attaches) only confirms the folly of Plaintiffs' "closed set" approach.

Plaintiffs also criticize the 2026 Executive Order's "alien enemy" category on the theory that the phrase "hostile occupation" in *Wong Kim Ark* is both extremely narrow and all-important. ECF 168-1 at 18. But Plaintiffs never explain why an alien enemy's presence (such as that of a designated terrorist) would not itself constitute "hostile" occupation. And Plaintiffs never provide a meaningful limiting principle for what constitutes "hostile occupation" in any event. Nor can they, because neither *Barbara* nor *Wong Kim Ark* do either. Hostile occupation could be over a large area of land (such as Normandy), or over small fixtures (such as castles and forts). *Barbara*, 146 S. Ct. at 2445. And it could be over "discrete areas" only "temporarily outside [the sovereign's] control" that are "*within* [the sovereign's] kingdom." *Id.* (emphasis added). There is nothing so cabining in *Barbara* that forecloses "appropriate" implementation of the Executive Branch's policies. 2026 Executive Order § 3(a).

Nonetheless, Plaintiffs cast about in vain to find a way to facially invalidate the "alien enemy" category. They cannot. Remarkably, Plaintiffs suggest that members of designated

terrorist organizations are *per se* "subject to [the United States'] jurisdiction" and within "the power of the United States to govern" simply because they are "designated pursuant to the laws of the United States." ECF 168-1 at 18. That is wrong. Designating an entity does not render it a subject. The laws of the United States also designate "the People's Republic of China" as a "foreign country of concern," 42 U.S.C. § 19221(a)(1), yet no one suggests that somehow China is subject to the jurisdiction of the United States. The same is true of the Iranian Revolutionary Guard, which is an FTO. Nor does it do Plaintiffs any good to hypothesize in the absence of guidance whether a scenario might exist in which a child might incorrectly be deprived of birthright citizenship. ECF 168-1 at 20. At this stage, Plaintiffs have to prove not that there might be one *unlawful* application, but that there are no *lawful* ones.

Finally, Plaintiffs miss the mark in their criticism of the 2026 Executive Order's birthright tourism exception. ECF 168-1 at 22-24. *Barbara* and *Wong Kim Ark* were clear: the Citizenship Clause "incorporated the common law." *Barbara*, 146 S. Ct. at 2453. It did not displace it. The exception for birth tourists derives from the common-law rule that fraudulent transactions are "voidable." Restatement (Second) of Contracts § 164(1); *see also Barbara*, 146 S. Ct. at 2453 (adhering to *Wong Kim Ark*'s holding that "the Citizenship Clause incorporated the common law"). That is entirely in keeping with how the law considers fraud sufficient justification for retracting the grant of citizenship in other contexts. The INA provides that it is "the duty of the United States attorneys for the respective districts" to "revok[e] and set[] aside the order admitting [a] person to citizenship" if "such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). Such immigration and citizenship fraud is a felony. *See* U.S.C. § 1425. There has also been a policy of denying pregnant aliens entry into the United States. *See* 22 CFR 41.31(b)(2). So if a

pregnant alien was able to the enter the United States regardless, depending on the facts, they could have engaged in immigration fraud.

Plaintiffs are incorrect in suggesting that *Barbara* has already foreclosed the 2026 Executive Order's commonsense category. ECF No. 168-1 at 22–23. In the Supreme Court's discussion of *Schooner Exchange*, Plaintiffs purport to discover a blessing of birth tourism. *Id.* at 23. Yet there is an obvious difference between an alien within the United States' borders for business *generally* and one whose specific business is "to purchase or access birthright citizenship." 2026 Executive Order § 2(c). Not all temporary sojourners are here for birth tourism or to commit fraud. Nor do Plaintiffs find better ground in the *dissents'* view of what the majority held. ECF 168-1 at 23. "[D]issenting opinion[s] [are] generally not the best source of legal advice on how to comply with the majority opinion." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 230 (2023).

Ultimately, Plaintiffs' main critique of the 2026 Executive Order's birth tourism category is a retread of its earlier errors. Plaintiffs treat *Barbara*'s statement that birthright citizenship attaches to "foreigners here merely on a temporary sojourn" as though it definitively resolves this case. *Barbara*, 146 S. Ct. at 2447. But some "foreigners here merely on a temporary sojourn" are ambassadors, and the Supreme Court fully accepted that their children are not entitled to birthright citizenship. Similarly, some "foreigners here merely on a temporary sojourn" may well fall into forthcoming guidance on birth tourists within the meaning of the 2026 Executive Order. That does not itself mean that children of such aliens are entitled to birthright citizenship.

To be clear, there may well be more to say once the forthcoming guidance directed by the 2026 Executive Order is issued. When that time comes, Defendants reserve the right to raise additional merits defenses as well as more specific versions of the defenses already raised here.

But at the very least, the foregoing demonstrates that Plaintiffs cannot show that *no* implementation of the 2026 Executive Order would be lawful. At this stage, that means the 2026 Executive Order must be upheld.

**III. Any Injunction Should be Narrow in Scope and Stayed.**

As explained, Defendants understand the current briefing and proceedings to concern solely a potential temporary restraining order, and expect more fulsome briefing and argument to take place at the preliminary injunction stage *after* guidance has issued. Should this Court enter an injunction it should be a TRO with briefing for a preliminary injunction to follow the issuance of guidance. And any injunction should only prevent enforcement, but not the issuance of guidance which may ameliorate any alleged injuries to Plaintiffs. The guidance documents may substantially change the scope of this case so it would be inefficient to resolve a full preliminary injunction now and improper to enjoin the issuance of such guidance. The court should also limit any injunction to the alien enemies and birth tourism exceptions, as Plaintiffs admit they lack a named plaintiff to challenge the foreign government employee exception and do not challenge the territory exception.

If the Court enters a preliminary injunction, however, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized. In evaluating a stay request, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). For the reasons explained above and in prior briefing (ECF No. 170), Defendants are likely to prevail on the merits, and the remaining stay factors would favor relieving Defendants of an injunction falling far outside

the scope of this case. Afterall, just like in *California*, Defendants face an irreparable harm when a court's "breach of Article III interferes with the internal operations of the Executive Branch" and "forbid[s] the [agencies] to implement the President's enforcement priorities." 609 U.S. ---, slip op. at 8-10. Plaintiffs, on the other hand, lack standing and thus any harm at all.

Additionally, if the Court enters a preliminary injunction, Defendants are entitled to a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. Under that rule, "[t]he court may issue a preliminary injunction … only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiffs' requested preliminary injunction seeks to require Defendants to extend federal benefits to persons deemed by Defendants to lack an entitlement to them. Assuming (as Plaintiffs must to ask for such relief in the first place) that such class members exist and that such class members would not be citizens but for the injunctive relief, the cost to the United States would be substantial, and this should be reflected in the bond accompanying a preliminary injunction.

**CONCLUSION**

This Court should deny Plaintiffs' motion.

Dated: August 31, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KELLY O. HAYES
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

*s/ Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
*(202) 860-8970*

JOSHUA HA
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Chief Litigation Counsel

KATHLEEN C. JACOBS
Trial Attorney

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant United States Attorney
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
Phone: 410-209-4800

*Attorneys for Defendants*