**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC. *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP *et al.*,

*Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER**

The Supreme Court in *Trump v. Barbara*, 146 S. Ct. 2438 (2026), held that all members of the certified class in this case "are citizens at birth" under the Fourteenth Amendment. *Id.* at 2450. Undeterred, the President responded by issuing a new Executive Order purporting to limit birthright citizenship. Plaintiffs now seek a preliminary injunction or temporary restraining order to bar enforcement of that Executive Order against members of the class. As applied to them, the President's second attempt to override the Citizenship Clause of the Fourteenth Amendment is just as unconstitutional as the first.

## ARGUMENT

### I. Plaintiffs Have Standing to Seek Preliminary Relief Barring Enforcement of the 2026 Executive Order.

Plaintiffs have standing to challenge the 2026 Executive Order without "wait[ing] for the government to take coercive action against" them because the "credible threat of enforcement" is an "imminent" injury. *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 146 S. Ct. 1114, 1122 (2026) (internal quotation marks omitted). "A plaintiff faces a credible threat of future enforcement so long as the threat is not 'imaginary or wholly speculative,' 'chimerical,' or 'wholly conjectural.'" *Bryant v. Woodall*, 1 F.4th 280, 285 (4th Cir. 2021) (first quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979); then quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); then quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969)) (additional internal quotation marks omitted). And the Fourth Circuit applies a "presumption of a credible threat" to newly issued government policies, on the assumption that the government creates policies "with the intent that [they] be enforced." *Id.* at 286-87.

Plaintiffs have established pre-enforcement standing here. Plaintiffs' children "arguably" fall within the categories of children to whom the 2026 Executive Order purports to deny citizenship. *See Babbitt*, 442 U.S. at 303 (finding standing where the plaintiff's conduct was

"arguably prohibited by" the challenged policy). Class representatives Monica and Andrea face a credible threat that their children will be deprived of citizenship under the "alien enemy" prong of the Order. *See* ECF 168-1 at 11-12 (describing the credible threat of enforcement against Monica's child); ECF 178-1 at 3-4 (same for Andrea). And Liza and Juana face a credible threat that their children will lose citizenship under the "commercial transaction" category. *See* ECF 168-1 at 12-13. "[N]o more is required" to show pre-enforcement standing "under th[e] [Supreme] Court's precedents." *Chiles v. Salazar*, 146 S. Ct. 1010, 1019 n.* (2026).

Defendants argue that Plaintiffs' fears of enforcement are "speculative" because agencies have not yet issued guidance interpreting the 2026 Executive Order, but that argument fails for the same reasons this Court gave in concluding that Plaintiffs' challenge is ripe. The Supreme Court has repeatedly rejected a wait-and-see approach to pre-enforcement challenges where constitutional rights are at stake. In *Babbitt*, for instance, the Supreme Court rejected the argument that the plaintiffs lacked standing because the challenged law "has not yet been applied and may never be applied" to anyone in the plaintiffs' circumstances. *Babbitt*, 442 U.S. at 302. So long as a plaintiff faces a credible threat of enforcement, he "need not first expose himself to" the deprivation of constitutional rights before bringing a challenge. *Id.*; *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010) (similar); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014) (similar).

In a last-ditch effort to defeat Plaintiffs' standing, Defendants assert that "[t]he Executive Order is prospective" and that "the Government *disavows* enforcing the Executive Order against named Plaintiffs' existing children." ECF 179 at 2. But those vague, unsubstantiated statements offered by counsel in briefing come nowhere close to the sorts of disavowals of enforcement that courts have held are sufficient to defeat standing. As the Court already recognized at the hearing,

this disavowal is directly contradicted by the text of the 2026 Executive Order. Whereas the 2025 Executive Order specified that it applied "only to persons who are born within the United States after 30 days from the date of this order," *see* 2025 Executive Order § 2(b), the 2026 Executive Order omits any such language, indicating that the 2026 Executive Order could apply to children within its categories who were born before the President issued the Order.

"Unofficial and non-binding statements such as these do not and 'cannot override the plain text of the [Executive Order] when it comes to establishing a credible threat of enforcement." *Bryant*, 1 F.4th at 289 (quoting *EQT Prod. Co. v. Wender*, 870 F.3d 322, 331 (4th Cir. 2017)). To be binding, a disavowal must come "in a non-litigation context" and be "'more than a mere litigation position.'" *Yoder v. Bowen*, 146 F.4th 516, 525 (6th Cir. 2025) (quoting *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010)). But here, "defendants took no meaningful steps—like submitting an affidavit forswearing [enforcement]—to mitigate plaintiffs' fears." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1035 (6th Cir. 2022).

Defendants have been on notice for three weeks that Plaintiffs fear the 2026 Executive Order is not limited to babies born after any specific date, *see* ECF 157 at 5 (Plaintiffs raising this concern on August 10, 2026), yet Defendants have repeatedly declined to support their assertion that the Executive Order will be applied prospectively with any evidence whatsoever. If the federal agencies tasked with implementing the 2026 Executive Order plan to deny citizenship only to babies born after August 6, 2026, or after September 5, 2026, or after some other date, they could easily submit a declaration saying so. Their failure to do so speaks volumes. *Cf. LaFave v. County of Fairfax*, 149 F.4th 476, 485 (4th Cir. 2025) (finding disavowal of enforcement was valid where supported by statutory text and reflected in official orders given by police chief).

Even if the Court could credit unsupported claims made in briefing, the meaning of the statements by Defendants' counsel here is vague and uncertain. Defendants' brief says that "[t]he Executive Order is prospective," but they do not explain in any detail what "prospective" means in this context. Does it mean that the Order applies only to babies born after a certain date—and, if so, what date? Or does it mean that agencies will not begin denying passport applications and the like until after agencies issue guidance interpreting the Executive Order? Defendants do not provide clear answers.

Defendants' brief also states that "the Government *disavows* enforcing the Executive Order against named Plaintiffs' existing children." *Id.* The negative implication of this statement would seem to be that Defendants do not disavow enforcing against other class members' existing children. If so, Defendants cannot defeat standing by attempting to moot the claims of the class representatives by disavowing enforcement only as to them. The Supreme Court has "reject[ed] the proposition that a class-action defendant may defeat class treatment, if it is otherwise proper, by promising as a matter of grace to treat named plaintiffs differently." *A. A. R. P. v. Trump*, 605 U.S. 91, 98 (2025); *see also, e.g.*, *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (discussing this "picking off" exception to mootness).

Plaintiffs have standing to challenge the 2026 Executive Order, and Defendants' halfhearted attempt to disavow enforcement does nothing to undermine that conclusion.

## II. Classwide Preliminary Relief Is Consistent with Rule 23.

As Plaintiffs have explained, the class here is already certified, and Defendants have not moved to modify or decertify it. *See* ECF 174 at 6. The Court has already determined that the Rule 23 requirements are met, and Defendants' argument that the class fails on commonality, ECF 179 at 2-3, is therefore misplaced. And relief for the entire certified class is appropriate here. As in *Does*

*4, 7, 22, 27, 28, and 29 v. Musk*, 350 F.R.D. 246 (D. Md. 2025), Plaintiffs challenge "an explicit, overarching" government policy that calls birthright citizenship into question and thus harms each member of the class.[1] *Id.* at 256. They seek assurance that all members of the certified class are citizens of the United States and are entitled to all of the rights and privileges that such status provides, regardless of the immigration status of their parents. The claim is therefore common to the entire class, and it is appropriate for this Court to enter relief on a classwide basis. *See* ECF 174 at 13-14; ECF 178-1 at 4-5.

Even if the entire class did not seek the same relief, that would not render the injunction sought here inappropriate. The Court may enter an injunction as to the whole class even if it is applicable to only a subset of members as long as it "fits within the broader risk of future injury" resulting from the unlawful action "for which [the] Class was certified, and … the requested relief addresses that harm." *Daniels v. Jeffreys*, No. 07-1298, 2023 WL 5501217, at *5 (C.D. Ill. Aug. 25, 2023); *see* ECF 174 at 6. The relief requested here does just that. And to the extent the Court agrees with Defendants that the class is underinclusive, ECF 179 at 2-3, in the sense that the 2026 Executive Order applies to some people who are not part of the class in this case, that would be no obstacle to relief: "Individuals who are injured by a defendant but are excluded from a class are simply not bound by the outcome of that particular action." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015).

The situation here, in which a certified Rule 23(b)(2) class seeks injunctive relief against

---

[1] Defendants incorrectly state that the court in *Does* "created subclasses to fix [commonality] issues and made clear each had to satisfy Rule 23." ECF 179 at 4. The court in that case certified a single class but noted that if the plaintiffs ultimately sought "injunctive relief beyond a broadly applicable injunction," the "potential differences among class members … may warrant the use of subclasses." 350 F.R.D. at 257. A subclass is similarly unnecessary here because Plaintiffs seek only broad injunctive relief common to the entire class. *See* ECF 178-1 at 5-6.

an unconstitutional Executive Order that denies class members the birthright citizenship granted to them by the Constitution, is far different than the situations in S*tafford v. Bojangles' Restaurants, Inc*, 123 F.4th 671 (4th Cir. 2024) and *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175 (4th Cir. 2026). Those cases both involved efforts by plaintiffs to certify Rule 23(b)(3) classes challenging companies' failure to compensate employees for a variety of different pre- and post-shift work activities. Both cases involved "a laundry list of factually diverse claims," *Stafford*, 123 F.4th at 680, and required the court to apply varying "legal standards to … prospective class members," *Overby*, 178 F.4th at 178. That is simply not the case here. To the extent that there are any factual differences between the members of the certified class, those facts are—as this Court has already held—"irrelevant to whether [a] child is entitled to U.S. citizenship." *CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703, 720 (D. Md. 2025). And unlike in Rule 23(b)(3) damages cases, it is sufficient for injunctive relief under Rule 23(b)(2) that "class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) (internal quotation marks omitted); *cf. Warth v. Seldin*, 422 U.S. 490, 515 (1975) (explaining in the associational standing context that for prospective relief, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those … actually injured").

Alternatively, to the extent the Court has any concerns about granting relief to the existing class, Plaintiffs do not oppose the designation of a subclass of persons subject to the 2026 Executive Order for purposes of granting injunctive relief to that subclass. *See* ECF 174 at 7. But, at most, only one subclass would be appropriate. The fact that the 2026 Executive Order identifies several categories of individuals from whom it purports to strip citizenship does not change the

fact that Plaintiffs' legal challenge rests on the common question of whether all class members are entitled to citizenship by birth, rather than on any arguments specific to the particular categories. *See* ECF 178-1 at 6. For purposes of Plaintiffs' claim that the 2026 Executive Order is foreclosed by *Barbara*, there are no factual or legal differences between those who fall within distinct categories that would require that they be divided into separate classes. *See CASA II*, 793 F. Supp. 3d at 719-20.

Defendants offer no explanation for their contention that a management subclass would be inappropriate here. ECF 179 at 3. Indeed, the mechanism is designed for this very situation, in which a court seeks to "segregat[e] a distinct legal issue that is common to *some* members of the existing class." *Peters v. Aetna Inc.*, 2 F.4th 199, 244 (4th Cir. 2021) (quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 7:32 (5th ed. Dec. 2020 update)) (emphasis added). Certification of any subclass this Court chose to designate would therefore be unnecessary. *See* ECF 178-1 at 6-7.

Even if it were not, Plaintiffs easily satisfy the Rule 23 requirements for a subclass. *See* ECF 174 at 7-8. There are numerous children already affected by the 2026 Executive Order, with more born each day. *See J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them."). The class is united by the common question of whether the Executive Branch may refuse to recognize their citizenship, and members seek identical relief to affirm that it may not. *See CASA II*, 793 F. Supp. 3d at 718-19. The named class members share this claim, and they will adequately represent the interests of the class. *Id.* at 722-23. The class faces ongoing irreparable harm every moment the 2026 Executive Order remains in place, *see* ECF 168-1 at 23-27, and this Court should enjoin it.

## III. Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are exceedingly likely to prevail on the merits of their claim that the 2026 Executive Order is unconstitutional as applied to members of the certified class. For the first time in opposing Plaintiffs' renewed motion, Defendants seek to defend the constitutionality of the Order. Their efforts to do so reveal why they had sought to avoid the merits in their prior briefing and at oral argument: They have nothing to offer.

Defendants begin by misrepresenting *Barbara*. They claim that *Barbara* held only "that children are not *disqualified* from birthright citizenship by virtue of being born to 'parents unlawfully or temporarily present in the United States,'" ECF 179 at 6 (quoting *Barbara*, 146 S. Ct. at 2450). And they say that *Barbara* "never suggested that every child born to such parents is per se a citizen, with no exceptions." *Id.* at 6-7. If Defendants were right, *Barbara* would have come out the other way.

The plaintiffs in *Barbara* mounted a facial challenge to the 2025 Executive Order, as did Plaintiffs in this case. To succeed on a facial challenge, a plaintiff must "'establish that no set of circumstances exists under which the [challenged policy] would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (similar); *see also Barbara*, 146 S. Ct. at 2546 (Gorsuch, J., dissenting) (arguing that the Court could "sustain th[e] injunction only if no set of circumstances exists in which the order may be applied lawfully"). "If the [policy] is constitutional in at least one scenario, the facial challenge fails." *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 45 F.4th 324, 340 (D.C. Cir. 2022).

In *Barbara*, the Supreme Court held that the plaintiffs had met the demanding standard for facial invalidation, meaning that the 2025 Executive Order was unconstitutional in all of its

applications. And that was true because everyone covered by the 2025 Executive Order is a citizen by birth. *Barbara*, 146 S. Ct. at 2450. That is exactly how the dissenting Justices understood the majority's holding. *See id.* at 2524 (Thomas, J., dissenting) (describing the majority as "recognizing a constitutional right to citizenship for the children of all foreign birth tourists and illegal aliens"); *id.* (Alito, J., dissenting) ("As interpreted by the Court today, the Fourteenth Amendment confers citizenship on virtually everyone who happens to be born in this country, including the children of 'birth tourists,' women who come here solely for the purpose of giving birth to a child and then promptly return home."); *id.* at 2546 (Gorsuch, J., dissenting) (discussing the "demanding standard" for facial invalidation). If instead the 2025 Executive Order could have been constitutionally applied to children whose parents engage in a commercial transaction to enter the United States, to members of designated terrorist organizations, or to employees of international organizations, then the facial challenge would have failed, as Justice Gorsuch argued it should have in his dissent. *Id.* at 2546 (Gorsuch, J., dissenting). The majority disagreed and held that everyone covered by the 2025 Executive Order has a right to citizenship under the Fourteenth Amendment, such that the Order was unconstitutional in all applications.

Defendants claim that the Supreme Court in *Barbara* could not have held that all members of the certified class are citizens because the class includes children of ambassadors and children born in territories. But Plaintiffs have never understood children in either of those groups to be targeted by the 2025 Executive Order or within the scope of the class in this case. The class includes only children born "in the United States," ECF 130, and courts have held that the territories are not "in the United States" for purposes of the Citizenship Clause, *Fitisemanu v. United States*, 1 F.4th 862 (10th Cir. 2021). That conclusion may be open to further debate in another case, but Plaintiffs do not challenge it here. As for ambassadors, they may in a colloquial

sense be present in the country lawfully but temporarily, but that is not how either Plaintiffs or Defendants understood the lawful-but-temporary category of the 2025 Executive Order or, therefore, of the certified class. The 2025 Executive Order stated that examples of lawful but temporary noncitizens included those "visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa." 2025 Executive Order § 1. And the implementing guidance for the 2025 Executive Order did not explicitly include ambassadors in its otherwise highly specific list of "aliens whose presence is lawful but temporary," and later distinguished between "children of parents present in the United States on diplomatic visas" and "children of aliens that possess lawful but temporary status." *See* USCIS Implementation Plan of Executive Order 14160 at 2-3 (July 25, 2025), https://perma.cc/CXJ9-WD9D. The most logical inference is thus that the 2025 Executive Order was not the mechanism that denied citizenship to children born to ambassadors or children born in territories where citizenship is not conferred by statute, and thus those children were not in the certified class. Clearly that is how the Supreme Court in *Barbara* understood the 2025 Executive Order, or it would not have held that the Order was facially unconstitutional.[2]

Somewhat relatedly, Defendants fault Plaintiffs for bringing a facial challenge to the 2026 Executive Order. *E.g.*, ECF 179 at 6. But unlike the facial challenge that Plaintiffs brought against the 2025 Executive Order—and unlike the facial challenge to the 2025 Executive Order addressed in *Barbara*—Plaintiffs are not at this stage raising a facial challenge to the 2026 Executive Order. Instead, Plaintiffs argue only that the 2026 Executive Order is unconstitutional *as applied* to the

---

[2] To the extent there is any doubt, Plaintiffs would not oppose amending the class definition to exclude children of ambassadors or children born in the territories. But Defendants have not moved to decertify the class or amend the definition.

certified class. *See* ECF 177 (prayer for relief in supplemental complaint seeking relief against 2026 Executive Order "as applied to Plaintiffs and all class members"). Plaintiffs here do not seek to enjoin Defendants from applying the Order to people outside the certified class. For instance, Defendants would not be enjoined from applying the Executive Order to children born before February 19, 2025, because those children are not in the class. Likewise, Plaintiffs are not at this juncture challenging the application of the 2026 Executive Order to lawful permanent residents, given that they are outside the class here as well. And as noted above, Plaintiffs are not challenging the provisions applicable to the children of ambassadors or children born in the territories. This is not a facial challenge to every aspect of the 2026 Executive Order. Plaintiffs' submission is that the 2026 Executive Order is unconstitutional as applied to the people whom the Supreme Court just held in *Barbara* are citizens of the United States.

As for the specific categories in the 2026 Executive Order, Plaintiffs have already explained why they come nowhere close to matching the historical exceptions to birthright citizenship identified in *Wong Kim Ark* and *Barbara*. *See* ECF 168-1 at 14-22. Defendants present various implausible arguments for why the common law allows the President to make up new exceptions to birthright citizenship beyond the closed set of historically grounded exceptions recognized in precedent. They also claim that the President may expand the existing exceptions, taking them from their extremely narrow historical scope and stretching them until they swallow the rule. *See* ECF 179 at 7-14. But all of these arguments ignore one critical detail: the text of the Fourteenth Amendment. Defendants provide no account for why the various groups of parents the 2026 Executive Order identifies are not "subject to the jurisdiction" of the United States. The Citizenship Clause "guarantee[s] citizenship to all children born in the United States and subject to its power." *Barbara*, 146 S. Ct. at 2453. The "power of the United States to govern those within

its territory" applies to members of the certified class, *id.* at 2450, whether they fall within the categories of the 2026 Executive Order or not, and they are thus citizens by birth under the Fourteenth Amendment.

The 2026 Executive Order targets individuals who are indisputably subject to the jurisdiction of this country. *See* ECF 168-1 at 16-22. For example, an "alien enemy" is not equivalent to a hostile occupying force. There is nowhere in the United States where the sovereignty of the country has been suspended and laws cannot be enforced against "alien enemies." *See Barbara*, 146 S. Ct. at 2449-50; *United States v. Rice*, 17 U.S. 246, 254 (1819). Similarly, the United States' waiver of jurisdiction over ambassadors through grants of diplomatic immunity does not extend to *all* individuals employed by a foreign government or international organization, regardless of role. *See Barbara*, 146 S. Ct. at 2450. And the Supreme Court in *Barbara* affirmatively held that sojourners—including so-called birth tourists—do not fall within any exception to birthright citizenship. *Id.* All the categories of individuals identified by the 2026 Executive Order are "amenable to the Nation's jurisdiction," so they are citizens of the United States. *Id.*

**IV. The Court Should Grant Immediate Relief.**

The Court should promptly enter a temporary restraining order or classwide preliminary injunction in this case. Defendants have had plenty of opportunities to present their arguments, including through two rounds of briefing and oral argument. *Contra* ECF 179 at 14. As this Court has already found, this challenge is ripe, and the class members face an imminent risk of irreparable harm from the 2026 Executive Order, without needing to wait for federal agencies to issue further

guidance.[3] Relief is necessary right now to address the irreparable injury that class members are already experiencing. To the extent that any guidance issued demands different or additional relief, it can be addressed by separate motion at that time.[4]

Nor should the Court stay its own relief. This is not a case that involves "an admittedly difficult legal question," or where a stay is necessary to protect "the equities of the case" by maintaining "the status quo." *Wash. Metro. Area Trans. Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977). Quite the opposite. The Supreme Court's recent decision in *Barbara* made clear the narrow scope of the exceptions to birthright citizenship and forecloses Defendants' arguments. *See* ECF 168-1 at 14-22. And it is *Defendants* who seek to alter the status quo and strip children of the citizenship they are guaranteed by the Constitution, causing them irreparable harm. ECF 168-1 at 23. Should this Court conclude that the standard for preliminary relief is met, there is no reason for it to second-guess that decision and stay its own order.

A bond is also unnecessary here, as this Court has determined in the past. *See CASA, Inc. v. Trump*, 763 F. Supp. 3d 723, 747 (D. Md. 2025). Because any imposition of bond would work a severe hardship on Plaintiffs, and because the preliminary injunction serves the public interest, this Court should waive any security requirement. *See* Fed. R. Civ. P. 65(c); *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).

---

[3] To be clear, Plaintiffs are not asking the Court to enjoin issuance of the guidance.

[4] Both at oral argument and in their briefing, Defendants have refused to commit to a date certain on which guidance will be issued. *See* ECF 179 at 5 ("Defendants expect guidance to have issued soon."). This uncertainty about when guidance will issue—and when Defendants will begin enforcing the 2026 Executive Order—makes immediate relief for Plaintiffs all the more important.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a preliminary injunction or temporary restraining order.

Respectfully submitted this August 31, 2026,

*/s/ William Powell*

Conchita Cruz*
Jessica Hanson (D. Md. 31903)
Dorothy Tegeler*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
dorothy.tegeler@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

William Powell*
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu

*Attorneys for Plaintiffs*

**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE AND RULE 65 CERTIFICATION**

I hereby certify that, on August 31, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Notice of this filing will be sent to all counsel who have entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. All defendants are currently represented by counsel who have entered an appearance and who receive notification of filings through the CM/ECF system. The notice provided by the CM/ECF system is sufficient to provide notice to all counsel of this filing. Fed. R. Civ. P. 5(b)(2)(E); Electronic Case Filing Policies & Procedures Manual 2.E; Standing Order 2003-08.

/s/ William Powell
William Powell