**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CASA, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Case No. 8:25-cv-00201-DLB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION OR FOR A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

## TABLE OF CONTENTS

BACKGROUND .... 2

LEGAL STANDARD .... 6

ARGUMENT .... 7

I. Plaintiffs Lack Standing, Requiring Dissolution or a Stay. .... 7

II. Dissolution Is Required Because The Certified Class Does Not Satisfy Rule 23. .... 10

III. In The Alternative, A Stay Pending Appeal Of The Injunction Is Warranted. .... 14

CONCLUSION .... 16

This Court is well aware of this case's history. When Plaintiffs challenged Executive Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 20, 2025), titled "Protecting the Meaning and Value of American Citizenship" ("2025 Executive Order"), they did so with seven class representatives and a putative class of children born of parents who are unlawfully or temporarily present in the United States. That original class was tailored to challenge the 2025 Executive Order. Each class representative fit the description of a parent whose child would not be entitled to birthright citizenship under the 2025 Executive Order, and the class definition tracked the language of that order. Accordingly, the Court entered a classwide preliminary injunction against enforcing or implementing the 2025 Executive Order against the class.

Last week, this Court entered a new classwide preliminary injunction in favor of that same class against a new executive order. Executive Order 14,418, 91 Fed. Reg. 51991 (Aug. 6, 2026), titled "Continuing to Protect the Meaning and Value of American Citizenship" ("2026 Executive Order"). At the same time, this Court recognized that promulgation of agency guidance may constitute "a significant change in the facts or the law since the court issued the injunction." ECF 181 (Op.) at 32 (quoting *Glob. Dimensions, LLC v. Tackett*, 2024 WL 1235545, at *3 (E.D.N.C Jan. 16, 2024)). Accordingly, the Court made clear that Defendants may continue to "develop and issue public guidance under Section 3(b) of the 2026 Executive Order" and that they may move to dissolve the injunction once such guidance issues. *Id.*; ECF 182.

That guidance has now been released, and it eliminates any conceivable prospect that any named Plaintiff has standing, or that classwide injunctive relief is appropriate. Exs. 1-7. The guidance proves—as Defendants have consistently represented, *see* Op. 17—that the 2026 Executive Order is prospective only. Exs. 1-7. It does not apply to any child already born as of the date of the guidance. And the guidance does nothing to expand the scope of the 2026 Executive

Order's limited categories. These new documents demonstrate that no named Plaintiff has standing to challenge the 2026 Executive Order or its implementation. And without standing for named Plaintiffs, there can be no class.

The guidance makes it equally plain that this Court's *classwide* injunction is unwarranted. As Defendants have explained in earlier briefing, the class definition in this case was created to challenge a different—and significantly broader—executive order. The 2026 Executive Order made clear that its categories are narrow, and the guidance has made that clearer still. The guidance thus confirms that Plaintiffs have not satisfied any of Rule 23's prerequisites for class certification. Plaintiffs have not shown that the 2026 Executive Order applies to *any* class member, let alone numerous or typical ones.

The Court should accordingly dissolve its preliminary injunction. Alternatively, Defendants renew their request for a stay pending appeal. ECF 179 at 14. A stay is even more needed now; because guidance has issued, the preliminary injunction is actively preventing the Executive Branch from enforcing the 2026 Executive Order and implementing concrete steps to effectuate an essential pillar of the Executive Branch's immigration policy against class members.[1] Given that ongoing irreparable harm, and to facilitate expeditious relief on appeal, Defendants respectfully request that the Court resolve this motion by September 11, 2026.[2]

**BACKGROUND**

In light of the Supreme Court's decision in *Trump v. Barbara*, 146 S. Ct. 2438 (2026), the President signed the 2026 Executive Order. Consistent with *Barbara*, the 2026 Executive Order

[1] The 2026 Executive Order can still be enforced against non-class members, such as children of lawful permanent residents.
[2] For reasons the government has already articulated in its previous briefing, which it incorporates by reference here, the 2026 Executive Order is also lawful on the merits. *See* ECFs 170 at 9-25; 179 at 1-14.

does not depend on a domicile theory of citizenship, nor does it exclude all children whose parents were here illegally or temporarily from citizenship. Rather, in Section 2, it declared that "[i]t is the policy of the United States" not to recognize citizenship for certain children whose parents are both non-U.S. citizens, excluding four categories that elucidated the exceptions and common law discussed in *Barbara*. 91 Fed Reg. at 51991. *First*, it excludes such children whose parent "is an alien enemy." *Id. Second*, it excludes the children of certain "foreign government employee[s]." *Id. Third*, the Executive Order excludes such children whose parent "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." *Id.* And *fourth*, the Executive Order excludes such children "born in a territory or territorial waters of the United States where citizenship is not conferred by Federal statute." *Id.* at 51992.

Section 2 set out the "policy;" how that policy would be enforced was always to be governed by Section 3. *Id.* at 51991–92. The Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security "shall take all appropriate measures to ensure" their "regulations and policies" are "consistent with" the 2026 Executive Order. *Id.* at 51992. And the Executive Order directs agencies to "issue public guidance within 30 days of the date of this order regarding this order's implementation with respect to their operations and activities." *Id.* Nowhere does the Executive Order suggest that it could operate to retroactively declare as non-citizens children who were already born in the United States and thus received citizenship—and, indeed, Defendants have repeatedly emphasized that the Executive Order cannot be interpreted to do so. Op. 17.

On August 25, 2026, Plaintiffs moved for a classwide preliminary injunction against the implementation of the 2026 Executive Order. ECF 168-1. They did so with the same class

representatives and on the same class definition they used to oppose the 2025 Executive Order. *Id.* Defendants opposed the motion, emphasizing that guidance would clarify the scope and application of the Executive Order's policy, that the named Plaintiffs lacked standing to challenge the Executive Order, and that the certified class no longer satisfies Rule 23 as to the new Executive Order, among other things. ECF 170. At the hearing on August 28, 2026, the Court denied Plaintiffs' motion because they did not supplement their complaint. ECF 176. The Court granted leave to amend and set a quick schedule for rebriefing. *Id.* Plaintiffs filed a supplemental complaint and renewed motion that largely tracked their initial arguments. ECFs 177, 178. Defendants opposed on similar grounds. ECF 179.

On September 2, 2026, this Court granted a classwide preliminary injunction, enjoining Defendants "from enforcing or applying the 2026 Executive Order against the class representatives and the members of the certified class." ECF 182. The Court did not enjoin the territory exception or the issuance of agency guidance. *Id.* As to standing, the Court held that two named Plaintiffs—Andrea and Monica, whose children were already born—demonstrated Article III injury-in-fact. The Court found that "the 2026 Executive Order applies to all children who meet its criteria—regardless of when they were born," and criticized Defendants for not providing a "sworn statement" to the contrary. Op. 17-18. And the Court held that Andrea and Monica were at risk of being mistakenly labeled alien enemies, which would then deprive their already-born children of citizenship. *Id.* at 18-21. The Court also concluded that, based on that "credible threat of" being found to be alien enemies, Andrea and Monica have standing to challenge the foreign government employee and birthright tourism exceptions as well. *Id.* at 20-22.

As to scope of relief, the Court determined that a "new" classwide injunction against the 2026 Executive Order would be "narrowly tailored to redress the class's injury: the denial of

citizenship guaranteed by the Citizenship Clause of the Fourteenth Amendment." *Id.* at 31. Even though the class definition (children of illegally or temporarily present aliens) bore little to no connection to the categories of the 2026 Executive Order, the Court decided that "the class members are united in their singular challenge to the 2026 Executive Order's attempt to deny them their right to citizenship." *Id.* at 32.

The Court, however, recognized that the forthcoming promised guidance could change matters. It expressly invited Defendants to "move to modify or dissolve the preliminary injunction" if the guidance provided "grounds" to do so. *Id.* The Court explained that it could grant such a motion for "equitable and good reasons," and where there is "a significant change in the facts or the law" that makes "ongoing enforcement [of the injunction] inequitable." *Id.*

Two days after the Court issued that injunction, the various agencies issued their guidance to implement the 2026 Executive Order. Exs. 1-7. Each agency's guidance made clear that "[b]ecause the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *Id.*

The guidance also clarifies the 2026 Executive Order's excepted categories. As to foreign government employees, the guidance provides a detailed list of who would fall into that term for purposes of the Executive Order. For instance, it generally includes "person[s] employed by a foreign government in an official capacity," but generally excludes "[p]ersonal employees" such as "personal assistants, chauffeurs," and "house cleaners." Exs. 1 (State Guidance), 7 (USCIS Guidance). As to alien enemies, the guidance explains that membership in those categories "will be assessed based on relevant government records and other indicators." Ex. 1. And, regarding federally funded benefits, the agencies offer detailed guidance on what documents must be

produced to prove eligibility, including an eligibility attestation form. Exs. 2 (SSA Guidance), 3 (USDA Guidance), 4 (CMS Guidance), 5 (HHS Guidance), 6 (HUD Guidance).

## LEGAL STANDARD

Whether to grant a motion to dissolve a preliminary injunction generally "depend[s] on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place." *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994). Those factors are likelihood of success on the merits, irreparable harm absent preliminary relief, balance of the equities, and the public interest. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023). Likelihood of success includes whether the movant can show that there is even jurisdiction to reach the merits. *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Furthermore, the scope of preliminary injunctive relief must be limited to providing the plaintiff "complete relief" from "the ongoing violation"; the court "may not … provide more relief than that." *Dmarcian, Inc. v. DMARC Advisor BV*, 182 F.4th 289, 305 (4th Cir. 2026). That requires "scrupulously adhering to Rule 23's requirements" in the context of classwide preliminary injunctions. *CASA, Inc. v. Trump*, 793 F. Supp. 3d 687, 701 (D. Md. 2025).

Applying those principles, under Rule 60(b)(5) an injunction can be dissolved if applying it "is no longer equitable" in light of "significant changes in fact, law, or circumstance since the previous ruling." *Am. Coll. of Obstetricians & Gynecologists v. FDA*, 506 F. Supp. 3d 328, 338 (D. Md. 2020) (quoting *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012)). And, under Rule 60(b)(6), a court can dissolve an order for "any other reason that justifies relief," which provides "a grand reservoir of equitable power to do justice in a particular case." *Justus v. Clarke*, 78 F.4th 97, 105 (4th Cir. 2023) (quotation omitted); *accord* Op. 32 (noting this Court "has the plenary power to dissolve a preliminary injunction" for "equitable and good reasons").

## ARGUMENT

### I. Plaintiffs Lack Standing, Requiring Dissolution or a Stay.

The issuance of agency guidance and regulations since this Court's preliminary injunction order removes any doubt that Plaintiffs lack standing to pursue this case. *See Gooch*, 672 F.3d at 414. It is well established that "federal courts lack jurisdiction" over a class-action suit "if no named plaintiff has standing." *Frank v. Gaos*, 586 U.S. 485, 492 (2019). This Court held in its preliminary injunction order that two named Plaintiffs—Andrea and Monica—have standing to challenge the 2026 Executive Order. The recent guidance and regulations demonstrate that they do not.

**A.** To begin, Andrea and Monica's injuries depend on their fear that the 2026 Executive Order would apply retrospectively to their children born in 2025. Andrea declared that "[t]he possibility that" her child "could be denied citizenship" is "highly upsetting" to her, and that she is "extremely anxious and scared for [her] child." ECF 168-5 ¶ 9. Monica similarly declared she was "very concerned" that the "new Executive Order means that the government could try to deny" her already-born child "U.S. citizenship." ECF 168-2 ¶ 14. This Court relied entirely on these statements as to already-born children to find standing, holding that "[t]he children of Monica and Andrea face a credible threat that they will be denied citizenship under" the 2026 Executive Order. Op. 18. And though Defendants have explained from the start that the 2026 Executive Order by its terms is prospective only and does not purport to retroactively strip citizenship from any child, ECF 170 at 16-19; ECF 179 at 2, this Court dismissed those representations because there was no "sworn statement" to rule out "retrospective[]" application, Op. 17.

Defendants continue to maintain that the 2026 Executive Order on its face has only prospective effect. Importantly, the guidance or regulations now provide what this Court and

Plaintiffs insist were lacking. Every relevant agency tasked with implementing the 2026 Executive Order has now issued public guidance and regulations explicitly saying that "the EO is prospective only," that the "guidance" therefore too "is prospective only," and that the guidance "will become effective upon publication subject to any legal obligations," such as this ongoing preliminary injunction. Exs. 1-7. That is the exact type of official statement that the Fourth Circuit has relied on to determine whether there is a credible threat of enforcement. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) ("State Police issued an 'FAQ'" affirming that an HQL is not needed to fire a gun at a gun range" meant there was no threat of enforcement).

The guidance and regulations therefore confirm that the named Plaintiffs lack standing. The Court relied on no other injury than to Monica's or Andrea's existing children. Op. 18-21. And Monica and Andrea can point to no other cognizable injury in any event. Monica provides a blanket assertion that she fears for "any future children of [hers] born in the United States," ECF 168-2 ¶ 14, but such "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent injury'" required by Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). And Andrea, for her part, says not a word about future children. They lack standing to bring claims. As the only named Plaintiffs assessed by this Court, the class also lacks standing. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975).

**B.** That the 2026 Executive Order is prospective only is fatal to the named Plaintiffs'—and therefore the class's—standing. But the guidance and regulations also demonstrate that Andrea's and Monica's fears are unfounded in any event. Monica claimed to fall within the 2026 Executive Order because she speculated that she and her husband "will be considered 'alien enemies'" for "simply being Venezuelan." ECF 168-2 ¶ 12. Andrea, too, indicated that she was

afraid the "Executive Order opens a door to labeling anybody, including [her], an 'alien enemy.'" ECF 168-5 ¶ 7. She later claimed that she fears either she (who was a *victim* of an FTO) or her child's father (who is allegedly *related* to a member of that FTO) will be accidentally categorized as an alien enemy as part of a cartel. ECF 178-2. And both claimed to fear that they might accidentally be labeled as alien enemies regardless of the definition—a fear which this Court credited. Op. 19-20.

The guidance and regulations indicate otherwise on all counts. Far from taking a countrywide or haphazard approach, the guidance and regulations follow the same defined course as the 2026 Executive Order. The "alien enemies" category targets members of "designated Foreign Terrorist Organization[s]" and "Specially Designated Global Terrorists," and like categories. Exs. 1-7. Andrea and Monica have never alleged that they belong in any group like those. Indeed, they disclaim it. Furthermore, each relevant guidance explains that whether a person is an alien enemy "will be assessed based on relevant government records and other indicators." Exs. 1-7. If speculation about administrative error in any process based on assessing "relevant government records and other indicators" can support standing, then anyone could sue about any government program. *See Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 437 (6th Cir. 2024) (no pre-enforcement standing where the threat was premised on the idea that "the statute might be misconstrued by law enforcement.").

Again, Defendants maintain that the guidance and regulations only further clarify what has always been the case. Plaintiffs' fears of being affected by the 2026 Executive Order have always been based on rife speculation insufficient to support standing. The agency guidance issued since confirms that this Court should dissolve its injunction.

**C.** Finally, the guidance and regulations confirm that the categories outlined in the 2026 Executive Order are severable. Exs. 1-7. No agency has attempted to meld them together, and indeed one agency's regulation addressed only one of the categories. *See* Ex. 7 (amending regulations to define foreign government employees but no other category). Nor have any of the categories been expanded from the 2026 Executive Order. *See* Ex. 1 (tracking the language of the Executive Order as to alien enemies and birth tourism).

Accordingly, as with the territory and foreign government employee exceptions, Andrea and Monica have given no reason to think that the birth tourism and foreign government employee exceptions "threaten the citizenship" of their children. Op. 22 n.5. Especially where a law's "provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to *each* provision it challenges." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 800-01 (8th Cir. 2006) (emphasis added) (collecting cases); *see also Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007) (similar and collecting cases). The 2026 Executive Order is explicitly severable: "If any provision of this order, or the application of any provision to any individual or circumstance, is held to be invalid, the remainder of this order and the application of its other provisions to any other individuals or circumstances shall not be affected thereby." The guidance and regulations confirm that to be true.

## II. Dissolution Is Required Because The Certified Class Does Not Satisfy Rule 23.

This Court has recognized that "scrupulous[] adher[ence] to Rule 23's requirements" is necessary to avoid "resurrecting the universal injunction." *CASA, Inc.*, 793 F. Supp. 3d at 701. For classwide injunctive relief to be appropriate, the class must satisfy all four requirements of Rule 23(a), and also show that Defendants "acted … on grounds that apply generally to the class" under Rule 23(b)(2). Defendants' position has always been that this class has never satisfied these

prerequisites as to the 2026 Executive Order. ECFs 170 at 19-21; 179 at 2-3. The new guidance and regulations confirm it.

Start with Rule 23(a). To show that "there are questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)), Plaintiffs must "demonstrate that the class members have suffered the same injury," *Brown v. Nucor*, 785 F.3d 895, 909 (4th Cir. 2015) (quotation omitted). The guidance and regulations prove that they cannot do so. Those documents clarified and reinforced the 2026 Executive Order's narrow scope, making it that much harder for Plaintiffs to identify *anyone* in their class who is injured by it. To take one example, the agencies have explained that, in most circumstances, "[p]ersonal employees or attendants of foreign government or international organization officials, such as personal assistants, chauffeurs," and "housecleaners," are not included in the category of foreign government employees. *See* Exs. 1, 7. In light of the narrowing guidance and regulations, it is even plainer that Plaintiffs cannot prove that anything more than a narrow sliver of their certified class is affected by the 2026 Executive Order.

Rather than show that any significant number of the class would suffer injury from the 2026 Executive Order, Plaintiffs claim that they satisfy commonality "based on the indivisible claim that Defendants lack the authority to deny class members citizenship granted by the Constitution." ECF 178-1 at 5. But "[o]ne can always frame a question in such an abstract manner as to elicit a common response," and "such semantic gerrymandering does not reflect the duties and obligations inherent in Rule 23." *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 182 (4th Cir. 2026). Mere allegations that class members "have all suffered a violation of the same provision of law"—here, the Citizenship Clause—is insufficient to prove commonality. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Operating at such a level of generality cannot assure the court that "a common answer can address the entire class's claims." *Stafford v.*

*Bojangles' Rests., Inc.*, 123 F.4th 671, 681 (4th Cir. 2024). Rather, a class fails the commonality requirement when its "definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct." *Id.* (citation omitted). The recent guidance and regulations demonstrate that *many* unlawfully and temporarily present aliens fall outside of the 2026 Executive Order's categories, and therefore "could not have been injured" by it. *Id.* Indeed, "overbreadth poses the unmistakable risk that 'the district court may inadvertently be 'lump[ing] together' a great many 'disparate plaintiffs with widely varying individual claims.'" *Overby*, 178 F.4th at 185 (quoting *Bojangles*, 123 F.4th at 681). This Court noted that it agreed the class was substantially overbroad. Op. 27 n.7. That should have doomed Plaintiffs' sweeping classwide injunction.

The guidance and regulations also put to rest any argument that Plaintiffs could satisfy the typicality or adequate representation requirements. As explained, the guidance and regulations conclusively prove that Defendants were correct in their characterization of the Executive Order as prospective only. The 2026 Executive Order poses no cognizable risk to the named Plaintiffs, all of whose children are already born and any future plans are completely speculative. Thus, the "claims or defenses of the representative parties" are *not* "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3)—insofar as any class members are affected by the 2026 Executive Order in the first place (Plaintiffs have identified none).

Nor are "the representative parties" able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). That prong requires named Plaintiffs to "possess the same interest and suffer the same injury as the class members." *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). Here, the named Plaintiffs do not and cannot. Their children are already born. None has provided a coherent or cognizable theory for why they would fall within any of the 2026

Executive Order's categories. If their claims *were* typical of the class's, then *no one* would have standing. As it is, the named Plaintiffs have no stake in this case, and they thus cannot adequately represent anyone who does.

Even on numerosity, Plaintiffs have not carried their burden. *Overby*, 178 F.4th at 181 ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]."). To be sure, proving that a class must be "so numerous that joinder of all members is impracticable" (Fed. R. Civ. P. 23(a)(1)) is not normally a difficult burden. While a class with fewer than 20 members is normally not certified, a class with more than 40 members usually is. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021). Here, however, Plaintiffs have only ever specifically claimed that four class members (Andrea, Monica, Liza, Juana) fall within the 2026 Executive Order's scope, Suppl. Compl. ¶¶ 40, 41, 53, 54—and the recent guidance and regulations have definitively ruled them out.

Other than the (inadequate) class representatives, Plaintiffs have only dealt in blanket allegations. They claim that "[s]ome members of the class['s]" parents may fall in the alien enemy category, without any additional support. Suppl. Compl. ¶ 39. And they claim that "thousands of class members" will be categorized as foreign government employees but present no evidence that even a single class member satisfies that definition. *Id.* ¶ 46. The guidance and regulations demonstrate that not to be true. Exs. 1, 7.

The foregoing also makes clear that Defendants have not "acted" and will not "act[] on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). This Court determined that classwide relief was "narrowly tailored to redress the class's common injury"—in the Court's view, "the denial of citizenship guaranteed by the Citizenship Clause of the Fourteenth Amendment." Op. 31. Respectfully, Defendants maintain that was error, and that the class in this

case was always a poor fit for the Executive Order. Regardless, the guidance and regulations confirm that the 2026 Executive Order does not deny citizenship to every (or even most) of the certified class. An "indivisible injunction" for this class will not "benefit the *entire* class," *contra* Op. 31 (emphasis added)—certainly not those members born prior to September 2026, nor those members whose parents are unlawfully or temporarily present yet do not fall within the 2026 Executive Order's and guidance's limited categories. In short, "final injunctive relief" is not "appropriate respecting the class *as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added).

The guidance and regulations confirm that the 2026 Executive Order is limited, both substantively and temporarily. It has no effect on large swaths of the certified class, including the named Plaintiffs themselves. Recent developments thus place it beyond doubt that this class does not satisfy Rule 23. This Court should dissolve the classwide injunction.

**III. In The Alternative, A Stay Pending Appeal Of The Injunction Is Warranted.**

Should this Court deny the motion to dissolve its injunction, Defendants respectfully renew their request for a stay pending appeal. ECF 179 at 14-15. Defendants are likely to succeed on the merits of any appeal based on the arguments above and previous briefing, which Defendants incorporate here. ECFs 170 at 9-25; 179 at 1-14. And now that the guidance and regulations have issued, the 2026 Executive Order is enforceable against class members but for this Court's injunction. Any attempt to prevent "the Government from enforcing its policies" inflicts an irreparable harm on the Government. *See Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025); *Cf. Maryland* v. *King*, 567 U.S. 1301, 1303 (2012) (Roberts, C. J., in chambers) ("'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury'" (alteration in original)).

That is especially true here, given the patent overbreadth of the ongoing preliminary injunction. As the Supreme Court explained, "[w]hen a federal court enters a universal injunction against the Government, it improperly intrudes on a coordinate branch of the Government and prevents the Government from enforcing its policies against nonparties." *CASA, Inc.*, 606 U.S. at 859 (internal quotation marks and alterations omitted); *see also California v. Trump*, 609 U.S. --- 2026 WL 2473573, at *4 (Aug. 24, 2026) (per curiam). Classwide relief that does not comply with Rule 23 or class standing requirements is similarly improper. *CASA, Inc.*, 606 U.S. at 867-68 (Alito, J., concurring). That the ongoing preliminary injunction awards relief to persons who are not properly before the Court only compounds the irreparable harm suffered by Defendants, and "is enough to justify interim relief." *Id.* at 859 (majority opinion).

Finally, the balance of the equities and the public interest favor Defendants. Defendants agree with Plaintiffs on one thing: American citizenship is precious. At stake in this case is the Government's ability to effectuate the guarantees and limits of the Citizenship Clause and the INA. *See CASA, Inc.*, 606 U.S. at 860–61. Every day enforcement is enjoined going forward, additional people may be born and receive all the benefits of citizenship when they should not—including the children of dangerous alien enemies, foreign operatives, and those committing fraud on the United States to ensure their children receive the benefits. Those benefits cannot be easily clawed back once granted. The public interest clearly favors Defendants.

On the other hand, the harm to Plaintiffs here is non-existent and the public interest favors the carrying out the 2026 Executive Order. As explained, Plaintiffs have not demonstrated even injury-in-fact for purposes of standing, thus they have no harm from the 2026 Executive Order at all. Taken together, the equities all favor Defendants. Thus, if the Court does not dissolve its injunction (it should), it should at the least stay it pending appeal.

**CONCLUSION**

This Court should dissolve its preliminary injunction. In the alternative, this Court should stay its order pending appeal. Given the time sensitive nature of this request, Defendants respectfully request that the Court issue a decision on this motion by September 11, 2026 to allow for an expeditious appeal.

Dated: September 8, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KELLY O. HAYES
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

*s/ Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
*(202) 860-8970*

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Chief Litigation Counsel

KATHLEEN C. JACOBS
Trial Attorney

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant United States Attorney
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
Phone: 410-209-4800

*Attorneys for Defendants*