# EXHIBIT 7

This document is scheduled to be published in the
Federal Register on 2026-09-09 and available online at
https://www.federalregister.gov/d/2026-18345, and on
https://govinfo.gov

de: 9111-97

**DEPARTMENT OF HOMELAND SECURITY**

**8 CFR Parts 101 and 264**

**[CIS No. 2882-26; DHS Docket No. USCIS-2026-0496]**

**RIN 1615-AD24**

Registration of Lawful Permanent Residence for Children Born to Foreign Government Employees in the United States

**AGENCY:** Department of Homeland Security, U.S. Citizenship and Immigration Services.

**ACTION:** Interim final rule; request for comments.

**SUMMARY:** Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS) is amending its regulations to permit children born in the United States to "foreign government employees" who are not U.S. citizens to register for permanent residence. DHS is also making corresponding changes to Form I-485, Application to Register Permanent Residence or Adjust Status and Form G-325R, Biographic Information (Registration).

**DATES:** This interim final rule (IFR) is effective on **[INSERT DATE OF PUBLIC INSPECTION IN THE *FEDERAL REGISTER*].** This IFR will apply to children born to foreign government employees on or after **[INSERT DATE OF PUBLIC INSPECTION IN THE *FEDERAL REGISTER*]**; children born to a foreign government employees prior to that date will be treated consistently with the regulations in place at the time of their birth. Comments must be received on or before **[INSERT 30 DAYS AFTER PUBLIC INSPECTION IN THE *FEDERAL REGISTER*]**. The electronic Federal Docket Management System will accept comments prior to midnight eastern time at the end of that day.

**ADDRESSES:** You may submit comments on the entirety of this interim final rulemaking package, identified by DHS Docket No. USCIS-2026-0496, through the Federal eRulemaking Portal: http://www.regulations.gov. Follow the website instructions for submitting comments. Comments must be submitted in English, or an English translation must be provided. Comments that will provide the most assistance to USCIS in implementing these changes will reference a specific portion of the interim final rule, explain the reason for any recommended change, and include data, information, or authority that support such recommended change.

Comments submitted in a manner other than the one listed above, including e-mails or letters sent to DHS or USCIS officials, will not be considered comments on the interim final rule and may not receive a response from DHS. Please note that DHS and USCIS cannot accept any comments that are hand-delivered or couriered. In addition, USCIS cannot accept comments contained on any form of digital media storage devices, such as CDs/DVDs and USB drives. USCIS is also not accepting mailed comments at this time. If you cannot submit your comment by using http://www.regulations.gov, please contact the Regulatory Coordination Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by telephone at (240) 721-3000 for alternate instructions.

**FOR FURTHER INFORMATION CONTACT:** Office of Policy and Strategy, U.S. Citizenship and Immigration Services (USCIS), DHS, 5900 Capital Gateway Drive, Camp Springs, MD 20746; telephone (240) 721-3000 (this is not a toll-free number). Individuals with hearing or speech impairments may access the telephone number above via TTY by calling the toll-free Federal Information Relay Service at 711.

**SUPPLEMENTARY INFORMATION:**

**<u>Table of Contents</u>**

I. **Public Participation**
II. **Purpose and Background**

A. Purpose of the Regulatory Action
B. Background
III. **Discussion of Interim Final Rule**
A. Applicability and Timing
B. Definition of Foreign Government Employee
C. Subject to the Jurisdiction of the United States
D. Registration as a Lawful Permanent Resident
E. Form Changes
F. Conforming Regulatory Changes
IV. **Statutory and Regulatory Requirements**
A. Administrative Procedures Act (APA)
B. Executive Order 12866 (Regulatory Planning and Review), Executive Order 13563 (Improving Regulation and Regulatory Review), and Executive Order 14192 (Unleashing Prosperity Through Deregulation)
C. Regulatory Flexibility Act (RFA)
D. Congressional Review Act (CRA)
E. Unfunded Mandates Reform Act of 1995 (UMRA)
F. Executive Order 13132 (Federalism)
G. Executive Order 12988 (Civil Justice Reform)
H. Family Assessment
I. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)
J. National Environmental Policy Act (NEPA)
K. Paperwork Reduction Act (PRA)

**Table of Abbreviations**

APA – Administrative Procedures Act
ASC – Application Support Center
CPI-U – Consumer Price Index for All Urban Consumers
CRA – Congressional Review Act
DHS – Department of Homeland Security
DOS – Department of State
E.O. – Executive Order
HSA – Homeland Security Act of 2002
NEPA – National Environmental Policy Act
OMB – Office of Management and Budget
PRA – Paperwork Reduction Act
RFA – Regulatory Flexibility Act
SBREFA – Small Business Regulatory Enforcement Fairness Act of 1996
Secretary – Secretary of Homeland Security
UMRA – Unfunded Mandates Reform Act of 1995
USCIS – U.S. Citizenship and Immigration Services

## I. Public Participation

DHS invites all interested parties to participate in this rulemaking by submitting written data, views, comments and arguments on all aspects of this interim final rule. DHS also invites comments that relate to the economic, environmental, or federalism

effects that might result from this interim final rule. Comments must be submitted in English, or an English translation must be provided. Comments that will provide the most assistance to USCIS in implementing these changes will reference a specific portion of the interim final rule, explain the reason for any recommended change, and include data, information, or authority that support such recommended change. Comments submitted in a manner other than the one listed above, including e-mails or letters sent to DHS or USCIS officials, will not be considered comments on the interim final rule and may not receive a response from DHS.

**Instructions**: If you submit a comment, you must include the agency name (U.S. Citizenship and Immigration Services) and the DHS Docket No. USCIS-2026-0496 for this rulemaking. Regardless of the method used for submitting comments or material, all submissions will be posted, without change, to the Federal eRulemaking Portal at http://www.regulations.gov, and will include any personal information you provide. Therefore, submitting this information makes it public. You may wish to consider limiting the amount of personal information that you provide in any voluntary public comment submission you make to DHS. DHS may withhold information provided in comments from public viewing that it determines may impact the privacy of an individual or is offensive. For additional information, please read the Privacy and Security Notice available at http://www.regulations.gov.

**Docket**: For access to the docket and to read background documents or comments received, go to http://www.regulations.gov, referencing DHS Docket No. USCIS-2026-0496. You may also sign up for email alerts on the online docket to be notified when comments are posted or a final rule is published.

## II. Purpose and Background

### A. Purpose of the Regulatory Action

The purpose of this rulemaking is to clarify that certain aliens who are born in the United States but are not United States citizens may register their permanent resident status. This is consistent with Executive Order (E.O.) 14418, Continuing to Protect the Meaning and Value of American Citizenship, 91 FR 51991 (August 6, 2026), which directs the Secretary of Homeland Security (Secretary) to take appropriate action to prevent the issuance of documents recognizing United States citizenship to certain individuals born in the United States, where neither parent of that person is a U.S. citizen and at least one parent meets certain conditions.

### B. Background

The Fourteenth Amendment grants United States citizenship at birth to "all persons born…in the United States, and subject to the jurisdiction thereof." The Supreme Court has interpreted the words "subject to the jurisdiction thereof" to create certain exceptions to birthright citizenship, notably "children of members of the Indian tribes…children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state." *See U.S. v. Wong Kim Ark,* 169 U.S. 649, 682 (1898); *see also Trump v. Barbara,* 609 U.S. ---, 146 S.Ct. 2438, 2456 (2026) ("[A] person is 'subject to the jurisdiction' of the government of the country in which he is physically present…unless he falls under one of the familiar exceptions, such as for ambassadors.").

Since at least the 1940s, the former Immigration and Naturalization Service (INS), and more recently USCIS, have treated children born in the United States to foreign diplomatic officers who do not acquire citizenship at birth as eligible to register lawful permanent residence in the United States. *See Matter of Huang*, 11 I&N Dec. 190 (BIA 1965) (tracing this practice back to "an opinion dated December 10, 1946, by the General Counsel of the Service"); *Matter of Chu*, 14 I&N Dec. 241 (BIA 1972). In 1982,

the former INS published regulations, at 8 CFR 101.3, 101.4, and 264.2, to create a formal procedure for creation of records of lawful permanent residence for individuals born in the United States to foreign diplomatic officers accredited to the United States.[1]

These regulations, which are still in force today, state that a child of a foreign diplomatic officer accredited to the United States is not a U.S. citizen under the Fourteenth Amendment but may voluntarily register as a lawful permanent resident of the United States. To register, the applicant must file Form I-485, Application to Register Permanent Residence or Adjust Status, and establish that he or she has not abandoned his or her residence in the United States. If the application is granted, the applicant is considered a lawful permanent resident as of his or her date of birth.

On August 6, 2026, President Trump issued E.O. 14418, Continuing to Protect the Meaning and Value of American Citizenship. *See* 91 FR 51991. The E.O. identifies certain categories of children born in the United States who do not fall within the rule of birthright citizenship as announced by the Supreme Court in *Barbara*. Among these categories identified in Section 2 of the E.O. are persons who do not have a U.S. citizen parent, and either of their parents is a "foreign government employee, defined to include: (i) ambassadors; (ii) persons employed by a foreign embassy or consulate who are nationals of that foreign country; (iii) persons employed by a foreign government in an official capacity; and (iv) persons employed by an international organization that possess international-organization immunity." *See id.* at Sec. 2(b). The E.O. stipulates that DHS shall not "issue documents recognizing United States citizenship" to, or accept documents issued by the State, local, or other governments or authorities purporting to recognize United States citizenship" for these persons. *See id.*

---

[1] *See* Presumption of Lawful Admission; Registration and Fingerprinting of Aliens in the United States; Creation of Records of Lawful Permanent Resident Status for Aliens Eligible for Presumption of Lawful Admission for Permanent Residence and for Individuals Born Under Diplomatic Status in the United States*,* 47 FR 940-01 (Jan. 8, 1982); *see also Nikoi v. Atty. Gen. of U.S.*, 939 F.2d 1065, 1067 (D.C. Cir. 1991) (describing the regulatory history).

Given the injunction currently in place in *Casa Inc. v. Trump*, No. 8:25-cv-00201 (D. Md Sep. 2, 2026), DHS will not take actions to implement the rule specifically to any member of the certified class, or otherwise conflict with the preliminary injunction, unless and until the government obtains relief from the injunction. If the government obtains timely relief from the injunction, DHS will implement the rule accordingly.

### C. Legal Authority

The authority for the Secretary to issue this rule is found in various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 *et seq*. INA section 103(a), 8 U.S.C. 1103(a) authorizes the Secretary to administer and enforce the immigration laws and establish such regulations as the Secretary deems necessary for carrying out such authority. Section 102 of the Homeland Security Act of 2002, 6 U.S.C. 112, among others, vests all functions of all DHS officers, employees, and organizational units in the Secretary and addresses the issuance of regulations by the Secretary.

INA section 101(a)(20), 8 U.S.C. 1101(a)(20) likewise provides authority insofar as the rule relates to persons who are "lawfully admitted for permanent residence." Authority for this rule is furthermore found in INA sections 262 through 266, 8 U.S.C. 1302 through 1306, which govern the registration of aliens and authorize the Secretary to prepare forms for registration and fingerprinting of aliens.

## III. Discussion of Interim Final Rule

### A. Applicability and Timing

The IFR applies prospectively to children born in the United States on or after the effective date of the IFR and subject to the new provisions of 8 CFR 101.3. Children born in the United States before the effective date of this IFR are not subject to the requirements of this IFR.

**B. Definition of Foreign Government Employee**

DHS is defining the term “foreign government employee” in a manner consistent with E.O. 14418. This definition applies only to foreign government employees who are not U.S. citizens. The definition of “foreign government employee” as set out in Section 2(b) of the E.O. includes the following:

- Ambassadors;
- Persons employed by a foreign embassy or consulate who are nationals of that foreign country;
- Persons employed by a foreign government in an official capacity; and
- Persons employed by an international organization that possesses international-organization immunity. *See* 91 FR 51991.

DHS notes that before this IFR, only children of foreign government employees who were also foreign diplomatic officers and not U.S. citizens were excluded from birthright citizenship, and there was no definition of “foreign government employee” for the purpose of determining birthright citizenship in the United States in 8 CFR. However, 8 CFR 101.3, prior to this IFR, defined “foreign diplomatic officer” in this context as “a person listed in the State Department Diplomatic List, also known as the Blue List,” and included:

- Ambassadors, ministers, chargés d’affaires, counselors, secretaries, and attaches;
- Members of the Delegation of the Commission of the European Communities; and
- Individuals with comparable diplomatic status and immunities who are accredited to the United Nations or to the Organization of American States, and other individuals who are also accorded comparable diplomatic status.

Through this IFR, DHS is amending 8 CFR 101.3(a)(2) to define "foreign government employee" to mean:

- Foreign diplomatic officers accredited to the United States;[2]
- Persons employed by a foreign embassy or consulate who are nationals of that foreign country;
- Persons employed by a foreign government in an official capacity; and
- Persons employed by an international organization that possess international-organization immunity.

Additionally, DHS is amending 8 CFR 101.3(a)(2) to clarify that the definition of "foreign government employee," except if the foreign government employee falls within the definition under paragraph (a)(2)(i)(1), does not include:

- Personal employees or attendants of foreign government or international organization officials, such as personal assistants, chauffeurs, housecleaners, etc. (i.e., employees hired by individual foreign officials rather than foreign governments);
- Employees of state-owned enterprises in a status other than A or G nonimmigrant visa classifications;
- Third-country nationals working for a foreign government, including at a foreign embassy or consulate;

---

[2] This includes ambassadors, ministers, chargés d'affaires, counselors, secretaries and attachés of embassies and legations as well as members of the Delegation of the Commission of the European Communities. The term also includes individuals with comparable diplomatic status and immunities who are accredited to the United Nations or to the Organization of American States, and other individuals who are also accorded comparable diplomatic status. Pursuant to 22 CFR 150.2, the question of whether any particular person enjoys diplomatic agent-level immunity and is therefore not subject to the jurisdiction of the United States, or whether they enjoy lesser status-based immunity, on any particular date entails both factual and legal analysis, and is determined by the Department of State, in accordance with relevant international and domestic law. Consistent with existing practice and USCIS guidance, USCIS will continue to seek confirmation from DOS on whether the applicant's parent or parents were foreign diplomatic officers, as defined by DHS regulations, at the time of the child's birth. *See* USCIS Policy Manual, Volume 7, Part O, Chapter 3.

- Employees of international organizations beyond those international organizations designated by executive order as enjoying immunity in the United States under the International Organizations Immunities Act;
- Contractors of foreign missions, international organizations, or governments in a status other than A or G nonimmigrant visa classifications; and
- Foreign government employees visiting the United States in a personal rather than an official capacity.

DHS notes that "foreign diplomatic officer" as defined in 8 CFR 101.3(a) prior to this IFR, is covered under the definition of foreign government employee. *See* new 101.3(a)(2)(i)(A). DHS removes reference to "the State Department Diplomatic List, also known as the Blue List," because the Diplomatic List is no longer published by DOS.[3]

As discussed above, the definition of "foreign government employee" is broader than the term "foreign diplomatic officer" as defined in 8 CFR 101.3(a) prior to this IFR. "Foreign government employee," in addition to including ambassadors like the definition of "foreign diplomatic officer," also refers more extensively to an individual's employment by a foreign government or international organization, whereas "foreign diplomatic officer" is defined more narrowly by specific titles and designations, particularly with reference to diplomatic status and immunities. Therefore, absent the changes made by this IFR, a child born in the United States to certain foreign government employees who lacks birthright citizenship would not have previously been eligible to register as a lawful permanent resident. Accordingly, DHS is amending its regulations to extend the opportunity to voluntarily register permanent residence to children born in the

---

[3] *See* https://www.state.gov/office-of-the-chief-of-protocol/diplomatic-list (last accessed Aug. 24, 2026). The Blue List was last published in the fall of 2020. *See* https://2017-2021.state.gov/resources-for-foreign-embassies/diplomatic-list/ (last accessed Aug. 24, 2026).

United States to a foreign government employee parent when neither parent is a U.S. citizen. *See* new 8 CFR 101.3(b).

**C. Subject to the Jurisdiction of the United States**

DHS is also clarifying that a child of a foreign government employee is not subject to the jurisdiction of the United States for purposes of birthright citizenship unless at least one parent of the child is a United States citizen. *See* new 8 CFR 101.3(a)(1). When neither parent is a U.S. citizen, the key inquiry is whether a parent was a foreign government employee at the time of the child's birth. Additionally, DHS removed the reference to "international law" from the provision because the basis for excluding additional children of foreign government employees from birthright citizenship is not solely international law, but rather an "extraterritorial fiction."[4] Furthermore, DHS has removed the term "child born subject to the jurisdiction of the United States" previously defined at 8 CFR 101.3(b) as DHS believes the definition provision was overinclusive in that it included all children born in the United States unless their parent was a foreign diplomatic officer.

**D. Registration as a Lawful Permanent Resident**

Under new 8 CFR 101.3(b), registration as a lawful permanent resident will remain voluntary and will not be required for individuals rendered eligible to register under this regulation. However, a person born in the United States to a foreign government employee who is not a United States citizen is subject to section 262 of the Act, 8 U.S.C. 1302, and must register as an alien when required to do so by the Act, unless he or she has the rights, privileges, exemptions, and immunities which may be claimed by a foreign diplomatic officer. Registration as a lawful permanent resident under this regulation is one method of complying with section 262 of the Act, 8 U.S.C. 1302, but there are other available methods, including by filing Form G-325R,

---

[4] *See Barbara*, 146 S.Ct. at 2449; *see also* 91 FR 51991.

Biographic Information (Registration). *See* 8 CFR 264.1. Children whose parents choose not to register their permanent residence under this regulation may be required to comply with the alien registration requirement by filing Form G-325R, or having their parents file it on their behalf.

**E. Conforming Regulatory Changes**

DHS is also amending paragraph (d) of section 101.3 to revise a reference "a nonimmigrant classification under paragraph (15)(A) or (15)(G) of section 101(a) of the Act" to simply refer to "a nonimmigrant classification," because A and G nonimmigrant visa classifications are primarily applicable to foreign diplomats. Children of other foreign government employees who are born in the United States and do not acquire citizenship at birth may reside in the United States and travel on different types of nonimmigrant visas.

Additionally, DHS is making conforming amendments to 8 CFR 101.4 and 264.2 to replace the term "foreign diplomatic officer" with "foreign government employee" and to change all references to birth "under diplomatic status" to refer instead to birth "to a foreign government employee."

**F. Form Changes**

Along with the amended regulations, DHS is revising forms. DHS is revising Form I-485 to broaden language referring to children "born under diplomatic status" and instead refer to children "born to foreign government employees" and add instructional language concerning which children of foreign government employees may file Form I-485 to register as lawful permanent residents. DHS is also revising Form G-325R, Biographic Information (Registration)[5] to account for children born in the United States who do not acquire U.S. citizenship at birth and who are subject to 262 of the Act, 8

[5]See G-325R, Biographic Information (Registration) https://www.uscis.gov/forms/all-forms/g-325r (last visited Aug. 27, 2026) and if required attend a biometrics services appointment according to the Alien Registration Form and Evidence of Registration Final Rule (91 FR 39248).

U.S.C. 1302, but do not register as lawful permanent residents under the amended regulation at 8 CFR 101.3.

**IV. Statutory and Regulatory Requirements**

**A. Administrative Procedure Act (APA)**

DHS has issued this IFR without prior notice and comment and delayed effective date because, the regulatory amendments involve a foreign affairs function under 5 U.S.C. 553(a)(1). In addition, DHS is invoking the "good cause" exception of the APA. See 5 U.S.C. 553(b)(B). For the same reasons, a delayed effective date is not required under 5 U.S.C. 553(d)(3).

**1. Foreign Affairs**

This rule is exempt from notice and comment and the delayed effective date because it pertains to the foreign affairs function of the United States. 5 U.S.C. 553(a). An action falls within the exception if it ''clearly and directly'' involves a foreign affairs function.[6] Cases that directly involve the conduct of foreign affairs include rules that regulate foreign diplomats in the United States.[7] In *City of N.Y. v. Permanent Mission of India to the U.N.*, the Second Circuit found that a State Department Federal Register Notice regarding exemptions from real property taxes imposed by state and local governments validly invoked the foreign affairs exemption because the regulation of diplomatic relations directly involves a foreign affairs function of the United States. [8]

This rule governs the registration of permanent resident status for children born to foreign government employees who previously would have been considered United States citizens at birth. Because these children are born in the United States to foreign government employees, the status of these children has international implications,

---

[6] *Capital Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25, 53 (D.D.C. 2020) (''to be covered by the foreign affairs function exception, a rule must clearly and directly involve activities or actions characteristic to the conduct of international relations'').
[7] *E.B. et al. v. Dep't of State*, Civil Action 19– 2856 at 11 (D.D.C. Feb. 4, 2022); *CAIR v. Trump*, 471 F. Supp. 3d 25, 54 (D.D.C. 2020).
[8] 618 F.3d 172, 202 (2d Cir. 2010).

including likely significant reciprocal consequences for the treatment of children of U.S. diplomatic, government, and international organization employees overseas. In the absence of a rule governing the status of these children, these children may have a difficult time traveling within and outside of the United States with their parents if they do not possess a passport or a visa and may otherwise be subject to removal from the United States. Because this rule regulates the treatment of children of foreign government employees which implicates various diplomatic and international agreements and arrangements between countries, it directly involves a foreign affairs function. In the absence of DHS moving expeditiously to address the status of children of foreign government employees born in the United States, other countries with whom the United States has reciprocal arrangements regarding diplomatic, government, and international organization personnel may change their own rules in a way that adversely affects the ability of U.S. personnel to engage with foreign partners and conduct the work of foreign and international relations. Additionally, because this rule pertains to the status of children born to foreign government employees in the United States, the reliance on the foreign affairs exception is also supported by the DOS Determination: Foreign Affairs Functions of the United States, 90 FR 12200 (Mar. 14, 2025).[9]

**2. Good Cause**

In addition to the foreign affairs exception, DHS may forgo notice and comment rulemaking when the agency "for good cause finds . . . that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." *See* 5 U.S.C. 553(b)(B). Likewise, section 553(d)'s requirement of 30-day delayed effective date may

---

[9] "I hereby determine that all efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554."

be waived by the agency for good cause found and published with the rule. *See* 5 U.S.C. 553(d)(3).

The "impracticable" prong of the good cause exception excuses notice and comment in emergency situations.[10] Although the good cause exception is "narrowly construed and only reluctantly countenanced," [11] it is an important safety valve to be used where delay caused by notice and comment would do real harm (even absent an emergency situation).[12] Whether undergoing notice and comment rulemaking is impracticable is based on the particular facts and context present with respect to a specific rulemaking.[13] In this case, DHS finds that engaging in notice and comment rulemaking would be impracticable because as discussed elsewhere in this rule, children born to foreign government employees who do not have a U.S. citizen parent are not U.S. citizens. Therefore, DHS is aiming to put in place a procedure for children born on or after the effective date of this rule to have the ability to voluntarily register as lawful permanent residents as soon as possible in order to ensure that they have a lawful status in the United States.

The good cause exception applies when affording prior notice and comment would be contrary to the public interest. *See* 5 U.S.C. 553(b). This prong is met when the ordinary procedures under the APA—generally presumed to serve the public interest—

---

[10] *See Nat. Res. Council, Inc. v. Evans*, 316 F.3d 904, 911 (9th Cir. 2003) ("Emergencies, though not the only situations constituting good cause, are the most common").
[11] *See State of New Jersey v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980); see also Am. Fed. Gov't Emps. v. Block,
655 F.2d 1153, 1156 (D.C. Cir. 1981) ("As the legislative history of the APA makes clear, moreover, the exceptions at issue here are not `escape clauses' that may be arbitrarily utilized at the agency's whim. Rather, use of these exceptions by administrative agencies should be limited to emergency situations . . .").
[12] *See U.S. v. Dean, 604 F.3d 1275, 1379 (11th Cir. 2010); United States Steel Corp. v. United States Environmental Protection Agency, 595 F.2d 207, 214 (5th Cir. 1979).See also, Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93-94 (D.C. Cir. 2012), *Jifry v. FAA*, 370 F.3d 1174, 1179 (D.C. Cir. 2004).
[13] *See Malek-Marzban* v. *Immigr. & Naturalization Serv.,* 653 F.2d 113, 116 (4th Cir. 1981) (Upholding the agency's finding that notice and comment procedures were impracticable, unnecessary, and contrary to the public interest when swift action was needed to regulate the presence of aliens in light of the urgency of the international crisis.").

would in fact harm the interest of the public.[14] The exception is appropriately invoked when the timing and the disclosure requirement of the usual procedures would defeat the purpose of the proposal and harm the public interest.[15] This prong of the good cause exception is closely related to the impracticable prong. As discussed in the context of the foreign affairs exception, undergoing notice and comment rulemaking and a delayed effective date would be contrary to public interest because leaving children of foreign government employees without a clear path to register lawful immigration status in the United States would affect those children and their parents and in turn would likely impact the treatment of similarly situated United States diplomats, government and international organization employees and their children abroad. For these reasons, DHS is invoking the good cause exceptions to forgo notice and comment rulemaking and a delayed effective date.

### B. Executive Order 12866 (Regulatory Planning and Review), Executive Order 13563 (Improving Regulation and Regulatory Review), and Executive Order 14192 (Unleashing Prosperity Through Deregulation)

Executive Orders (E.O.s) 12866 and 13563 direct agencies to assess the costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits. E.O. 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. E.O. 14192 directs agencies to significantly reduce the private expenditures required to comply with Federal regulations and provides that "any new incremental costs associated with new regulations shall, to the extent permitted by law,

---

[14] *See Mack Trucks, Inc.* v. *EPA,* 682 F.3d 87, 95 (D.C. Cir. 2012).

[15] *Nat. Res. Def. Council* v. *Nat'l Highway Traffic Safety Admin.,* 894 F.3d 95, 114 (2d Cir. 2018) ("Of course, since notice and comment are regarded as beneficial to the public interest, for the exception to apply, the use of notice and comment must actually harm the public interest").

be offset by the elimination of existing costs associated with at least 10 prior regulations."

The Office of Management and Budget (OMB) has designated this rule a "significant regulatory action" under section 3(f) of E.O. 12866, although not economically significant under section 3(f)(1). Accordingly, the rule has been reviewed by OMB. This rule is not an E.O. 14192 regulatory action because it is being issued with respect to an immigration-related function of the United States. The rule's primary direct purpose is to implement or interpret the immigration laws of the United States (as described in INA 101(a)(17), 8 U.S.C. 1101(a)(17)) or any other function performed by the U.S. Federal Government with respect to aliens.[16]

DHS is updating its regulations to provide a way for additional children who are born in the United States, but are not U.S. citizens, to register as lawful permanent residents. Specifically, this IFR impacts children born in the United States where neither parent is a U.S. citizen and at least one parent is a foreign government employee. This rule amends the existing regulations at 8 CFR 101.3, 101.4, and 264.2 to apply more broadly to children born to certain foreign government employees.

DHS is extending the existing process for registering permanent residence (Form I-485, Application to Register Permanent Residence or Adjust Status) to other children of foreign government employees who lack birthright citizenship. DHS is also making related updates to alien registration requirements to reflect this expanded category. The changes in this rule are discussed in depth above, in Section III - Discussion of Interim Final Rule.

---

[16] *See* OMB Memorandum M-25-20, *Guidance Implementing Section 3 of Executive Order 14192, titled "Unleashing Prosperity Through Deregulation"* (Mar. 26, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/02/M-25-20-Guidance-Implementing-Section-3-of-Executive-Order-14192-Titled-Unleashing-Prosperity-Through-Deregulation.pdf.

The impacted population of this rule is children born in the United States to certain foreign government employees who would not acquire U.S. citizenship at birth unless at least one parent is a U.S. citizen. This includes children of foreign diplomats, certain embassy or consulate employees, foreign government officials, and employees of international organizations with international-organization immunity. DHS is unable to quantify this new population of individuals who will be impacted by the rule because USCIS has not historically tracked this population as a distinct, structured category. The DOS Office of Foreign Missions reports that the United States hosts more than 124,000 foreign mission members and dependents.[17] However, DHS is unable to use this figure to estimate the population affected by this rule because available data does not identify how many foreign government employees have a U.S. citizen spouse, depart the United States prior to the birth of a child, or depart the United States after the birth of a child and do not return. Accordingly, DHS lacks sufficient information to more accurately estimate the number of U.S. born children who would be affected by this rule. Therefore, DHS discusses the affected population of this rule qualitatively.

The changes in this rule will subject newly affected individuals to immigration-related registration and documentation requirements that would not apply to them under the current regulations. Newly affected individuals may incur costs associated with alien registration requirements using Form G-325R, Biographic Information (Registration)[18] and for those who voluntarily choose to do so, registering as lawful permanent residents using Form I-485.

The newly impacted alien population may incur costs associated with completing and filing Form G-325R. These costs include the time required for a parent or legal

---

[17] See About Us – Office of Foreign Missions, Department of State, https://2021-2025.state.gov/about-us-office-of-foreign-missions/ (last visited Aug. 31, 2026).

[18] See G-325R, Biographic Information (Registration) https://www.uscis.gov/forms/all-forms/g-325r (last visited Aug. 27, 2026). Individuals may also be required to attend a biometrics services appointment according to the Alien Registration Form and Evidence of Registration Final Rule (91 FR 39248).

guardian to create an online account, gather the necessary information, complete and submit the form, and comply with any applicable biometric requirements. For children under 14 years of age, a parent or legal guardian must ensure that the child is registered and must create an individual USCIS online account and submit Form G-325R on the child's behalf. Individuals must re-register and provide fingerprints within 30 days after reaching the age of 14. USCIS' current estimated time burden for an applicant to complete Form G-325R is 2.5 hours. This time burden is not expected to change as a result of this rule and Form G-325R currently has no filing fee.

DHS calculates the costs to complete and submit Form G-325R as well as the cost to submit the required biometrics as follows. For the affected population, we use the mean hourly wage of all occupations ($33.54).[19] To estimate total compensation, we multiply the mean hourly wage by the compensation to wage ratio for civilian employees (1.46).[20] This results in an estimated mean hourly total compensation of $48.97.[21] The opportunity cost of time to complete Form G-325R is $122.43 at the total compensation rate.[22]

To estimate the costs of submitting biometrics, we consider the time burden to submit biometrics, the time burden to travel to and from an Application Support Center (ASC), and the vehicle costs of traveling to and from an ASC. The estimated time burden

---

[19] See Bureau of Labor Statistics, U.S. Department of Labor (DOL), "Occupational Employment and Wages News Release—Occupational Employment and Wages—May 2025" Table 1. National employment and wage data from the Occupation employment and Wage Statistics survey by occupation, May 2025. All Occupations—Mean Hourly Wage, https://www.bls.gov/news.release/pdf/ocwage.pdf (last visited Aug. 28, 2026).

[20] The benefits-to-wage multiplier is calculated as follows: ($49.32 Total Employee Compensation per hour) ÷ ($33.72 Wages and Salaries per hour) = 1.46 (rounded). *See* U.S. Dep't of Labor, Bureau of Labor Statistics, Economic News Release, Employer Cost for Employee Compensation - March 2026, Table 1 (June 12, 2026), https://www.bls.gov/news.release/pdf/ecec.pdf. Employer costs per hour worked for employee compensation and costs as a percent of total compensation: Civilian workers, by major occupational and industry group.

[21] Calculation: $33.54 x 1.46 =$48.97 loaded wage rate

[22] Calculation: 2.5 hours x $48.97 loaded wage rate = $122.43 (rounded) opportunity cost of time to file Form G-325R

to submit biometrics for Form G-325R is 1.17 hours.[23] The estimated opportunity cost of time to submit biometrics is $57.29.[24] The estimated average travel distance to and from an ASC is 50 miles; the expected total travel time is 2.5 hours.[25] The estimated opportunity cost of time to travel to and from an ASC is $122.43.[26] The vehicle costs of traveling to and from an ASC are based on the General Service Administration's per mile reimbursement rate for traveling in a privately owned vehicle—currently $0.76 per mile.[27] The estimated vehicle costs of traveling to and from an ASC are $38.00.[28] The estimated cost to submit biometrics at an ASC is $217.72.[29] The estimated total per person compliance cost to register and submit biometrics for Form G-325R is $340.15.[30]

The rule will also make newly affected individuals eligible to voluntarily file Form I-485 to register as lawful permanent residents. If such an individual is under eighteen years old at the time of filing, his or her parent or legal guardian shall prepare and sign Form I-485 on the applicant's behalf. Individuals who choose this option will incur the applicable filing costs to gather the necessary information, complete and submit the form, and comply with any applicable biometric requirements. USCIS' current estimated time burdens for an applicant to complete Form I-485 are 6.86 hours (paper and PDFi) and 6.09 hours (e-file). These time burdens are not expected to change as a result of this rule.[31]

---

[23] The estimated time burden to file Form G-325R can be found in Supporting Statement A submitted with the revision package to OMB on August 22, 2025 at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=202508-1615-002.

[24] Calculation: 1.17 hours to submit biometrics * $48.97 loaded wage rate = $57.29 (rounded)

[25] These are the same parameters used in other USCIS rules. See, e.g., "Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives," 78 FR 536, 578 (Jan. 3, 2013).

[26] Calculation: 2.5 hours to travel to and from an ASC * $48.97 loaded wage rate = $122.43 (rounded)

[27] For use of a privately owned automobile, see General Services Administration, "Privately Owned Vehicle (POV) Mileage Reimbursement Rate," https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates/pov-mileage-reimbursement (last updated Jul. 30, 2026).

[28] Calculation: $0.76 cost per vehicle mile * 50 miles to and from an ASC = $38.00 vehicle costs

[29] Calculation: $38 vehicle costs to travel to and from an ASC + $122.43 opportunity cost of time to travel to and from an ASC + $57.29 opportunity cost of time to submit biometrics = $217.72

[30] $122.43 opportunity cost of time to complete and submit form + $217.72 costs to submit biometrics at an ASC = $340.15

DHS calculates the total costs to complete and submit Form I-485 as well as submit the required biometrics as follows. For the affected population, we use the mean hourly wage of all occupations ($33.54).[32] To estimate total compensation, we multiply the mean hourly wage by the compensation to wage ratio for civilian employees (1.46).[33] This results in an estimated mean hourly total compensation of $48.97.[34] The opportunity cost of time to complete Form I-485 is $335.93 (paper and PDFi) and $298.23 (e-file) at the total compensation rate.[35]

To estimate the costs of submitting biometrics, we consider the time burden to submit biometrics, the time burden to travel to and from an ASC, and the vehicle costs of traveling to and from an ASC. The estimated time burden to submit biometrics for Form I-485 is 1.17 hours.[36] The estimated opportunity cost of time to submit biometrics is $57.29.[37] The estimated average travel distance to and from an ASC is 50 miles; the expected total travel time is 2.5 hours.[38] The estimated opportunity cost of time to travel to and from an ASC is $122.43.[39] The vehicle costs of traveling to and from an ASC are based on the General Service Administration's per mile reimbursement rate for traveling

---

[32] See Bureau of Labor Statistics, U.S. Department of Labor (DOL), "Occupational Employment and Wages News Release—Occupational Employment and Wages—May 2025" Table 1. National employment and wage data from the Occupation employment and Wage Statistics survey by occupation, May 2025. All Occupations—Mean Hourly Wage, https://www.bls.gov/news.release/pdf/ocwage.pdf (last visited Aug. 28, 2026).

[33] The benefits-to-wage multiplier is calculated as follows: ($49.32 Total Employee Compensation per hour) ÷ ($33.72 Wages and Salaries per hour) = 1.46 (rounded). *See* U.S. Dep't of Labor, Bureau of Labor Statistics, Economic News Release, Employer Cost for Employee Compensation - March 2026, Table 1 (June 12, 2026), https://www.bls.gov/news.release/pdf/ecec.pdf. Employer costs per hour worked for employee compensation and costs as a percent of total compensation: Civilian workers, by major occupational and industry group.

[34] Calculation: $33.54 x 1.46 =$48.97 loaded wage rate

[35] Calculation: 6.09 hours x $48.97 loaded wage rate = $298.23 (rounded) opportunity cost of time to file Form I-485 (e-file) and 6.86 hours x $48.97 loaded wage rate = $335.93 (rounded) opportunity cost of time to file Form I-485 (paper and PDFi)

[36] The estimated time burden to submit biometrics for Form I-485 can be found in the form instructions at https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf (last visited Aug. 28, 2026).

[37] Calculation: 1.17 hours to submit biometrics * $48.97 loaded wage rate = $57.29 (rounded)

[38] These are the same parameters used in other USCIS rules. See, e.g., "Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives," 78 FR 536, 578 (Jan. 3, 2013).

[39] Calculation: 2.5 hours to travel to and from an ASC * $48.97 loaded wage rate = $122.43 (rounded)

in a privately owned vehicle—currently $0.76 per mile.[40] The estimated vehicle costs of traveling to and from an ASC are $38.00.[41] The estimated cost to submit biometrics at an ASC is $217.72.[42] Form I-485 currently has filing fees of $1,440 paper filing (paper and PDFi) and $1,390 (e-file).[43] DHS estimates that the total per person cost to complete and submit a form including filing fees and submit biometrics for Form I-485 are $1,993.65 (paper and PDFi) and $1,905.95 (e-file).[44] For purposes of this analysis, DHS treats Form G-325R and Form I-485 as alternative pathways for initial registration, although some individuals may later choose to file Form I-485 after registering through Form G-325R.

The benefits of this rule include establishing a consistent regulatory framework for registering lawful permanent resident status of U.S.-born children of foreign government employees. It will provide affected individuals and federal agencies with clearer guidance on citizenship recognition, lawful permanent resident registration, and alien registration requirements. By extending the existing Form I-485 process to the newly impacted alien population, the rule will also provide eligible individuals with an established pathway to voluntarily register as lawful permanent residents.

C. Regulatory Flexibility Act (RFA)

The Regulatory Flexibility Act (RFA), 5 U.S.C. 601-612, as amended by the Small Business Regulatory Enforcement Fairness Act of 1996 (SBREFA), Pub. L. 104-121 (Mar. 29, 1996), requires Federal agencies to consider the potential impact of

---

[40] For use of a privately owned automobile, see General Services Administration, "Privately Owned Vehicle (POV) Mileage Reimbursement Rate," https://www.gsa.gov/travel/plan-a-trip/transportation-airfare-rates-pov-rates/pov-mileage-reimbursement (last updated Jul. 30, 2026).

[41] Calculation: $0.76 cost per vehicle mile * 50 miles to and from an ASC = $38.00 vehicle costs

[42] Calculation: $38 vehicle costs to travel to and from an ASC + $122.42 opportunity cost of time to travel to and from an ASC + $57.29 opportunity cost of time to submit biometrics = $217.72

[43] USCIS, G–1055, Fee Schedule, (Edition 5/29/2026), https://www.uscis.gov/sites/default/files/document/forms/g-1055.pdf (last visited Aug. 28, 2026), see p. 15-16, Form I-485, Application to Register Permanent Residence or Adjust Status

[44] Calculation: *Form I-485 (paper and PDFi)* --$335.93 opportunity cost of time to complete and submit form + $217.72 costs to submit biometrics at an ASC + $1,440 filing fee = $1,993.65
*Form I-485 (e-file)* --$298.23 opportunity cost of time to complete and submit form + $217.72 costs to submit biometrics at an ASC + $1,390 filing fee = $1,905.95

regulations on small entities during the development of their rules to determine whether there will be a significant economic impact on a substantial number of small entities. The term "small entities" comprises small businesses, not-for-profit organizations that are not dominant in their fields, and governmental jurisdictions with populations of less than 50,000. An "individual" is not considered a small entity and therefore a rule's impact on individuals is not considered for RFA purposes.[45] *See* 5 U.S.C. 601, 632. In addition, the courts have held that the RFA requires an agency to perform a regulatory flexibility analysis of small entity impacts only when a rule directly regulates small entities.[46] Consequently, a rule's indirect impacts on a small entity is not considered for RFA purposes.

This rule does not directly regulate small entities and is not expected to have a direct effect on them. The rule regulates individuals, and individuals are not defined as "small entities" by the RFA. Based on the information presented above in the RIA and throughout the preamble, DHS certifies that this rule will not have a significant economic impact on a substantial number of small entities.

D. Congressional Review Act (CRA)

The Congressional Review Act (CRA) was included as part of the SBREFA Subtitle E, Pub. L. 104-121, tit. II, 110 Stat. 847 (Mar. 29, 1996). This IFR is not a major rule as defined under the CRA in 5 U.S.C. 804(2). This rule will not result in an annual effect on the economy of $100 million or more. DHS has complied with the CRA's reporting requirements and has sent this rule to Congress and to the Comptroller General as required by 5 U.S.C. 801(a)(1).

---

[45] *See* Pub. L. 104–121, tit. II, 110 Stat. 847 (5 U.S.C. 601 note). A small business is defined as any independently owned and operated business not dominant in its field that qualifies as a small business per the Small Business Act, 15 U.S.C. 632.

[46] *See* Office of Advocacy, Small Business Administration, "A Guide for Government Agencies: How to Comply with the Regulatory Flexibility Act" 22 (Aug. 2017) https://advocacy.sba.gov/wp-content/uploads/2019/06/How-to-Comply-with-the-RFA.pdf.

**E. Unfunded Mandates Reform Act of 1995 (UMRA)**

The Unfunded Mandates Reform Act of 1995 (UMRA) is intended, among other things, to curb the practice of imposing unfunded Federal mandates on State, local, and Tribal governments. Title II of UMRA requires each Federal agency to prepare a written statement assessing the effects of any Federal mandate in a proposed rule that includes any Federal mandate that may result in a $100 million or more expenditure (adjusted annually for inflation) in any one year by State, local, and Tribal governments, in the aggregate, or by the private sector. *See* 2 U.S.C. 1532(a).

The inflation adjusted value of $100 million in 1995 is approximately $211 million in 2025 based on the Consumer Price Index for All Urban Consumers (CPI-U).[47] This rule does not contain such a mandate, because it does not impose any enforceable duty upon any other level of government or private sector entity. Amending regulations in this rule does not result in any expenditures by the State, local, or Tribal governments, or by the private sector. The requirements of title II of UMRA, therefore, do not apply, and DHS has not prepared a statement under UMRA.

**F. Executive Order 13132 (Federalism)**

This rule does not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with section 6 of E.O. 13132, it is determined that this rule does not have sufficient federalism implications to warrant the preparation of a federalism summary impact statement.

---

[47] *See* DOL, BLS, Historical Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average, all items, by month, https://data.bls.gov/timeseries/CUUR0000SA0?years_option=all_years (last visited Aug. 24, 2026). Calculation of inflation: (1) Calculate the average monthly CPI-U for the reference year (1995) and the current year (2025); (2) Subtract reference year CPI-U from current year CPI-U; (3) Divide the difference of the reference year CPI-U and current year CPI-U by the reference year CPI-U; (4) Multiply by 100 = [(Average monthly CPI-U for 2025 − Average monthly CPI-U for 1995) ÷ (Average monthly CPI-U for 1995)] × 100 = [(321.943 − 152.383) / 152.383] = (169.560 / 152.383) = 1.113 × 100 = 111.272 percent = 111 percent (rounded). Calculation of inflation-adjusted value: $100 million in 1995 dollars × 2.11 = $211 million in 2025 dollars.

### G. Executive Order 12988 (Civil Justice Reform)

This interim final rule meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

### H. Family Assessment

Section 654 of the Treasury and General Government Appropriations Act, 1999 (Pub. L. 105-277) requires Federal agencies to issue a Family Policymaking Assessment for any rule that may affect family well-being. Agencies must assess whether the regulatory action: (1) impacts the stability or safety of the family, particularly in terms of marital commitment; (2) impacts the authority of parents in the education, nurture, and supervision of their children; (3) helps the family perform its functions; (4) affects disposable income or poverty of families and children; (5) if the regulatory action financially impacts families, are justified; (6) may be carried out by State or local government or by the family; and (7) establishes a policy concerning the relationship between the behavior and personal responsibility of youth and the norms of society. If the determination is affirmative, then the Agency must prepare an impact assessment to address criteria specified in the law. DHS has determined that this final rule will not affect family well-being and has not prepared the impact assessment statement.

### I. Executive Order 13175 (Consultation and Coordination With Indian Tribal Governments)

This interim final rule would not have Tribal implications under Executive Order 13175, Consultation and Coordination with Indian Tribal Governments, because it would not have a substantial direct effect on one or more Indian Tribes, on the relationship between the Federal Government and Indian Tribes, or on the distribution of power and responsibilities between the Federal Government and Indian Tribes.

**J. National Environmental Policy Act (NEPA)**

DHS and its components analyze final actions to determine whether the National Environmental Policy Act (NEPA), 42 U.S.C. 4321 et seq., applies to them and, if so, what degree of analysis is required. DHS Directive 023-01 Rev. 01 and Instruction Manual 023-01-001-01 Rev. 01 (Instruction Manual) establish the policies and procedures that DHS and its components use to comply with NEPA, 42 U.S.C. 4321 et seq.

NEPA allows Federal agencies to establish categories of actions as categorical exclusions that experience has shown do not, individually or cumulatively, have a significant effect on the human environment and, therefore, do not require an environmental assessment (EA) or environmental impact statement (EIS). See 42 U.S.C. 4336(a)(2), 4336e(1). The Instruction Manual, Appendix A lists the DHS Categorical Exclusions.

Under DHS NEPA implementing procedures, for an action to be categorically excluded, it must satisfy each of the following three conditions: (1) The entire action clearly fits within one or more of the categorical exclusions; (2) the action is not a piece of a larger action; and (3) no extraordinary circumstances exist that create the potential for a significant environmental effect. See Instruction Manual 023-01 at V.B(2)(a)-(c). With this interim final rule, DHS is amending the regulations that permit children born in the United States to "foreign diplomatic officers" to register as lawful permanent residents by extending the same treatment to children born in the United States to parents who are "foreign government employees."

NEPA allows Federal agencies to establish categorical exclusions (CATEXs) for activities that experience has shown do not, individually or cumulatively, have a significant effect on the human environment. DHS's NEPA implementing procedures, including Appendix A of the Instruction Manual, list DHS's categorical exclusions. *See*

Instruction Manual 023-01, Appendix A. DHS has reviewed the rule and finds that the rule is categorically excluded under CATEX A3. CATEX A3 pertains to the promulgation of rules that are, among others, strictly administrative or procedural in nature and those that interpret or amend an existing regulation without changing its environmental effect. This final rule amends existing regulations to expand the population of children born in the United States that may register as lawful permanent residents. These children are not considered United States citizens. This change is strictly administrative in nature and does not change the environmental effect of the existing regulation.

The rule is not part of a larger federal action and does not present extraordinary circumstances that create the potential for a significant environmental effect.

Accordingly, DHS finds that the rule clearly fits within categorical exclusion A3 established in DHS's NEPA implementing procedures, and no further NEPA analysis is required.

**K. Paperwork Reduction Act (PRA)**

Under the Paperwork Reduction Act of 1995, 44 U.S.C. 3501-3512, DHS must submit to Office of Management and Budget (OMB), for review and approval, any reporting requirements inherent in a rule, unless they are exempt. This rule requires the use of Form I-485, Application to Register Permanent Residence or Adjust Status, and Form G-325R, Biographic Information (Registration). Consistent with 5 CFR 1320.13, USCIS submitted a request for emergency authorization of the required changes for a period of 6 months, for the revised information collections. **Table 1** below lists the information collections that are part of this rulemaking.

| **Table 1 – Information Collections** | | | |
|---|---|---|---|
| **OMB Control No.** | **Form Number** | **Form Name** | **Type of PRA Action** |
| 1615-0023 | I-485 | Application to Register Permanent Residence or Adjust Status | Revision of a Currently Approved Collection |

| | | | |
|---|---|---|---|
| 1615-0166 | G-325R | Biographic Information (Registration) | Revision of a Currently Approved Collection |

**USCIS Form I-485 (OMB Control Number 1615-0023)**

DHS revised Form I-485, Application to Register Permanent Residence or Adjust Status, to broaden language referring to children "born under diplomatic status" and instead refer to children "born to foreign government employees" and add instructional language concerning which children of foreign government employees may file Form I-485 to register as lawful permanent residents. DHS has reported an increase in the estimated number of annual respondents to capture the newly affected alien population who may file this information collection.

**USCIS Form G-325R (OMB Control Number 1615-0166)**

DHS revised Form G-325R, Biographic Information (Registration), to account for children born in the United States who do not acquire U.S. citizenship at birth and who are subject to 262 of the Act, 8 U.S.C. 1302, but do not register as lawful permanent residents under the amended regulations at 8 CFR 101.3 and 8 CFR 264.2. DHS has reported an increase in the estimated number of annual respondents to capture the newly affected alien population who may file this information collection.

**List of Subjects**

8 CFR Part 101

Immigration.

8 CFR Part 264

Aliens, Reporting and recordkeeping requirements.

Accordingly, DHS amends chapter I of title 8 of the Code of Federal Regulations as follows:

**PART 101 — PRESUMPTION OF LAWFUL ADMISSION**

1. The authority citation for part 101 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 8 CFR part 2.

2. Revise § 101.3 to read as follows:

**§ 101.3 Creation of record of lawful permanent resident status for persons born to foreign government employees in the United States.**

(a) *Person born to a foreign government employee —(1) Status of person.* A person born in the United States to a foreign government employee is not subject to the jurisdiction of the United States for purposes of birthright citizenship, unless at least one parent of the person is a United States citizen. That person is not a United States citizen under the Fourteenth Amendment to the Constitution. Such a person may be considered a lawful permanent resident at birth.

(2) *Definition of foreign government employee.* (i) "Foreign government employee" means:

(A) A foreign diplomatic officer accredited to the United States. This includes ambassadors, ministers, chargés d'affaires, counselors, secretaries and attachés of embassies and legations as well as members of the Delegation of the Commission of the European Communities. The term also includes individuals with comparable diplomatic status and immunities who are accredited to the United Nations or to the Organization of American States, and other individuals who are also accorded comparable diplomatic status;

(B) A person employed by a foreign embassy or consulate who is a national of that foreign country not covered in paragraph (a)(2)(i)(A) of this section;

(C) A person employed by a foreign government in an official capacity not covered in paragraphs (a)(2)(i)(A) and (B) of this section; and

(D) A person employed by an international organization that possesses international-organization immunity not covered in paragraph (a)(2)(i)(A) of this section.

(ii) Except if the foreign government employee falls within the definition under paragraph (a)(2)(i)(A) of this section, the definition of "foreign government employee" does not include:

(A) Personal employees or attendants of foreign government or international organization officials who are not employed by the foreign government, including personal assistants, chauffeurs, or housecleaners;

(B) Employees of state-owned enterprises in a status other than A or G nonimmigrant classifications;

(C) Third-country nationals working for a foreign government, including at a foreign embassy or consulate;

(D) Employees of international organizations beyond those international organizations designated by executive order as enjoying immunity in the United States under the International Organizations Immunities Act;

(E) Contractors of foreign missions, international organizations, or governments in a status other than A or G nonimmigrant classifications; and

(F) Foreign government employees visiting the United States in a personal rather than an official capacity.

(b) *Voluntary registration as lawful permanent resident of person born to foreign government employee.* Registration as a lawful permanent resident under this regulation is voluntary. However, a person born in the United States who is not a United States citizen is subject to section 262 of the Act and must register as an alien when required to do so by the Act, unless he or she has the rights, privileges, exemptions, and immunities which may be claimed by a foreign diplomatic officer. Persons who are required to register as an alien may do so either under this regulation and § 264.2 of this chapter (if otherwise eligible) or under § 264.1 of this chapter.

(c) *Retention of lawful permanent residence.* To be eligible for lawful permanent resident status under paragraph (a) of this section, an alien must establish that he/she has not abandoned his/her residence in the United States. One of the tests for retention of lawful permanent resident status is continuous residence, not continuous physical presence, in the United States. Such a person will not be considered to have abandoned his/her residence in the United States solely by having been admitted to the United States in a nonimmigrant classification after a temporary stay in a foreign country or countries on one or several occasions.

3. Revise § 101.4 to read as follows:

**§ 101.4 Registration procedure.**

The procedure for an application for creation of a record of lawful permanent residence and a Permanent Resident Card, Form I-551, for a person eligible for presumption of lawful admission for permanent residence under § 101.1 or § 101.2 or for lawful permanent residence as a person born in the United States to a foreign government employee under § 101.3 is described in § 264.2 of this chapter.

**PART 264 — REGISTRATION AND FINGERPRINTING OF ALIENS IN THE UNITED STATES**

3. The authority citation for part 264 continues to read as follows:

**Authority:** 8 U.S.C. 1103, 1201, 1302-1305; 8 CFR part 2.

4. Amend § 264.2 by revising paragraphs (a), (c)(2), (g), and (h)(2) to read as follows:

**§ 264.2 Application for creation of record of permanent residence.**

(a) *Jurisdiction*. An applicant who believes that he/she is eligible for presumption of lawful admission for permanent residence under § 101.1 or § 101.2 of this chapter or for lawful permanent residence as a person born in the United States to a foreign

government employee under § 101.3 of this chapter shall submit his/her application for creation of a record of lawful permanent residence on Form I-485 in accordance with the instructions on the form and paragraph (c) of this section. The applicant must be physically present in the United States at the time of submission of his/her application.

* * * * *

(c) * * *

(2) *Lawful permanent residence as a person born in the United States to a foreign government employee*. An applicant who believes that he/she is eligible for lawful permanent residence as a person born in the United States to a foreign government employee under § 101.3 of this chapter shall submit the following:

* * * * *

(g) *Decision*. The decision regarding creation of a record of lawful permanent residence for an alien eligible for presumption of lawful admission for permanent residence or for a person born in the United States to a foreign government employee will be made by the district director having jurisdiction over the applicant's place of residence.

(h) * * *

(2) *Lawful permanent residence as a person born in the United States to a foreign government employee*. If the application is granted, the applicant's permanent residence will be recorded as of his/her date of birth.

* * * * *

**Markwayne Mullin,**
Secretary,
U.S. Department of Homeland Security.

[FR Doc. 2026-18345 Filed: 9/4/2026 4:15 pm; Publication Date: 9/9/2026]