**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC. *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP *et al.*,

*Defendants*.

Case No.: 8:25-cv-00201-DLB
Honorable Deborah L. Boardman

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION OR STAY PRELIMINARY INJUNCTION PENDING APPEAL**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. The Supreme Court Strikes Down the 2025 Executive Order. ..... 3

II. This Court Enjoins Enforcement of the 2026 Executive Order Against the Certified Class. ..... 4

III. Departments and Agencies Issue Guidance Implementing the 2026 Executive Order. ..... 6

LEGAL STANDARD ..... 10

ARGUMENT ..... 11

I. The Guidance Confirms that Plaintiffs Have Standing. ..... 11

A. The Guidance Indicates that the 2026 Executive Order Is Not Limited to Children Born After It Was Issued. ..... 11

B. The Guidance Confirms Plaintiffs' Credible Fear that the "Alien Enemy" Category Will Be Applied to Them. ..... 16

II. The Court Has Already Rejected Defendants' Remaining Arguments ..... 17

III. The Court Should Not Stay Its Preliminary Injunction. ..... 22

CONCLUSION ..... 24

## INTRODUCTION

On September 2, 2026, this Court entered a preliminary injunction barring Defendants from enforcing the President's 2026 Executive Order purporting to limit birthright citizenship against members of the certified class. The Court concluded that the Executive Order "is almost certainly unconstitutional as applied to the certified class for the simple reason that the Supreme Court in *Barbara* already decided that the children in the class are citizens at birth." *CASA, Inc. v. Trump* (*CASA IV*), No. 25-cv-201-DLB, 2026 WL 2592706, at *1 (D. Md. Sept. 2, 2026). Less than a week later, Defendants moved to dissolve the preliminary injunction. ECF 183. Their motion should be denied.

After the Court issued its preliminary injunction, several departments and agencies issued guidance documents (and one regulation) implementing the 2026 Executive Order. Defendants claim that this guidance confirms that the Executive Order applies only to children born after the guidance was published. And according to Defendants, that deprives the class representatives of standing to challenge the 2026 Executive Order, given that their children were born before publication of the guidance. Defendants are wrong.

This Court held that, "by its plain language, the 2026 Executive Order applies to all children who meet its criteria—regardless of when they were born, which includes children in the certified class born after February 19, 2025," such as "the children of Monica and Andrea." 2026 WL 2592706, at *9. The guidance documents reaffirm that conclusion. Although Defendants emphasize the guidance documents' vague statement that they are "prospective," not one says that the Executive Order is applicable only to children born in the future or after any particular date. To the contrary, some explicitly apply to children regardless of when they were born. For instance, guidance from the Centers for Medicare and Medicaid Services and the Department of Housing and Urban

Development indicate that birth certificates are no longer sufficient proof of citizenship for *anyone* applying for benefits, regardless of when they were born. And the State Department guidance requires people born in the United States applying for a passport to prove either that their parents are citizens or that their parents are not covered by the Executive Order, a requirement that is not limited to children born after the guidance issued. Far from undermining Plaintiffs' standing, this guidance confirms why the Court's preliminary injunction is necessary to protect class members. If the preliminary injunction is dissolved, the Executive Order and the guidance will upend citizenship for members of the certified class.

In any event, Plaintiffs are concurrently moving to add a pregnant mother who faces a credible threat of enforcement under the 2026 Executive Order as a class representative. If the Court were to grant that motion, it would provide an independent basis for the class's standing to challenge the Order, regardless of whether it is limited to babies born in the future.

Defendants' other arguments for lifting the injunction, related to severability and class certification, merely regurgitate points that the Court rejected when granting the preliminary injunction. Defendants' mere disagreement with the Court's prior decision provides no basis for revisiting it. Nor should the Court stay its injunction pending appeal.

## BACKGROUND

"Since his second term in office began on January 20, 2025, the President has tried, through Executive Order, to upend our country's longstanding tradition of birthright citizenship and eliminate, for large swaths of Americans, the right to citizenship by birth, a right enshrined in the Citizenship Clause of the Fourteenth Amendment." *CASA IV*, 2026 WL 2592706, at *1. Plaintiffs in this case seek to block enforcement of the President's Executive Orders and protect the Fourteenth Amendment right to citizenship by birth within the United States.

The Court has recounted the history of this case in several prior opinions. *CASA, Inc. v. Trump* (*CASA I*), 763 F. Supp. 3d 723, 727 (D. Md. 2025); *CASA, Inc. v. Trump* (*CASA II*), 793 F. Supp. 3d 703, 710 (D. Md. 2025); *CASA, Inc. v. Trump* (*CASA III*), 793 F. Supp. 3d 687 (D. Md. 2025); *CASA IV*, 2026 WL 2592706, at *1. Rather than repeating that background here, Plaintiffs focus on the procedural history and recent developments that are relevant to resolving Defendants' pending motion to dissolve the Court's preliminary injunction or to stay it pending appeal.

## I. The Supreme Court Strikes Down the 2025 Executive Order.

The President issued his initial Executive Order purporting to limit birthright citizenship on his very first day in office. That Executive Order, titled "Protecting the Meaning and Value of American Citizenship" ("2025 Executive Order"), purported to deny citizenship to children born after February 19, 2025, to noncitizen parents who were temporarily or unlawfully present in the United States. Exec. Order No. 14160, 90 Fed. Reg. 8449 (Jan. 20, 2025). This Court certified a nationwide class of all children covered by the Executive Order and issued a class-wide preliminary injunction barring enforcement. *CASA II*, 793 F. Supp. 3d at 730 (class certification); *CASA III*, 793 F. Supp. 3d at 702 (classwide injunction). In *Barbara v. Trump*, 146 S. Ct. 2438, 2450 (2026), the Supreme Court reviewed an identical class-wide injunction issued by another district court and "held that the Citizenship Clause guarantees citizenship to children born of parents unlawfully or temporarily present in the United States" *CASA IV*, 2026 WL 2592706, at *2. "*Barbara* effectively invalidated the 2025 Executive Order as unconstitutional and dispelled any doubts about the meaning and scope of the Citizenship Clause of the Fourteenth Amendment. Or so it seemed." *Id.* at *1.

## II. This Court Enjoins Enforcement of the 2026 Executive Order Against the Certified Class.

"More than eighteen months after this case began, and just a month after it appeared to be over," the President issued another Executive Order "once again target[ing] the Citizenship Clause of the Fourteenth Amendment." *Id.* at *2. The new Executive Order, titled "Continuing to Protect the Meaning and Value of American Citizenship" ("2026 Executive Order"), purports to "identif[y], non-exhaustively, and prescribe[] action concerning certain categories of children of aliens who," according to the President, "do not fall within the rule of birthright citizenship as announced by the Supreme Court" in *Barbara*. Exec. Order No. 14418, 91 Fed. Reg. 51991, § 1 (Aug. 6, 2026). As relevant to the claims of the certified class in this case, the Order claims that individuals born in the United States are not citizens if their parents are noncitizens and at least one parent (1) is an "alien enemy, defined to include" members of designated terrorist organizations; (2) is a "foreign government employee," including not only ambassadors but also other embassy staff, as well as employees of foreign governments or international organizations; or (3) "engaged in a commercial transaction to purchase or access birthright citizenship for the person, or engaged in fraudulent activity to obtain citizenship." 2026 Executive Order § 2. Unlike the 2025 Executive Order, which stated that it applied only to children born 30 days or more after issuance of the Order, the 2026 Executive Order does not specify that it is applicable only to children born after any particular date. The 2026 Executive Order directs department and agency heads to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees, or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* § 3(a). It also directs departments and agencies to issue implementing guidance within 30 days. *Id.* § 3(b).

Because the 2026 Executive Order seeks to deny citizenship to members of the certified class, whom the Supreme Court just held in *Barbara* are citizens at birth, Plaintiffs filed a supplemental complaint challenging the 2026 Executive Order and a motion for a preliminary injunction barring enforcement of the Order against members of the class. The Court granted the preliminary injunction. *CASA IV*, 2026 WL 2592706, at *17.

The Court began by addressing ripeness and standing. The Court rejected Defendants' argument that Plaintiffs needed to wait until after agencies issued implementing guidance to challenge the 2026 Executive Order. "No matter what the guidance says, the 2026 Executive Order commands agencies to deny citizenship documents to several broad categories of children; that command is not contingent upon any future event that may not occur as anticipated." *Id.* at *8. The Court also found that Plaintiffs had standing. Under binding Fourth Circuit precedent, Plaintiffs needed to demonstrate only that one class representative had standing in order to obtain a classwide injunction. *Id.* (citing *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023)). And the Court concluded that class representatives Andrea and Monica had pre-enforcement standing to challenge the Executive Order on behalf of the class based on the credible threat that their children could be deprived of citizenship under the "alien enemy" category of the Order. *Id.* at *9-11. In the course of that analysis, the Court rejected Defendants' contention that the 2026 Executive Order does not apply to children born before the Order was issued. The Order "does not state that it applies only to babies born after it was issued or after a certain date in the future," and the Court thus found "that, by its plain language, the 2026 Executive Order applies to all children who meet its criteria—regardless of when they were born." *Id.* at *9.

As to the merits, the Court explained that "[e]ven a cursory review of the 2026 Executive Order's carveouts to birthright citizenship reveals they bear little to no resemblance to the 'narrow

exceptions' to the rule of citizenship by birth recognized by the Supreme Court in *Barbara*, 146 S. Ct. at 2450, and *United States v. Wong Kim Ark*, 169 U.S. 649, 693 (1898)." *Id.* at *1. But because Plaintiffs' motion sought relief only for members of the certified class, the Court limited itself to the "narrower question" of "whether [Plaintiffs] are entitled to preliminary injunctive relief because the 2026 Executive Order is likely unconstitutional as applied to the certified class." *Id.* The answer to that question is straightforward: "The 2026 Executive Order is almost certainly unconstitutional as applied to the certified class for the simple reason that the Supreme Court in *Barbara* already decided that the children in the class are citizens at birth." *Id.* The Court found that the other preliminary injunction factors also favored Plaintiffs. *Id.* at *14-16.

The Court accordingly enjoined Defendants from enforcing the 2026 Executive Order against any member of the certified class. *Id.* at *17. But the Court did "not enjoin Section 3(b), which requires the issuance of public guidance on the implementation of the 2026 Executive Order." *Id.*

## III. Departments and Agencies Issue Guidance Implementing the 2026 Executive Order.

After this Court entered its preliminary injunction, several federal departments and agencies issued the guidance documents contemplated in Section 3(b) of the Executive Order. Because Defendants' motion to dissolve the preliminary injunction relies heavily on these documents while largely glossing over what they actually say, Plaintiffs describe the documents in detail.

Six departments and agencies—the Department of State, Social Security Administration (SSA), Department of Agriculture, Centers for Medicare and Medicaid Services (CMS), Administration for Children and Families (ACF), and Department of Housing and Urban Development (HUD)—issued informal guidance on their plans for implementing the Executive Order. Meanwhile, United States Citizenship and Immigration Services (USCIS) issued an interim

final rule (IFR) concerning one specific aspect of the Executive Order: its category covering children of foreign government employees and the immigration status of those children going forward.

Six of the seven guidance documents—with the exception of the IFR directed at foreign government employees—contain a boilerplate statement that, "[b]ecause the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *E.g.*, ECF 183-3 at 1 (State Department guidance). As used that sentence, the word "prospective" indicates only that the departments and agencies will begin enforcing the guidance after publication to all future agency actions, without going back to undo past agency actions. It does not mean that future enforcement will be limited to children born after any particular date. Like the 2026 Executive Order, these documents "do[] not state that [they] appl[y] only to babies born after [they were] issued or after a certain date in the future." *CASA IV*, 2026 WL 2592706, at *9.

Several other aspects of the guidance documents indicate that they are "prospective" only in the sense that departments and agencies will apply them going forward, rather than in the sense that they exempt children born before the guidance was issued. The State Department guidance, which concerns passport applications, creates new procedures for all passport applicants, regardless of when they were born. It says that "[p]assport agency staff will utilize the existing parental data fields on form DS-11, submitted documents, relevant government records, and other indicators to assess whether an applicant is within the categories of children of aliens who fall within the scope of EO 14418." ECF 183-3 at 4.[1] "If neither parent of a minor applicant is a U.S. citizen, an attestation from each parent, under penalty of perjury, must be submitted as part of the determination whether either

[1] For the guidance documents that do not include page numbers, Plaintiffs refer to the page numbers indicated in the ECF stamp at the top of the page.

parent meets any of the EO conditions." *Id.* This attestation requirement for minors who apply for passports is not limited to children born after any particular date.

The Social Security guidance, regarding issuance of Social Security numbers, similarly applies regardless of when a child is born. It states that, going forward, "a birth certificate showing a U.S. place of birth will not be sufficient documentary evidence of United States citizenship for persons covered by the EO." ECF 183-4 at 2. That statement is not limited to children born after any specific date. The guidance later adds that, "[a]fter we have issued a child's SSN, if we receive agency data … that indicates a parent met one of the EO conditions at the time of the child's birth and an SSN should not have been issued, we will notify the parent and update our records accordingly." *Id.* at 4. This statement is also not limited to children born after any specific date.

The guidance documents issued by the Department of Agriculture, CMS, ACF, and HUD all concern what proof of citizenship is necessary to confirm eligibility for benefits. Although these documents generally follow a similar format, there are important differences between them. Most significantly, they differ on whether a person born in the United States *before* issuance of the 2026 Executive Order may prove citizenship with a birth certificate, with both CMS and HUD taking the position that a birth certificate is no longer proof of citizenship no matter when it was issued.

The four benefits-related guidance documents all refer to "Qualifying Beneficiary Documents" that can be used to prove citizenship, but they define that term in different ways. Under the guidance issued by CMS, HUD, and ACF, a beneficiary can prove citizenship in multiple ways.[2] First, they can submit a Category A document, like a passport, which proves both citizenship and

[2] It appears that the Department of Agriculture omitted or deleted the portion of its guidance defining a Qualifying Beneficiary Document, so that guidance uses the term without explaining what it means or what documents count.

identity. *See, e.g.*, ECF 183-8 at 3 (HUD guidance). The treatment of passports in Category A under the CMS, HUD, and ACF guidance raises questions about what it means for the guidance to be "prospective." For children born before the Executive Order "takes effect," any U.S. passport is sufficient, but for children born after the Executive Order "takes effect," the passport must be "issued after implementation of section 3(a) of EO 14418 by the Department of State." *See id.* But as discussed above, the Department of State's guidance on passports is not limited to children born after the Executive Order, so a person born before the Executive Order who does not already have a passport or whose passport is expired will not be able to obtain or renew one without showing that their parents fall outside the Executive Order's categories.

The other option for demonstrating eligibility under the CMS and HUD guidance is for an applicant to submit a Category B document proving citizenship, a Category C document proving identity, *and* a Qualifying Parental Document and accompanying attestation that either one parent is a citizen or neither parent falls into the Executive Order's categories. *See* ECF 183-6 at 4 (CMS); ECF 183-8 at 3 (HUD). In other words, under both the CMS and HUD guidance documents, a birth certificate is no longer sufficient to prove citizenship without additional information about the applicant's parents, *no matter when the birth certificate was issued*. *See* ECF 183-6 at 5 (CMS); ECF 183-8 at 4 (HUD). The ACF guidance, by contrast, distinguishes between birth certificates issued before and after the Executive Order takes effect. *See* ECF 183-7 at 2 (ACF). It provides that birth certificates issued before the Executive Order takes effect alone prove citizenship, while birth certificates issued after the Executive Order are insufficient unless accompanied by a Qualifying Parental Document and attestation. *Id.*

The IFR from USCIS recognizes that by operation of the Executive Order, "children born to foreign government employees who do not have a U.S. citizen parent are not U.S. citizens." ECF

183-9 at 16. The IFR "aim[s] to put in place a procedure for children born on or after the effective date of this rule to have the ability to voluntarily register as lawful permanent residents as soon as possible in order to ensure that they have a lawful status in the United States." *Id.* Unlike the other guidance documents, the IFR states that, "[t]he IFR applies prospectively to children born in the United States on or after the effective date of the IFR." *Id.* at 8. The IFR does not claim that the Executive Order includes the same limitation.

## LEGAL STANDARD

"To obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'" *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648-49 (2d Cir.1989)); *see also CASA IV*, 2026 WL 2592706, at *17 (collecting cases).

Absent a significant change in circumstances, "allowing litigants a 'second bite at the apple' via a motion to reconsider is disfavored." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994)). Motions for reconsideration are "an extraordinary remedy which should be used sparingly." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). Although interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b), "the court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim," *First Am. Title Ins. Co. v. Chesapeake Holdings GSG, LLC*, 633 F. Supp. 3d 789, 804 (E.D. Va. 2022) (internal quotation marks and citation omitted). "'[M]ere disagreement' with the Court's ruling … does not support reconsideration." *Kaur v. Harmon*, No. 21-cv-1780, 2022 WL 911205, at *2 (D. Md. Mar. 29, 2022) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

## ARGUMENT

Defendants identify no "significant change in the facts or the law since the court issued the injunction that makes its ongoing enforcement inequitable." *CASA IV*, 2026 WL 2592706, at *17 (quoting *Glob. Dimensions, LLC v. Tackett*, No. 5:23-cv-00168, 2024 WL 1235545, at *3 (E.D.N.C. Jan. 16, 2024)). They claim that the guidance documents implementing the 2026 Executive Order undermine Plaintiffs' standing because those documents limit the effect of the Order to babies born in the future, leaving Plaintiffs' children unharmed. But none of the guidance documents say that the effect of the 2026 Executive Order is limited to children born after issuance of the Order or of the implementing guidance. And several suggest the opposite, including two that provide that birth certificates are no longer adequate proof of citizenship even for children born before the Executive Order was issued. That confirms the credible risk that the Executive Order will be enforced against the children of class representatives Andrea and Monica under the Order's "alien enemy" category, given that the guidance does nothing to narrow or further define who fits into that category.

Defendants' remaining arguments, concerning severability and classwide relief, do not depend on the intervening guidance. Instead, Defendants merely restate points from their prior briefing that the Court has already rejected. Defendants make no effort to explain why these arguments meet the demanding standard applicable to a motion for reconsideration, and their arguments are unpersuasive in any event. There is thus no reason for this Court to lift or stay the preliminary injunction.

### I. The Guidance Confirms that Plaintiffs Have Standing.

#### A. The Guidance Indicates that the 2026 Executive Order Is Not Limited to Children Born After It Was Issued.

In its preliminary-injunction opinion, this Court held that class representatives Andrea and Monica have pre-enforcement standing to challenge the 2026 Executive Order because their children

"face a credible threat that they will be denied citizenship" under the Order. *CASA IV*, 2026 WL 2592706, at *10. In reaching that conclusion, the Court rejected Defendants' argument that Andrea and Monica lacked standing because they "already had their babies and the Executive Order applies only prospectively to children who have not yet been born." *Id.* at *9. The Court found that argument unpersuasive because it conflicts with the Executive Order's text. The 2026 Executive Order "does not state that it applies only to babies born after it was issued or after a certain date in the future." *Id.* "Nowhere in the order does it indicate it does not apply to children already born." *Id.* That omission from the text of the 2026 Executive Order is particularly telling given that the 2025 Executive Order explicitly specified that it "appl[ied] only to persons who are born within the United States after 30 days from the date of" that Order." 2025 Executive Order § 2(b). This textual difference between the two Orders indicates that "the President knows how to specify that an Executive Order on birthright citizenship applies only to children not yet born" when he wants to do so. *CASA IV*, 2026 WL 2592706, at *9; *cf. DePierre v. United States*, 564 U.S. 70, 83 (2011) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (internal quotation marks and citation omitted)). Accordingly, the Court determined that, "by its plain language, the 2026 Executive Order applies to all children who meet its criteria—regardless of when they were born," including "the children of Monica and Andrea." *CASA IV*, 2026 WL 2592706, at *9.

Defendants now contend that this analysis no longer holds in light of the guidance documents that departments and agencies issued after the Court ruled. According to Defendants, the guidance "eliminates any conceivable prospect that any named Plaintiff has standing" because "[t]he guidance proves" that the Executive Order "does not apply to any child already born as of the date of the guidance." ECF 183-1 at 1. But none of the guidance actually says that. Perhaps for that reason,

Defendants' brief largely skips over the text of the guidance. But based on its plain text, the guidance only increases the risk that the 2026 Executive Order could be applied to deny citizenship to children born before issuance of the Executive Order, including the children of Andrea and Monica.

Defendants principally rely on a boilerplate disclaimer included in six of the guidance documents (all of them except the IFR from USCIS), which reads in full: "Because the EO is prospective only, this guidance is prospective only and will become effective upon publication subject to any legal obligations." *E.g.*, ECF 183-3 at 2 (State Department guidance). But that vague statement, which focuses on when the guidance becomes effective rather than to whom the guidance applies, does not undermine the threat of enforcement against children born before publication of the guidance. At no point do any of the guidance documents say that the Executive Order is limited to children born after the Order was issued, after the guidance was published, or after any particular date in the future. Even after the Court faulted the Executive Order for "not stat[ing] that it applies only to babies born after it was issued or after a certain date in the future," *CASA IV*, 2026 WL 2592706, at *9, department and agency heads conspicuously omitted any such statement from the guidance as well.

As Plaintiffs have repeatedly pointed out, *see* ECF 157 at 4-5; ECF 162 at 2; ECF 180 at 3, the word "prospective" is ambiguous. Defendants ask the Court to assume that "prospective" means the Executive Order applies only to children born after publication of the guidance. But that is not what the Executive Order or the guidance says. If that is what they meant, they easily could have said so explicitly, as the 2025 Executive Order did. Because the guidance fails include that sort of textual limitation, the more natural reading is that the Order is prospective only in that it will be enforced on a going-forward basis. The guidance will be applied to future applications for documents or benefits (regardless of when applicants were born), but departments and agencies will not

generally seek to retroactively rescind such documents or benefits issued in the past. There thus remains a credible threat that the Executive Order will be applied to deny citizenship and its attendant benefits to class members born before the guidance was published, including the children of Andrea and Monica.

Several aspects of the individual guidance confirm that reading. The State Department guidance, which governs passport applications, says without qualification that "[i]f neither parent of a minor applicant is a U.S. citizen, an attestation from each parent, under penalty of perjury, must be submitted as part of the determination whether either parent meets any of the EO conditions." ECF 183-3 at 4. Conspicuously absent from the State Department guidance is any indication that this new requirement will apply only to applicants born after the guidance was published. Instead, by its plain terms, the State Department will evaluate parental citizenship and require the new attestation for any minor applicant who seeks a passport after the guidance was published, no matter when they were born. The Social Security guidance similarly states, for purposes of assigning Social Security Numbers, that "a birth certificate showing a U.S. place of birth will not be sufficient documentary evidence of United States citizenship for persons covered by the EO." ECF 183-4 at 2. Again, that statement is not limited to children born after any specific date. The reference to "persons covered by the EO" cannot impose the limitation because, as the Court already found, the Executive Order is not limited to children born after any particular date.

The guidance documents issued by CMS and HUD concerning benefits eligibility provide strong evidence that the Executive Order is not limited to future children. As explained above, under the CMS and HUD guidance, a birth certificate is no longer sufficient proof of citizenship standing alone, no matter when the birth certificate was issued. *See* ECF 183-6 at 4 (CMS); ECF 183-8 at 3 (HUD). Anyone *of any age* who seeks to use a birth certificate to prove citizenship for purposes of

benefits eligibility must also submit an attestation from a parent that either one parent is a citizen or neither parent falls into the Executive Order's categories. *See* ECF 183-6 at 5 (CMS); ECF 183-8 at 4 (HUD). The fact that children born before issuance of the Executive Order will no longer be permitted to prove citizenship with their birth certificate confirms that the Executive Order applies to those children. Although the ACF guidance distinguishes between birth certificates issued before and after the Executive Order takes effect, *see* ECF 183-7 at 2 (ACF), that merely confirms that the agencies knew how to draw this distinction when they wanted to. But CMS and HUD decided not to recognize prior birth certificates as proving citizenship.

The treatment of passports under the ACF, CMS, and HUD guidance raises additional questions about what it means for the guidance to be "prospective." For children born before the Executive Order, any passport is sufficient, but for children born after the Executive Order, the passport must be "issued after implementation of section 3(a) of EO 14418 by the Department of State." *E.g.*, ECF 183-8 at 3 (HUD guidance). But as discussed above, the Department of State's guidance on passports is not limited to children born after the Executive Order, so a person born before the Executive Order who does not already have a passport or whose passport is expired or otherwise invalid will not be able to obtain one without showing that their parents fall outside the Executive Order's categories.

The IFR from USCIS is not to the contrary. The IFR pertains to only one of the Executive Order's categories. It expands a regulation that previously provided noncitizen permanent resident status to children born to ambassadors in order to extend that legal status to the children of all the foreign government employees covered by the Executive Order. *See* ECF 183-9 at 16. Unlike the other guidance documents, the IFR states that "[t]he IFR applies prospectively to children born in the United States on or after the effective date of the IFR." *Id.* at 8. The IFR never claims that the

*Executive Order* applies only to babies born in the future. And the inclusion of this explicit limitation in the IFR again serves only to highlight the lack of any such language in either the Executive Order or the other six guidance documents—particularly when two of the guidance documents state plainly that birth certificates issued before the Executive Order are no longer proof of citizenship.

As this Court already recognized, the President and his subordinates know exactly how to explicitly make a birthright citizenship regulation applicable only to children born in the future if they want, as the President did in the 2025 Executive Order. Yet taken together, the guidance documents show that this time around, they chose not to do so: they included language to that effect only in the IFR, while excluding similar language from the Order and from all of the other guidance.

Regardless, Plaintiffs are contemporaneously filing a motion to add a pregnant mother as an additional class representative. If the Court were to grant that motion, it would eliminate any debate about whether the Executive Order's supposed limitation to future babies deprives all class representatives of standing.

**B. The Guidance Confirms Plaintiffs' Credible Fear that the "Alien Enemy" Category Will Be Applied to Them.**

Defendants also make a half-hearted argument that the guidance "demonstrate[s] that Andrea's and Monica's fears are unfounded in any event" because, Defendants say, the guidance clarifies the scope of the alien enemy category of the Executive Order. ECF 183-1 at 8-9. But the guidance does no such thing. In listing the Executive Order's categories, the guidance merely quotes the vague language of the Order itself. The guidance offers nothing to refine who is covered by the "alien enemy" category. For instance, it does not explain who else besides members of designated Foreign Terrorist Organizations and Specially Designated Global Terrorists is included in this category, *see, e.g.*, ECF 183-3 at 2, even as Defendants' own brief admits that the Executive Order

also covers parents in "like categories" that neither the Order nor the guidance attempts to identify, ECF 183-1 at 11.

Worse yet, as Defendants acknowledge, the guidance includes an ominous statement that whether someone is an alien enemy "will be assessed based on relevant government records *and other indicators*." *Id.* (emphasis added). Given the possibility that such indicators could include a person's tattoos, their country of origin, or their personal associations, the guidance appears to substantiate this Court's concern that Defendants may seek to deprive children of citizenship under the Executive Order "hastily and without credible evidence … because of purported affiliations with groups deemed alien enemies." *CASA IV*, 2026 WL 2592706, at *10. As the Court previously recognized, "it is no wonder that Monica and Andrea fear they or their children's fathers … will be wrongly called an alien enemy and their children will be denied citizenship on that basis." *Id.*

* * *

In short, the guidance does not undermine the threat of enforcement against Plaintiffs—and comes nowhere close to constituting the sort of significant change in circumstances that would merit dissolving an injunction. *See Gooch*, 672 F.3d at 414.

## II. The Court Has Already Rejected Defendants' Remaining Arguments.

Defendants make two other arguments for dissolving the injunction. First, they contend that because of the Executive Order's severability clause, Plaintiffs must separately challenge each of the Order's categories, with different class representatives for each. ECF 183-1 at 10. Second, they argue that the Court cannot grant classwide relief because the class definition is not tailored to the scope of the 2026 Executive Order. *Id.* at 10-14.

Defendants raised both of these arguments in their prior briefing. *See* ECF 170 at 16, 19-21; ECF 179 at 2-3. The Court rejected them both. With respect to severability, the Court explained that

Section 2 of the Executive Order "does not direct different defendants to take different actions" but rather "creates one policy: that citizenship by birth shall not be recognized for certain categories of people," just as the 2025 Executive Order had done. *CASA IV*, 2026 WL 2592706, at *11. In response to that single policy, Plaintiffs "do not challenge the 2026 Executive Order piecemeal," but rather "bring one claim challenging the constitutionality of the entire order as applied to the entire class of 'citizens at birth.'" *Id.* (quoting *Barbara*, 146 S. Ct. at 2450). "To remedy that alleged violation, the plaintiffs request injunctive relief against enforcement of the entire order as to the class to preserve the citizenship of all class members." *Id.* The Court concluded that, "[b]ecause *Barbara* declared all of the children in the class citizens, the named plaintiffs do not (and need not) present distinct claims for each section of the 2026 Executive Order." *Id.*

As for granting relief to the entire class, the Court explained that, "[c]onsistent with relief appropriate for Rule 23(b)(2) classes such as this, one injunction barring the defendants from enforcing the 2026 Executive Order and otherwise refusing to recognize the class representatives' and members' citizenship would benefit the entire class by protecting their citizenship." *Id.* at *8 n.2 (internal quotation marks and citations omitted). The Court explained that "this is not a case where 'each individual class member would be entitled to a different injunction … against the defendant,' or where 'the class members' claims are highly diverse and individualized' and the plaintiffs fail to identify 'a single or uniform policy or practice that bridges all their claims.'" *Id.* at *16 (first quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (alteration omitted); and then quoting *G.T. v. Bd. of Educ. of Kanawha*, 117 F.4th 193, 205 (4th Cir. 2024)). "Here, the class members are united in their singular challenge to the 2026 Executive Order's attempt to deny them their right to citizenship under the Fourteenth Amendment." *Id.*

In asking the Court to reverse itself, Defendants face a heavy burden. "[T]o prevent parties from relitigating the same issues" that have already been decided, "the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Columbia Gas Transmission, LLC v. RDFS, LLC*, 148 F.4th 163, 169 (4th Cir. 2025) (internal quotation marks and citations omitted). To overcome that "prudent judicial response to the public policy favoring an end to litigation," *id.* (citation omitted), courts require more than mere disagreement with a prior decision to warrant reconsideration. "Although the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration" before final judgment, "courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance," such that reconsideration is warranted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Keen v. LoanCare, LLC*, No. 22-cv-0149-RDB, 2023 WL 9472295, at *1 (D. Md. Dec. 21, 2023) (internal quotation marks and citations omitted). A motion for reconsideration "may not be used to rehash previously rejected arguments." *Hulbert v. Pope*, No. 18-cv-00461-SAG, 2021 WL 4640668, at *4 (D. Md. Oct. 6, 2021) (quoting *Cezair v. JPMorgan Chase Bank, N.A.*, No. 13-cv-2928- DKC, 2014 WL 4955535, at *2 (D. Md. Sept. 30, 2014)); *see also In re Marriott Int'l, Inc.*, No. 19-md-2879, 2021 WL 1516028, at *5 (D. Md. Apr. 16, 2021) (motion for reconsideration "may not be used merely to reiterate arguments previously rejected by the court" (citation omitted)).

Defendants here are improperly seeking a second bite at the apple without any intervening change in the law or the facts to justify it. Nothing about the guidance documents changes anything about the Court's prior analysis of severability or classwide relief. In an attempt to tie their request for reconsideration to changed circumstances, Defendants say that the guidance "confirm[s]" that

Defendants have been right all along about these points. ECF 183-1 at 10-11. But the guidance does nothing of the sort, and in the same breath, Defendants all but admit that they are simply repeating their prior arguments. They say that their "position has always been that this class has never satisfied" the requirements of Rule 23 "as to the 2026 Executive Order." *Id.* And they "[r]espectfully" argue that the Court's prior analysis "was error." *Id.* at 13. But merely purporting to identify an error is not grounds for this Court to revisit its prior opinion. "It is no surprise that [Defendants] disagree[] with [the Court's] decision, but that does not amount to clear legal error, manifest injustice, or an abuse of discretion," nor does it "support any other grounds for reconsideration." *Marriott*, 2021 WL 1516028, at *4.

In any event, the Court's prior decision was correct. The Supreme Court has "held that a severability clause is an aid merely; not an inexorable command." *Reno v. ACLU*, 521 U.S. 844, 885 n.49 (1997) (internal quotation marks and citation omitted). A severability clause "does not require [a court] to proceed in piecemeal fashion when [the court] ha[s] found the statutory provisions at issue facially unconstitutional." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 626 (2016), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Here, all three of the Executive Order's relevant categories are unconstitutional as applied to the certified class "for the simple reason that the Supreme Court in *Barbara* already decided that the children in the class are citizens at birth." *CASA IV*, 2026 WL 2592706, at *1. And because all of the Order's relevant categories are unconstitutional, "[n]othing remains to be saved" once those provisions are enjoined. *Wyoming v. Oklahoma*, 502 U.S. 437, 460 (1992).

As for Rule 23, Plaintiffs have already provided extensive briefing on why a classwide injunction is appropriate in these circumstances, where a Rule 23(b)(2) class has been certified, without requiring the Court to revisit the Rule 23(a) factors. *See* ECF 174 at 5-8; ECF 178-1 at 4-7;

ECF 180 at 4-7. Rather than engaging with Plaintiffs' arguments, Defendants merely cite the same inapposite cases involving damages classes certified under Rule 23(b)(3) that Plaintiffs previously distinguished. *See* ECF 178-1 at 5-6. That provides no reason for the Court to revisit its prior decision.

In any event, Plaintiffs satisfy Rule 23's requirements for a classwide injunction against the 2026 Executive Order. Defendants' attempt to contest numerosity is baffling. As this Court previously explained, "[t]he Fourth Circuit 'has stated that 74 members is well within the range appropriate for class certification, and has upheld the certification of a class with as few as 18 members.'" *CASA II*, 793 F. Supp. 3d at 718 (quoting *Yates v. NewRez LLC*, 686 F. Supp. 3d 397, 404 (D. Md. 2023)). That standard is easily met here. Unless they are lawful permanent residents, *all* noncitizen parents who are labeled alien enemies, foreign government employees, or birth tourists under the 2026 Executive Order are present in the country unlawfully or temporarily. Their children born in the United States after February 19, 2025, are thus within the certified class. And by the nature of the 2026 Executive Order's categories, they are more likely to apply to parents unlawfully or temporarily in the country than parents who are lawful permanent residents. For instance, someone engaged in so-called "birth tourism" will generally be present in the United States temporarily.

With respect to commonality, the class representatives and class members present a common question: "Does the Executive Order violate the Fourteenth Amendment's Citizenship Clause and the INA?" *Id.* at 718-19. "The resolution of this common question of law will resolve the central issue of whether the children are entitled to birthright citizenship." *Id.* at 719. Defendants now claim that this common question is pitched at too high a "level of generality," ECF 183-1 at 11, but it is the exact same common question, at exactly the same level of generality, that this Court held supported class certification in the first place. As for typicality and adequacy of representation,

Andrea and Monica will adequately represent the interests of the class, as the Court previously determined they would. *CASA II*, 793 F. Supp. 3d at 722-26.

**III. The Court Should Not Stay Its Preliminary Injunction.**

Defendants alternatively ask the Court to stay its preliminary injunction pending appeal. ECF 183-1 at 14-15. The Court should decline that request. In assessing whether to grant a stay pending appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

In issuing the preliminary injunction, the Court held that "[t]he 2026 Executive Order is almost certainly unconstitutional as applied to the certified class," *CASA IV*, 2026 WL 2592706, at *1, which means conversely that Defendants are almost certain to fail on the merits of their appeal. And the equities favor Plaintiffs because "[t]he right to citizenship is 'no less precious than life or liberty.'" *Id.* at *15 (quoting *Klapprott v. United States*, 335 U.S. 601, 616 (1949)). Further, "the plaintiffs and the public at large have a significant interest in avoiding abrupt attempts to modify the Supreme Court's interpretation of the Citizenship Clause of the Fourteenth Amendment." *Id.*

Defendants contend that "[a]ny attempt to prevent 'the Government from enforcing its policies' inflicts an irreparable harm on the Government." ECF 183-1 at 14 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025)). But that is not an accurate characterization of what the Supreme Court has held. Instead, the Supreme Court has instructed that the government suffers irreparable harm when courts improperly enter injunctions against the government "that likely exceed the authority conferred" on them by Article III and the Judiciary Act of 1789. *CASA, Inc.*, 606 U.S. at 860; *see also Trump v. California*, No. 26A124, 2026 WL 2473573, at *4 (U.S. Aug. 24, 2026)

(finding that "[t]he Government is likely to suffer irreparable harm without a stay" based on "[t]he District Court's breach of Article III," which "interfere[d] with the internal operations of the Executive Branch"). It is not as though the Executive Branch can never be enjoined or is automatically entitled to a stay whenever it is. *See U.S. Postal Serv. v. California*, No. 26A305, 2026 WL 2687160, at *1 (U.S. Sept. 14, 2026) (holding in response to a stay request from the Executive Branch that "the equitable factors applicable for obtaining emergency relief from this Court do not favor a stay"). Here the Court carefully adhered to the requirements of Article III by ensuring that Plaintiffs' claims are ripe and that Plaintiffs have standing. And the Court likewise carefully complied with the requirements of the Judiciary Act and Rule 23 by certifying a nationwide class before issuing nationwide relief. The Court's injunction merely prevents Defendants from violating the Constitution, which in no way harms them. "The government cannot claim a legitimate interest in enforcing an Executive Order that is likely unconstitutional." *CASA IV*, 2026 WL 2592706, at *15.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Respectfully submitted this September 22, 2026,

/s/ *William Powell*

Conchita Cruz*
Jessica Hanson (D. Md. 31903)
Dorothy Tegeler*
Leidy Perez*
Marcela X. Johnson*
ASYLUM SEEKER ADVOCACY PROJECT
228 Park Ave. S., #84810
New York, NY 10003-1502
(646) 600-9910
conchita.cruz@asaptogether.org
jess.hanson@asaptogether.org
dorothy.tegeler@asaptogether.org
leidy.perez@asaptogether.org
marcela.johnson@asaptogether.org

William Powell*
Mary B. McCord (D. Md. 21998)
Rupa Bhattacharyya*
Alexandra Lichtenstein*
Grayson Clary*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 662-9765
Fax: (202) 661-6730
whp25@georgetown.edu
mbm7@georgetown.edu
rb1796@georgetown.edu
arl48@georgetown.edu
gec50@georgetown.edu

*Attorneys for Plaintiffs*

**Admitted Pro Hac Vice*