**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CASA, INC., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No. 8:25-cv-00201-DLB

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION OR FOR A STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

This Court should dissolve its preliminary injunction or, at minimum, stay it pending appeal. The guidance makes clear what has always been true: the 2026 Executive Order only applies prospectively, not to children born before its implementation. For that reason, named Plaintiffs lack standing. Plaintiffs' response is to flip the presumption against retroactivity on its head and instead demand magic words for prospective application, but that is not how the law works. Plaintiffs assert the guidance is still unclear on what being "prospective" means and claim that various requirements prove the guidance will apply to children born before the implementation of the Executive Order. Not so. Plaintiffs' contorted reading would create a nonsensical regime. Under Plaintiffs' view, the Executive Order is retrospective and *some* of the guidance is retrospective to *some* children *sometimes*, but other parts are purely prospective. That defies the logic, text, context, and structure of the Executive Order and guidance documents.

Realizing the weakness in this argument, Plaintiffs baldly assert that they can add a new Plaintiff to fix the standing flaws in the injunction. That is not how standing works for a preliminary injunction. On the speculative nature of their fears that they might erroneously be labeled alien enemies, Plaintiffs somehow claim the guidance *increases* the risk. It does no such thing, but instead merely clarifies the type of organizations that constitute alien enemies and what evidence officers consider. And in response to the severability arguments, Plaintiffs conflate reconsideration with dissolution and severability for interpretation and relief purposes with standing. In doing so, they ignore other grounds for dissolution and the cases on standing cited in Defendants' motion. Absent standing, the Court must dissolve its injunction.

The injunction should also be dissolved because the class is overbroad and does not match the 2026 Executive Order. Plaintiffs simply rest on their laurels and do not meaningfully respond. But if the class is improper, then a class wide injunction must be dissolved. Indeed, the district

court in *Barbara* recognized this problem and made clear claims against the 2026 Executive Order were different claims for a different class that should be brought in a different case. At a minimum, all of this means the Court should at least stay its injunction pending appeal. Given the importance of this issue and the time that has already lapsed, Defendants respectfully request that the district court issue a decision as soon as possible.

## ARGUMENT

### I. Plaintiffs Still Lack Standing, Requiring Dissolution or a Stay.

At the time the Executive Order was issued, Defendants repeatedly made clear, the 2026 Executive Order was prospective only and that the guidance would confirm as much. ECF 170 at 16-19; ECF 179 at 2. Acknowledging the possibility that the guidance could change its analysis, this Court invited Defendants to move for dissolution. ECF 181 (Op.) at 32. The guidance has since issued, each explicitly saying that "the EO is prospective only," that the "guidance" "is prospective only," and that the guidance "will become effective upon publication subject to any legal obligations." ECF 183-3-9 (Exs. 1-7). That is a significant change in law, facts, or circumstances that demonstrate that none of the named Plaintiffs have standing to justify a sweeping preliminary injunction. *See Am. Coll. of Obstetricians & Gynecologists v. FDA*, 506 F. Supp. 3d 328, 338 (D. Md. 2020). At the very least, it no longer makes the injunction equitable. As such, this Court should immediately dissolve its injunction.

**A.** Plaintiffs resist this conclusion by ignoring basic principles of law and willfully misreading the guidance documents. First, Plaintiffs reiterate their argument that the 2026 Executive Order does not explicitly say it is prospective only and claim that should end the inquiry. ECF 188 (Resp.) at 12. That is backwards. The default is that all laws are prospective. Indeed, courts apply "a robust presumption against statutory retroactivity." *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 172

(4th Cir. 2010) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). Thus "courts assume that statutes operate prospectively only" unless there is "clear congressional intent" that the law be applied retroactively, namely by express language. *Id.* That presumption applies equally to Executive regulations. *See Sweet v. Sheahan*, 235 F.3d 80, 88 (2d Cir. 2000). Plaintiffs flip the presumption on its head by demanding express language that the 2026 Executive Order is *prospective*. They cite no authority for this novel move. Since nothing in the Executive Order reflects an intention that it applies retroactively, the default is it applies prospectively.

Second, even if some clarity was required, Defendants have long insisted that the 2026 Executive Order would only be prospective. *See* ECF 170 at 16-19; ECF 179 at 2. Indeed, the guidance expressly says as much: "the EO is prospective only" so the "guidance" "is prospective only" as well. Exs. 1-7. That definitively establishes that the named Plaintiffs lack standing, as all of their children were born before the 2026 Executive Order was implemented. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) (relying on FAQ that law did not apply to intended conduct to find no standing).

Plaintiffs nonetheless contend that the guidance somehow "only increases the risk that the 2026 Executive Order could be applied to deny citizenship to children born before issuance of the Executive Order." Resp. at 13. That contention is based on a willful misreading of the guidance and an insistence on their own desired magic words. Plaintiffs assert this is so because the word "prospective" is ambiguous and the guidance does not say it will not apply to any children already born. *Id.* Plaintiffs strain to require a magic words requirement based on their ideal formulation, but there is no magic words requirement for legal documents to be prospective, as that is the default. Plaintiffs' theory as to what work the prospectivity clauses are doing in the guidance is unclear, but it appears to be that the guidance is prospective only because it will not be used to

rescind previously issued documents or benefits while everything else is retrospective. *Id.* at 13-14. But the guidance documents say no such thing. And such a reading renders the prospective clause superfluous because nothing in the guidance documents set out procedures that could be used to rescind existing documents or benefits. *See Fischer v. United States*, 603 U.S. 480, 496 (2024) (surplusage is disfavored). Rather, the natural reading of "prospective" is thus the default in all law: the effects of the Executive Order only apply to children going forward. Plaintiffs' bizarre attempts to contort the simple clause is unavailing.

To support their strained reading, Plaintiffs nitpick some of the guidance. But their strained reading underscores that the only natural interpretation is that the 2026 Executive Order and guidance documents apply to children born after the implementation of the Executive Order. Plaintiffs begin by saying that non-citizen parents have to attest that neither "parent meets any of the EO conditions" to get a passport from the Department of State. Resp. at 14 (quoting Ex. 1 at 4). And for Social Security, a birth certificate is insufficient absent the parents attesting that they are not "persons covered by the EO." *Id.* (quoting Ex. 2 at 2). But as each guidance makes clear, they are prospective because the Executive Order is only prospective, so children born before the Executive Order was implemented are not "covered by the EO" and thus will not be denied a Social Security number or passport. Ex. 2 at 2; Ex. 1 at 4. Parents can thus attest that they are not covered by the EO and thus obtain the Social Security card or passport. *Id.* Plaintiffs anticipate this obvious response and simply reassert that the Executive Order is not prospective so neither is the guidance. Resp. at 14. That presumes the conclusion, which the guidance expressly rejects.

Instead, context supports Defendants' interpretation that the Executive Order and guidance only apply to children born after implementation. For example, most Social Security cards are provided at birth. Ex. 2 at 3. So even under Plaintiffs' interpretation of "prospective," the children

whose parents applied for Social Security cards at birth prior to the guidance would still get Social Security cards. That means most children who should be denied citizenship if the Executive Order was retrospective would still be assigned a Social Security number and obtain a card. That is a strange way to implement an Executive Order designed to be retrospective.

Similarly, Plaintiffs complain that, under the HUD and CMS guidance, a birth certificate is insufficient to establish a right to benefits irrespective of if it was issued before the Executive Order. Resp. at 14-15.[1] But a birth certificate does establish citizenship; it is just that for benefits eligibility another document is required to establish identity, and the parents are required to provide some proof that they do not meet the conditions of the Executive Order. Ex. 4 at 5; Ex. 6 at 4. And as Plaintiffs acknowledge, eligibility can be established by, "[f]or persons born before the EO takes effect, a United States passport. For persons born after the EO takes effect, a United States passport issued after implementation of section 3(a) of EO 14418 by the Department of State." Ex. 4 at 4; Ex. 6 at 3. The same is true for state issued Real IDs. Ex. 4 at 5; Ex. 6 at 4. So the guidance draws a clear distinction for documents issued to children who were born before and after the implementation. And if a child has a birth certificate, the parent can then provide their own passport, Real ID, *or* birth certificate before the Executive Order to prove their child's eligibility. Ex. 4 at 6; Ex. 6 at 5. Plaintiffs claim this undermines the prospective nature because, if the child does not already have a passport, it is now harder to get one without parental attestation. Resp. at 15. Again, for the State, CMS, and HUD guidance, the parents can attest the EO conditions do not apply if their child was born prior to the EO. Ex. 1 at 3; Ex. 4 at 5; Ex. 6 at 6. And this ignores that

[1] Plaintiffs argue the ACF guidance distinguishes between birth certificates before and after the EO to show meaningful variation. Resp. at 15. But that guidance mirrors the documents required by the CMS and HUD guidance. Ex. 5. In any event, it would be strange to implement an allegedly retroactive EO by having some guidance accept pre-EO birth certificates and other guidance not accept those same documents.

if the child has a birth certificate, the parents can provide documentation of personal identity as provided by the relevant guidance. *Id.* Thus a pre-Executive Order passport held by the child is but one of several ways a child born before the Executive Order can receive benefits.

For the USCIS regulation, Plaintiffs assert the regulation declares it will not apply to children born before its issuance but does not declare that the Executive Order is prospective. Resp. at 15. They claim this is further meaningful variation. *Id.* But there is no requirement that agency documents from different Defendants all need to use identical language. Indeed, it is ironic for Plaintiffs to complain that the prospective language is "boilerplate" in one breath (Resp. at 13), but then demand identical highly specific words in the next (Resp. at 15). In any event, it would be passing strange for the USCIS IFR to be purely prospective while every other guidance and the Executive Order are retrospective. The more sensible reading is to read all the guidance in harmony as only applying to children born after the implementation of the Executive Order.

Even Executive actions, like regulations, "'must be read in their context and with a view to their place in the overall [regulatory] scheme,' and courts must read a regulation 'as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.'" *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 633 (D.D.C. 2018), *aff'd,* 916 F.3d 1047 (D.C. Cir. 2019) (quoting *FDA v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000)). Plaintiffs' contorted reading of all of these documents, however, is incoherent. Under Plaintiffs' view, the Executive Order should be retrospective for all individuals who would fall into the exceptions, even adults. Yet Plaintiffs' interpretation of the guidance also means only *some* guidance would deny benefits to *some* children covered by a retrospective Executive Order. The guidance would allow wide swaths of otherwise covered children to get benefits based on passports, Real IDs, or their parents' passports, Real IDs, or birth certificates even though if the

Executive Order was retrospective they should not be considered citizens. That creates a massive inexplicable gap based on Plaintiffs' bizarre interpretation. If the President and Defendants really intended the Executive Order and guidance to apply to children born before implementation, they would not have created balkanized enforcement where huge swaths of children who should not have citizenship still get all the benefits of citizenship.

The more coherent and logical interpretation is that guidance documents and the Executive Order only apply to children born after the implementation of Executive Order. By allowing for some preexisting documents to establish citizenship and for parents to attest that the Executive Order does not apply, Defendants have provided guidance that ensures children born before the implementation of the Executive Order remain citizens and only those born after are not and can be denied benefits. Thus the only coherent interpretation is that guidance documents and the Executive Order only apply to children born after the Executive Order. The bottom line is all of the guidance makes clear by express text, context, and application that it only appies to children born after the Executive Order because the Executive Order was meant to be prospective and required this guidance to be implemented. As a result, the named Plaintiffs all lack standing and this Court should dissolve its injunction.

**B.** Even if the Executive Order was retrospective, named Plaintiffs still lack standing to support this Court's injunction. This is because the Court relied on named Plaintiffs Andrea's and Monica's fears that they might be mistakenly labeled alien enemies and then their children would lose citizenship. Those alleged "injuries" are insufficient because they rely on an "attenuated chain of inferences," "speculation," and "fears of hypothetical future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414-16 (2013). The guidance confirms this by focusing on categories of members of "designated Foreign Terrorist Organization[s]," "Specially Designated Global

Terrorists," and like categories. Exs. 1-7. And whether a person is an alien enemy "will be assessed based on relevant government records and other indicators." Exs. 1-7.

Yet Plaintiffs somehow assert the guidance is meaningless or "[w]orse" because it makes the "ominous statement that whether someone is an alien enemy 'will be assessed based on relevant government records *and other indicators*.'" Resp. at 16-17. But the guidance explains that documents and typical indicators will be relied on to identify alien enemies, thus it is not ad hoc. As a result, it is completely speculative that Andrea, Monica, or their spouses would have records or other standard indicators that would accidentally result in them being labeled alien enemies. If speculative errors based "relevant government records and other indicators" can support standing, then anyone could sue about any government program. *See Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 437 (6th Cir. 2024) (no pre-enforcement standing where the threat was premised on the idea that "the statute might be misconstrued by law enforcement").

Plaintiffs' fear is not based on anything concrete. They claim they are not members of an alien enemy group but worry either being Venezuelan or victims of an FTO would suffice. But they have zero evidence that they have been or likely will be designated as alien enemies. Nor do they explain how Defendants could use documents or other indicators such as "tattoos" or "associations" to erroneously label them alien enemies. Resp. at 17. For example, the chance Monica is designated under the Alien Enemies Act simply because she is Venezuelan is infinitesimal. Just looking at the TPS group she was part of, over 600,000 Venezuelans could be subject to the Alien Enemies Act. *See Nat'l TPS All. v. Noem*, 163 F.4th 1152, 1156 (9th Cir. 2025). Yet only a few hundred Venezuelans have actually been designated under the AEA in over a year and half. *See, e.g., J.G.G. v. Trump*, 813 F. Supp. 3d 126, 150 (D.D.C. 2025) (only 137 ever removed under the AEA); *G.F.F. v. Trump*, 2025 WL 1316563, at *1 (S.D.N.Y. May 6, 2025)

(class of 8 in all of S.D.N.Y.). So the chance that any single Venezuelan, much less Monica or her husband, would be designated is a fraction of a percentage. The same is true for Andrea. ECF 178-1 at 4. At most she is concerned because she claims her family is the victim of a FTO another person in her family is a member of. That hardly makes her more likely to be labeled an alien enemy.

Both Andrea and Monica deny being alien enemies. So their fears, as the Court said, stem from the chance of an error. The Court relied on a handful of mistakes to argue that such an error could happen here. But the Department of Homeland Security "has removed more than 675,000 illegal aliens" in 2025 alone.[2] The fact there are *some* mistakes is unsurprising and irrelevant to whether named Plaintiffs have a non-speculative threat of a certainly impending injury. The Court and Plaintiffs note a handful of alleged mistakes. Op. 19-20; ECF 168-1 at 12; ECF 174 at 12-13. Abrego Garcia, for example, was removable, just not to El Salvador. That is the only "error" anyone points to. There was no error in *AARP v. Trump*, 605 U.S. 91 (2025); there, the Supreme Court just required more due process prior to removal, which has since been developed and applied for AEA designees. The Court points to two cases where district courts believed someone was not a TdA member, but those are disputed on the facts, not mistakes. *See Sanchez Puentes v. Garite*, 780 F. Supp. 3d 682 (W.D. Tex. 2025); *Neiyerver Adrián Leon Rengel,* 780 F. Supp. 3d 682 (W.D. Tex. 2025). The remaining two cases simply recount allegations by Plaintiffs (that the Government disputes) where there was no decision that an individual was mistakenly identified as TdA. *See Y.A.P.A. v. Trump*, 785 F. Supp. 3d 1350, 1355 (M.D. Ga. 2025); *D.B.U. v. Trump*, 779 F. Supp. 3d 1264, 1271–72 (D. Colo. 2025). And the idea designations might happen quickly does not make

[2] Department of Homeland Security, *DHS Sets the Stage for Another Historic, Record-Breaking Year Under President Trump*, Jan. 20, 2026, https://www.dhs.gov/news/2026/01/20/dhs-sets-stage-another-historic-record-breaking-year-under-president-trump.

them erroneous. Nor is a quick designation and harm likely to occur given the guidances' processes for denying benefits and implementing the 2026 Executive Order. Exs. 1-7. In any event, those cases show there are legal means to resolve any mistakes or disputed designations. As a result, named Plaintiffs' fear that they might someday be accidentally designated as alien enemies and then their children would lose citizenship is based on pure speculation. *Clapper*, 568 U.S. at 409, 414-16. Such fears cannot suffice for standing.

**C.** Realizing their existing named Plaintiffs lack standing, Plaintiffs seek to add a new named class member who will be born after the Executive Order is implemented. ECF 189. This last second Hail Mary in response to Defendants' motion to dissolve gives the game away on standing while failing to fix the fatal flaws in their injunction. First, this Court should deny Plaintiffs' late breaking attempt to amend their complaint for the reasons briefed. ECF 192. Defendants should not be forced to play whack-a-mole ad infinitum.

Second, even if this Court granted the motion to amend, that could not save standing for purposes of this preliminary injunction. Plaintiffs make no effort to explain how it would. Resp. at 16. Standing is assessed at the time the complaint is filed. *See Johnson v. Bd. of Regents of the Univ. of Georgia*, 263 F.3d 1234, 1267 (11th Cir. 2001). And to seek a preliminary injunction, Plaintiffs must provide sufficient evidence that they are "likely to establish each element of standing." *Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Here, the supplemental complaint was in place and served as the basis for the current preliminary injunction. ECF 177. And Plaintiffs' renewed Motion for a Preliminary Injunction relied on evidence from their existing named Plaintiffs, not the new one in this amended complaint. ECF 178. Since Plaintiffs lacked standing based on that complaint and the evidence provided for the existing injunction, the Court lacked jurisdiction and the injunction must be dissolved. A new amended complaint cannot retroactively

save the original, flawed preliminary injunction, as it was not part of the complaint or evidence that justified the injunction. Rather, Plaintiffs would have to seek a new injunction after leave to amend is granted based on evidence regarding this new named Plaintiff.

Third, even if this Court considered the new proposed named Plaintiff, her evidence could not save the injunction. While her child is not excluded because the Executive Order is prospective, the only exception she says could apply is the alien enemy exception. ECF 189-1 at ¶¶ 6-9. And her fears that the Executive Order might apply to her child are based on speculation that she or her husband may be labeled alien enemies simply because they are Venezuelan. *Id.* This fails for all of the same reasons the existing named Plaintiffs lack standing. In fact, her fears are even more speculative than Andrea's because at least Andrea claimed some connections to a FTO (as a victim, however). ECF 178-2. The new proposed Plaintiff has no similar evidence, just her nationality. That cannot be sufficient to establish standing to take down the entire Executive Order on behalf of an allegedly massive class.

**D.** Even if the Court considered the proposed Plaintiff's declaration or maintained that Andrea and Monica had standing based on fears that they could erroneously be labeled alien enemies, Platiniffs will still only have standing to challenge the alien enemies exception, not the entire Executive Order. The exceptions are not interdependent, so there is no basis to ignore the express severability clause. Plaintiffs' primary response is to simply assert this is not a new argument and thus Defendants "are improperly seeking a second bite at the apple." Resp. at 19. To make this argument, Plaintiffs lean heavily on the standard for a motion for reconsideration and claim a new law or fact must exist. *Id.* It is telling that Plaintiffs want this Court to simply refuse to address these arguments on the merits, all while they seek to amend their complaint after the fact. Regardless, Plaintiffs are wrong for two reasons.

First, a motion to dissolve can be awarded for "any other reason that justifies relief," which provides "a grand reservoir of equitable power to do justice in a particular case." *Justus v. Clarke*, 78 F.4th 97, 105 (4th Cir. 2023) (quotation omitted); *accord* Op. 32 (noting this Court "has the plenary power to dissolve a preliminary injunction" for "equitable and good reasons"). So it is not necessary for there to be a change in the law or facts to dissolve and injunction. Plaintiffs likewise rely on the law of the case doctrine. Resp. at 19. But the "doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). The Court is thus free to dissolve its injunction based on arguments it had not considered or that prompted it to change its mind.

Second, even so, the guidance and regulations do provide new law and facts that confirm that the categories outlined in the 2026 Executive Order are severable. Exs. 1-7. No agency has attempted to meld them together, and indeed one agency's regulation addressed only one of the categories. *See* Ex. 7 (amending regulations to define foreign government employees but no other category). Plaintiffs claim this does not change the Court's analysis. But to the extent there was any doubt about the distinct nature of each exception and the purpose of the severability clause, the guidance puts such doubt to rest.

On the merits, Plaintiffs halfheartedly claim that when a statute is facially unconstitutional a court is not required to sever it. Resp. at 20. Those cases were about the scope of relief or interpretation, however, not standing. *Id.* And one of them did sever a portion of the statute where there was "a textual manifestation separate" from the other parts. *Reno v. Am. C.L. Union*, 521 U.S. 844, 883 (1997). Each exception is textually distinct here, as underscored by the guidance. Indeed, Plaintiffs and the district court acknowledged that the Executive Order is severable by

allowing both the territorial exception and the guidance provision to go into effect. By Plaintiffs logic the entire Executive Order should have been enjoined. Regardless, the point that none of those cases address is that where a law's "provisions are properly considered severable, [the plaintiff] must show injury, causation, and redressability with respect to each provision it challenges." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 800-01 (8th Cir. 2006) (emphasis added) (collecting cases); *see also Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 464 (6th Cir. 2007) (similar and collecting cases). Plaintiffs do not respond to this point or those cases, giving the game away. This Court should thus, at a minimum, dissolve its injunction as to the foreign government employee and birth tourism exceptions.

## II. Dissolution Is Required Because The Certified Class Does Not Satisfy Rule 23.

The recent guidance and regulations demonstrate that *many* children of unlawfully and temporarily present aliens fall outside of the 2026 Executive Order's categories, and therefore "could not have been injured" by it. *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 681 (4th Cir. 2024). Indeed, "overbreadth poses the unmistakable risk that 'the district court may inadvertently be 'lump[ing] together' a great many 'disparate plaintiffs with widely varying individual claims.'" *Overby v. Anheuser-Busch, LLC*, 178 F.4th 175, 185 (4th Cir. 2026). (quoting *Bojangles*, 123 F.4th at 681). This Court noted that it agreed the class was substantially overbroad. Op. 27 n.7. That should have doomed Plaintiffs' sweeping class-wide injunction.

Plaintiffs, once again, primarily respond by saying this is relitigating previous arguments and thus cannot justify reconsideration. Resp. at 21. Again, that is wrong for purposes of a motion to dissolve. Plaintiffs thus mostly rest on their previous briefing and barely respond to Defendants' arguments. *Id.* Plaintiffs briefly argue that questioning numerosity is "baffling" because their class was certified as numerous before. *Id.* But the entire problem is that the previous class is a poor overbroad fit for the current Executive Order. Many of the existing class members will not be

covered by the Executive Order. And they admit non-temporary lawfully present aliens are not included in their class, rending the class wildly over and under inclusive *Id.* Plaintiffs provide zero evidence that the existing class will encompass a numerous number of members who would be subject to the 2026 Executive Order, simply speculating that it must be so. *Id.* It is their burden to actually prove it is so. *See Overby*, 178 F.4th at 181. For commonality Plaintiffs simply assert that whether the Executive Order violates the Constitution is sufficient. Resp. at 21. And for typicality and adequacy they rest on *CASA II*. Resp. at 21-22. All of this ignores the serious overbreadth problems, the fact that neither Andrea or Monica have standing and even if they did they would not be typical of members impacted by the other exceptions, or the Rule 23(b)(2) issues. ECF 183-1 at 10-14. At bottom, Plaintiffs do not grapple with the mismatch between their class and the 2026 Executive Order.

Plaintiffs instead seem to rest on the idea that because the existing class is similar to the class in *Barbara*, it must be sufficient to ensure the citizenship of all class members even if a new Executive Order relying on different exceptions applies to only some members of that class. Speaking of new law and facts, it is telling that the Plaintiffs in *Barbara* itself did not believe the Supreme Court's ruling just meant that the class members were citizens irrespective of the legality of the exceptions in the 2026 Executive Order. *See Barbara v. Trump*, 1:25-cv-244, ECF 80 at 7-14 (D.N.H. Sept. 23, 2026) (motion to clarify or modify injunction); ECF 92 at 4-12 (new motion for preliminary injunction). And while the Plaintiffs did try to extend the existing injunction to the new Executive Order, they eventually sought a new class focused on the 2026 Executive Order and a new injunction. *See Id.*; ECF 91 (new class certification based on 2026 Executive Order). Even then, the court there made clear that the suits were completely distinct and encouraged the plaintiffs to abandon their motions and file a new suit seeking a new class. *See Barbara*, 1:25-cv-

244 Order September 10, 2026; ECF 96 (notice of withdrawal for all motions). So the idea that the preexisting class can just provide Plaintiffs all the relief they could desire going forward is clearly wrong. As a result, this Court should dissolve its injunction.

**III. In The Alternative, A Stay Pending Appeal Of The Injunction Is Warranted.**

Should this Court deny the motion to dissolve its injunction, a stay pending appeal is warranted. Defendants are likely to succeed on the merits of any appeal based on the arguments above and previous briefing, which Defendants incorporate here. ECFs 170 at 9-25; 179 at 1-14; 183-1. Plaintiffs' response is to collapse its view of the merits with the other factors. Resp. at 22-23. Since Plaintiffs fail on the merits, the rest of their arguments also fail. The fact that the injunction covers a massive class that is ill suited to challenge the 2026 Executive Order and lacks named Plaintiffs for two of the exceptions justifies a stay even if the merits are not otherwise on Defendants side. The Supreme Court's decision in this case is a perfect example of that. *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025). This Court should stay its injunction pending appeal.

**CONCLUSION**

This Court should dissolve its preliminary injunction. In the alternative, this Court should stay its order pending appeal. Given the time sensitive nature of this request, Defendants respectfully request that the Court issue a decision as expeditiously as possible.

Dated: October 6, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KELLY O. HAYES
United States Attorney

ERIC J. HAMILTON
Deputy Assistant Attorney General

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Chief Litigation Counsel

*/s Kathleen C. Jacobs*
KATHLEEN C. JACOBS
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L St. NW
Washington, D.C. 20005
(202) 598-7615

MELISSA E. GOLDMEIER (Bar number: 18769)
Assistant United States Attorney
36 S. Charles Street, 4th Fl.
Baltimore, MD 21201
melissa.goldmeier@usdoj.gov
Phone: 410-209-4800

*Attorneys for Defendants*